No. 02-3316

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| MELISSA ROBINSON, | ) | Appeal from the United States |
| (f/k/a MELISSA SCHROEDER), | ) | District Court, Central District |
| Plaintiff, | ) | of Illinois, Urbana Division |
| | ) | |
| vs. | ) | |
| | ) | |
| JUDGE WARREN A. SAPPINGTON, | ) | |
| SIXTH JUDICIAL CIRCUIT, | ) | |
| (IN OFFICIAL CAPACITY AND | ) | |
| INDIVIDUALLY), | ) | Case No. 99-2266 |
| Defendant, | ) | |
| | ) | |
| MACON COUNTY, | ) | |
| Defendant, | ) | |
| | ) | |
| JOHN P. SHONKWILER, CHIEF JUDGE, | ) | David G. Bernthal, |
| SIXTH JUDICIAL CIRCUIT, MACON | ) | Magistrate Judge |
| COUNTY CIRCUIT COURT, MACON | ) | |
| COUNTY, (IN OFFICIAL CAPACITY | ) | |
| AND NOT INDIVIDUALLY), | ) | |
| Defendant. | ) | |

---

## BRIEF AND ARGUMENT OF DEFENDANT-APPELLEE
## MACON COUNTY

---

JOHN E. CASSIDY, III
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria IL  61602
(309) 676-0591

COUNSEL FOR THE DEFENDANT-
APPELLEE, MACON COUNTY

Oral Argument Requested

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 02-3316

---

| | |
|---|---|
| MELISSA ROBINSON, (f/k/a MELISSA SCHROEDER), | ) Appeal from the United States<br>) District Court, Central District<br>) of Illinois, Urbana Division |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JUDGE WARREN A. SAPPINGTON, SIXTH JUDICIAL CIRCUIT, (IN OFFICIAL CAPACITY AND INDIVIDUALLY), | ) |
| | ) Case No. 99-2266 |
| Defendant, | ) |
| | ) |
| MACON COUNTY, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| JOHN P. SHONKWILER, CHIEF JUDGE, SIXTH JUDICIAL CIRCUIT, MACON COUNTY CIRCUIT COURT, MACON COUNTY, (IN OFFICIAL CAPACITY AND NOT INDIVIDUALLY), | ) David G. Bernthal,<br>) Magistrate Judge |
| Defendant. | ) |

**DISCLOSURE STATEMENT**

Appellate Court No. 02-3316

Short Caption:         Melissa Robinson v. Judge Warren A. Sappington, Judge John P. Shonkwiler, and Macon County
United States District Court, Central District, Urbana, IL
Case No.  99-2266

(1)      The full name of every party that the attorney represents in the case:

          Macon County

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

          Cassidy & Mueller Law Firm

(3)      If the party or amicus is a corporation:
      (i)      Identify all its parent corporations, if any: and

          N/A

               Respectfully Submitted,
               MACON COUNTY, Defendant-Appellee

               By:_____
                  JOHN E. CASSIDY, III

JOHN E. CASSIDY, III
Cassidy & Mueller
323 Commerce Bank Building
416 Main Street
Peoria IL  61602
(309) 676-0591

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES...................................................................iii

ISSUES PRESENTED FOR REVIEW BY MACON COUNTY ..........................................1

    Summary Judgments May Be Granted On Any Ground
    That Finds Support In The Record ..........................................1

STATEMENT OF FACTS...................................................................3

    The Sixth Judicial Circuit ..............................................3

    Plaintiff's Employment ..............................................4

    Janice Shonkwiler's Employment..........................................6

    Judge Warren Sappington's Employment................................8

    Judicial Branch's Sexual Harassment Policy................................8

    Macon County's Lack of Knowledge of Harassment Allegations...................10

STANDARD OF REVIEW ...............................................................10

SUMMARY OF ARGUMENT ...........................................................11

ARGUMENT...................................................................11

    1.    MACON COUNTY WAS NOT PLAINTIFF'S EMPLOYER..................11

        a.    Case History of Title VII Third Party
            Employer-Employee Relationships................................12

        b.    Right to Control Test ........................................15

        c.    Macon County Did Not Have Control Over The Plaintiff..........16

        d.    Constitutional Separation of Power................................17

    2.    DUTY OF COUNTY TO REMEDY HARASSMENT
        CAUSED BY NON-EMPLOYEES................................21

i

PAGE

3.    MACON COUNTY DID NOT KNOW NOR SHOULD
      IT HAVE REASONABLY KNOWN OF PLAINTIFF'S
      SEXUAL HARASSMENTALLEGATIONS ...............................................24

CONCLUSION ....................................................................................................26

## TABLE OF AUTHORITIES

PAGE

### CASES

*Alexander v. Rush North Shore Medical Center,*
*101 F.3d 487 (7th Cir. 1997)* ...................................................................................11, 13, 14

*Berry v. Delta Airlines, Inc.,*
*260 F.3d 803 (7th Cir. 2001)* ............................................................................................22, 23

*Box v. A & P Tea Co.,*
*772 F.2d 1372 (7th Cir. 1985), cert. denied, 478 U.S. 1010,*
*106 S.Ct. 3311, 92 L.Ed.2d 724 (1986),* ...............................................................................2

*Burlington Industries v. Ellerth,*
*524 U.S. 742, 118 S.Ct. 2257 (1998)* ...............................................................................22, 25

*Doe v. St. Joseph's Hosp. of Fort Wayne,*
*788 F.2d 411 (7th Cir. 1986)* ...........................................................................................12, 13, 14

*E.E.O.C. v. State of Illinois,*
*69 F.3d 167 (7th Cir. 1995)* .............................................................................................13, 14, 15

*Faragher v. City of Boca Raton,*
*524 U.S. 775, 118 S.Ct. 2275 (1998)* ..................................................................................22

