**E-FILED**
Tuesday, 18 January, 2005  03:36:32 PM
Clerk, U.S. District Court, ILCD

# CHRISTINA LEES

**SCHROEDER v. SAPPINGTON, et al**        CondenseIt!™        **CHRISTINA LEES**

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

MELISSA ROBINSON, (f/k/a )
MELISSA SCHROEDER), )
                     )
        Plaintiff,   )
                     )
   -vs-              )  No. 99-2097
                     )
JUDGE WARREN A. SAPPINGTON, )
SIXTH JUDICIAL CIRCUIT, (IN )
OFFICIAL CAPACITY AND       )
INDIVIDUALLY)               )
        Defendant,   )
                     )
MACON COUNTY,        )
JOHN P. SHONKWILER, CHIEF )
JUDGE, SIXTH JUDICIAL       )
CIRCUIT, MACON COUNTY CIRCUIT)
COURT, MACON COUNTY (IN     )
OFFICIAL CAPACITY AND NOT   )
INDIVIDUALLY)               )
                     )
        Defendant.   )

        Deposition taken of CHRISTINA LEES on the
25th day of October, A.D., 2001, at Macon County
Courthouse, 253 E. Wood Street, Fifth Floor, Decatur,
Illinois, commencing at 10:50 a.m., before Kitty L.
Malcom, a Certified Shorthand Reporter, License No.
084-002106, pursuant to Notice.

APPEARANCES:

        Ms. Melissa M. McGrath, Esq.
        THOMSON & WEINTRAUB
        105 North Center St., P.O. Box 3577
        Bloomington, IL 61702-3577
        309/829-7069
          On behalf of Plaintiff

Page 2

        Ms. Karen McNaught
        Assistant Attorney General
        OFFICE OF THE ATTORNEY GENERAL
        500 So. Second Street
        Springfield, IL 62706
        217/782-5819
          On behalf of Warren Sappington

        Ms. Diane Baron, Esq.
        CLAUSEN MILLER, P.C.
        10 So. LaSalle Street
        Chicago, IL 60603-1098
        312/855-1010
          On behalf of Warren Shonkwiler

        Mr. Robert Gillespie, Esq.
        HINSHAW & CULBERTSON
        400 So. Ninth Street, Suite 200
        Springfield, IL 62701
        217/528-7375
          On behalf of Judge Shonkwiler

        Mr. John E. Cassidy, Esq.
        CASSIDY & MUELLER
        323 Commerce Bank Bldg.
        416 Main Street
        Peoria, IL 61602
        309/676-0591
          On behalf of Macon County

***********************************************

                I N D E X

WITNESS:
CHRISTINA LEES
    Examination by Ms. McGrath.......... 3
    Examination by Mr. Cassidy.......... 17
    Examination by Ms. McNaught......... 20
    Examination by Ms. McGrath.......... 21
    Examination by Ms. McNaught......... 22
    Examination by Ms. McNaught......... 23
    Examination by Ms. McNaught......... 24
    Examination by Ms. McGrath.......... 24

EXHIBITS:
    None marked

Page 3

1       CHRISTINA LEES
2 called as a witness, after being first duly sworn,
3 was examined and testified upon her oath as follows:
4
5       EXAMINATION
6 BY MS. McGRATH:
7    Q. Christina, will you spell your name for the
8 record?
9    A. Christina Lees, C-H-R-I-S-T-I-N-A. Lees is
10 L-E-E-S.
11   Q. I am going to be asking you some questions.
12 If I ask you something and you don't understand it,
13 please ask me to reword it. Okay?
14   A. Yes.
15   Q. You are going to know what my questions are
16 at times before I even ask the full question. Try to
17 wait until I've asked the question before you answer
18 it so that the court reporter can record both of us.
19 Okay?
20   A. Okay.
21   Q. Who is your current employer?
22   A. Do you mean the judge I work for?
23   Q. Who are you employed by?
24   A. Macon County.

Page 4

1    Q. In what capacity?
2    A. As a judicial clerk for Associate Judge
3 James Coryell.
4    Q. You were a judicial clerk for Judge Patton
5 for a period of time?
6    A. Correct.
7    Q. Can you tell me what time period you worked
8 with Judge Patton?
9    A. I started with Judge Patton August 19th,
10 1996.
11   Q. Then how long did you work, continue to work
12 for Judge Patton?
13   A. Until he retired, and I don't recall the
14 date.
15   Q. That's fine. When you began working for
16 Judge Patton in August of 1996, were you located over
17 at the Ambassador building?
18   A. Correct.
19   Q. And what other judges' chambers were located
20 in the same area as Judge Patton's?
21   A. Right next to Judge Patton's office was
22 Judge Sappington's office. And my desk was located
23 outside their offices.

