# NATHAN MADDOX

**Page 1**

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE CENTRAL DISTRICT OF ILLINOIS

MELISSA ROBINSON, f/k/a      )
MELISSA SCHROEDER,           )
            Plaintiff,       )
                             )
     vs                      )  No. 99-2266
                             )
JUDGE WARREN A. SAPPINGTON,  )
et al.,                      )
            Defendants.      )
```

Discovery deposition of NATHAN MADDOX, taken before Mary K. Beyers, CSR, and Notary Public, on the 15th day of November, 2001, at the hour of 1:00 P.M., at the Office of the Attorney General, 3000 Montvale, Springfield, Illinois, pursuant to attached stipulation.

ASSOCIATED COURT REPORTERS
1-800-252-9915
404 East Main Cross    315 National City Bank Ctr.
Taylorville, Illinois 62568    P.O. Box 3243
(217) 824-5717    Springfield, Illinois 62705

**Page 2**

S T I P U L A T I O N

It is stipulated between the parties herein, through their attorneys, that the deposition of NATHAN MADDOX, may hereby be taken upon oral interrogatories, on the 15th day of November, 2001, at the hour of 1:00 P.M., at the Office of the Attorney General, 3000 Montvale, Springfield, Illinois, before instance of the Defendants, and before Mary K. Beyers, CSR, and Notary Public.

That the oral interrogatories and the answers of the witness may be taken down in shorthand by the Reporter and afterwards transcribed.

That the reading and signing of said deposition is waived.

That the deposition, or any portions thereof may be used by any of the parties hereto, without foundation proof, for any purposes for which depositions are competent.

That copies of the deposition may be furnished to any of the parties at his or her own expense.

**Page 3**

APPEARANCES:    (November 15, 2001)

THOMSON & WEINTRAUB
Ms. Melissa M. McGrath
Attorney at Law
105 North Center Street
P.O. Box 3577
Bloomington, Illinois 60702-3577
Appeared on behalf of Plaintiff

CASSIDY & MUELLER
Mr. John E. Cassidy
Attorney at Law
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602
Appeared on behalf of Macon County

HINSHAW & CULBERTSON
Mr. Andrew Ramage
Attorney at Law
400 South Ninth
Springfield, Illinois 62704
Appeared on behalf of Judge Shonkwiler

CLAUSEN & MILLER
Ms. Diane M. Baron
Attorney at Law
10 South LaSalle Street
Chicago, Illinois 60603
Appeared on behalf of Judge Sappington

OFFICE OF THE ATTORNEY GENERAL
Ms. Karen L. McNaught
Assistant Attorney General
3000 Montvale
Springfield, Illinois 62706
Appeared on behalf of the State

INDEX

| Witness | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| NATHAN MADDOX | 4 | 21 | | |

| Exhibits | Marked | Admitted |
|---|---|---|
| 1 | 8 | |
| 2 | | 21 |

**Page 4**

NATHAN MADDOX, a witness, having been duly sworn on his oath, testified as follows:

DIRECT EXAMINATION
BY MS. MCGRATH:

Q. Sir, do you want to state and spell your name for the Court Reporter?

A. Nathan, N-A-T-H-A-N, Maddox, M-A-D-D-O-X.

Q. And Mr. Maddox, you are here today in your capacity as an employee of the Illinois Administrative Office of the Courts?

A. I'm a former employee of the Administrative Office of the Courts. I'm currently with the Illinois Secretary of State's Office.

Q. Are you here today on behalf of the Illinois Administrative Office of the Courts?

A. Because of my prior employment with the administrative office, yes.

Q. And are you represented here by Ms. McNaught?

A. I don't think so.

MS. MCNAUGHT: I can represent you if you would so choose.

A. Okay.

**Page 5**

1  Q. Yes, you are?
2  A. Yes.
3  Q. Okay. Is it Maddox? Am I pronouncing
4  it right?
