# RUTH YOUNG

```
                                                          1

        IN THE UNITED STATES DISTRICT COURT

       FOR THE CENTRAL DISTRICT OF ILLINOIS

                 URBANA DIVISION        RECEIVED

                                         OCT 12 2001

MELISSA ROBINSON, f/k/a    )            CASSIDY & MUELLER
MELISSA SCHROEDER,         )
         Plaintiff,        )
    vs.                    )   No. 99-2266
JUDGE WARREN A. SAPPINGTON,)
etal.,                     )
         Defendants.       )
```

Discovery deposition of RUTH YOUNG, taken before Julie J. Mayer, CSR, RPR, and Notary Public, at the instance of the Defendant, on the 27th day of September, 2001, at the hour of 1:30 P.M., at Macon County Courthouse, Decatur, Illinois, pursuant to attached stipulation.

ASSOCIATED COURT REPORTERS
1-800-252-9915
404 East Main Cross          315 National City Bank
Taylorville, Illinois 62568      P.O. Box 3243
(217) 824-5717              Springfield, Illinois 62705

Dep of Ruth Young (By Ms. McNaught) 9-27-01

## Page 2 — STIPULATION

```
 1                STIPULATION
 2
 3        It is stipulated between the parties
 4   herein, through their attorneys, that the discovery
 5   deposition of RUTH YOUNG, may hereby be taken upon
 6   oral interrogatories, on the 27th of September, 2001,
 7   at the hour of 1:30 P.M., at Macon County Courthouse,
 8   Decatur, Illinois, before instance of the Defendant,
 9   and before Julie J. Mayer, CSR, RPR and Notary Public.
10        That the oral interrogatories and the
11   answers of the witness may be taken down in shorthand
12   by the Reporter and afterwards transcribed.
13        That the reading and signing of said
14   deposition is waived.
15        That the deposition, or any portions
16   thereof may be used by any of the parties hereto,
17   without foundation proof, for any purposes for which
18   depositions are competent.
19        That copies of the deposition may be
20   furnished to any of the parties at his or her own
21   expense.
22
23
24
```

## Page 3 — APPEARANCES

```
 1   APPEARANCES: (September 27, 2001)
 2
 3   THOMSON & WEINTRAUB
     By Ms. Melissa McGrath
 4   Attorney at Law
     105 North Center Street
 5   P.O. Box 3577
     Bloomington, Illinois 61702-3577
 6
        Appeared on behalf of Plaintiff;
 7
     STATE OF ILLINOIS
 8   By Ms. Karen McNaught
     Attorney at Law
 9   500 South Second Street
     Springfield, Illinois 62706
10
        Appeared on behalf of Defendants, Judge
11      Shonkwiler and Judge Sappington;
12
     CLAUSEN & MILLER
13   By Ms. Diane Baron
     Attorney at Law
14   10 South LaSalle Street
     Chicago, Illinois 60603
15
        Appeared on behalf of Defendant, Judge
16      Sappington;
17
     HINSHAW & CULBERTSON
18   By Mr. Robert Gillespie
     Attorney at Law
19   400 South Ninth Street, Suite 200
     Springfield, Illinois 62701
20
        Appeared on behalf of Defendant, Judge
21      Shonkwiler;
22
23
24
```

## Page 4 — APPEARANCES (Continued) / INDEX

```
 1   APPEARANCES: (Continued)
 2   CASSIDY & MUELLER
     By Mr. John Cassidy, III
 3   Attorney at Law
     323 Commerce Bank Building
 4   416 Main Street
     Peoria, Illinois 61602
 5
        Appeared on behalf of Defendant, Macon
 6      County Courthouse;
 7                INDEX
 8   Witness: RUTH YOUNG
     Direct      Cross     Redirect    Recross
 9   5, 98, (116), 143      145         146
10   Exhibits    Marked    Admitted
     NONE
11
12
```

