**E-FILED**
Tuesday, 18 January, 2005  04:01:31 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| MELISSA ROBINSON, | ) | |
| (p/k/a MELISSA SCHROEDER), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 04-CV-1360 |
| | ) | |
| JUDGE WARREN A. SAPPINGTON | ) | |
| SIXTH JUDICIAL CIRCUIT, | ) | |
| (IN OFFICIAL CAPACITY), | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| MACON COUNTY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| MACON COUNTY CIRCUIT COURT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MACON COUNTY'S THIRD MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, MACON COUNTY, by its attorneys, CASSIDY & MUELLER, and for its Memorandum in Support of its Third Motion for Summary Judgment states as follows:

## I
## INTRODUCTION

The Plaintiff, MELISSA ROBINSON, has filed a Complaint against MACON COUNTY under Title VII alleging sexual harassment by JUDGE WARREN SAPPINGTON. ROBINSON worked as a judicial clerk for SAPPINGTON in the Sixth Judicial Circuit, Macon County,

Illinois, from March, 1994, through January, 1997. JUDGE SAPPINGTON was an associate judge during this time period.

In this case, MACON COUNTY'S liability under Title VII cannot be established because:

(1)    The Plaintiff cannot establish that is a proper Title VII defense because she was not an employee of Macon County; or, in the alternative,

(2)    Macon County has no Title VII employer liability for the alleged harassment of Judge Sappington, a non-employee, under the Section 1604.11(e) standard because:

    a.    Macon County did not know, nor should it have known, of the alleged harassment;

    b.    Macon County had no control over a state judge and therefore could not take remedial action against him; or

    c.    Macon County had no control over Melissa Robinson's job duties and assignments and therefore could not take remedial action with respect to altering her employment environment.

## II

## PROCEDURAL HISTORY

On September 14, 2000, MACON COUNTY filed its first Motion for Summary Judgment raising the issue that it did not employee the Plaintiff (Docket No. 52). MACON COUNTY's first Motion for Summary Judgment was denied pursuant to an Order dated March 23, 2001, (Docket No. 113). The basis of the court's denial of the Motion for Summary Judgment was the court's "assumption that Janice Shonkwiler might be employed by the county". (Order, Docket No. 13, p. 9). Thereafter, extensive discovery occurred including discovery relating to Janice Shonkwiler's employment relationship. As shown herein, the MACON COUNTY maintains that discovery conclusively established that Janice Shonkwiler was solely a judicial branch employee just as the Plaintiff, MELISSA ROBINSON.

MACON COUNTY filed its Second Motion for Summary Judgment on January 15, 2002 raising principally the same issues that are raised herein which are unique to MACON COUNTY. (Docket No. 174). The other parties hereto also filed Motions for Summary Judgment which resulted in an order from this court filed on June 19, 2002, wherein the court granted summary judgment on behalf of all Defendants based on the finding that "the undisputed facts show that (Judge Sappington's) conduct was not pervasive or severe, therefore it did not rise to the level of creating a hostile environment for which Sappington's employer might be held liable under Title VII". (Docket No. 223) (June 19, 2002, Order, p. 27).

In the June 19, 2002, Order, the court declined to resolve the unique issues raised in MACON COUNTY'S Second Motion for Summary Judgment "because it is determined that the conduct issue did not create an actual hostile environment". (June 19, 2002, Order, p. 28). On June 28, 2002, the Plaintiff filed a Motion to Alter, Amend and Clarify the Court's June 19, 2002, Order requesting the court to rule on MACON COUNTY'S Second Motion for Summary Judgment. (Docket No. 224). Plaintiff's motion was denied by the court on August 6, 2002. (Docket No. 225).

On September 4, 2002, the Plaintiff filed a timely Notice of Appeal to the United States Court of Appeals for the Seventh Circuit from the June 19, 2002, Order and the denial of Plaintiff's Motion to Alter, Amend and Clarify the Court's Order. (Docket No. 241). As a part of the appeal to the Seventh Circuit, MACON COUNTY, filed a brief requesting the Seventh Circuit to affirm the court's Order granting summary judgment on the grounds relied upon by the court or, in the alternative, to affirm summary judgment in favor of MACON COUNTY on the unique issues raised in its Second Motion for Summary Judgment pointing out that the appellate court could affirm summary judgment on any grounds that finds support in the record, citing

*Williams v. U.S. Steel*, 70 F. 3d 944, 947 (7th Cir. 1995); *T.S. Johnson v. Gudmundsson*, 35 F. 3d 1104, 1115 (7th Cir. 1994); and *Miller v. Gateway Transportation Company*, 616 F. 2d 272, 275 N7 (7th Cir. 1980).

On December 9, 2003, the Seventh Circuit Court of Appeals issued an opinion reversing the summary judgment granted in favor of all Defendants except with respect to John P. Shonkwiler, Chief Judge of the Sixth Judicial Circuit. *Robinson v. Sappington, et.al.*, 351 F. 3d 317 (7th Cir. 2003). The Seventh Circuit Court of Appeals declined to consider the issues presented in MACON COUNTY'S Second Motion for Summary Judgment stating:

> "We agree with Ms. Robinson that the question of joint liability is one that is fact-bound and that necessarily is best addressed by the district court in the first instance." *Robinson,* 351 F. 3d at 338.

On January 11, 2005, MACON COUNTY filed a Motion for Ruling on its Second Motion for Summary Judgment. (Docket # 287). Said Motion only requested a ruling on MACON COUNTY'S substantive[1] liability as an employer under Title VII in that the appellate court found that MACON COUNTY was a "necessary party" for reasons unrelated to substantive employer liability under Title VII. On that same date, the court issued the following ruling:

> "TEXT ORDER denying [287] Motion for Ruling on Macon County's Second Motion for Summary Judgment, as the 6/19/02 docket entry indicates that the motion was granted (albeit on different grounds) and all other issues were found to be moot. As the motion no longer remains pending on the Court's docket, it cannot be ruled on by the Court. If Macon County wishes to have the issue presented in that motion heard, it must either move to revive the four-year old motion or file an new motion raising such issues that has been updated with more recent authority."

---

[1]  MACON COUNTY recognizes that the appellate court has concluded that it is a necessary party pursuant to the *Carver v. Sheriff of LaSalle County* line of cases. See *Robinson*, 351 F. 3d at 338-339. The *Carver* issue is separate from the substantive issues raised in MACON COUNTY's Motion for Summary Judgment. As a consequence, MACON COUNTY requests an order only regarding the substantive issues relating to Title VII liability because it has been found to be a necessary party regarding the *Carver v. Sheriff of LaSalle County* funding issue.

Per the court's suggestion, MACON COUNTY files this Third Motion for Summary Judgment updating the issues with more recent authority.