*Hojnacki v. Klein-Acosta,*
*285 F.3d 544 (7th Cir. 2002)* ...........................................................................................14, 15, 16

*Jarman v. City of North Lake,*
*950 F. Supp. 1375 (N.D. Ill. 1997)* ......................................................................................23

*Johnson v. Halleran,*
*194 Ill. 2d 493 (2000)* ...............................................................................................20, 21

*Kerr v. WGN Continental Broadcasting Co.,*
*229 F. Supp.2d 880 (N.D. Ill. 2002)* ...................................................................................15

*Knight v. United Farm Bureau Mutual Ins. Co.,*
*950 F.2d 377 (7th Cir. 1991)* ............................................................................................13

*Ligenza v. Genesis Health Ventures of Massachusetts,*
955 F. Supp. 266 (D. Mass 1998) ....................................................................24-25

*Lockard v. Pizza Hut, Inc.,*
162 F.3d 1062 (10th Cir. 1998) .........................................................................23

*Masarella v. Quality Inn, Inc.,*
1989 WL 75441 (N.D. Ill. 1989) .......................................................................24

*Menchaca v. Rose Records, Inc.,*
1995 WL 151847 ..............................................................................................23

*Miller v. Gateway Transp. Co.,*
616 F.2d 272 (7th Cir. 1980) ..............................................................................2

*Orenic v. Illinois State Labor Relations Board,*
127 Ill. 2d 453 (Ill. 1989) .........................................................16, 17, 18, 19, 20, 21

*Ost v. West Suburban Travelers Limousine, Inc.,*
88 F.3d 435 (7th Cir. 1996) ...........................................................................13, 14

*P.S. Johnson v. Gudmundsson,*
35 F.3d 1104 (7th Cir. 1994) ..............................................................................2

*Quinn v. Green Tree Print Corp.,*
159 F.3d 759 (2nd Cir. 1998) ...........................................................................22

*Sibley Mem. Hosp. v. Wilson,*
488 F.2d 1338 (D.C. Cir. 1973) ..................................................................12, 13, 14

*Turnbull v. Topeka State Hospital,*
255 F.3d 1238 (10th Cir. 2001) .......................................................................22, 25

*Warren v. Stone,*
958 F.2d 1419 (1992) ...............................................................16, 19, 20, 21

*Williams v. U.S. Steel, Div. Of USX Corp.,*
70 F.3d 944 (7th Cir. 1995) .................................................................................2

*Zupman v. State of Illinois,*
1999 WL 281344 (N.D. Ill.) ..............................................................................23

PAGE

STATUTES

Illinois Court of Claims Act, 705 ILCS 505/8.................................................................20

EEOC Guidelines, Section 1604.11(e), 29 C.F.R. 1604.11(e)..........................22, 23, 24, 25


ILLINOIS CONSTITUTION

Illinois Constitution, Article II, Section 1...........................................................17

Illinois Constitution, Article VI, Section 13.................................................6, 9, 23

Illinois Constitution, Article VI, Section 115 (b)-(g) .......................................23


OTHER AUTHORITIES

*Liability of Employer under Title VII of Civil Rights Act for Sexual Harassment
of Employees by Customers, Clients or Patrons,*
163 A.L.R. Fed. 445, Section 2(a). .......................................................................23

## JURISDICTIONAL STATEMENT

Plaintiff's jurisdictional statement is complete and correct.

### I

### ISSUES PRESENTED FOR REVIEW BY MACON COUNTY

Pursuant to the Seventh Circuit's Order of October 15, 2002, the Appellee, Macon County, does not intend to file a brief that duplicates issues and arguments presented by the co-appellees. Macon County simply asserts that any grounds sufficient to uphold the summary judgment entered in favor of the co-appellee judges would apply equally to Macon County.

Macon County writes separately on following issues applicable only to it relating to employment relationships and constitutional concerns. In order for Plaintiff to prevail against Macon County, she must establish *all* of the following;

(1)     Plaintiff is a traditional employee of Macon County,

(2)     Macon County has sufficient control over Judge Sappington to remedy the alleged harassment, and

(3)     Macon County knew, or in the exercise of reasonable care, should have known, of the alleged harassment.

### Summary Judgments May Be Granted On Any Ground
### That Finds Support In The Record

These employment issues were presented in two motions for summary judgment filed by Macon County. The district court had no occasion to consider these issues[1] because it determined as a matter of law that Judge Sappington's conduct did not rise to a level of actionable sexual harassment entitling all the Defendants to summary judgment and rendering the Macon County employment issues moot.

---

[1] Following the district court's order granting summary judgment to all defendants, Plaintiff filed motions to alter judgment, to amend and to clarify seeking a ruling on the issues raised by Macon County in it's Second Motion for Summary Judgment. (Doc. #225). The district court denied Plaintiff's motions on August 6, 2002.

Although summary judgment was granted to all Defendants on grounds other than the employment issues, this court has held that summary judgment may be upheld on appeal on any ground that finds support in the record, as long as the non-moving party had an opportunity to submit affidavits or other evidence and contest the issues. *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir.1985), cert. denied, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986); *Williams v. U.S. Steel, Div. of USX Corp.*, 70 F.3d 944, 947 (7th Cir.1995); *P.S. Johnson v. Gudmundsson*, 35 F.3d 1104, 1115 (7th Cir.1994); *Miller v. Gateway Transp. Co.*, 616 F.2d 272, 275 n. 7 (7th Cir.1980).