SCHROEDER v. SAPPINGTON, et al          CondenseIt!™

CHRISTINA LEES

Page 17

1   Q. My name is John Cassidy, and I represent
2 Macon County. I just want to get a little bit of
3 background about how you were hired and so forth if I
4 could. First of all, when were you hired?
5   A. With Macon County?
6   Q. With Judge Patton, correct.
7   A. I worked in probation before that.
8   Q. Why don't we start with probation.
9   A. I started with probation April 4th, 1994.
10   Q. Okay. How long did you work there?
11   A. Till August 19, 1996.
12   Q. And how did you learn -- strike that. In
13 1996, where did you go?
14   A. In August of 1996, I started working for
15 Judge Patton.
16   Q. And how did you learn of that job?
17   A. When I was working in probation I heard
18 about it, and I applied for the position.
19   Q. And who did you submit the application to?
20   A. Judge Patton.
21   Q. And is he the one that interviewed you?
22   A. Yes.
23   Q. And is he the one that decided to hire you?
24   A. Yes.

Page 18

1   Q. Did Macon County actually get involved in
2 that process?
3   A. No.
4   Q. And you worked for him on a regular basis
5 until he retired; is that correct?
6   A. Correct.
7   Q. And as far as your schedule and your job
8 duties and responsibilities, who directed you in
9 that?
10   A. Judge Patton.
11   Q. And as far as your raises, you have received
12 some raises?
13   A. Correct.
14   Q. Who made that decision?
15   A. I don't know.
16   Q. Who informed you that you were going to get
17 a raise?
18   A. Judge Patton.
19   Q. It appears that basically since you were
20 hired by Judge Patton as a judicial clerk, that you
21 received all of your directions and the entity that
22 controlled you would be the judiciary here at Macon
23 County; is that correct?
24   A. Yes.

Page 19

1   Q. And that the Macon County board or no people
2 outside the judiciary ever got involved in your
3 employment responsibilities; would you agree with
4 that?
5   A. Yes.
6   Q. So is it fair to say that when you said you
7 were employed by Macon County, actually you're
8 employed by the Macon County judiciary?
9   A. Correct.
10      MS. McNAUGHT: Objection. Let me make my
11 objection.
12      MR. CASSIDY: Okay.
13      MS. McNAUGHT: I object to the extent that
14 calls for a legal conclusion and describes an entity
15 that doesn't exist.
16 BY MR. CASSIDY:
17   Q. Or the judicial branch of government; would
18 you agree with that? Is that fair to say?
19   A. Correct.
20   Q. As far as Macon County is concerned, it's my
21 understanding that that is who you receive your
22 paycheck from?
23   A. Correct.
24   Q. And your benefits such as insurance?

Page 20

1   A. Yes.
2   Q. But other than that, they have no connection
3 with your employment; would you agree with that?
4   A. Yes.
5      MS. CASSIDY: I have nothing further.
6      MS. BARON: No questions.
7      MR. GILLESPIE: No questions.
8      EXAMINATION
9 BY MS. McNAUGHT:
10   Q. If you assume that Missy Schroeder left in
11 December of 1996, is it fair to say that her
12 relationship with Judge Sappington as far as you
13 noticed didn't change until she left or through the
14 time when she left?
15      MS. McGRATH: Objection as to foundation.
16      THE WITNESS: I may have noticed closer to
17 the time that she was leaving, which I didn't know
18 what was going on with that, that they weren't as
19 close maybe as they had been.
20 BY MS. McNAUGHT:
21   Q. Did she ever appear to be intimidated or
22 fearing during that time period when you noticed that
23 there may have been a change?

SCHROEDER v. SAPPINGTON, et al          CondenseIt!™                    CHRISTINA LEES

**Page 21**

1  Q. Did she ever complain to you about fearing
2  or being intimidated by Judge Sappington?
3  A. No.
4  Q. During that time period just before she left
5  did she continue to go into his chambers?
6  A. I don't recall.
7  Q. Do you know where Missy kept her coat?
8  A. I believe in his office.
9  Q. Where did you keep your coat?
10  A. Either by my desk or in Gina's cubicle.
11  Q. It wasn't Judge Patton's chambers?
12  A. Not that I recall, no.
13  Q. At any time did you see Missy not leave her
14  coat in Judge Sappington's chambers during the whole
15  time she was there?
16  A. No.
17  Q. Did you witness any kind of a hostile work
18  environment that Judge Sappington made for Missy
19  Schroeder at any time?
20  A. No.
21  MS. McNAUGHT: Nothing further.
22  EXAMINATION
23  BY MS. McGRATH:
24  Q. I just have a few follow-up questions.  What

**Page 22**

1  kinds of things did you observe shortly before Missy
2  left that caused you to indicate that they may not
3  have been as close as before?
4  A. I don't think they were leaving together any
5  more and maybe not as friendly and as close as they
6  were.
7  Q. Closer to the time that Missy left her job,
8  would you agree that you didn't observe any friendly
9  conduct between the judge and she?
10  A. I wouldn't say that necessarily.  I would
11  just say it wasn't the same as it was before.
12  Q. Is there anything else you can tell me as
13  far as describing what you mean when you say it
14  wasn't the same as before other than what you just
15  told me?
16  A. No.  I just noticed they weren't as
17  friendly.
18  MS. McGRATH: I don't have anything further.
19  Thank you.
20  EXAMINATION
21  BY MS. McNAUGHT:
22  Q. Just to follow up, they were still speaking
23  to each other during that time period?