5  A. Yes.
6  Q. Mr. Maddox, you are here pursuant to a
7  notice of deposition --
8  A. Yes.
9  Q. --which asks that you bring any
10 documents, memoranda, or material of any written
11 form or verbal form, which in any way relates to
12 Complainant's claim of sexual harassment?
13 A. Uh-huh.
14 Q. And have you, prior to your deposition
15 today, provided any documents you were aware of?
16 A. Right, yes.
17 Q. So I take it you don't have any knowledge
18 of the Illinois Administrative Office of the Courts
19 having any documents specifically related to Missy
20 Schroeder's claim of sexual harassment?
21 A. No. I had some documentation related to
22 the Supreme Court Sexual Harassment Policy, but as
23 far as the immediate claim itself, I would not have
24 documentation related to that.
            ASSOCIATED COURT REPORTERS

**Page 6**

1  Q. Okay. Did the Illinois Administrative
2  Office of the Courts ever receive a report with
3  regard to Missy Schroeder's complaint of sexual
4  harassment?
5  A. I believe we received a copy of a
6  complaint after it had been filed, and I'm trying
7  to remember if it was with the Human Rights
8  Commission.
9  Q. The Illinois Department of Human Rights?
10 A. Yes. I get them mixed up. I think at
11 that stage we received a copy of the complaint. I
12 don't recall receiving anything prior to that time.
13 Q. Okay. You've been identified as a
14 potential witness in this case who can testify
15 about the functions of the Administrative Office of
16 the Illinois Courts and its relationship to circuit
17 court judges and associate judges. Can you
18 describe for me that relationship?
19 A. Yes. The Illinois Constitution vests the
20 administrative authority for the court system in
21 the Supreme Court, Illinois Supreme Court, and
22 provides that it appoint an administrative director
23 and staff to assist it with those responsibilities.
24        Pursuant to that constitutional
            ASSOCIATED COURT REPORTERS

**Page 7**

1  provision, the Administrative Office of the Courts
2  has established a director and offices divided into
3  a number of divisions. There's a personnel and
4  payroll division, there's a probation division, a
5  computer division, and a court services division.
6  And then it has had different makeups over time.
7  At one time there was also a judicial, education,
8  and legal division, but those were eventually
9  folded into the court services division. It has
10 the ultimate authority over the court system, and
11 provides administrative support to the court system
12 that pays the judges, things of that nature,
13 provides chambers and such at the appellate level,
14 establishes the criteria for judicial education.
15        It establishes the criteria for the
16 probation offices located at the local level, the
17 staffing at the local level, court reporters are
18 paid through the administrative office, probation
19 officer's salaries are at some level or another.
20 It varies over time with positions, but the
21 probation office salaries, officer's salaries, are
22 reimbursed by the State through the Administrative
23 Office, and try to provide other types of support
24 as necessary, guidance as necessary, to the trial
            ASSOCIATED COURT REPORTERS

**Page 8**

1  courts and appellate courts.
2  Q. Does the Illinois Administrative Office
3  of the Courts, and did it back in 1996, 1997,
4  provide any particular guidance or support with
5  regard to possible claims of sexual harassment
6  within the judicial system?
7  A. Yes. The Court promulgated a sexual
8  harassment policy, provided it be applicable to the
9  judicial branch as a whole, distributed to the
10 judicial branch the policy, by definition of sexual
11 harassment, and had reporting procedures for people
12 who believed they had been the victim of sexual
13 harassment, and investigative and disciplinary
14 procedures as well.
15        (Whereupon a document was
16         marked Deposition Exhibit
17         No. 1.)
18 Q. Sir, if you would take a look at
19 Exhibit 1, and let me know when you've had enough
20 time to be able to identify that exhibit.
21 A. Okay.
22 Q. Is this the sexual harassment policy
23 which you indicated had been promulgated by the
24 Administrative Office of the Courts?
            ASSOCIATED COURT REPORTERS

**Page 9**

1  A. Yes.
2  Q. Down in the right-hand corner of the
3  first page, and in fact, throughout this document,
4  there's a 5/1/93?