## Page 5

```
 1              RUTH YOUNG
 2   called as a witness herein, at the instance of the
 3   Defendant, having been duly sworn on her oath,
 4   testified as follows:
 5        DIRECT EXAMINATION BY
 6        MS. McNAUGHT:
 7     Q. For the record, would you please state your
 8   full name?
 9     A. Ruth Ann Young.
10     Q. And what's your address?
11     A. 123 South Decatur Avenue, Decatur, Illinois,
12   62522.
13     Q. What's your date of birth?
14     A. 4-2-42.
15     Q. Are you currently employed?
16     A. In business for myself.
17     Q. What's your business called?
18     A. I'm a paralegal, and I go in and help with
19   trials; and also, I'm filling in for some of the
20   secretaries.
21     Q. Does your business have an address?
22     A. It's at my home. My home address.
23     Q. And prior to being self-employed, where did
24   you work?
```

Dep of Ruth Young (By Ms. McNaught) 9-27-01

## 6

1  A. I worked at the county, at the county board.
2  I was executive secretary there until I decided to
3  retire.
4  Q. And how, from when to when did you work
5  there?
6  A. I was there, I want to say a year and a
7  half, right at a year and a half.
8  Q. Do you know what years?
9  A. Ninety -- let's see, I went to the court in
10  96 -- I want to say 97 to 99.
11  Q. Prior to that, where did you work?
12  A. I worked for Judge Greanias. I started
13  there in January of 96 through January of 98.
14  Q. What did you do for Judge Greanias?
15  A. I was his secretary, judicial clerk, and I
16  did some of my reporting kills.
17  Q. Are you a certified shorthand recorder?
18  A. Yes.
19  Q. So you worked not only as a court reporter
20  for Judge Greanias, but also as a judicial clerk?
21  A. Right.
22  Q. And prior to that, where did you work?
23  A. I had my own business, and I worked for the
24  Oklahoma courts for five and a half years as a per

## 7

1  diem reporter.
2  Q. Did you move here, did you move to Illinois
3  from Oklahoma?
4  A. I lived in Missouri. I carried the four
5  state area. And I moved back to Missouri, or Illinois
6  in 89.
7  Q. And that's when you had your own business,
8  and then subsequent to that you worked for Judge
9  Greanias?
10  A. Right.
11  Q. Was Judge Greanias the presiding judge of
12  Macon County at the time when you worked for him?
13  A. Yes.
14  Q. Have you ever had your deposition taken
15  before?
16  A. No. It's scary.
17  Q. Do you know that you're under oath?
18  A. Yes, ma'am.
19  Q. Let me go over some of the rules for you.
20  Only one person can talk at a time, so
21  the Court Reporter can take down who says what.
22  And I'll try and make my questions
23  short so that you understand them.
24  If, however, they get long-winded and

## 8

1  you don't understand what I'm asking, simply tell me,
2  and I'll try and repeat or rephrase.
3  Does that make sense?
4  A. Yes. May I state at this time, and I want
5  it on the record, I'm not good with dates. I can give
6  you things that happened or meaning, but I don't want
7  someone to try to trip me on dates, because I can't
8  remember dates. And I'm not represented by anyone.
9  I'm here, and I hope to tell the truth,
10  and no matter how the outcome, that's what it has to
11  be.
12  Q. I think we all understand that some of these
13  events happened several years ago?
14  A. Right.
15  Q. So we'll --
16  A. Four years. I think about four years ago.
17  Q. Okay. We'll try and keep that in mind.
18  A. Okay.
19  Q. The other big thing is that you need to give
20  verbal responses, as opposed to shakes or nods of the
21  head or uh-huh or huh-uh, because those are real hard
22  for the Court Reporter to take down, okay?
23  A. Yes, ma'am.
24  Q. Do you have any felony convictions?