### III

### UNDISPUTED MATERIAL FACTS[2]

1-14.  MACON COUNTY hereby adopts as if fully set forth herein paragraphs 1 through 14 of the Statement of Undisputed Facts that MACON COUNTY previously filed pursuant to its first Motion for Summary Judgment on September 14, 2001, for paragraphs 1 through 14 herein.

15.    At all relative times herein, Janice Shonkwiler worked for Judge Greanias as his administrative assistant.  (Janice Shonkwiler, dep. p. 7; Chief Judge John Shonkwiler, dep. pp. 18-19; Judge John Greanias, dep. pp. 13-14).

16.    Janice Shonkwiler was originally hired as Judge John Greanias' judicial secretary in March of 1987.  (Janice Shonkwiler, dep. p. 8; p. 131).

17.    When Janice Shonkwiler was hired by Judge Greanias to be his judicial secretary, she never met with anybody from MACON COUNTY regarding her application or appointment nor did she submit an application to MACON COUNTY.  (Janice Shonkwiler, dep. p. 131).

18.    The then Chief Judge, Judge Scott, informed Judge Greanias how much pay Judge Greanias could offer Janice Shonkwiler at the time she was hired.  (Janice Shonkwiler, dep. p. 132).

---

[2]  The following undisputed facts were set forth in Macon County's Second Motion for Summary Judgment filed on January 15, 2002.  All parties have previously filed responses to these undisputed facts.  They are reasserted herein for the purpose of convenience to the court.

All of the deposition testimony cited herein has been previous filed with the court. (See, deposition testimony attached to Macon County's Second Motion for Summary Judgment. See also, deposition testimony attached as Plaintiff's Appendix to Plaintiff's Response to Judge Shonkwiler's Motion for Summary Judgment.)  Nonetheless, Macon County has re-filed with this motion the specific deposition pages referred to in the Undisputed Facts for the courts convenience.

19.    In approximately December of 1995, Janice Shonkwiler was made Judge Greanias' administrative assistant which was about the time the name of judicial secretaries changed to judicial clerks.  (Janice Shonkwiler, dep. p. 10; Judge John Greanias, dep. pp. 113 and 114).

20.    Janice Shonkwiler was not hired by the county but was rather hired by the judiciary.  (Chief Judge John Shonkwiler, dep. p. 53).

21.    All aspects of Janice Shonkwiler's employment fall under the judicial branch of government.  (Chief Judge John Shonkwiler, dep. p. 53).

22.    Administrative assistants similar to Janice Shonkwiler are hired and fired by the presiding judge.  (Chief Judge John Shonkwiler, dep. p. 50).

23.    Administrative assistants similar to Janice Shonkwiler are under the exclusive control and supervision of the judicial branch in the county.  (Chief Judge John Shonkwiler, dep. p. 50).

24.    Janice Shonkwiler was responsible for all court staff, bailiffs, county paid court reporters and judicial clerks.  (Janice Shonkwiler, dep. p. 9).  Janice Shonkwiler was required to assure that a court reporter and a judicial clerk were in each courtroom while in session.  (Janice Shonkwiler, dep. p. 12).

25.    All of Janice Shonkwiler's employment has been with the court as court staff. Judge Greanias is and has been the only person above her.  (Janice Shonkwiler, dep. p. 10, 133).

26.    At all relevant times herein MELISSA ROBINSON was a judicial clerk.  (Chief Judge John Shonkwiler, dep. p. 18; Janice Shonkwiler, dep. p. 20).

27.    Judicial clerks fall within under the judicial branch.  (Chief Judge John Shonkwiler, dep. p. 41).

28.     Judicial clerk's job functions include assisting with a judge's secretarial work, serve as courtroom clerk and do any work requested by the judge.  (Judge Greanias, dep. p. 107).

29.     The judges control the job responsibilities and duties of judicial clerks.  Neither the county board nor anyone in the county system outside the judiciary has any say whatsoever with what a judicial clerk does in regards to her job functions.  (Judge John Greanias, dep. p. 108).

30.     Judicial clerks are hired and fired by the judicial department.  (Chief Judge John Shonkwiler, dep. p. 50).

31.     Judicial clerks, such as the Plaintiff, are not hired or fired by the county but rather by the judiciary.  All aspects of judicial clerks employment, such as the Plaintiff's, fall under the judicial branch.  (Chief Judge John Shonkwiler, p. 53).

32.     The presiding judge determines the judicial clerk's salary.  The county board only approves a line item total for staff salaries but the presiding judge determines how that total is appropriated among the staff.  The court sets the salaries and the county does not get involved in those particulars.  (Judge John Greanias, dep. pp. 113-115).

33.     Following Plaintiff's departure as a judicial clerk, Judge Greanias hired Lois Durban as her replacement.  (Janice Shonkwiler, dep. p. 115-16).

34.     The county board had no input in the Durban hiring decision.  (Janice Shonkwiler, dep. p. 116).

35.     All court staff personnel, which includes judicial clerks and court reporters, have personnel files that are kept in Judge Greanias' administrative assistant's office.  (Janice Shonkwiler, dep. p. 119).

36.     The county does not have a separate personnel file or anything in addition to what is kept by the court's administrative assistant.  (Janice Shonkwiler, dep. p. 119-20, 122).

37.     Judge John Greanias had authority to terminate Plaintiff without getting approval from the county board or any county representative.  (Janice Shonkwiler, dep. p. 122).

38.     Separation of power concerns is one of the reasons why administrative assistants such as Janice Shonkwiler and judicial clerks such as the Plaintiff are controlled by the judicial branch.  (Chief Judge John Shonkwiler, pp. 51-52).

39.     The judicial branch of the Sixth Judicial Circuit in Macon County has a sexual harassment policy in place that came from Chief Judge Shonkwiler which was handed down from the Illinois Supreme Court through the court system.  (Janice Shonkwiler, dep. p. 13, 17; Judge John Greanias, dep. p. 111; Chief Judge John Shonkwiler, dep. p. 16).

40.     The Supreme Court's sexual harassment policy and directives apply to all judicial and non-judicial personnel to assure work places are free from sexual harassment.  The judicial personnel are judges and the non-judicial personnel include judicial clerks, court reporters and Janice Shonkwiler, administrative assistant to Judge Greanias.  (Chief Judge John Shonkwiler, dep. pp. 16-17, 19, 49-50).

41.     Sexual harassment complaints by judicial clerks should be reported within the judicial system to either the judge or presiding judge who should address those issues.  (Judge John Greanias, dep. p. 109).

42.     If the allegations of sexual harassment involve a judge, such as alleged in this case, neither the county board nor the county should get involved.  (Judge John Greanias, dep. p. 111).

43.    Neither the county board nor the county was responsible for either investigating or providing policy regarding the sexual harassment alleged in this lawsuit.  (Judge John Greanias, dep. p. 112).

44.    Judicial clerks and non-judicial personnel such as Janice Shonkwiler fall under the Illinois Supreme Court's sexual harassment policy.  (Chief Judge John Shonkwiler, dep. pp. 49-50).