On September 14, 2000, Macon County filed its first Motion for Summary Judgment raising the issue that it did not employ the Plaintiff. (Pleading Vol. #1, Docket # 52).  Plaintiff filed a Response to Macon County's Motion for Summary Judgment on October 10, 2000. (Pleading Vol. #1, Docket # 60).  Macon County's first Motion for Summary Judgment was denied pursuant to an Order dated March 23, 2001. (Pleading Vol. #1, Docket # 113).  The district court, without benefit of briefing, decided that there was a joint employment[2] issue between the judiciary and the County.  Based on the assumption that Janice Shonkwiler, the administrative assistant to the Presiding Judge, was a county employee, the court ruled:

> "Considering the evidence and drawing all inferences in the light most favorable to Plaintiff, *including the assumption that Janice Shonkwiler is employed by the county*, the Court concludes that the evidence is sufficient to support a conclusion that Macon County has enough control over Plaintiff's employment to establish a joint employer relationship under

---

[2]  There is no indication in the district court's Order that it considered the constitutional problems associated with joint employment in the context of this case.  See, Section (1), Subsection (d) of the ARGUMENT set forth in this brief.

either the *DiMucci* test or the *Knight* factors." (emphasis added). (Pleading Vol. #1, Docket # 113, March 23, 2001, ORDER, page 9)

Extensive discovery occurred thereafter including discovery relating to both Plaintiff's and Janice Shonkwiler's employer/employee relationship. The discovery conclusively established that Janice Shonkwiler was solely a judicial employee which caused Macon County to file its Second Motion For Summary Judgment on January 15, 2002. (Pleading Vol. #1, Docket # 174). Plaintiff filed a Response on February, 5 2002. (Pleading Vol. #1, Docket # 188). The issues raised in Macon County's Second Motion for Summary Judgment are the same issues raised herein.

## II

## STATEMENT OF FACTS

### The Sixth Judicial Circuit

The Sixth Judicial Circuit is one of twenty one judicial circuits in the State of Illinois exclusive of Cook County, which constitutes its own judicial circuit. It is comprised of six Illinois counties; Champaign, De Witt, Douglas, Macon, Moultrie and Piatt. The Defendant, Associate Judge Warren Sappington, sat in the Sixth Judicial Circuit courthouse located in the City of Decatur, Macon County, Illinois. Defendant, Circuit Judge John Shonkwiler, was Chief Judge of the Sixth Judicial Circuit sitting in the courthouse located in City of Monticello, Piatt County, Illinois. Each county in the Sixth Judicial Circuit has a presiding judge. The Presiding Judge in Macon County was Circuit Judge John Greanias.

### Plaintiff's Employment

MELISSA ROBINSON was a judicial clerk working in the Sixth Judicial courthouse located in Macon County. She principally worked for and under the direction of Associate Judge Warren Sappington. (Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John Shonkwiler dep., p. 18; Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 20. Said depositions are also found in Exhibit Vol. #3). A judicial clerk's job includes assisting with a judge's secretarial work, serving as courtroom clerk, maintaining the judge's docket and doing whatever other work is requested by the judge. (Loose Pleadings Vol. #2, Exhibit # 3, Judge Greanias dep., p. 107. Said deposition is also found in Exhibit Vol. #3). Only judges exercise control over a judicial clerk's job. Macon County has no say regarding a judicial clerk's hiring, firing, vacations, job assignments, duties or responsibilities. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 108. Said deposition is also found in Exhibit Vol. #3).

In Illinois, each county pays the majority of expenses generated in operating the state court sitting within its boundaries which includes payment of the salaries and benefits of judicial clerks and other non-judicial court staff. Consequently, Macon County must include court expenses in its budget. Annually, Macon County would budget a single line-item total for all court expenses based upon recommendations received from the presiding judge. The presiding judge would then take this money and apportion it as he sees fit, including determination of the amount of a judicial clerk's salary. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., pp. 123). Said deposition is also found in Exhibit Vol. #3). Macon County does not determine

how the county-provided court funds are ultimately divided. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., pp. 113-115. Said deposition is also found in Exhibit Vol. #3).

Judicial clerks are hired and fired solely within the judicial branch. (Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John Shonkwiler dep., p. 50. Said deposition is also found in Exhibit Vol. #3). Judge Greanias, as the Presiding Judge, had ultimate authority over the hiring and firing of the Plaintiff. Macon County has no impute in how or which judicial clerks are hired or fired. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 122. Said deposition is also found in Exhibit Vol. #3).

The judicial clerks' personnel files are kept by the judicial branch in the Presiding Judge's administrative assistant's office. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 119. Said deposition is also found in Exhibit Vol. #3). The county does not maintain separate personnel files for the court staff other than what is required to process and pay their salaries and benefits. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 119-20, 122. Said deposition is also found in Exhibit Vol. #3).

Nathan Maddox was an employee of the Administrative Offices of the Illinois Supreme Court at the time of his deposition. (Loose Pleadings Vol. #2, Exhibit # 9, Nathan Maddox dep., p. 4). As the name implies, the Administrative Offices of the Illinois Supreme Court is the body setup by the Illinois Supreme Court to oversee the administrative responsibilities of the Illinois court system. Maddox stated, as does the Illinois Constitution, that the Illinois Supreme Court is the only body that has authority over the conduct of judges. (Loose Pleadings Vol. #2, Exhibit # 9, Nathan Maddox dep.,

p. 16; See also, Illinois Constitution, Article VI, Section 13).  He further testified that judicial clerks are classified as "non-state paid judicial branch employees" who are paid by the county but work under the supervision and direction of the judiciary.  (Loose Pleadings Vol. #2, Exhibit # 9, Nathan Maddox dep., p. 20).