**Page 23**

1  Q. Neither one was complaining about having to
2  work with each other?
3  A. Not to me, no.
4  Q. They just didn't get on the elevator
5  together?
6  A. Correct.
7  Q. And she wasn't in his office all the time
8  after that?
9  A. Not as much, no.
10  MS. McNAUGHT: Nothing further.
11  EXAMINATION
12  BY MS. McGRATH:
13  Q. And she probably wasn't bringing baked items
14  into his office?
15  A. I don't think so.
16  Q. In order for Missy as a judicial clerk to
17  work with Judge Sappington, she would have to
18  continue to speak with him, correct?
19  A. I think it would be best, yes.
20  Q. It would probably be necessary, wouldn't it,
21  because you take your direction from the judge you
22  work for?
23  A. Correct.
24  MS. McGRATH: I don't have anything further.

**Page 24**

1  EXAMINATION
2  BY MS. McNAUGHT:
3  Q. The relationship wasn't stone cold, was it?
4  A. No.
5  Q. It wasn't cold at all, was it?
6  A. No.
7  Q. It was a friendly relationship, just not as
8  friendly as it had been in the past?
9  A. Yes.
10  MS. McNAUGHT: Nothing further.
11  EXAMINATION
12  BY MS. McGRATH:
13  Q. I hate to keep coming back, but what do you
14  mean it was friendly towards the end before Missy
15  left?  What causes you to say it was friendly?
16  A. I didn't see any anger between them.  I just
17  noticed that they were not as close as they once
18  were.
19  Q. So you saw them performing in a working
20  relationship, correct?
21  A. Yes.
22  Q. You didn't see them laughing with each
23  other, did you, towards the end of Missy's

SCHROEDER v.SAPPINGTON, et al          CondenseIt!™                    CHRISTINA LEES

Page 25

1   A. I don't recall.
2   Q. So, when you say just not as friendly, what
3   you mean is they were performing their jobs as they
4   had to with Missy performing as a judicial clerk and
5   the judge performing his role, and they were working
6   together, correct?
7   A. Yes.
8       MS. McGRATH: I don't have anything further.
9   You need to tell her if you want to read what she did
10  for her accuracy or if you trust her you can waive
11  your signature.
12      THE WITNESS: I'll waive.
13
14
15
16
17
18
19
20
21
22
23
24

Page 27

1   annexed hereto applies to the original transcript and
2   copies thereof, signed and certified by me only. I
3   assume no responsibility for the accuracy of any
4   reproduced copies not made under my control or
5   direction.
6
7       IN WITNESS WHEREOF, I have hereunto set my
8   hand and affixed my notarial seal this 15th day of
9   November, 2001.
10
11
12  Kitty L. Malcom, CSR-RPR
    1310 E. Ironwood CC Dr.
13  Normal, IL 61761
14      (309)454-3378
15
16      OFFICIAL SEAL
17      KITTY L. MALCOM
    NOTARY PUBLIC, STATE OF ILLINOIS
18  MY COMMISSION EXPIRES 7-20-2005
19
20
21
22
23
24

Page 26

STATE OF ILLINOIS              )
1                              )
2  COUNTY OF McLEAN            )
       FEDERAL RULE OF CIVIL PROCEDURE RULE
3          30(f)(1) CERTIFICATE
4      I, KITTY L. MALCOM, C.S.R., a notary public
5   in and for the County of McLean and State of
6   Illinois, do hereby certify that on the 25th day of
7   October, 2001, personally appeared before me at 253
8   East Wood Street, Decatur, Illinois, CHRISTINA LEES,
9   produced as a witness in said cause.
10      I further certify that said witness was by
11  me first duly sworn to testify the whole truth in the
12  cause aforesaid before the taking of the deposition;
13  that the testimony was reduced to writing in the
14  presence of said witness by means of machine
15  shorthand and afterwards transcribed into
16  typewriting; and that the foregoing is a true and
17  correct record of the testimony given by said
18  witness.
19      I further certify that I am neither counsel
20  for nor related to counsel for any of the parties to
21  this suit, nor am I in any way related to any of the
22  parties to this suit, nor am I in any way interested