5  A. Uh-huh.
6  Q. Is that when this policy was promulgated?
7  A. Right. It was actually promulgated a
8  week or so before that, but that would have been
9  the effective date.
10  Q. Okay. Was this the sexual harassment
11  policy that would have been in place in 1996, 1997?
12  A. Yes. I was with the office through 1999,
13  and there was no change through that time.
14  Q. Now, you said promulgated, and I'm having
15  difficulty pronouncing that word. Was this a
16  policy that circuit courts in Illinois were
17  obligated to follow at that time?
18  A. Yes. As I recall, when it was
19  distributed, it was distributed as a mandatory
20  policy which had been adopted by the Supreme Court
21  sent throughout the entire judicial court with
22  orders that it be followed as an official policy
23  for the judicial branch.
24  Q. And am I correct that within this policy,
ASSOCIATED COURT REPORTERS

**Page 10**

1  the Chief Judge of each circuit is identified as
2  the individual responsible for carrying out the
3  policy?
4  A. I would assume. I haven't read it in
5  quite a while, but that is my memory of it. At the
6  circuit level, it would have been under reporting
7  on Roman Numeral II, page 4, employees of the
8  circuit court may file complaints with their
9  immediate supervisor. The Chief Circuit Court
10  Judge or the EEO Officer of the Administrative
11  Office would have played a role in that respect,
12  and they have general administrative authority over
13  their circuit. I don't see a specific reference
14  otherwise. I have not read it carefully in quite
15  some time.
16  Q. You just indicated that the Chief Judge
17  has the general administrative authority over their
18  circuit?
19  A. Yes.
20  Q. What do you mean by that, sir?
21  A. Every circuit selects the Chief Circuit
22  Judge to be the Chief Administrative Officer for
23  that circuit.
24  Q. And what, I'm sorry, what do you mean by
ASSOCIATED COURT REPORTERS

**Page 11**

1  the Chief Judge having the general administrative
2  authority? What type of authority does the Chief
3  Judge have within their circuit?
4  A. I'm trying to recall the statutory
5  language, and honestly, I can't remember if it's
6  statute or a constitutional provision. One or the
7  other provides the selection of the Chief Judge and
8  the administrative role, and basically, they do,
9  and it varies from circuit to circuit, but
10  primarily, they do the hiring and firing of court
11  reporters, probation officers, other court
12  officials. They make the assignments of judges to
13  different types of calls, traffic or misdemeanor or
14  divorce call, things of that nature, oversee the
15  selection of new associate judges, scheduling,
16  things of that nature.
17  Q. And for purposes of why we're here today,
18  the litigation involving a claim, a lawsuit of,
19  concerning sexual harassment, would you agree that
20  in '96 and 1997, the Chief Judge of the circuit
21  court would have been responsible for following
22  through with any complaint raised with regard to
23  sexual harassment?
24  A. Again, as I read it, and it's been a
ASSOCIATED COURT REPORTERS

**Page 12**

1  while, but if the complaint had been brought to the
2  attention of the Chief Judge, yes. I mean, there
3  are three options here for an employee to file a
4  complaint and brought to the attention of the Chief
5  Judge, yes.
6  Q. Would you agree the Chief Judge can
7  delegate his authority to a presiding judge within
8  the circuit court with regard to administrative
9  functions?
10  A. With administrative functions, yes.
11  Q. Would the certain administrative
12  functions that can be delegated by the Chief Judge
13  include following-up on a claim of sexual
14  harassment?
15  A. Following-up on it, I suppose. I'm
16  hesitating only because of the Supreme Court policy
17  saying these are the three places that an employee
18  of the circuit court may file a complaint. I'm not
19  certain that a Chief Judge could delegate that
20  away. I don't think a Chief Judge could say, you
21  can't file a complaint with me. You have to file
22  it over here. What the Supreme Court has said in
23  their policy, the complaint may be filed with them.