## 9

1  A. No.
2  Q. Do you know Melissa Schroeder, Melissa
3  Robinson?
4  A. Yes.
5  Q. How do you know her?
6  A. We became friends when I worked for Judge
7  Greanias, and she worked for Judge Sappington.
8  Q. When Melissa started, were you already here?
9  A. No. Melissa was here before I.
10  Q. When you started, Melissa was working as
11  judicial clerk for Judge Sappington?
12  A. Yes.
13  Q. Was that in the new, this building that
14  we're currently in?
15  A. No. We were in the old Ambassador Building.
16  Q. Do you recall what floor Melissa was on?
17  A. We were on the eighth floor. If I may
18  explain, there were one, two, three, three court
19  rooms, that we all sat in one area.
20  So Missy was right across from me, as I
21  worked for Judge Greanias.
22  Q. Do you recall what other court personnel,
23  not, I don't want, I'm not asking about the judges
24  right now, but what other court personnel were in the

ASSOCIATED COURT REPORTERS 1-800-252-9915                Page 6 to Page 9

Dep of Ruth Young (By Ms. McNaught) 9-27-01

### 122

1  maybe Missy and I became friends.
2  Q. Okay. Now you indicated that you had an
3  opinion why you thought there was bad blood between
4  Missy and Leona, and you said you didn't want to
5  relate that?
6  A. I do. Because if Leona or Missy read this,
7  I would not want, I would not go out of my way to hurt
8  anybody.
9  Q. I understand that. And with that
10 understanding in mind, that will be on the record,
11 too, because it might lead to discoverable
12 information.
13      Why don't you give us your opinion why
14 you thought there was bad blood between them?
15 A. You would have to look at the two in
16 appearance-wise. Here Missy is a small, petite
17 female, and Leona is a very heavy person.
18      She doesn't take care of herself in
19 looks, and Missy does. So I think a lot of jealousy.
20 Q. Okay. Now who actually hired you?
21 A. Judge Greanias.
22 Q. And how did you put your application in?
23 A. I'm sorry?
24 Q. Where did you put your application in?

### 123

1  A. Well, I went to do my paralegal internship
2  with Judge. And he called me and asked me if I would
3  like to come to work for him.
4  Q. Okay. And did you receive any raises while
5  you were there?
6  A. I'm sure I did. I just don't --
7  Q. Who informed you that you were receiving a
8  raise?
9  A. Probably Judge.
10 Q. Judge Greanias?
11 A. Uh-huh.
12 Q. Okay. And when you were fired, it was Judge
13 Greanias who did that, is that correct?
14 A. Yes.
15 Q. No one from the county board ever got
16 involved with anything in regard to the day-to-day
17 employment --
18 A. No.
19 Q. -- duties, is that correct?
20 A. No. No one ever did.
21 Q. And even as far as your hiring and firing
22 and raises, that all came from the Judge also?
23 A. Yes.
24 Q. Okay. Now you indicated, now I want to,

### 124

1  obviously you were very close to Missy.
2      We've talked about that.
3  A. Yes.
4  Q. And as you pointed out, one reason that your
5  relationship with Leona fell downwards is because she
6  saw the relationship between you and Missy, is that
7  correct?
8  A. Yes. Plus I held up, verbally, I would say,
9  things in favor of Missy, to Leona, and that was
10 before I really actually knew what the depth of the
11 dislike was.
12 Q. And your relationship with Missy continues
13 to this day? You still talk, correct?
14 A. Kind of.
15 Q. Okay. She's called you on a number of
16 occasions concerning the progress of this suit?
17 A. Like I said, I think I've talked to her
18 maybe six times since we both left there.
19 Q. Even simple things like a deposition being
20 cancelled, she would keep you informed on that, is
21 that correct?
22 A. No. I think I inquired how things were
23 going, what she was up to, and that's how it came
24 about.

### 125

1  Q. So you raised the issue?
2  A. I could very well have. Yes.
3  Q. So you, you wanted to be involved, kept
4  updated on how this lawsuit was going?
5  A. Kept updated? I wanted to know how Missy
6  was doing, because there was so much time span between
7  times of talking to her.
8  Q. Okay. And has she ever, have you ever seen
9  the documents that she prepared regarding the dates of
10 allegations and so forth?
11 A. No, sir.
12 Q. She's never given you that or --
13 A. No.
14 Q. But she has talked about them, you've went
15 through most of them today?
16 A. Since I left there?
17 Q. Yes.
18 A. We haven't discussed very much, no.
19 Q. Nothing at all?
20 A. I can't say nothing at all.
21 Q. Okay. So you have had some discussions
22 about the allegations with her since you left there?
23 A. When you say allegations, I guess I am just
24 leery.