45.    In October of 1995 the Plaintiff reported problems with JUDGE SAPPINGTON to Janice Shonkwiler who told Plaintiff to talk to Judge Greanias because Judge Greanias was her superior.  (Janice Shonkwiler, dep. p. 43).

46.    Janice Shonkwiler also reported Plaintiff's complaint to Judge Greanias.  (Janice Shonkwiler, dep. p. 67).

47.    When the Plaintiff complained to Janice Shonkwiler, she was told to go to Judge Greanias.  Janice Shonkwiler testified that Plaintiff should not have to go to any representative or official of the county.  (Janice Shonkwiler, dep. p. 123).

48.    No county representative was involved for any reason nor were they consulted in regards to the Plaintiff's sexual harassment complaints.  (Janice Shonkwiler, dep. p. 129, 130-31).

49.    At all relevant times, Ruth Young was a judicial clerk working for Judge Greanias.  (Janice Shonkwiler, dep. p. 117).

50.    Judge Greanias set all salaries for court staff and all of their hours of employment.  (Janice Shonkwiler, dep. p. 123).

51.    No court staff is hired by anyone from the county.  They all go through Judge Greanias or his administrative assistant, Janice Shonkwiler.  (Janice Shonkwiler, dep. p. 137).

52.     The county board does not get involved in any way in the hiring process of judicial clerks.  (Judge Jerry Patton, dep. p. 18).

53.     Control over judicial clerks is limited to the judges and the county board has no control over either their day-to-day scheduling, operation or so forth.  This is important for constitutional separation of power reasons.  (Judge Jerry Patton, dep. pp. 18-19).

54.     If the county were to come to Judge Jerry Patton and say that they wanted his clerk to do such and such on such and such a day, he would make sure that the county exercised no such control over his clerks. (Judge Jerry Patton, dep. p. 20).

55.     The county has absolutely no control over judicial clerks and the performance of their jobs.  (Judge Jerry Patton, dep. p. 20).

56.     Judge John Davis indicated the county board did not in any way get involved in the hiring and firing of judicial personnel and that the county had no control over such matters.  They only set budgets.  (Judge John Davis, dep. p. 55).

57.     There would most definitely be separation of power problems if the county board started directing judges on what they could and could not do as far as running their staff and their courtrooms.  (Judge John Davis, dep. p. 57).

58.     The sexual harassment policy of the judicial branch of the Sixth Judicial Circuit came from the administrative office of the Illinois Supreme Court and the county board did not get involved.  (Judge John Davis, dep. p. 58).

59.     Disciplinary action of judges must go through the presiding judge and would not involve the county.  (Judge John Davis, dep. p.60).

60.    If Judge John Davis was accused of sexual harassment and the county or its board initiated a directive instructing him to cease and desist he would not feel subject to their authority.  (Judge John Davis, dep. p. 63-64).

61.    Judge John Davis feels that the situation would end up on the doorsteps of the United States Supreme Court, because of separation of power questions, if the county attempted to exercise authority greater than simply dealing with dollars in regards to the way judges acted. (Judge John Davis, dep. p. 64).

62.    In regards to day-to-day control or the decision to hire and fire judicial clerks, the county board did not get involved in those decisions.  (Judge John Davis, dep. pp. 74-75).

63.    Nathan Maddox was an employee of the Illinois Administrative Offices of the courts.  (Nathan Maddox, dep. p. 4).

64.    The court's commission is a body that has disciplinary authority over judges. (Nathan Maddox, dep. p. 16).

65.    Judicial clerks are classified as "non-state paid judicial branch employees" who are paid by the county but work under the supervision of the judicial branch and judicial officers. (Nathan Maddox, dep. p. 20).

66.    Robin Johnson is a judicial clerk for Judge Webber in the Macon County Courthouse.  It is her understanding that although she receives her paychecks and insurance benefits from MACON COUNTY, all decisions about raises, control and discipline, hiring and firing, and things of that nature all come from the judicial branch.  (Robin Johnson, dep. p. 25).

67.    Christina Lees is a judicial clerk for Associate Judge James Coryell and previously for Judge Patton in the Sixth Judicial Circuit, Macon County.  Lees submitted her application to Judge Patton who interviewed and hired her.  MACON COUNTY did not get

involved in the hiring process. Judge Patton directed her concerning her schedule, job duties and responsibilities and informed her when she was getting a raise. She received all her directions from the judiciary. Neither the MACON COUNTY board nor people outside the judiciary ever got involved in her employment responsibilities. She only received her paychecks and insurance benefits from MACON COUNTY but the county had no other connection with her employment. (Christina Lees, dep. pp. 17-20).

68.     Plaintiff never went to anybody with the county and made any complaints about alleged sexual harassment. (Melissa Robinson dep. pp. 276-277).

69.     The county was never aware of Plaintiff's sexual harassment complaints unless either Janice Shonkwiller or Ruth Young are determined to be county employees. (Melissa Robinson dep. pp. 277-279).

70.     Ruth Young held the same position as the Plaintiff, judicial clerk for Judge Greanias. (Melissa Robinson dep. p. 278).

71.     Ruth Young and Janice Shonkwiller were county employees to the same extent that Plaintiff was in that they got their paychecks and insurance through the county but all directions and supervision was received from the judicial branch. (Melissa Robinson dep. pp. 278-79).

72.     Ruth Young was employed as Judge Greanias' judicial clerk when his previous clerk, Janice Shonkwiller was promoted to Judge Greanias' administrative assistant. (Melissa Robinson dep. p. 278).

73.     Ruth Young was a judicial clerk for Judge Greanias. Judge Greanias hired her. (Ruth Young, dep. p. 122).

12

74.     Judge Greanias inform Ruth Young when she was receiving raises and was responsible for fired her.  (Ruth Young, dep. p. 123).

75. No one from the county board ever got involved with anything in regards to Ruth Young's day-to-day employment or duties nor was the county involved in her hiring, firing and raises.  (Ruth Young, dep. p. 123).

**IV**

**SUMMARIZATION OF FACTS**

**a.**

**The Sixth Judicial Circuit**

The Sixth Judicial Circuit is one of twenty one judicial circuits in the State of Illinois exclusive of Cook County, which constitutes its own judicial circuit.  It is comprised of six Illinois counties; Champaign, De Witt, Douglas, Macon, Moultrie and Piatt.  The Defendant, Associate Judge Warren Sappington, sat in the Sixth Judicial Circuit courthouse located in the City of Decatur, Macon County, Illinois.  Circuit Judge John Shonkwiler was Chief Judge of the Sixth Judicial Circuit sitting in the courthouse located in City of Monticello, Piatt County, Illinois.  Each county in the Sixth Judicial Circuit has a presiding judge.  The Presiding Judge in Macon County was Circuit Judge John Greanias.