## Janice Shonkwiler's Employment

Janice Shonkwiler was originally hired by Judge John Greanias' as his "judicial secretary" in March of 1987.  (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 8; p. 131. Said deposition is also found in Exhibit Vol. #3).   When Janice Shonkwiler originally sought employment as a judicial secretary she submitted her application directly to the judiciary.  She never met with anybody from the county regarding her job application nor did interview with them.  (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 131. Said deposition is also found in Exhibit Vol. #3).  The then Chief Judge informed Judge Greanias how much salary he could offer Janice Shonkwiler at the time she was hired.  (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 132. Said deposition is also found in Exhibit Vol. #3).

In December of 1995, Janice Shonkwiler was made Presiding Judge Greanias' administrative assistant to help with his administrative responsibilities.  (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 10; Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., pp. 113 and 114. Said depositions are also found in Exhibit Vol. #3).   Her job is under the exclusive control and supervision of the Presiding Judge.  (Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John Shonkwiler dep., p. 50. Said deposition is also found in Exhibit Vol. #3).  The county has no control

over her employment and their only involvement with her job is limited to issuing her paychecks and providing benefits. (Loose Pleadings Vol. #2, Exhibit # 2, Judge John Shonkwiler dep., pp. 50, 53. Said deposition is also found in Exhibit Vol. #3). Only Judge Greanias is the only person above Janice Shonkwiler and has the sole power to dismiss her. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 10, 133, Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John Shonkwiler dep., p. 50. Said depositions are also found in Exhibit Vol. #3).

Janice Shonkwiler is responsible for undertaking the administrative responsibilities of the presiding judge. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., pp. 9-12, Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 12-13. Said depositions are also found in Exhibit Vol. #3). She is responsible for administering and supervising all court staff including bailiffs, court reporters and judicial clerks and is required to assure that a court reporter and a judicial clerk are assigned to each courtroom while in session. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., pp. 9-12, Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 12-13, Said depositions are also found in Exhibit Vol. #3). Janice Shonkwiler takes care of all problems that arise when a judge is not available. She keeps the court staff's time sheets and handles all administrative matters not handled by Judge Greanias. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 12-13, Said deposition is also found in Exhibit Vol. #3). Janice Shonkwiler is considered to be court staff and therefore falls under the sexual harassment policy handed down

from the Illinois Supreme Court. (Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John

Shonkwiler dep., pp. 49-50.  Said deposition is also found in Exhibit Vol. #3)).

### Judge Warren Sappington's Employment

Warren Sappington was an associate judge of the Sixth Judicial Circuit at all

relevant times.  As such, he was an employee of the State of Illinois working within the

judicial branch of government.  This has not been disputed by any party.  In fact, Judge

Sappington is represented in this action by the Attorney General of the State of Illinois

as a member of the state judiciary.

### Judicial Branch's Sexual Harassment Policy

The Sixth Judicial Circuit has a sexual harassment policy in place that was

handed down from the Illinois Supreme Court through Chief Judge John Shonkwiler.

(Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 13, 17; Loose Pleadings

Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 111; Loose Pleadings Vol. #2, Exhibit #

2, Chief Judge John Shonkwiler dep., p. 16. Said depositions are also found in Exhibit

Vol. #3).  The Supreme Court's sexual harassment policy applies to all judicial and non-

judicial court personnel to assure that the judicial work place is free from sexual

harassment.  (Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John Shonkwiler dep.,

pp. 16-17, 19, 49-50. Said deposition is also found in Exhibit Vol. #3).  Non-judicial court

personnel include judicial clerks, court reporters and the administrative assistants.

(Loose Pleadings Vol. #2, Exhibit # 2, Chief Judge John Shonkwiler dep., pp. 16-17, 19,

49-50; Loose Pleadings Vol. #2, Exhibit # 9, Nathan Maddox dep., p. 20. Said

depositions are also found in Exhibit Vol. #3).

Sexual harassment complaints by a judicial clerk are to be reported within the judicial system to either the supervising judge or the presiding judge. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 109. Said deposition is also found in Exhibit Vol. #3). If the allegations of sexual harassment involve a judge, such as alleged in this case, neither the county nor its board is to get involved. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 111, Said deposition is also found in Exhibit Vol. #3; See also, Illinois Constitution, Article VI, Section 13 which directs that only the Illinois Supreme Court has authority over the conduct of judges.). Neither Macon County nor its Board was responsible for investigating or providing the policy regarding sexual harassment occurring within the court system. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., p. 112. Said deposition is also found in Exhibit Vol. #3).

Plaintiff fully availed herself of the Illinois Supreme Court's sexual harassment policy. In October of 1995, Plaintiff reported her sexual harassment allegations to the presiding judge's administrative assistant, Janice Shonkwiler, who told Plaintiff to talk directly with Judge Greanias and gave Plaintiff Judge Greanias' home phone number. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 43. Said deposition is also found in Exhibit Vol. #3). Plaintiff thereafter called Judge Greanias and reported her allegations directly to him. Janice Shonkwiler also reported the allegations directly to Judge Greanias. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 67. Said deposition is also found in Exhibit Vol. #3). Judge Greanias addressed Plaintiff's complaints by speaking directly with Judge Sappington.

9

Judge Greanias also gave Plaintiff the option to take a fully paid administrative leave to separate herself from Judge Sappington while the matter was under investigation. Thereafter, Judge Greanias arranged reassignment of the Plaintiff to Judge Diamond, allowed Plaintiff to return to Judge Sappington at her request and also reassigned her to Judge Francis who was located in a separate building from Judge Sappington. (Loose Pleadings Vol. #2, Exhibit # 3, Judge John Greanias dep., pp. 72-82. Said deposition is also found in Exhibit Vol. #3).