24  Perhaps the follow-up could be delegated, yes.
ASSOCIATED COURT REPORTERS

**Page 13**

1  Q. Let's go back to the provision you're
2  referring to on page 4, which outlines where the
3  employees may file their complaint, indicating the
4  immediate supervisor, the Chief Circuit Court Judge
5  or the EEO Officer of the Administrative Office.
6  Was it the responsibility of the Chief Judge of
7  each circuit to ensure that employees knew where
8  they were supposed to file their complaints if they
9  had one?
10  A. When the policy was distributed, it was
11  distributed with orders that copies be given to all
12  employees, yes.
13  Q. Was that communication in writing?
14  A. I believe there was a memo from the
15  acting director at that time to the judicial
16  branch. It was sent out, yes.
17  Q. So am I correct that for purposes of the
18  role that the Illinois Administrative Office of the
19  Courts served in relation to any sexual harassment
20  complaint, that role was limited to delegating the
21  responsibility to each Chief Judge of each circuit
22  for following through?
23  A. Well, there also could be complaints
24  filed at the Administrative Office level. The
ASSOCIATED COURT REPORTERS

**Page 14**

1  reason it was structured this way is, if the
2  immediate supervisor was the person doing the
3  harassing, there needed to be someone else to
4  complain to. Or if the Chief Judge was doing the
5  harassing, there needed to be-- or we wanted to
6  make certain that there was an avenue for filing a
7  complaint that any complainant would feel
8  comfortable with. So if the complaint was filed at
9  the Administrative Office level, the Administrative
10  Office would conduct the investigation. Again, I
11  haven't read it carefully in some time, but I know
12  that's why we structured it that way. I know we
13  did conduct investigations.
14  Q. When a complaint is brought within the
15  circuit court, and in a particular circuit, was it
16  then the responsibility of the Chief Judge or the
17  presiding judge to follow through with any
18  investigation of that complaint?
19  A. Yes. When the complaint had been filed,
20  and just flipping here a little bit, on page 5,
21  paragraph C, investigation, when an appropriate
22  authority has received a complaint alleging sexual
23  harassment, he or she shall promptly initiate an
24  investigation of the complaint. And again, it does
ASSOCIATED COURT REPORTERS

**Page 15**

1  specifically say here, the duty or the
2  investigation may be delegated.
3  Q. Were circuit courts also, at that time,
4  allowed to add or revise the sexual harassment
5  policy in order to carry it out within their
6  circuit?
7  A. Once a policy was adopted by the Supreme
8  Court and sent out, generally speaking, that was
9  it. If a circuit looked at a policy, this policy
10  or any other policy, and said for some reason this
11  will not work here, they could come and ask the
12  Court or the Administrative Director for some
13  guidance or leeway on it. Generally speaking, when
14  the Supreme Court said this is what you will do,
15  that was it.
16  Q. Are you aware of the Chief Judge of Macon
17  County raising such concerns to the Illinois
18  Administrative Office of the Courts with regard to
19  this policy?
20  A. Clarify your terminology. The Chief
21  Judge is of the circuit. So Chief Judge of the
22  circuit?
23  Q. I apologize. Thank you.
24  A. No. I was not aware of any such request
ASSOCIATED COURT REPORTERS

**Page 16**

1  from the 6th circuit.
2  Q. Sir, can I direct you to page 5 of
3  Exhibit 1?
4  A. Yes.
5  Q. And I'm looking at the second paragraph
6  there indicating any complaints of alleged sexual
7  harassment which are received by judicial or
8  supervisory personnel shall be reported in writing
9  to the Administrative Director of the
10  Administrative Office within 7 days, unless the
11  alleged harasser is the Administrative Director or
12  a member of the judiciary. When the alleged
13  harasser was a member of the judiciary, were there
14  other reporting requirements?
15  A. My recollection is that that exception
16  was there because it is the Court's commission that
17  has disciplinary authority over judges. So we
18  would not have needed or been able to use a report
19  of harassment if it was someone that was a
20  non-judicial person within the judicial branch.