**b.**

**Plaintiff's Employment**

MELISSA ROBINSON was a judicial clerk working in the Sixth Judicial courthouse located in Macon County.  She principally worked for and under the direction of Associate Judge Warren Sappington.  (Chief Judge John Shonkwiler dep., p. 18; Janice Shonkwiler dep., p. 20.) A judicial clerk's job includes assisting with a judge's secretarial work, serving as courtroom clerk, maintaining the judge's docket and doing whatever other work is requested by the judge.

13

(Judge Greanias dep., p. 107.)  Only judges exercise control over a judicial clerk's job.  Macon County has no say regarding a judicial clerk's hiring, firing, vacations, job assignments, duties or responsibilities.  (Judge John Greanias dep., p. 108.)

In Illinois, each county pays the majority of expenses[3] generated through the operation of the state court sitting within its boundaries which includes the payment of the salaries and benefits of judicial clerks and other non-judicial court staff.  Consequently, Macon County must include court expenses in its budget.  Annually, Macon County budgets a single line-item total for all of its court expenses based upon a recommendation received from the presiding judge.  The presiding judge then controls this money and apportions it as he sees fit for the operation of the court, including determination of the amount of each judicial clerk's salary.  (Janice Shonkwiler dep., pp. 123).  Macon County does not determine how the county-provided court funds are ultimately divided and spent.  (Judge John Greanias dep., pp. 113-115.)

Judicial clerks are hired and fired solely within the judicial branch.  (Chief Judge John Shonkwiler dep., p. 50.)  Judge Greanias, as the Presiding Judge, had ultimate authority over the hiring and firing of the Plaintiff.  Macon County has no impute in how or which judicial clerks are hired or fired.  (Janice Shonkwiler dep., p. 122.)

The judicial clerks' personnel files are kept by the judicial branch in the Presiding Judge's administrative assistant's office.  (Janice Shonkwiler dep., p. 119.)  The county does not maintain separate personnel files for the court staff other than what is required to process and pay their salaries and benefits.  (Janice Shonkwiler dep., p. 119-20, 122.)

Nathan Maddox was an employee of the Administrative Offices of the Illinois Supreme Court at the time of his deposition.  (Nathan Maddox dep., p. 4).  The Administrative Offices of

---

[3]  The salaries of judges are paid by the State of Illinois.  The salaries of "official" court reporters are also paid by the state as required under Illinois' Court Reporter Act, 705 ILCS 70/8.

the Illinois Supreme Court is the body setup by the Illinois Supreme Court to oversee the administrative responsibilities of the Illinois court system.  Maddox stated, as does the Illinois Constitution, that the Illinois Supreme Court is the only body that has authority over the conduct of judges.  (Nathan Maddox dep., p. 16; See also, Illinois Constitution, Article VI, Section 13). He further testified that judicial clerks are classified as "non-state paid judicial branch employees" who are paid by the county but work under the supervision and direction of the judiciary.  (Nathan Maddox dep., p. 20).

<u>**c.**</u>

<u>**Janice Shonkwiler's Employment**</u>

Janice Shonkwiler was originally hired by Judge John Greanias' as his "judicial secretary" in March of 1987.  (Janice Shonkwiler dep., p. 8; p. 131.)  When Janice Shonkwiler originally sought employment as a judicial secretary she submitted her application directly to the judiciary.  She never met with anybody from the county regarding her job application nor did she interview with them.  (Janice Shonkwiler dep., p. 131.)  The then Chief Judge, Judge Scott, informed Judge Greanias how much salary he could offer Janice Shonkwiler at the time she was hired.  (Janice Shonkwiler dep., p. 132.)

In December of 1995, Janice Shonkwiler was made Presiding Judge Greanias' administrative assistant to help with his administrative responsibilities.  (Janice Shonkwiler dep., p. 10; Judge John Greanias dep., pp. 113 and 114.)  Her job is under the exclusive control and supervision of the Presiding Judge.  (Chief Judge John Shonkwiler dep., p. 50.)  The county has no control over her employment and the county's only involvement with her job is limited to issuing her paychecks and providing benefits.  (Judge John Shonkwiler dep., pp. 50, 53.) Judge Greanias is the only person above Janice Shonkwiler and has the sole power to dismiss her. (Janice Shonkwiler dep., p. 10, 133, Chief Judge John Shonkwiler dep., p. 50.)   Janice

Shonkwiler is responsible for undertaking the administrative responsibilities of the presiding judge. (Janice Shonkwiler dep., pp. 9-12, Judge John Greanias dep., p. 12-13.) She is responsible for administering and supervising all court staff including bailiffs, court reporters and judicial clerks and is required to assure that a court reporter and a judicial clerk are assigned to each courtroom while in session. (Janice Shonkwiler dep., pp. 9-12, Judge John Greanias dep., p. 12-13.) Janice Shonkwiler takes care of all problems that arise when a judge is not available. She keeps the court staff's time sheets and handles all administrative matters not handled by Judge Greanias. (Judge John Greanias dep., p. 12-13.) Janice Shonkwiler is considered to be court staff and therefore falls under the sexual harassment policy handed down from the Illinois Supreme Court. (Chief Judge John Shonkwiler dep., pp. 49-50.)

### d.
### Judge Warren Sappington's Employment

Warren Sappington was an associate judge of the Sixth Judicial Circuit at all relevant times. As such, he was an employee of the State of Illinois working within the judicial branch of government. This has not been disputed by any party and was recognized by the Seventh Circuit. See *Robinson v. Sappington,* 351 F. 3d 311, Footnote 9, paragraph 2, (7th Cir., 2003). In fact, Judge Sappington is represented in this action by the Attorney General of the State of Illinois as a member of the state judiciary.

### e.
### Judicial Branch's Sexual Harassment Policy

The Sixth Judicial Circuit has a sexual harassment policy in place that was handed down from the Illinois Supreme Court through Chief Judge John Shonkwiler. (Janice Shonkwiler, p. 13, 17; Judge John Greanias dep., p. 111; Chief Judge John Shonkwiler dep., p. 16.) The Supreme Court's sexual harassment policy applies to all judicial and non-judicial court personnel

to assure that the judicial work place is free from sexual harassment. (Chief Judge John Shonkwiler dep., pp. 16-17, 19, 49-50.) Non-judicial court personnel include judicial clerks, court reporters and the administrative assistants. (Chief Judge John Shonkwiler dep., pp. 16-17, 19, 49-50; Nathan Maddox dep., p. 20.)

Sexual harassment complaints by a judicial clerk are to be reported within the judicial system to either the supervising judge or the presiding judge. (Judge John Greanias dep., p. 109.) If the allegations of sexual harassment involve a judge, such as alleged in this case, neither the county nor its board is to get involved. (Judge John Greanias dep., p. 111). See also, Illinois Constitution, Article VI, Section 13 which directs that only the Illinois Supreme Court has authority over the conduct of judges.). Neither Macon County nor its Board was responsible for investigating or providing the policy regarding sexual harassment occurring within the court system. (Judge John Greanias dep., p. 112.)