### Macon County's Lack of Knowledge of Harassment Allegations

Plaintiff never made a complaint to the county about her alleged sexual harassment. (Exhibit Vol. #3, Melissa Robinson dep., pp. 276-277). Janice Shonkwiler testified that neither she nor the Plaintiff needed to go to any representative of the county to report the complaints because it was a judicial matter that was to be handled within the judicial branch. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 123. Said deposition is also found in Exhibit Vol. #3). The County was not consulted in regards to the judicial branch's investigation of Plaintiff's allegations and never became aware of them during that time. (Loose Pleadings Vol. #2, Exhibit # 1, Janice Shonkwiler dep., p. 129, 130-31; Exhibit Vol. # 3, Melissa Robinson dep., pp. 277-279. Janice Shonkwiler's deposition is also found in Exhibit Vol. #3).

### III

### STANDARD OF REVIEW

Macon County agrees that the standard of review is *de novo* for the reasons set forth in the briefs of Plaintiff and the co-appellees.

10

## IV

## SUMMARY OF ARGUMENT

An employer can not be held responsible for Title VII liability under a sexual harassment claim unless all of the following factors are established; (1) the alleged victim is a traditional employee of the organization, (2) the alleged perpetrator is an employee of the organization or the organization has sufficient control over the perpetrator to remedy the alleged harassment, and (3) the organization knew, or in the exercise of reasonable care, should have known, of the alleged harassment. The facts and constitutional constraints applicable herein establish that the Plaintiff can not establish any one of the three required elements of Title VII employer liability against Macon County.

## V

## ARGUMENT

## 1.

## MACON COUNTY WAS NOT PLAINTIFF'S EMPLOYER

In order for Plaintiff to prevail against Macon County she must establish that she had some type of traditional employment relationship with Macon County. *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487, 491-93 (7th Circuit 1997). Because the plaintiff in *Alexander* was an independent contractor, and thus did not have an employment relationship, the plaintiff could not proceed under Title VII. See *id*. The question of whether a plaintiff may assert a Title VII claim against a de facto employer of the defendant appears to be an open question in Title VII claims. But, under any

11

theory of employer liability, it is apparent that plaintiff must establish that the alleged employer had control over plaintiff's job duties and responsibilities in order show a traditional employee/employer relationship.

**a.**
**Case History of Title VII Third Party Employer-Employee Relationships**

In *Sibley Mem. Hosp. v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973), the Circuit Court of Appeals for the District of Columbia held that a Title VII claim could proceed against a defendant that did not have a traditional employment relationship with the plaintiff. *Sibley, Id.* at 1340-44. The opinion did not accept the position that a Title VII plaintiff had to be an employee of the defendant employer. Instead, the court ruled that a Title VII defendant could incur liability without regard to a direct employment relationship with the plaintiff. See *id.* at 1341-42.

In *Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411, 421-25 (7th Cir.1986), a divided Seventh Circuit adopted *Sibley*'s rationale. The plaintiff in *Doe* was a physician that brought a Title VII claim against the defendant hospital. *Id.* at 423. The hospital claimed that the plaintiff was an independent contractor and therefore there was no employment relationship. *Doe* rejected the hospitals position that an employment relationship was required and instead accepted *Sibley* 's broad interpretation, noting that the statutory language did not indicate that Title VII relief should be limited to employees of a Title VII defendant. *Id.* at 422.

Thereafter, the Seventh Circuit began to retreat from *Doe.* Two opinions held that independent contractors were not proper plaintiffs in a Title VII action, holding

12

that they could not maintain an action against an organization that did not directly employ them. *Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 440 (7th Cir.1996); *Knight v. United Farm Bureau Mutual Ins. Co.*, 950 F.2d 377, 380-81 (7th Cir.1991).

In *E.E.O.C. v. State of Illinois*, 69 F.3d 167 (7th Cir. 1995), an age discrimination case, the Seventh Circuit expressly commented on the *Sibley* and *Doe* cases in relation to the concept of third party "interference" employer liability. Therein, the Seventh Circuit stated that *Sibley* and *Doe* represented de facto or indirect employer liability cases:

> "We are mindful that a number of Title VII cases, beginning with *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973), could perhaps be cited in support of such liability, including our own *Doe on behalf of Doe v. St. Joseph's Hospital*, 788 F.2d 411, 422-23 (7th Cir.1986), and that Title VII precedents have been influential in the interpretation of the age discrimination law. But the cases in question are ones in which the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff. *Id*. at 169.

A year later, in *Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 488 (7th Cir.1996), the Seventh Circuit recognized that *Doe* was irreconcilable with *Ost* and *Knight* and overruled *Doe*. Each of these cases involved a plaintiff asserting a Title VII claim against an entity with which the plaintiff did not have a direct employment relationship. All of the plaintiffs were independent contractors. *Doe* permitted such a suit to proceed, while *Ost* and *Knight* did not. In overruling *Doe, Alexander* held that a plaintiff must have a traditional employment relationship with the defendant in order to maintain a Title VII action. *Alexander*, 101 F.3d at 491-93.

13

The *Alexander* case adopted the common-law "general principles of agency." test for determining an employer/employee relationship under Title VII. *Alexander*, at 492. See also, *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). The test requires consideration of five factors: (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job. *Alexander,* at 492 (quoting *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir.1996)). "Of these factors, the extent of control and supervision over the worker is the most significant in determining the employment status." *Alexander* at 493; *Hojnacki,* at 549.

*Alexander* limited the extent that it overruled *Doe.* *Alexander* expressly left open the following question, "[Can] an employee of employer X bring a Title VII action against employer Y when Y is not his employer, but merely someone whose discriminatory conduct interferes with his employment with employer X." 101 F.3d at 493 fn.2. In our case, there is no allegation that Macon County was guilty of discriminatory conduct against the Plaintiff that interfered with her employment with the judiciary. Consequently, the undecided *Alexander* issue does not apply herein.