21  Then the Administrative Office probably would have
22  had some type of control or ability to discipline
23  that individual or to oversee that individual.
24  So we wanted to be aware of, even if the
ASSOCIATED COURT REPORTERS

**17**

1  complaint wasn't made to us, we wanted to be made
2  aware of what was going on. But with regard to
3  members of the judiciary, there was no need for us
4  to be informed in addition to the investigation,
5  the complaint that was going on here, there was no
6  need for us to be informed, because we had no
7  disciplinary authority over the judicial branch.
8    Q. Okay. Were the, was there any guidance
9  provided by the Administrative Office of the Courts
10 with regard to a report of sexual harassment by a
11 judiciary member being made to the Judicial Inquiry
12 Board?
13   A. Not that I'm aware of. I think the only
14 guidance was this policy itself that was
15 distributed.
16   Q. Okay. The next section here at page 5
17 discusses the, how an investigation should proceed
18 when a complaint is made. First of all, let me ask
19 you, would you agree that an individual did not
20 need to use the term sexual harassment when raising
21 a complaint, but rather report certain behaviors
22 which could have been due to sexual harassment in
23 order to initiate an investigation?
24   A. I think that's probably, under the right
ASSOCIATED COURT REPORTERS

**18**

1  circumstances, that would be a fair statement, yes.
2    Q. And would you also agree that when
3  someone reports behaviors that could be construed
4  as sexual harassment, or did so back in 1996, that
5  even if that person left their employment with the
6  judiciary as a judicial clerk, that an
7  investigation should still have continued with
8  regard to that complaint of sexual harassment?
9    A. I'm not sure that I can answer that as a
10 matter of official court policy. At the time, I do
11 not recall that circumstance having occurred or
12 that hypothetical question having been raised. I
13 don't think it's addressed in the policy. I don't
14 know from the perspective of a, you know, an
15 officer for the Administrative Office. I really
16 don't have an answer.
17   Q. Okay. If the Chief Judge of Macon
18 County, for example, back in 1996, had a question
19 about that, about whether an investigation should
20 continue once a claim of sexual harassment came to
21 light, even if that employee were no longer there,
22 could they have come to the Illinois Administrative
23 Office of the Courts to seek guidance on that?
24   MS. MCNAUGHT: I object to the
ASSOCIATED COURT REPORTERS

**19**

1  form of the question. You talked about the Chief
2  Judge of Macon County, and there is no such thing.
3  If you want to rephrase that to mean the Chief
4  Judge of the 6th Judicial Circuit, I would withdraw
5  my objection.
6    MS. MCGRATH: And I would like
7  to do that. Thank you.
8    A. That would be an avenue available for
9  clarification of the policy, yes.
10   Q. You don't have any knowledge, do you, of
11 the Chief Judge of the 6th Judicial Circuit coming
12 to the Illinois Administrative Office of the Courts
13 and making such an inquiry?
14   A. I'm not aware of that.
15   Q. The different circuits across the State
16 of Illinois employ judicial clerks to work with the
17 judges at times?
18   A. Yes.
19   Q. Are there times when those judicial
20 clerks are employed by the county within which that
21 circuit sits?
22   A. Yes.
23   Q. And are you aware as to whether in Macon
24 County in 1996, the judicial clerks were employed
ASSOCIATED COURT REPORTERS

**20**

1  by the State of Illinois or employed by Macon
2  County?
3    A. I believe they were, what we would have
4  classified, as non-state paid judicial branch
5  employees. I believe they were paid by the county
6  and working in the judicial branch.
7    Q. And so in that sense, they would have
8  been employed by both the State of Illinois as well
9  as Macon County?
10   A. I'm not trying to be evasive. That's
11 always been a difficult question. I think that
12 probably, you know, they were paid by the county
13 and worked under the supervision of the judicial
14 officers. And I don't know what the correct legal
15 classification of their employment would be, but
16 that would be the practical overview of what was
17 going on.