Plaintiff fully availed herself of the Illinois Supreme Court's sexual harassment policy. In October of 1995, Plaintiff reported her sexual harassment allegations to the presiding judge's administrative assistant, Janice Shonkwiler, who told Plaintiff to talk directly with Judge Greanias and gave Plaintiff Judge Greanias' home phone number. (Janice Shonkwiler dep., p. 43.) Plaintiff thereafter called Judge Greanias and reported her allegations directly to him. Janice Shonkwiler also reported the allegations directly to Judge Greanias. (Janice Shonkwiler dep., p. 67.) Judge Greanias addressed Plaintiff's complaints by speaking directly with Judge Sappington.

Judge Greanias also gave Plaintiff the option to take a fully paid administrative leave to separate herself from Judge Sappington while the matter was under investigation. Thereafter, Judge Greanias arranged reassignment of the Plaintiff to Judge Diamond, allowed Plaintiff to

return to Judge Sappington at her request and also reassigned her to Judge Francis who was located in a separate building from Judge Sappington. (Judge John Greanias dep., pp. 72-82.)

#### f.
#### Macon County's Lack of Knowledge of Harassment Allegations

Plaintiff never made a complaint to the County about her alleged sexual harassment. (Melissa Robinson dep., pp. 276-277). Janice Shonkwiler testified that neither she nor the Plaintiff needed to go to any representative of the county to report the complaints because it was a judicial matter that was to be handled within the judicial branch. (Janice Shonkwiler dep., p. 123.) The County was not consulted in regards to the judicial branch's investigation of Plaintiff's allegations and never became aware of them during that time. (Janice Shonkwiler dep., p. 129, 130-31; Melissa Robinson dep., pp. 277-279.)

### V

### ARGUMENT

#### Summary of Argument

Two issues are presented in this summary judgment motion by Macon County:

1.     Was Macon County the "employer" of Melissa Robinson?; and

2.     Can Macon County be found liable under Title VII for the harassment inflicted by a non-employee, Judge Sappington, and, if so, under what standard?

Title VII prohibits employment discrimination. The Act prohibits only "employers" from discriminating against their employees. 42 U.S.C. § 2000e-2(a). Thus, a claimant must establish that she had an employment relationship with the defendant at the time of the alleged discrimination or she lacks jurisdiction to pursue her rights under the Act. *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487, 491-493 (7th Cir. 1997). Therefore, whether a

claimant meets Title VII's definition of "employee" is of critical importance in determining whether he or she may enforce the rights granted by that Act against a particular defendant.

Even if the claimant establishes a Title VII employment relationship with the defendant, employer liability must still be established. Title VII does not specifically address the standards for employer liability. The standard for determining employer liability under Title VII depends on the relationship of the employer to the harasser. There are essentially three categories of employer-harasser relationships that have been considered by the federal courts under Title VII decisions:

(a)    The harasser is an employee who is a supervisor of the claimant;

(b)    The harasser is an employee who is a coworker of the claimant; or

(c)    The harasser is a non-employee third party who has harassed a claimant-employee.

The United Supreme Court has considered the standard for determining employer liability under Title VII when the harasser is the claimant's supervisor with immediate (or successively higher) authority over the employee. It has determined that the employer is vicariously liable for the harassment of the supervisor and is strictly liability if "tangible employment action" was exerted against the claimant. *Burlington Industries v. Ellerth,* 524 U.S. 742, 118 F. Ct. 2257 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 F. Ct. 2275 (1998). If no "tangible employment action" was exerted, an *Ellert /Faragher* affirmative defense is available to the employer. (See, *Robinson v. Sappington*, 351 F.3d 317, Footnote #13 (7th Cir. 2003)).

Those federal courts to address the issue have determined that if the harasser is a coworker of the claimant, a standard similar to negligence that asks whether the organization, through management level employees, knew, or in the exercise of reasonable care, should have

known of the harassment and failed to promptly remedy the hostile work environment. *Turnbull v. Topeka State Hospital,* 255 F. 3d 1238, 1244 (10th Circ. 2001); *Fenton v. Hisan*, 1999 U.S. App. Lexis 7818 (6th Cir. 1999); *Coates v. Sundor Brands, Inc.*, 164 F.3d 1361 (11th Cir. 1999); *Nichols v. Azteca Restaurant Enters.*, 256 F.3d 864, 875 (9th Cir.2001)**;** See also Judge Thomas decent in *Burlington Industries v. Ellerth,* 118 F. Ct. 2257, 2273 (1998). This standard of liability requires the claimant to prove two elements; (1) the employer's knowledge of the harassment, and (2) the employer's failure to promptly and effectively take remedial action to correct it. Even after the advent of the affirmative defense outlined in *Ellerth* and *Faragher*, the negligence standard "still applies to sexual harassment by coworkers." *Burrell v. Star Nursery*, 170 F.3d 951, 955 (9th Cir.1999); *Swinton v. Potomac Corp.*, 270 F.3d 794, (9th Cir. 2001).

If the harasser is a non-employee third party, most courts that have considered the issue have adopted a standard similar to that applicable to coworker harassment. This approach follows the federal regulations enacted pursuant to Title VII, Section 1604.11(e) of the EEOC Guidelines, 29 C.F.R. 1604.11(e). (See, *Quinn v. Green Tree Print Corp.,* 159 F. 3d 759, 766 (2nd Circ. 1998); *Berry v. Delta Airlines,*, 260 F. 3d 803, 811 (7th Circ. 2001)). Section 1604.11(e) provides:

> "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the work place, when the employer...knows or should have known of the conduct and failed to take immediate and appropriate corrective action. In reviewing these cases the (EEOC) will consider the extent of the employer's control and other legal responsibilities which the employer may have with respect to conduct of such non-employees".

Like the standard applicable to co-worker harassment, the claimant must prove both (1) the employers knowledge of the harassment by the non-employee, and (2) the employer's failure to promptly and effectively take remedial action to correct it. The touchstone for the federal

approach to third-party harassment is control - the extent to which the employer has the ability and responsibility to control the offending third party. The applicable federal regulation, Section 1604.11 (e), explicitly states that the EEOC will consider the level of control when reviewing administrative claims brought before it.

Federal courts hearing third-party harassment cases have similarly focused on the level of control in evaluating the employer's obligation to respond to claims of harassment. *Lockard v. Pizza Hut, Inc.*, 162 F. 3d 1062, 1072 (10th Circ. 1998); *Zupman v. State of Illinois,* 1999 WL 281344 (N.D. Ill.); *Jarman v. City of North Lake,* 950 F. Supp. 1375 (N.D. Ill. 1997); *Menchaca v. Rose Records, Inc.,* 1995 WL 151847. See also, Liability of Employer under Title VII of Civil Rights Act for Sexual Harassment of Employees by Customers, Clients or Patrons, 163 A.L.R. Fed. 445, Section 2(a).  In each case finding employer liability for the harassment of third parties, the court found that the employer had the ability to exercise control over the environment or the behavior of the non-employee but failed to do so. That failure translated into liability under a negligence standard.