De facto employer liability under Title VII seems to be an open question because the Seventh Circuit, in *E.E.O.C.*, 69 F.3d at 169, stated that *Sibley* and *Doe* represented de facto employer liability cases which were both overruled in *Alexander*. *Alexander* instead required a traditional employment relationship determined by agency

14

principles.  The need for an agency relationship was reaffirmed in *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002).  In *Hojnacki*, the Seventh Circuit again held that the five factors found in the general principles of agency test must be considered in determining whether an organization is a proper Title VII defendant.  *Hojnacki* re-stressed that control over the worker is the most significant factor in establishing the employee/employer relationship. *Hojnacki,* at 549.

## b.
## Right to Control Test

Analysis of de facto employer liability under Title VII parallels an agency analysis on the single most important factor - control.  Both analyses turn on an organization's right to control the plaintiff.  The de facto employer theory addresses situations where a formal employment relationship may be absent, but the defendant is so extensively involved with the plaintiff's day to day employment that the defendant is the "real" employer for all intents and purposes, including Title VII liability.  *E.E.O.C. v. State of Illinois*, 69 F.3d at 171-72 (noting that an entity that "pulls the strings" in the background, and essentially controls employment decisions will be considered the de facto employer for purposes of Title VII liability). See also *Kerr v. WGN Continental Broadcasting Co.,* 229 F.Supp.2d 880, 886 (N.D. Ill. 2002).

In our case, it is not disputed that the judiciary was an employer of the Plaintiff. The riding issue is whether Macon County was a joint employer with the judiciary. Agency principles will answer the joint employment question just as readily as it

answers the employee versus independent contractor or the de facto employer issues. Control over the employee must be present.

**c.**

**<u>Macon County Did Not Have Control Over The Plaintiff</u>**

A traditional employment relationship did not exist between Macon County and the Plaintiff. To restate, the five factors under the "general principles of agency" test are; (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job.

Consideration of the last four factors does not permit a determination that Plaintiff was a joint employee of Macon County. At first blush, the third and fourth factors tend to suggest that she may have been a Macon County employee but, case law dictates a different conclusion. In *Orenic v. Illinois State Labor Relations Board,* 127 Ill. 2d 453, 475, 480 (Ill. 1989), (cited with approval in *Warren v. Stone*, 958 F. 2d 1419 (7th Cir. 1992), the Illinois Supreme Court ruled that the fact that the county pays the salaries of non-judicial court employees does not make the county their employer. A consideration of the second and fifth factors leads to no conclusion.

It becomes apparent that no employment relationship existed between Macon County and the Plaintiff once the "control" question found in the first factor is considered. As occurred in *Hojnacki,* Macon County's lack of control over the Plaintiff's

16

employment establishes that she was not a Macon County employee and confirms that she was solely an employee of the judiciary. Macon County did not, and could not, control Plaintiff's job. Plaintiff was hired, assigned her job responsibilities, supervised, disciplined and could be terminated only by the judges of the Sixth Judicial Circuit or through the Presiding Judge's administrative assistant, Janice Shonkwiler. Even the amount of her salary was established by the judiciary in spite of the money coming from the County budget. Macon County never exercised any control over Plaintiff's employment nor did they have the power to do so. Legally, and in practice, constitutional constraints kept control of Plaintiff's employment totally within the judicial branch of government.

**d.**
**Constitutional Separation of Power**

A judicial clerk / Macon County employment relationship is incompatible with "separation of power" under Illinois' Constitution. The principal of separation of power is embodied in Article II, Section 1 of the Illinois Constitution of 1970 (Constitution), which provides:

> "The legislative, executive and judicial branches are separate. No branch shall exercise power properly belonging to another". Illinois Constitution 1970, Article II, Section 1.

In *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453 (Ill. 1989), the Illinois Supreme Court addressed whether counties may be considered joint employers of various circuit court non-judicial employees including, judicial clerks and public

17

defenders[3], for purposes of collective bargaining under the Illinois Public Labor Relations Act. The plaintiff argued that the county was a joint employer of the non-judicial court employees because it paid their salaries and provided their benefits. In holding that the state, personified by the chief judge of each circuit, is the sole employer, the Illinois Supreme Court found Plaintiff's argument unpersuasive, stating:

> "Similarly, the fact that the county pays salaries of other non-judicial employees in the judicial branch, or even administers personal policies covering them by agreement with the judicial branch, does not in constitutional or statutory terms make the county their employer. Rather, the state, personified by the chief judge of each circuit, is the employer." (*Orenic*, at page 475).

The Supreme Court went on to state, "The constitutional tripartite separations of power strengthens our conclusion that the state, not a county, is the ***sole*** employer of all court employees". (emphasis added). *Orenic*, 127 Ill. 2d 453, 476. Treating counties as joint employers would pose severe separations of power problems "unduly trenching on the judicial branch's separate and equal status". *Orenic*, 127 Ill. 2d at 485. The Court's reasoning was:

> "Not only are non-judicial employees of the court the employees of the state agencies rather than the county, but even county's salary setting and facility providing function is subject to the court's ultimate power to insure reasonable adequacy. Except for setting and paying salaries and providing facilities subject to ultimate court power, the counties are entitled to no other role in regards to the court's non-judicial employees that might arguably be considered the role of a joint employer. And, as previously stated, the Illinois Constitution contemplates 'only one unified

---

[3] In *Orenic*, the Supreme Court was faced with the consolidation of four cases that involved decisions by the Illinois State Labor Relations Board finding that non-judicial employees of the judicial branch were joint employees of the county and the judiciary. One case involved public defenders. But, the other three cases involved bailiffs, clerks, stenographers, and jury commission clerks. The Illinois Supreme Court consolidated the four cases to consider the joint employment issue.

court system operating under state law' and 'does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entities'." *Orenic,* 127 Ill. 2d 453, 480.