18   Q. Okay. Do you agree that the Chief Judge
19 of the 6th Judicial Circuit, in his role
20 administering functions within that circuit,
21 represents the State of Illinois?
22   MS. MCNAUGHT: Objection to the
23 extent that it calls for a legal conclusion.
24   A. I think probably so.
ASSOCIATED COURT REPORTERS

**21**

1  Q. The State of Illinois does employ, is the
2  employee of the judges within each circuit?
3  A. Yes.
4  (Whereupon a document was
5  marked Deposition Exhibit
6  No. 2.)
7  Q. Sir, the documents which have been
8  identified as Exhibit 2 were provided to Counsel in
9  this case by your attorney prior to your
10 deposition. Can you tell me what these documents--
11 can you identify these documents?
12 A. It appears to be the results of a survey
13 that was conducted prior to the adoption of the
14 sexual harassment policy by the State Supreme
15 Court. The personnel who were working on that
16 policy began by researching the existing policies
17 in the judicial branch around the state.
18 Q. And so this would have occurred before
19 the promulgation of Exhibit 1, the sexual
20 harassment policy?
21 A. Yes. It was, part of the drafting of
22 this document was the research of the--
23 MS. MCNAUGHT: Just for his
24 own purposes, I want to point out that Exhibit
ASSOCIATED COURT REPORTERS

**22**

1  No. 2 is much more than just that survey. So I
2  just want him to understand what it is that I faxed
3  to everyone.
4  MS. MCGRATH: That's fine.
5  A. Okay. I beg your pardon. I didn't go
6  through it all the way.
7  Q. And I apologize. I probably should have
8  made it into two exhibits.
9  A. Yes. At the end of this is the cover
10 memo. Towards the end, immediately preceding the
11 sexual harassment policy itself, is the cover memo
12 that was went out with the policy when it was
13 distributed to the judicial branch in April of
14 1993. And then there is the sexual harassment
15 policy, and then it appears to be the minutes of
16 the Chief Judge's meeting June 18, 1993, and that
17 appears to be everything in this.
18 Q. Okay. Thank you. Let me direct you
19 back to the cover letter attached to the sexual
20 harassment policy, which is now also part of
21 Exhibit 2.
22 A. Yes.
23 Q. And it's dated April 29, 1993. That, I
24 take it, is the cover letter you spoke about
ASSOCIATED COURT REPORTERS

**23**

1  earlier?
2  A. Yes.
3  Q. Which directed that copies of the policy
4  be distributed to all employees?
5  A. That's correct.
6  Q. And it also indicated that the policy
7  should be posted; correct?
8  A. That's correct.
9  Q. Correct me if I'm wrong then, the survey
10 results, did they assist in leading to the final
11 product, that being the sexual harassment policy
12 that was distributed in May of '93?
13 A. Yes. I think that in two ways. In some
14 instances, I believe the committee that was working
15 on the policy was looking at this, the results of
16 this survey, for ideas and things that should be
17 included in the policy, and also looking at it with
18 regard to the need for a statewide policy.
19 MS. MCGRATH: Okay. I have
20 nothing further for you, sir.
21 MR. RAMAGE: I have nothing.
22 CROSS EXAMINATION
23 BY MS. MCNAUGHT:
24 Q. I just need to clear up something. When
ASSOCIATED COURT REPORTERS

**24**

1  you talked about judicial clerks, what's your
2  definition of a judicial clerk?
3  A. Well, there are two. I mean, there are
4  law clerks at the appellate court level, but the
5  judicial clerk, there were, in some, in the
6  circuits in some of the counties, they would higher
7  individuals to assist the judges with
8  administrative secretarial types of functions at
9  the local level.
10 MS. MCNAUGHT: That's all. Do
11 you want to read or waive?
12 A. As far as I'm concerned, it's up to you.
13 As far as I'm concerned, I can waive.
14 MS. MCNAUGHT: That's fine.
15 (DEPOSITION CONCLUDED)
16
17
18
19
20
21
22
23
24
ASSOCIATED COURT REPORTERS