In our case, the alleged harasser is Associate Circuit Judge Warren Sappington.  He is not an employee of Macon County.  It is undisputed that he was employed by the judicial branch of government of the State of Illinois and was a State of Illinois employee.  (See, *Robinson v. Sappington*, 351 F.3d at Footnote #9, Para. 2 (7th Cir. 2003)).  As a consequence, the standard for determining Macon County's Title VII liability for his alleged harassment is set forth under the decisions applying Section 1604.11(e) of the EEOC Guidelines[4].  With this standard in mind, the

---

[4]    Whether a negligence standard similar to that applicable to co-employees or the EEOC Section 1609.11(e) standard applies herein has not been decided by the Seventh Circuit but Judge Posner has pointed out that the EEOC standard cannot be more onerous than that of the negligence standard.  [See, *Berry v. Delta Airlines, Inc.*, 260 F. 3d 803, 812, Footnote 2 (7th Circ. 2001).

undisputed facts (and unique constitutional constraints applicable herein) establish that Macon

County is entitled to summary judgment for either of the following reasons:

(1)     The Plaintiff cannot establish that is a proper Title VII defense because she was not an employee of Macon County; or, in the alternative,

(2)     Macon County has no Title VII employer liability for the alleged harassment of Judge Sappington, a non-employee, under the Section 1604.11(e) standard because:

    a.     Macon County did not know, nor should it have known, of the alleged harassment;

    b.     Macon County had no control over a state judge and therefore could not take remedial action against him; or

    c.     Macon County had no control over Melissa Robinson's job duties and assignments and therefore could not take remedial action with respect to altering her employment environment.

Plaintiff's failure to prove any one of the above listed factors entitles Macon County to

summary Judgment.  As will be come apparent in the discussions below, control is of paramount

importance under both issues.  The defendant's control over the claimant's job is a major factor

in determining if the claimant was an employee of the defendant and the defendant's control over

the alleged harasser is a major factor in applying the Section 1604.11(e) standard for determining

liability for non-employee harassment.

## 1.

### MACON COUNTY WAS NOT PLAINTIFF'S EMPLOYER

In order for Plaintiff to prevail against Macon County she must have a traditional

employment relationship with Macon County which is generally determined by general

principles of agency.  *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487, 491-93 (7th

Circuit 1997).

The question of whether a claimant may assert a Title VII claim against a de facto or joint employer is a question that Seventh Circuit has not decided. Even if such an abstract employment relationship could be the basis of a Title VII claim, it makes little difference herein. The law is clear that it is incumbent on the claimant to establish that the defendant had control over plaintiff's job duties and responsibilities in order show any type of employee/employer relationship.

In *Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 488 (7th Cir.1996), the Seventh Circuit decided a case involving a Title VII claim against an entity with which the plaintiff did not have a direct employment relationship. The plaintiff was an independent contractor. *Alexander* held that the Title VII claim failed because the plaintiff must have a traditional employment relationship with the defendant in order to maintain a Title VII action. *Alexander*, 101 F.3d at 491-93. The *Alexander* court adopted the common-law "general principles of agency" test for determining when an employer/employee relationship under Title VII exists. *Alexander*, at 492; See also, *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). The test requires consideration of five factors: (1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job. *Alexander*, at 492 (quoting *Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 438 (7th Cir.1996)). *Alexander* emphasized that, "Of these factors, the extent of control and supervision over the worker is the most significant in determining the employment status." *Alexander* at 493; See also, *Hojnacki,* at 549.

Courts have recognized two other types of employment arrangements under Title VII claims; de facto and joint employer relationships. Analysis of de facto or joint employer liability is very similar to a "general agency" analysis in that the single most important factor is control. The de facto employer theory addresses situations where a formal employment relationship may be absent, but the defendant is so extensively involved with the plaintiff's day to day employment that the defendant is the "real" employer for all intents and purposes, including Title VII liability. Control of the plaintiff's duties and responsibilities determines this issue. *E.E.O.C. v. State of Illinois*, 69 F.3d at 171-72 (noting that an entity that "pulls the strings" in the background, and essentially controls employment decisions will be considered the de facto employer for purposes of Title VII liability). See also *Kerr v. WGN Continental Broadcasting Co.,* 229 F.Supp.2d 880, 886 (N.D. Ill. 2002).

The same analysis applies when determining joint employer liability under Title VII. Factors that courts have considered when determining whether a company is a joint employer are: (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions. *Teamsters Local Unions Nos. 75 & 200 v. Barry Trucking, Inc.*, 176 F.3d 1004, 1008 (7th Cir.1999) (quoting *DiMucci Constr. Co. v. NLRB*, 24 F.3d 949, 952 (7th Cir.1994)); *Lowe v. Wolin-Levin, Inc*. 2004 WL 1534115, *2 (N.D.Ill.). All these factor are designed to answer the question of an organizations control over the claimant. *Lowe v. Wolin-Levin, Inc*. 2004 WL 1534115, *2-3 (N.D.Ill.).

In our case, it is not disputed that the State of Illinois was an employer of the Plaintiff. The issue raised herein by the Plaintiff is whether Macon County was a joint employer of the Plaintiff with the judicial branch. ( See, *Robinson v. Sappington*, 351 F.3d at Footnote #9, Para. 3

(7th Cir. 2003)).  In order to establish joint employment, all courts that have considered this issue require that Macon County's control over Robinson's job and its duties must be established by the Plaintiff.

<u>Macon County Had No Control Over The Plaintiff's Job</u>

As noted, the factors to be considered in determining joint employment are; (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions..

There is no factual dispute that the judicial branch had full and absolute control over each of these four factors.  Melissa Robinson was a judicial clerk hired by Judge Sappington with the approval of the Presiding Judge, John Greanias.   Her personnel filed was kept with and maintained solely by Janice Shonkwiller[5], the administrative assistant to the Presiding Judge.  Robinson's day to day responsibilities were determined by the judge she clerked for, principally Judge Sappington.  All of her work rules and conditions of employment were wholly decided by the judges and only the Presiding Judge had authority to fire her.

Macon County had no control over any of these factors.  Its sole relationship to Melissa Robinson occurred as a result of Illinois' unique system of government that requires a county to budget for and pay the salary and benefits of non-judicial employees of the judicial branch where their courthouse responsibilities occur. In *Orenic v. Illinois State Labor Relations Board,* 127 Ill. 2d 453, 475, 480 (Ill. 1989), (cited with approval in *Warren v. Stone*, 958 F. 2d 1419 (7th Cir.