In *Warren v. Stone*, 958 F. 2d 1419 (7th Cir. 1992), the Seventh Circuit was confronted with a Section 1983 action wherein employees from the Cook County public defender's office claimed they were denied property rights without due process of law as a result of their termination without a hearing as required under county disciplinary procedures. Relying on *Orenic*, the Seventh Circuit held that employees of the public defender's office were solely state employees[4] and thus not entitled to an evidentiary hearing.

The plaintiff in *Warren* attempted to distinguish *Orenic* arguing that public defenders were joint employees of both the state and the county. *Warren*, at page 1423. The plaintiff asserted that *Orenic* refused to recognize counties as joint employers of public defenders because of "separation of power" concerns that were not present in her case. The plaintiff claimed that the collective bargaining issue found in *Orenic* created substantial separation of power concerns that would not be present if the Court required counties to hold disciplinary proceedings for public defenders. Plaintiff suggested that such hearings would only have a "peripheral impact" on the judiciary. The Seventh Circuit disagreed stating:

---

[4] The specific issue of who employs public defenders was never raised or addressed in *Orenic*. Since public defenders represented a class of plaintiffs in one of the four consolidated cases found in *Orenic*, *Warren* appears to have assumed that the Illinois Supreme Court found public defenders to be solely state judicial employees.

"Holding PDO employees subject to the elaborate county personnel policy would pose the same sort of separations of power problems that the *Orenic* court sought to prevent. The Illinois Supreme Court found that allowing the counties to assert joint employer status 'would be an evisceration of the courts as free and independent employers of their own employees, since authority over compensation is central to employer status.' (Citation omitted). Like compensation, authority over the standards for disciplining and firing employees is 'central to employer status', and should be left solely in the hands of the judicial branch." *Warren* at page 1423.

*Orenic* and *Warren* stand for the proposition that if a "separation of power" issue arises when considering a joint employer claim, only one employer can be recognized and no sharing of employment control can be allowed to exist.

It should be noted that a later Illinois Supreme Court later concluded that public defenders are only county employees, not state employees. *Johnson v. Halleran*, 194 Ill. 2d 493 (2000). The *Johnson* case considered the question of whether sovereign immunity barred a legal malpractice action in circuit court against the Cook County Public Defender's Office. The Public Defender's Office argued that it was entitled to have its malpractice action brought in the Illinois Court of Claims[5]. The Illinois Supreme Court determined that public defenders are county employees, not state employees, allowing the malpractice claim to proceed in circuit court.

*Johnson* does not effect the separation of power pronouncements articulated in *Orenic* and *Warren* because it did not involve a conflict between separate branches of government. By deciding that public defenders were solely county employees, the

---

[5] Under Illinois law, all negligent actions brought against the State of Illinois must be brought in the Court of Claims. Illinois Court of Claims Act, 705 ILCS 505/8.

*Johnson* decision did not create an "undue trenching" on any other branch of government's separate and equal status.

Unlike *Johnson*, our case involves a judicial clerk suing the County under allegations of sexual harassment by a state court judge. The concept behind Title VII is to protect working women by causing employers to both prevent and remedy a hostile work environment. A decision finding that the County is an employer of judicial clerks for Title VII purposes necessarily implies County power to control the judge, his judicial clerk and their work environment to prevent and remedy harassing behavior. Obligating the County to prevent or remedy sexually harassing behavior within the judicial branch would not only entail "unduly trenching on the judicial branch's separate and equal status" but require it. Consequently, the separation of power problems found in *Orenic* and *Warren* are clearly evident in this action.

## **2.**

## **DUTY OF COUNTY TO REMEDY HARASSMENT CAUSED BY NON-EMPLOYEES**

Plaintiff faces a second hurdle in this action – Judge Warren Sappington was not employed by the Macon County. It is undisputed that Judge Sappington was only a state employee. Determining employer liability under Title VII not only requires consideration of the Plaintiff's relationship to the defendant employer but also requires a determination of the harasser employment status. Different standards of Title VII liability apply depending upon the harasser's position with the employer and whether the harasser was a non-employee.

If the harasser is an employee, Title VII employer liability depends on the employee's job position within the organization. If the harasser is Plaintiff's supervisor, the employer is vicariously liable for the harassment. *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 F. Ct. 2257 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 F. Ct. 2275 (1998). If the harassment is attributed to a co-employee, employer liability is judged by a negligence standard that asks whether the organization "failed to remedy or prevent a hostile or offensive work environment of which management level employers knew, or in the exercise of reasonable care, should have known." *Turnbull v. Topeka State Hospital,* 255 F. 3d 1238, 1244 (10th Circ. 2001); See also Judge Thomas decent in *Burlington Industries v. Ellerth,* 118 F. Ct. 2257, 2273 (1998).

If the alleged harasser is a non-employee, a similar standard to that applicable to co-employees appears to apply. Section 1604.11(e) of the EEOC Guidelines, 29 C.F.R. 1604.11(e), addresses the non-employee harasser situation. It provides:

> "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the work place, when the employer...knows or should have known of the conduct and failed to take immediate and appropriate corrective action. In reviewing these cases the (EEOC) will consider the extent of the employer's control and other legal responsibilities which the employer may have with respect to conduct of such non-employees". See also, *Quinn v. Green Tree Print Corp.,* 159 F. 3d 759, 766 (2nd Circ. 1998); *Berry v. Delta Airlines,,* 260 F. 3d 803, 811 (7th Circ. 2001).