---

[5]   Extensive testimony has also been obtained and cited in the undisputed facts relating to Janice Shonkwiller's employment status.  Her employer is also solely the judicial branch.  Like Robinson, she also was solely hired by Judge Greanias who had absolute control over her job duties and responsibilities.  Her only relationship with Macon County was the same as Robinson's; The County simply paid her salary, which was determined by Judge Greanias, and her benefits.   The County had no other relationship with her.

1992), the Illinois Supreme Court has held that the fact that a county pays the salaries and benefits of non-judicial court employees does not make the county a joint employer. Specifically, the Illinois Supreme Court stated:

> "Similarly, the fact that the county pays salaries of other non-judicial employees in the judicial branch, or even administers personal policies covering them by agreement with the judicial branch, does not in constitutional or statutory terms make the county their employer. Rather, the state, personified by the chief judge of each circuit, is the employer." (*Orenic*, at page 475).

In considering the joint employment issue, it is extremely important to note that Macon County could not have controlled Robinson's job duties and assignments even if it desired to do so. Macon County's control over a judicial clerk's employment is incompatible with "separation of power" concerns under the Illinois Constitution. All courts that have recognized joint employment dealt with private sector businesses. The only two courts that have considered the joint employment issue when the two alleged employers are units of separate branches of government are *Orenic v. Illinois State Labor Relations Board,* 127 Ill. 2d 453, (Ill. 1989) and *Warren v. Stone*, 958 F. 2d 1419 (7th Cir. 1992). Both courts found that no joint employment existed.

In *Orenic*, the Illinois Supreme Court addressed whether counties may be considered joint employers of various circuit court non-judicial employees, including judicial clerks[6], for purposes of collective bargaining under the Illinois Public Labor Relations Act. The plaintiff argued that the county was a joint employer of the non-judicial court employees because it paid their salaries and provided their benefits. In holding that the state, personified by the chief judge

---

[6] In *Orenic*, the Supreme Court was faced with the consolidation of four cases that involved decisions by the Illinois State Labor Relations Board finding that non-judicial employees of the judicial branch were joint employees of the county and the judiciary. The *Orenic* case involved public defenders. But, the three cases included judicial clerks, bailiffs, stenographers, and jury commission clerks. The Illinois Supreme Court consolidated the four cases to consider the joint employment issue.

of each circuit, is the sole employer, the Illinois Supreme Court found Plaintiff's argument unpersuasive, stating, "The constitutional tripartite separations of power strengthens our conclusion that the state, not a county, is the ***sole*** employer of all court employees". (emphasis added). *Orenic*, 127 Ill. 2d at 476. Treating counties as joint employers would pose severe separations of power problems "unduly trenching on the judicial branch's separate and equal status". *Orenic*, 127 Ill. 2d at 485. The Court's reasoning was:

> "Not only are non-judicial employees of the court the employees of the state agencies rather than the county, but even the county's salary setting and facility providing function is subject to the court's ultimate power to insure reasonable adequacy. Except for setting and paying salaries and providing facilities subject to ultimate court power, the counties are entitled to no other role in regards to the court's non-judicial employees that might arguably be considered the role of a joint employer. And, as previously stated, the Illinois Constitution contemplates 'only one unified court system operating under state law' and 'does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entities'." *Orenic,* 127 Ill. 2d 453, 480.

In *Warren v. Stone*, 958 F. 2d 1419 (7th Cir. 1992), the Seventh Circuit relied on *Orenic* to address a similar separation of powers concern. The *Warren* court was confronted with a Section 1983 action wherein employees from the Cook County public defender's office claimed they were denied property rights without due process of law as a result of their termination without a hearing as required under the county's disciplinary procedures. Relying on *Orenic*, the Seventh Circuit held that employees of the public defender's office were solely state employees[7] and thus not entitled to a county provided evidentiary hearing.

The plaintiff in *Warren* attempted to distinguish *Orenic* arguing that public defenders were joint employees of both the state and the county. *Warren*, at p. 1423. The plaintiff asserted

---

[7]  The specific issue of who employs public defenders was never raised or addressed in *Orenic*. Since public defenders represented a class of plaintiffs in one of the four consolidated cases found in *Orenic*, *Warren* appears to have assumed that the Illinois Supreme Court found public defenders to be solely state judicial employees. This assumption was later proven wrong in *Johnson v. Halleran*, 194 Ill. 2d 493 (2000).

that *Orenic* refused to recognize counties as joint employers of public defenders only because of "separation of power" concerns that were not present in her case. The plaintiff claimed that the collective bargaining issue found in *Orenic* created substantial separation of power concerns that would arise if the Court required Cook County to hold a disciplinary proceeding for public defenders. Plaintiff suggested that such hearings would only have a "peripheral impact" on the judiciary. The Seventh Circuit disagreed stating:

> "Holding PDO employees subject to the elaborate county personnel policy would pose the same sort of separations of power problems that the *Orenic* court sought to prevent. The Illinois Supreme Court found that allowing the counties to assert joint employer status 'would be an evisceration of the courts as free and independent employers of their own employees, since authority over compensation is central to employer status.' (Citation omitted). Like compensation, authority over the standards for disciplining and firing employees is 'central to employer status', and should be left solely in the hands of the judicial branch." *Warren* at page 1423.

*Orenic* and *Warren*[8] stand for the proposition that "separation of power" concerns arise when a party is asserting joint employment between the judicial branch and a county. *Orenic* and *Warren* have concluded that only one employer can be recognized and no sharing of employment control can be allowed to exist. Herein, it is undisputed that control of the Plaintiff's job rested solely with the State through its judicial branch.

Without control, Macon County can not be considered a Title VII employer of Robinson, traditional, joint or otherwise. When the joint employment question implicates "separation of

---

[8] The Illinois Supreme Court later concluded that public defenders are only county employees, not state employees. *Johnson v. Halleran,* 194 Ill. 2d 493 (2000). The *Johnson* case considered the question of whether sovereign immunity barred a legal malpractice action in circuit court against the Cook County Public Defender's Office. The Public Defender's Office argued that it was entitled to have its malpractice action brought in the Illinois Court of Claims. The Illinois Supreme Court determined that public defenders are county employees, not state employees, allowing the malpractice claim to proceed in circuit court.

  *Johnson* does not effect the separation of power pronouncements articulated in *Orenic* and *Warren* because it did not address a "joint employment" assertion which would involve a conflict between separate branches of government. By deciding that public defenders were solely county employees, the *Johnson* decision did not create an "undue trenching" on any other branch of government's separate and equal status. Herein, Plaintiff is asserting joint employment.

power" concerns, addition problems not found in those cases addressing private sector employers arise. "Separation of power" barriers do not allow one unit of government to jointly exercise control over another branch of government's employees. Since Robinson fails to meet Title VII's critical obligation of being an employee of Macon County, she may not enforce the rights granted by that Act against Macon County.