Those courts that have considered Title VII employer liability for harassment perpetuated by a non-employee have generally followed the EEOC Guidelines and have undertaken a determination of the extent of control the employer has over the

22

non-employee and also have considered the other legal responsibilities the employer may have had with respect to the third party's conduct. *Lockard v. Pizza Hut, Inc.*, 162 F. 3d 1062, 1072 (10th Circ. 1998); *Zupman v. State of Illinois,* 1999 WL 281344 (N.D. Ill.); *Jarman v. City of North Lake,* 950 F. Supp. 1375 (N.D. Ill. 1997); *Menchaca v. Rose Records, Inc.*, 1995 WL 151847. See also, <u>Liability of Employer under Title VII of Civil Rights Act for Sexual Harassment of Employees by Customers, Clients or Patrons</u>, 163 A.L.R. Fed. 445, Section 2(a).

In this case, it is conceded that Judge Sappington was not an employee of Macon County. Under both the negligence standard and the EEOC Guidelines[6], Plaintiff is required to show that, (1) Macon County knew or should have known of Judge Sappington's conduct and (2) failed to take immediate and appropriate corrective action. The second prong contemplates that Macon County has sufficient control over Judge Sappington to undertake corrective action against him.

Constitutional limitations bar Macon County from passing a sexual harassment policy applicable to the judiciary and keeps Macon County from exercising any disciplinary control over Judge Sappington. Article VI, Section 13 of the Illinois Constitution provides that the Illinois Supreme Court is the only body that shall adopt rules of conduct for Judges and Associate Judges. Article VI, Sections 15(b)-(g) of the Illinois Constitution confines disciplinary action against judges to a constitutionally created Judicial Inquiry Board. As a consequence, Macon County is constitutional

---

[6] Whether the negligence standard or the EEOC Section 1609.11(e) standard applies herein has not been decided by the Seventh Circuit but Judge Posner has pointed out that the EEOC standard cannot be more onerous than that of the negligence standard. [See, *Berry v. Delta Airlines, Inc.*, 260 F. 3d 803, 812, Footnote 2 (7th Circ. 2001).

handcuffed from adopting rules of conduct that are applicable to Judge Sappington and from dispensing disciplinary action against him.  The Illinois Supreme Court's sexual harassment policy is the constitutionally proper vehicle for policies applicable to sexual harassment by judges.

Furthermore, the same constitutional "separation of power" constraints addressed in the previous section create as much of a barrier to Macon County's ability to control Judge Sappington as it creates regarding Macon County's inability to control Plaintiff's work environment.  Granting the County the power to initiate sexual harassment policies and remedies against a state court judge would also entail "undue trenching on the judicial branch's separate and equal status".

Finally, in a real sense, it is clear that Macon County never exercised control over Judge Sappington or any part of the judiciary.  The evidence establishes that the judiciary was always considered to be and treated as an independent entity completely separate and distinct from Macon County.

### 3.

### MACON COUNTY DID NOT KNOW NOR SHOULD IT HAVE REASONABLY KNOWN OF PLAINTIFF'S SEXUAL HARASSMENT ALLEGATIONS

Both Section 1604.11(e) of the EEOC guideline's and the negligence standard discussed in the previous section require that Plaintiff prove that Macon County knew, or reasonably should have known, of the alleged hostile work environment.  See also, *Masarella v. Quality Inn, Inc.*, 1989 WL 75441 (N.D. ILL. 1989); *Ligenza v. Genesis Health*

*Ventures of Massachusetts*, 955 F. Supp. 266 (D. Mass 1998).  Again, the EEOC guideline

standard provides:

> "An employer may also be responsible for the acts of non-employees, with
> respect to sexual harassment of employees in the work place, when the
> employer...knows or should have known of the conduct and failed to take
> immediate and appropriate corrective action." Section 1604.11(e).

The nearly identical negligence standard requires showing that the organization:

> "failed to remedy or prevent a hostile or offensive work environment of
> which management level employees knew, or in the exercise of reasonable
> care, should have known." *Turnbull v. Topeka State Hospital*, 255 F. 3d 1238,
> 1244 (10th Circ. 2001); See also Judge Thomas decent in *Burlington
> Industries v. Ellerth,* 118 F. Ct. 2257, 2273 (1998).

Herein, there is no evidence that Macon County knew of the alleged hostile work

environment.  The facts establish that neither the Plaintiff nor any court personnel ever

reported the allegations of sexual harassment to the county nor were they required to

do so.  The only persons to whom Plaintiff reported her complaints were Judge

Greanias and Janice Shonkwiler, his administrative assistant.  There is no evidence

suggesting that Macon County should have known of the allegations.  The completely

independent nature of the judiciary isolates the internal employment matters of the

judicial branch from Macon County.

Since Judge Sappington is a non-employee of the county, Plaintiff has the burden

of establishing that Macon County knew or should have known of the allegations.  With

out such evidence, Plaintiff cannot establish Title VII liability against Macon County.

25

## V.

## CONCLUSION

For each of the reasons set forth in the co-appellees' briefs, Macon County is also entitled to summary judgment.

Additionally, Macon County is entitled to summary judgment because it can not be held liability as a Title VII employer under the Plaintiff's Complaint for each of the following reasons:

(1)     The Plaintiff is not a traditional employee of Macon County,

(2)     Macon County has no control over the Judge Sappington, a non-employee, and has no legal responsibility over his conduct, and

(3)     Macon County neither knew, nor in the exercise of reasonable care, should have known, of the alleged harassment.

For these reasons, the Defendant-Appellee, Macon County, respectfully requests that the judgment of the lower court be affirmed and for such other relief as this court deems appropriate.

Respectfully Submitted,


By:_____
        John E. Cassidy, III,
        CASSIDY & MUELLER
        323 Commerce Bank Building
        Peoria, Illinois 61602
        Telephone: 309/676-0591,

        Attorneys for Defendant/Appellee
        Macon County

Statement in Support of Oral Argument

This is a fact-intensive case with a number of different issues and it is likely that this Court will have questions about the occurrences below.  It would be difficult to decide this case on the briefs alone.