**2.**

**MACON COUNTY'S LIABILTY FOR
HARASSMENT CAUSED BY A NON-EMPLOYEE**

Plaintiff faces a second hurdle in this action – the alleged harasser, Judge Warren Sappington, was not employed by the Macon County. As previously discussed, Title VII employer liability for the harassment of non-employees appears to be controlled by the standard set forth in Section 1604.11(e) of the EEOC Guidelines, which states:

> "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the work place, when the employer...knows or should have known of the conduct and failed to take immediate and appropriate corrective action. In reviewing these cases the (EEOC) will consider the extent of the employer's control and other legal responsibilities which the employer may have with respect to conduct of such non-employees".

Under Section 1604.11(e), Robinson must establish each of the following to prove liability against Macon County under her Title VII claim:

a.    Macon County knew, or should it have known, of the alleged harassment; and

b.    Macon County failed to take prompt remedial action.

In order to implement remedial action, Section 1604.11(e) makes clear that control by the defendant over the non-employee is a critical factor in determining liability. Section 1604.11(e) specifically provides, "In reviewing these cases the (EEOC) will consider the extent of the employer's control and other legal responsibilities which the employer may have with respect to

29

conduct of such non-employees". Therefore, it is apparent that Plaintiff must establish, in addition to knowledge of the harassment, that Macon County had enough control over Judge Sappington to take remedial action against him, or at the very least, enough control over Melissa Robinson's job duties and assignments so that it could take remedial action with respect to altering her employment environment in regards to her relationship with Sappington. Plaintiff can not establish any of these factors.

<u>Macon County Had No Knowledge Of The Harassment</u>

Section 1604.11(e) of the EEOC guidelines require that Plaintiff prove that Macon County knew, or reasonably should have known, of the alleged hostile work environment. (See also, *Masarella v. Quality Inn, Inc.*, 1989 WL 75441 (N.D. ILL. 1989); *Ligenza v. Genesis Health Ventures of Massachusetts*, 955 F. Supp. 266 (D. Mass 1998).

Herein, there is no evidence that Macon County knew of the alleged hostile work environment. Initially, Macon County does not involve itself in the workings of the judicial branch. The only way Macon County could have know of the alleged harassment is if it was reported to it. The facts establish that neither the Plaintiff (Robinson dep. pp. 276-277) nor any court personnel (Janice Shonkwiller dep. pp. 123, 129-131) ever reported the allegations of sexual harassment to the county nor did they believe they were required to do so. The only persons to whom Plaintiff reported her complaints were judicial branch employees, Judge Greanias and Janice Shonkwiler, his administrative assistant (See footnote 2) (Janice Shonkwiller dep. p. 43, 123; Robinson dep. p. 276-277; and Judge Greanias dep. p. 109-112). Judge Greanias testified that allegations of sexual harassment should not be reported to the county and that the county should not get involved with judicial branch employment issues. (Greanias dep. p. 111-112). There is no evidence suggesting that Macon County knew or should

have known of the allegations. Palintiif can not establish Title VII liability against Macon County unless Macon County knew of the harassment. The undisputed facts establish that Macon County had no such knowledge and that because of the completely independent nature of the judiciary that isolates the internal employment matters from Macon County, it could not have known of the harassment allegations.

Macon County Could Not Have Remedied Harassment
Inflicted By A Judge Against His Clerk

The standard for Title VII liability set forth in the EEOC Guidelines requires Plaintiff to show that, (1) Macon County knew or should have known of Judge Sappington's conduct and (2) failed to take immediate and appropriate corrective action. The second prong contemplates that Macon County has sufficient control over the non-employee, Judge Sappington, to undertake corrective action against him.

Constitutional limitations bar Macon County from passing a sexual harassment policy applicable to the judiciary and keeps Macon County from exercising any disciplinary control over Judge Sappington. Herein, the Illinois Supreme Court in fact did adopt a sexual harassment policy that was applicable to Judge Sappington's alleged conduct. Macon County was constitutionally handcuffed from adopting rules of conduct applicable to Judge Sappington and from dispensing disciplinary action against him. The Illinois Supreme Court's sexual harassment policy was the constitutionally proper vehicle for policies applicable to sexual harassment by judges.

Furthermore, the same constitutional "separation of power" constraints addressed in the previous section create as much of a barrier to Macon County's ability to control Judge Sappington as it creates regarding Macon County's ability to control Plaintiff's work environment. Granting the County the power to initiate sexual harassment remedies against a

state court judge would also entail "undue trenching on the judicial branch's separate and equal status".  In fact, it is clear that this delineation between the County and the judicial branch would also bar the County from reassigning Robinson or otherwise alter her employment conditions as a potential remedy herein.

Finally, in a real sense, it is clear that Macon County never exercised control over Judge Sappington or any part of the judiciary.  The evidence establishes that the judiciary was always considered to be and treated as an independent entity completely separate and distinct from Macon County.

## VI.

### CONCLUSION

Macon County is entitled to summary judgment because it can not be held liability as a Title VII employer under the Plaintiff's Complaint for each of the following reasons:

1    The Plaintiff can not establish Title VII jurisdiction over Macon County because she was not an employee of Macon County; or, in the alternative,

2    Macon County has no Title VII employer liability for the alleged harassment of Judge Sappington, a non-employee, under the Section 1604.11(e) standard because:

   a.    Macon County did not know, nor should it have known, of the alleged harassment;

   b    Macon County had no control over a state judge and therefore could not take remedial action against him; or

   c.    Macon County had no control over Melissa Robinson's job duties and assignments and therefore could not take remedial action with respect to altering her employment environment.

WHEREFORE, the Defendant, MACON COUNTY, respectfully prays for an order of this court granting MACON COUNTY'S Third Motion for Summary Judgment in regards to its substantive[9] liability as an alleged Title VII employer of the Plaintiff under her claim.

CASSIDY & MUELLER,

By:    s/ JOHN E.CASSIDY, III
       Attorneys for the Defendant,
       MACON COUNTY

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Diane Baron            dbaron@clausen.com, pkebr@clausen.com

Terence Corrigan       tcorrigan@atg.state.il.us, jginter@atg.state.il.us, tflinn@atg.state.il.us, lknoles@atg.state.il.us

Melissa McGrath        mmcgrath@tnwlaw.com

Karen McNaught         kmcnaught@atg.state.il.us, jginter@atg.state.il.us, lbrewer@atg.state.il.us, lknoles@atg.state.il.us

s/      JOHN E. CASSIDY, III
        CASSIDY & MUELLER
        416 Main Street, Suite 323
        Peoria, IL  61602
        Telephone: 309/676-0591
        Fax: 309/676-8036
        E-mail: jcassidy@cassidymueller.com

---

[9] See footnote #1 herein