## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| MELISSA ROBINSON,<br>(p/k/a/ MELISSA SCHROEDER)     )<br>              )<br>        Plaintiff,    )<br>       vs.                 )<br>              )<br>JUDGE WARREN A. SAPPINGTON   )<br>SIXTH JUDICIAL CIRCUIT,       )<br>(IN OFFICIAL CAPACITY)       )<br>              )<br>       Defendant,   )<br>MACON COUNTY,         )<br>              )<br>       Defendant.   ) | Case No. 1:04-cv-1360 |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S RESPONSE
### TO DEFENDANT, MACON COUNTY'S
### THIRD MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

Macon County's Third Motion for Summary Judgment should be stricken.  Macon

County raises the same issues in its recent motion as it did in its first motion ruled upon on

March 23, 2001, and in its second motion found to be moot in 2002.  Substantively, Macon

County's motion fails.  There are significant issues of fact as to Macon County's status as

Plaintiff's joint employer and whether Macon County knew or should have known Judge

Sappington was sexually harassing Plaintiff.

There are numerous facts in the record which establish Macon County played a

significant role in Plaintiff's employment.  Macon County paid Plaintiff, provided her insurance

and workers compensation, controlled the Macon County Courthouse facilities, Plaintiff's work

hours and vacations, and Plaintiff was supervised by a Macon County employee.

Under either theory to determine the liability of more than one entity for discriminatory behaviors, there are more than sufficient issues of facts to allow the jury to decide Macon County's role in this matter.[1]

## II.    PLAINTIFF'S RESPONSE TO DEFENDANT'S ALLEGEDLY UNDISPUTED MATERIAL FACTS[2]

### A.    Undisputed Material Facts.

15.    At all relative times herein, Janice Shonkwiler worked for Judge Greanias as his administrative assistant. (Janice Shonkwiler, dep. p. 7; Chief Judge John Shonkwiler, dep. pp. 18-19; Judge John Greanias, dep. pp. 13-14).

Plaintiff admits.

16.    Janice Shonkwiler was originally hired as Judge John Greanias' judicial secretary in March of 1987. (Janice Shonkwiler, dep. p. 8; p. 131).

Plaintiff admits.

19.    In approximately December of 1995, Janice Shonkwiler was made Judge Greanias' administrative assistant which was about the time the name of judicial secretaries

---

[1]Plaintiff believes Macon County has mischaracterized the facts as the facts have been ruled upon by the Seventh Circuit Court of Appeals.  Plaintiff has not commented on these misrepresentations, except where the misrepresentations relate to the issues raised in Macon County's Third Motion for Summary Judgment.

[2]Plaintiff objects to Macon County's adoption of alleged undisputed facts which were filed in excess of four years ago, in September 2000 (not September 2001 as claimed in Defendant's Motion) in support of its First Motion for Summary Judgment.  Defendant's failure to specifically outline the facts it relied upon within its current filing should preclude Macon County from relying upon those facts.  Local Rule 7.1(D); Waldridge v. American Hoechst Corp., 24 F.3d 918 (7th Cir. 1984).  Alternatively, Plaintiff adopts her answers to Defendant, Macon County's earlier filed paragraphs 1-14 of its earlier Statement of Undisputed Facts.

changed to judicial clerks. (Janice Shonkwiler, dep. p. 10; Judge John Greanias, dep. pp. 113 and 114).

> Plaintiff admits.

20.    Janice Shonkwiler was not hired by the county but was rather hired by the judiciary. (Chief Judge John Shonkwiler, dep. p. 53).

> Plaintiff admits.

24.    Janice Shonkwiler was responsible for all court staff, bailiffs, county paid court reporters and judicial clerks. (Janice Shonkwiler, dep. p. 9). Janice Shonkwiler was required to assure that a court reporter and a judicial clerk were in each courtroom while in session. (Janice Shonkwiler, dep. p. 12).

> Plaintiff admits.

26.    At all relevant times herein MELISSA ROBINSON was a judicial clerk. (Chief Judge John Shonkwiler, dep. p. 18; Janice Shonkwiler, dep. p. 20).

> Plaintiff admits.

28.    Judicial clerk's job functions include assisting with a judge's secretarial work, serve as courtroom clerk and do any work requested by the judge. (Judge Greanias, dep. p. 107).

> Plaintiff admits.

30.    Judicial clerks are hired and fired by the judicial department. (Chief Judge John Shonkwiler, dep. p. 50).

> Plaintiff admits.

35.    All court staff personnel, which includes judicial clerks and court reporters, have personnel files that are kept in Judge Greanias' administrative assistant's office. (Janice

3

Shonkwiler, dep. p. 119).

        Plaintiff admits.

37.    Judge John Greanias had authority to terminate Plaintiff without getting approval

from the county board or any county representative. (Janice Shonkwiler, dep. p. 122).

        Plaintiff admits.

39.    The judicial branch of the Sixth Judicial Circuit in Macon County has a sexual

harassment policy in place that came from Chief Judge Shonkwiler which was handed down

from the Illinois Supreme Court through the court system. (Janice Shonkwiler, dep. p. 13, 17;

Judge John Greanias, dep. p. 111; Chief Judge John Shonkwiler, dep. p. 16).

        Plaintiff admits.

40.    The Supreme Court's sexual harassment policy and directives apply to all judicial

and non-judicial personnel to assure work places are free from sexual harassment. The judicial

personnel are judges and the non-judicial personnel include judicial clerks, court reporters and

Janice Shonkwiler, administrative assistant to Judge Greanias. (Chief Judge John Shonkwiler,

dep. pp. 16-17, 19, 49-50).

        Plaintiff admits.

44.    Judicial clerks and non-judicial personnel such as Janice Shonkwiler fall under

the Illinois Supreme Court's sexual harassment policy. (Chief Judge John Shonkwiler, dep. pp.

49-50).

        Plaintiff admits.

45.    In October of 1995 the Plaintiff reported problems with JUDGE SAPPINGTON

to Janice Shonkwiler who told Plaintiff to talk to Judge Greanias because Judge Greanias was

4

her superior. (Janice Shonkwiler, dep. p. 43).

Plaintiff denies her report occurred in October of 1995[sic].

      (i).    Plaintiff admits that in October of 1996 she reported these problems to Janice Shonkwiler.

46.    Janice Shonkwiler also reported Plaintiff's complaint to Judge Greanias. (Janice Shonkwiler, dep. p. 67).

Plaintiff admits.

47.    When the Plaintiff complained to Janice Shonkwiler, she was told to go to Judge Greanias. Janice Shonkwiler testified that Plaintiff should not have to go to any representative or official of the county. (Janice Shonkwiler, dep. p. 123).

Plaintiff admits.

49.    At all relevant times, Ruth Young was a judicial clerk working for Judge Greanias. (Janice Shonkwiler, dep. p. 117).

Plaintiff admits.

51.    No court staff is hired by anyone from the county. They all go through Judge Greanias or his administrative assistant, Janice Shonkwiler. (Janice Shonkwiler, dep. p. 137).

Plaintiff admits.

63.    Nathan Maddox was an employee of the Illinois Administrative Offices of the courts. (Nathan Maddox, dep. p. 4).

Plaintiff admits.

64.    The court's commission is a body that has disciplinary authority over judges. (Nathan Maddox, dep. p. 16).

Plaintiff admits.

70.    Ruth Young held the same position as the Plaintiff, judicial clerk for Judge Greanias. (Melissa Robinson dep. p. 278).

Plaintiff admits.

72.    Ruth Young was employed as Judge Greanias' judicial clerk when his previous clerk, Janice Shonkwiler was promoted to Judge Greanias' administrative assistant. (Melissa Robinson dep. p. 278).

Plaintiff admits.

73.    Ruth Young was a judicial clerk for Judge Greanias. Judge Greanias hired her. (Ruth Young, dep. p. 122).

Plaintiff admits.

74.    Judge Greanias informed Ruth Young when she was receiving raises and was responsible for fired (sic) her. (Ruth Young, dep. p. 123).

Plaintiff admits.

75.    No one from the county board ever got involved with anything in regards to Ruth Young's day-to-day employment or duties nor was the county involved in her hiring, firing and raises. (Ruth Young, dep. p. 123).

Plaintiff admits.

**B.** **Material facts claimed to be disputed**

21.    All aspects of Janice Shonkwiler's employment fall under the judicial branch of government. (Chief Judge John Shonkwiler, dep. p. 53).

Plaintiff denies.

(i).    Judge John Shonkwiler testified, "I think so", only when asked whether other than the fact of payment and benefits, all aspects of Janice Shonkwiler's employment appeared to have fallen under the judicial branch.  (Plaintiff's ex. 13, Judge Shonkwiler Dep., 53:12-16)

22.    Administrative assistants similar to Janice Shonkwiler are hired and fired by the presiding judge. (Chief Judge John Shonkwiler, dep. p. 50).

Plaintiff denies.

(i).    Plaintiff denies the testimony by Judge John Shonkwiler establishes this fact as undisputed.

(ii).    The Presiding Judge did not testify to the same.

23.    Administrative assistants similar to Janice Shonkwiler are under the exclusive control and supervision of the judicial branch in the county. (Chief Judge John Shonkwiler, dep. p. 50).

Plaintiff denies.

(i).    Plaintiff denies the testimony by Judge John Shonkwiler establishes this fact as undisputed.

(ii).    The Presiding Judge did not testify to the same.

25.    All of Janice Shonkwiler's employment has been with the court as court

staff. Judge Greanias is and has been the only person above her. (Janice Shonkwiler, dep. p. 10, 133).

               Plaintiff denies.

               (i).     Although Plaintiff admits Janice Shonkwiler testified her employment had been with the court and court staff and Judge Greanias was the only person above her, Plaintiff denies this testimony establishes this fact as undisputed.

               (ii).     No organizational chart nor job descriptions were produced in the course of discovery.

        27.     Judicial clerks fall within under the judicial branch. (Chief Judge John Shonkwiler, dep. p. 41).

               Plaintiff denies.

               (i).     Chief Judge John Shonkwiler stated only, "I think they would." when asked whether judicial clerks in counties other than Piatt fall within the judicial department.  (Plaintiff's ex. 13, Judge Shonkwiler Dep., 40:18-24; 41:1-7)

        29.     The judges control the job responsibilities and duties of judicial clerks. Neither the county board nor anyone in the county system outside the judiciary has any say whatsoever with what a judicial clerk does in regards to her job functions. (Judge John Greanias, dep. p. 108).

               Plaintiff denies.

               (i).     During her employment Plaintiff was always told she was a county employee.  (Plaintiff's ex. 6, Plaintiff's Dep., 144:5-8)

               (ii).     Judge Sappington testified he understood Plaintiff to be a county

employee and he told Plaintiff she was a county employee (Plf. Ex. 9, Sappington dep. p. 12:20-24; 13:1).

        (iii).    Janice Shonkwiler, court administrative assistant, was at all relevant times employed by Macon County. (Plf. Ex. 1, Shonkwiler dep., 7:6-7; 8:10-17)

        (iv).    Janice Shonkwiler prepares payroll sheets for court staff and forwards them to the county auditor. (Plf. Ex. 1, Shonkwiler dep., 135:2-6).

        (v).    In addition to payroll the county consults Janice Shonkwiler concerning insurance issues. (Plf. Ex. 1, Shonkwiler dep., 135:22-24)

        (vi).    The county consults with Janice Shonkwiler concerning worker's compensation claims. (Plf. Ex. 1, Shonkwiler dep., 136:1-3).

        (vii).    Janice Shonkwiler's department receives supplies through the county. (Plf. Ex. 1, Shonkwiler dep., 136:3-7).

        (viii).    Shonkwiler's department employees receive IMRF retirement funds through the county auditor's office. (Plf. Ex. 1, Shonkwiler dep., 136:3-7).

        31.    Judicial clerks, such as the Plaintiff, are not hired or fired by the county but rather by the judiciary. All aspects of judicial clerks employment, such as the Plaintiff's, fall under the judicial branch. (Chief Judge John Shonkwiler, p. 53).

        Plaintiff denies.

        (i).    During her employment Plaintiff was always told she was a county employee. (Plaintiff's ex. 6, Plaintiff's Dep., 144:5-8)

        (ii).    Judge Sappington testified he understood Plaintiff to be a county employee and he told Plaintiff she was a county employee (Plf. Ex. 9, Sappington dep. p. 12:20-

24; 13:1).

(iii).    Janice Shonkwiler, court administrative assistant, was at all

relevant times employed by Macon County.  (Plf. Ex. 1, Shonkwiler dep., 7:6-7; 8:10-17)

(iv).    Janice Shonkwiler prepares payroll sheets for court staff and

forwards them to the county auditor.  (Plf. Ex. 1, Shonkwiler dep., 135:2-6).

(v).    In addition to payroll the county consults Janice Shonkwiler

concerning insurance issues. (Plf. Ex. 1, Shonkwiler dep., 135:22-24)

(vi).    The county consults with Janice Shonkwiler concerning worker's

compensation claims. (Plf. Ex. 1, Shonkwiler dep., 136:1-3).

(vii).    Janice Shonkwiler's department receives supplies through the

county. (Plf. Ex. 1, Shonkwiler dep., 136:3-7).

(viii).   Shonkwiler's department employees receive IMRF retirement

funds through the county auditor's office. (Plf. Ex. 1, Shonkwiler dep., 136:3-7).

32.    The presiding judge determines the judicial clerk's salary. The county

board only approves a line item total for staff salaries but the presiding judge determines how

that total is appropriated among the staff. The court sets the salaries and the county does not get

involved in those particulars. (Judge John Greanias, dep. pp. 113-115).

Plaintiff denies.

(i).    Judge Patton testified the county board at times denied budget

requests to the judiciary causing staff to not receive any raises or limited raises.  (Plaintiff's ex.

7, Patton Dep., 16:19-23)

41.    Sexual harassment complaints by judicial clerks should be reported within

10

the judicial system to either the judge or presiding judge who should address those issues. (Judge John Greanias, dep. p. 109).

        Plaintiff denies.

        (i).    Plaintiff denies this testimony establishes this fact as undisputed.

        (ii).    Janice Shonkwiler testified her responsibility for personnel matters included if an employee reported a concern about sexual harassment. (Plaintiff's ex. 1, Janice Shonkwiler Dep., 16:4-8)

43.    Neither the county board nor the county was responsible for either investigating or providing policy regarding the sexual harassment alleged in this lawsuit. (Judge John Greanias, dep. p. 112).

        Plaintiff denies.

        (i).    Plaintiff denies the statement outlined above is undisputed. Judge Greanias merely proffered his personal opinion concerning that topic.

        (ii).    Janice Shonkwiler testified she was employed by Macon County and had supervisory responsibilities over all court staff including judicial clerks. (Plaintiff's ex. 1, Janice Shonkwiler Dep., 7:6-7; 8:10-17, 22-24; 9:1-16)

48.    No county representative was involved for any reason nor were they consulted in regards to the Plaintiff's sexual harassment complaints. (Janice Shonkwiler, dep. p. 129, 130-31).

        Plaintiff denies.

        (i).    Janice Shonkwiler, court administrative assistant, was at all relevant times employed by Macon County. (Plf. Ex. 1, Shonkwiler dep., 7:6-7; 8:10-17)

(ii).   Janice Shonkwiler had supervisory responsibilities over all court staff including, bailiffs, county paid court reporters and judicial clerks.  (Plf. Ex. 1, Shonkwiler dep., 8:22-24; 9:1-16)

(iii).   Plaintiff reported problems with Judge Sappington to Janice Shonkwiler. (DSUF paras. 45-46)

(iv).   Janice Shonkwiler testified she was employed by Macon County and had supervisory responsibilities over all court staff including judicial clerks.  (Plaintiff's ex. 1, Janice Shonkwiler Dep., 7:6-7; 8:10-17, 22-24; 9:1-16)

(v).   Plaintiff denies the statement outlined adequately reflects Janice Shonkwiler's testimony.

(vi).   Janice Shonkwiler testified she did not consult anyone but she did not know if Judge Greanias would have.  (Plaintiff ex.1, Janice Shonkwiler Dep., 129:5-15)

50.   Judge Greanias set all salaries for court staff and all of their hours of employment. (Janice Shonkwiler, dep. p. 123).

Plaintiff denies.

(i).   Plaintiff denies Janice Shonkwiler's testimony outlined in paragraph 50 establishes the fact as outlined as undisputed.

(ii).   Judge Sappington testified that the chairman of the varied committees on the County Board decided the hours, days, vacation period and salaries for all county employees including the people who work in the court system.  (Plaintiff's ex. 9, Sappington Dep., 158:20-24; 159:1-15)

56.   Judge John Davis indicated the county board did not in any way get involved in

12

the hiring and firing of judicial personnel and that the county had no control over such matters. They only set budgets. (Judge John Davis, dep. p. 55).

Plaintiff denies.

(i).    To the extent Defendant presents the above testimony of Judge Davis as establishing an undisputed fact Plaintiff denies.  In fact, Judge Davis further testified judicial clerks were county and not state employees.  (Plaintiff's ex. 8, Davis Dep., 70:4-10; 71:2-15)

58.    The sexual harassment policy of the judicial branch of the Sixth Judicial Circuit came from the administrative office of the Illinois Supreme Court and the county board did not get involved. (Judge John Davis, dep. p. 58).

Plaintiff denies.

(i).    Plaintiff denies the deposition testimony of Judge Davis relied upon by Defendant establishes the fact as outlined.

(ii).    Judge Davis testified only that he thought the sexual harassment policy came from the administrative office but he was not sure.  (Plaintiff's ex. 8, Davis Dep., 58:1-18)

59.    Disciplinary action of judges must go through the presiding judge and would not involve the county. (Judge John Davis, dep. p.60).

Plaintiff denies.

(i).    Plaintiff denies the deposition testimony of Judge Davis relied upon by Defendant establishes the above fact as outlined.

(ii).    Judge Davis merely testified that he would agree that disciplining

a judge in regards to conduct directed to one of his staff members would not involve the county

board.  (Plaintiff's ex. 8, Davis Dep., 60:1-13)

      (iii).    Judge Davis was merely rendering a personal opinion and is not

qualified to represent such a view.

60.    If Judge John Davis was accused of sexual harassment and the county or its board

initiated a directive instructing him to cease and desist he would not feel subject to their

authority. (Judge John Davis, dep. p. 63-64).

      Plaintiff denies.

      (i).    Judge Davis' unqualified view of a legal issue in this case does not

establish the fact as undisputed.

62.    In regards to day-to-day control or the decision to hire and fire judicial clerks, the

county board did not get involved in those decisions. (Judge John Davis, dep. pp. 74-75).

      Plaintiff denies.

      (i).    Plaintiff denies the deposition testimony of Judge Davis establishes this

fact as undisputed.

      (ii).    Judge Davis does not qualify to establish such a fact as undisputed.

65.    Judicial clerks are classified as "non-state paid judicial branch

employees" who are paid by the county but work under the supervision of the judicial branch and

judicial officers. (Nathan Maddox, dep. p. 20).

      Plaintiff denies.

      (i).    Plaintiff admits Maddox testified judicial clerks are "non-state

paid judicial branch employees" paid by the county but denies Maddox testified clerks worked

under the supervision of the judicial branch and judicial officers.

      (ii).    Maddox testified merely that judicial clerks worked in the judicial

branch and he was unable to proffer a view as to whether the judicial clerks were employed in a

sense by both the State of Illinois as well as Macon County. (Plaintiff's ex. 10, Maddox Dep.,

19:23-24; 20:1-17)

     68.    Plaintiff never went to anybody with the county and made any complaints about

alleged sexual harassment. (Melissa Robinson dep. pp. 276-277).

      Plaintiff denies.

      (i).    Plaintiff testified when she reported Judge Sappington's behaviors

to Janice Shonkwiler, Janice Shonkwiler was a county employee. (Plaintiff's ex. 6, Plaintiff's

Dep., (Day 1) 276:6-20)

      (ii).    Plaintiff testified when she reported Judge Sappington's behaviors to Ruth

Young she believed Ruth Young was a county employee. (Plaintiff's ex. 6, Plaintiff's Dep.,

(Day 1) 276:6-20)

     69.    The county was never aware of Plaintiffs sexual harassment complaints unless

either Janice Shonkwiler or Ruth Young are determined to be county employees. (Melissa

Robinson dep. pp. 277-279).

      Plaintiff denies.

      (i).    Plaintiff denies this testimony establishes this fact as undisputed.

      (ii).    Plaintiff testified when she reported Judge Sappington's behaviors to

Janice Shonkwiler, Janice Shonkwiler was a county employee. (Plaintiff's ex. 6, Plaintiff's

Dep., (Day 1) 276:6-20)

(iii).    Plaintiff testified when she reported Judge Sappington's behaviors to Ruth Young she believed Ruth Young was a county employee. (Plaintiff's ex. 6, Plaintiff's Dep., (Day 1) 276:6-20)

71.    Ruth Young and Janice Shonkwiler were county employees to the same extent that Plaintiff was in that they got their paychecks and insurance through the county but all directions and supervision was received from the judicial branch. (Melissa Robinson dep. pp. 278-79).

Plaintiff denies.

(i).    Plaintiff denies this testimony establishes this fact as undisputed.

(ii).    Moreover, as outlined in Defendant's paragraph 24, Janice Shonkwiler, a county employee, was responsible for court staff, bailiffs, county paid court reporters, judicial clerks and was required to assure that a court reporter and judicial clerk were in each courtroom while in session. (Def's para. 24)

**C.    Immaterial Facts**

18.    The then Chief Judge, Judge Scott, informed Judge Greanias how much pay Judge Greanias could offer Janice Shonkwiler at the time she was hired. (Janice Shonkwiler, dep. p. 132).

Immaterial.

(i).    It is immaterial what process occurred when Janice Shonkwiler was hired nearly ten years prior to the time relevant to Plaintiff's lawsuit.

17.    When Janice Shonkwiler was hired by Judge Greanias to be his judicial secretary, she never met with anybody from MACON COUNTY regarding her application or appointment

16

nor did she submit an application to MACON COUNTY. (Janice Shonkwiler, dep. p. 131).

Immaterial.

(i).    It is immaterial what process occurred when Janice Shonkwiler was hired nearly ten years prior to the time relevant to Plaintiff's lawsuit.

33.    Following Plaintiff's departure as a judicial clerk, Judge Greanias hired Lois Durban as her replacement. (Janice Shonkwiler dep. p. 115-16).

Immaterial.

(i).    It is immaterial who was hired to replace Plaintiff.

34.    The county board had no input in the Durban hiring decision. (Janice Shonkwiler dep. p. 116).

Immaterial.

(i).    It is immaterial what the county board's input into the hiring decision which occurred after Plaintiff was forced to resign.

36.    The county does not have a separate personnel file or anything in addition to what is kept by the court's administrative assistant. (Janice Shonkwiler dep. p. 119-20, 122).

Immaterial.

(i).    Janice Shonkwiler testified the county does not keep personnel files for any of its employees.  Rather, it is up to each office to keep their own files.  (Plf. Ex. 1, Janice Shonkwiler dep. p. 119:5-24; 120:1-4).

38.    Separation of power concerns is one of the reasons why administrative assistants such as Janice Shonkwiler and judicial clerks such as the Plaintiff are controlled by the judicial branch. (Chief Judge John Shonkwiler dep. p. 51-52).

Immaterial.

(i).    It is immaterial what Judge Shonkwiler's personal opinion is as to the theory of Separation of Powers.

42.    If the allegations of sexual harassment involve a judge, such as alleged in this case, neither the county board nor the county should get involved. (Judge John Greanias, dep. p. 111).

Immaterial.

(i).    It is immaterial what Judge Greanias, after the fact, opines in his personal view as to who should be involved in a judge's sexual harassment.

52.    The county board does not get involved in any way in the hiring process of judicial clerks. (Judge Jerry Patton dep. p. 18).

Immaterial.

(i).    It is immaterial what Judge Patton's opinion was as to the above. Judge Patton is not management and is not qualified to proffer such a view.

53.    Control over judicial clerks is limited to the judges and the county board has no control over either their day-to-day scheduling, operation or so forth. This is important for constitutional separation of power reasons. (Judge Jerry Patton, dep. p. 18-19).

Immaterial.

(i).    It is immaterial what Judge Patton's opinion was as to the above. Judge Patton is not management and is not qualified to proffer such a view.

(ii).    It is immaterial what Judge Patton's opinion is as to the Separation of Powers Doctrine.

    (iii).    The Separation of Powers Doctrine is immaterial as to the issue of whether Macon County was a co-employer of Plaintiff.

    (iv).    Macon County has waived any defense related to the Separation of Powers Doctrine by failing to raise it as an affirmative defense.

54.    If the county were to come to Judge Jerry Patton and say that they wanted his clerk to do such and such on such and such a day, he would make sure that the county exercised no such control over his clerks. (Judge Jerry Patton dep. p. 20).

Immaterial.

    (i).    It is immaterial what Judge Jerry Patton believes he would do under those circumstances.

    (ii).    Judge Patton was not established as management nor was it established he had such authority.

55.    The county has absolutely no control over judicial clerks and the performance of their jobs. (Judge Jerry Patton, dep. p. 20).

Immaterial.

    (i).    It is immaterial what Judge Patton's opinion was as to the above.  Judge Patton is not management and is not qualified to proffer such a view.

57.    There would most definitely be separation of power problems if the county board started directing judges on what they could and could not do as far as running their staff and their courtrooms. (Judge John Davis, dep. p. 57).

Immaterial.

    (i).    It is immaterial what Judge Davis' personal view was as to separation of

powers problems.

   (ii). Separation of Powers Doctrine is immaterial to whether a county by its actions asserted ample control over Plaintiff's workplace.

   (iii). Macon County has waived any alleged defense raising the separation of powers problems by failing to raise this defense as an affirmative defense.

  61. Judge John Davis feels that the situation would end up on the doorsteps of the United States Supreme Court, because of separation of power questions, if the county attempted to exercise authority greater than simply dealing with dollars in regards to the way judges acted. (Judge John Davis dep. p. 64).

   Immaterial.

   (i). It is immaterial what Judge Davis' personal view was as to separation of powers problems.

   (ii). Separation of Powers Doctrine is immaterial to whether a county by its actions asserted ample control over Plaintiff's workplace.

   (iii). Macon County has waived any alleged defense raising the separation of powers problems by failing to raise this defense as an affirmative defense.

  66. Robin Johnson is a judicial clerk for Judge Webber in the Macon County Courthouse. It is her understanding that although she receives her paychecks and insurance benefits from MACON COUNTY, all decisions about raises, control and discipline, hiring and firing, and things of that nature all come from the judicial branch. (Robin Johnson, dep. p. 25).

   Immaterial.

   (i). Johnson was proffering a personal opinion and does not have the authority

to proffer such a view.

67.    Christina Lees is a judicial clerk for Associate Judge James Coryell and previously for Judge Patton in the Sixth Judicial Circuit, Macon County. Lees submitted her application to Judge Patton who interviewed and hired her. MACON COUNTY did not get involved in the hiring process. Judge Patton directed her concerning her schedule, job duties and responsibilities and informed her when she was getting a raise. She received all her directions from the judiciary. Neither the MACON COUNTY board nor people outside the judiciary ever got involved in her employment responsibilities. She only received her paychecks and insurance benefits from MACON COUNTY but the county had no other connection with her employment. (Christina Lees, dep. p. 17-20).

Immaterial.

(i).    Lees was proffering a personal opinion and was not established as having the authority or knowledge to proffer opinions with regard to the county's "connection" with her employment.

## III.    ADDITIONAL UNDISPUTED MATERIAL FACTS

1.    Janice Shonkwiler, court administrative assistant, was at all relevant times employed by Macon County.  (Plf. Ex. 1, Shonkwiler dep., 7:6-7; 8:10-17)

2.    Janice Shonkwiler had supervisory responsibilities over all court staff including, bailiffs, county paid court reporters and judicial clerks.  (Plf. Ex. 1, Shonkwiler dep., 8:22-24; 9:1-16)

3.    Plaintiff testified when she reported Judge Sappington's behaviors to Janice Shonkwiler, Janice Shonkwiler was a county employee.  (Plaintiff's ex. 6, Plaintiff's Dep., (Day

21

1) 276:6-20)

4.     Plaintiff testified when she reported Judge Sappington's behaviors to Ruth Young she believed Ruth Young was a county employee.  (Plaintiff's ex. 6, Plaintiff's Dep., (Day 1) 276:6-20)

5.     Janice Shonkwiler prepares payroll sheets for court staff and forwards them to the county auditor.  (Plf. Ex. 1, Shonkwiler dep., 135:2-6).

6.     In addition to payroll the county consults Janice Shonkwiler concerning insurance issues. (Plf. Ex. 1, Shonkwiler dep., 135:22-24)

7.     The county consults with Janice Shonkwiler concerning worker's compensation claims. (Plf. Ex. 1, Shonkwiler dep., 136:1-3).

8.     Janice Shonkwiler's department receives supplies through the county. (Plf. Ex. 1, Shonkwiler dep., 136:3-7).

9.     Shonkwiler's department employees receive IMRF retirement funds through the county auditor's office. (Plf. Ex. 1, Shonkwiler dep., 136:3-7).

10.     The county employs court reporters. (Plf. Ex. 1, Shonkwiler dep., 136).

11.     Shonkwiler described the sexual harassment policy and procedures by the Supreme Court of Illinois as the only thing that Macon County or the court system utilized. (Plf. Ex. 1, Shonkwiler dep., 138:21-24; 139:1-9).

12.     Plaintiff's eligibility for employment was verified by the Macon County, Clerk, Stephen M. Bean. (Plf Ex. 2).

13.     Plaintiff's personnel file includes documents titled "Macon County New Employee Sheet" and identifies the department within Macon County in which Plaintiff worked

as "Circuit Court". (Plf. Ex. 3, 79-80).

14.    Plaintiff's personnel file contains documents titled "Macon County Employee Status Change Sheet" and identifies the department within which Plaintiff worked as "Circuit Court". (Plf. Ex. 4, 72-76).

15.    Plaintiff's personnel file contained a document titled "Macon County Payroll Change Sheet" and identifies the department within which Plaintiff worked as "Circuit Court". (Plf. Ex. 5, 81).

16.    During her employment Plaintiff was always told she was a county employee. (Plaintiff's ex. 6, Plaintiff's Dep., 144:5-8)

17.    Janice Shonkwiler testified that when a state employed court reporter retires or leaves a county court reporter is moved into that spot. (Plaintiff's ex. 11, J. Shonkwiler Dep., 136:10-22)

18.    Judge Patton testified the county board at times denied budget requests to the judiciary causing staff to not receive any raises or limited raises. (Plaintiff's ex. 7, Patton Dep., 16:19-23)

19.    Judge John Davis testified that judicial clerks were never State employees and that the only State employees were court reporters and not all of the court reporters were State employees. (Plaintiff's ex. 8, Davis Dep., 70:4-10; 71:2-15)

20.    Judge Sappington testified he understood Plaintiff to be a county employee and he told Plaintiff she was a county employee. (Plaintiff's ex. 9, Sappington Dep., 12:20-24; 13:1)

21.    Judge Sappington testified that the chairman of the varied committees on the County Board decided the hours, days, vacation period and salaries for all county employees

including the people who work in the court system. (Plaintiff's ex. 9, Sappington Dep., 158:20-24; 159:1-15)

22.    Nathan Maddox, an agent for the Illinois Administrative Office of the Courts, testified judicial clerks were classified as non-state paid judicial branch employees paid by the county and working in the judicial branch but he could not testify as to what the correct legal classification of their employment would be. (Plaintiff's ex.10, Maddox Dep., 19:23-24; 20:1-17)

23.    Nathan Maddox testified there were occasions when judicial clerks were employed by the county within which a circuit court sat. (Plaintiff's ex. 10, Maddox Dep., 19:19-22)

24.    David M. Drobisch, Macon County board member for over eighteen years, testified that if the judiciary seeks more funds then are available the County Board has the authority to tell the judiciary they must make the necessary cuts to stay within the budget restraints. (Plaintiff's ex. 11, Drobisch Dep., 9:20-24; 10:1-24)

25.    County board member Drobisch did not know whether individuals who were merely paid and received benefits through Macon County also receive policies from Macon County. (Plaintiff's ex. 11, Drobisch Dep.., 19:19-24; 20:1-6)

26.    County board member Drobisch testified the auditor and the treasurer sign the county checks used to pay judicial clerks. (Plaintiff's ex. 11, Drobisch Dep., 35:14-20)

27.    County board member Drobisch testified assistant state's attorneys are county employees. (Plaintiff's ex. 11, Drobisch Dep., 44:22-24; 45:1-7)

29.    County board member Drobisch testified the normal method of operation is

24

people who are in charge of various offices or divisions, if they have money for personnel in the budget, they take care of hiring and firing of their personnel. (Plaintiff's ex. 11, Drobisch Dep., 40:15-20)

30.    County board member Drobisch was unable to identify any county ordinance or regulation which defined a "county employee". (Plaintiff's ex. 11, Drobisch Dep., 37:4-10)

31.    County board member Drobisch testified the county board selects the health insurance plan for judicial clerks. (Plaintiff's ex. 11, Drobisch Dep. 35:17-20)

32.    County board member Drobisch testified the director of "ESDA" is given control over hiring and firing within that person's staff as long as there is money to pay for the staff. David Drobisch testified the employees under the director of "ESDA" are Macon County employees. (Plaintiff's ex. 11, Drobisch Dep., 36:9-22)

33.    County board member Drobisch testified if the judiciary exceeded the amount of monies the county board budgeted the County Board decides whether to grant the additional monies. (Plaintiff's ex. 11, Drobisch Dep., 29:23-24; 30:1-23)

34.    County board member Drobisch testified he had no idea how judicial clerks are supposed to know they are not employed by Macon County even though they received checks and benefits. (Plaintiff's ex. 11, Drobisch Dep., 20:22-24; 21:1-24; 22:1-14)

35.    Milliman, a Macon County employee, was responsible for training all judicial clerks. (Plaintiff's ex. 12, Milliman's Dep., 4; 13:16-22)

36.    When Judge Shonkwiler was questioned about the employment status of Janice Shonkwiler and Plaintiff he was merely being asked his personal opinion. (Plaintiff's ex. 13, Judge Shonkwiler Dep., 49:11-24; 50:1-21)

37.     Judge Shonkwiler testified that whether or not a presiding judge could have an administrative assistant was determined between the Presiding Judge and the County Board. (Plaintiff ex. 13, Judge Shonkwiler Dep., 48:20-24; 49:1-5)

38.     Judge Shonkwiler testified the County Board and the Judiciary determine how many judicial clerks would be employed in a particular county. (Plaintiff's ex. 13, Judge Shonkwiler Dep., 49:6-10)

39.     Judge Greanias testified there was no written job description for a judicial clerk. (Plaintiff's ex. 14, Greanias Dep., 107:9-11)

40.     The Assistant State's Attorney testified there is a sexual harassment policy in place concerning his behaviors in the workplace and it is posted in Judge Greanias' chambers. (Plaintiff's ex. 17, Ahola Dep., 20:23-24; 21:1-10; 22:11-20)

41.     Macon County's personnel handbook does not distinguish who its employees are compared to who it merely chooses to pay and provide benefits to. (Plaintiff's ex. 15, Personnel Handbook)

42.     Macon County's personnel handbook obligates all grantees, sub-grantees, and contractors to comply with its equal employment opportunity policy. (Plaintiff's exhibit 15, Personnel Handbook at 2)

43.     Macon County's personnel handbook provides no policy with regard to sexual harassment. (Plaintiff's ex. 15, Personnel Handbook)

IV.    **APPLICABLE LAW**

A.    **Summary Judgment**

Summary judgment is proper only when the pleadings, depositions, answers to interrogatories, and admissions on file establish that there is no genuine issue as to any material fact.  F.R.C.P. 56(c).

B.    **Liability Shared by Two Entities Under Title VII**

In determining whether an entity is a "joint employer" this Court should consider the following factors: 1) supervision of the employee's day to day activities; 2) authority to hire and fire; 3) promulgation of work rules and conditions of employment; 4) issuance of work assignments; and 5) issuance of operating instructions.  DiMucci Constr. Co. v. NLRB, 24 F.3d 949, 952 (7th Cir. 1994); Kremer v. Illinois Power Co., et. al., No.98-cv-2001, 2000 WL 282335 (C.D. IL Feb. 14, 2000).   The question of whether an entity should be considered a joint employer is a factual issue.   DiMucci, 24 F.3d at 952, *citing* Boire v. Greyhound Corp., 376 U.S. 473, 481 (1964); G. Heileman Brewing Co. v. NLRB, 879 F.2d 1526, 1531 (7th Cir. 1989).

Macon County can also be viewed as a co-employer of Plaintiff if there are sufficient questions of fact as to: (1) the extent of the employer's control and supervision over the workers, including directions on scheduling and performance of work; (2) the type of occupation and nature of skill required: (3) the responsibility for the costs of operation; (4) the method and form of payment and benefits; and (5) the length of job commitment and or expectations.  Knight v. United Farm Bureau Mut. Ins. Co., 950 F. 2d 377, 380 (7th Cir. 1991).

**C.    Estoppel**

When an employer by its silence misleads an employee concerning her employment status and the employee reasonably relies on this silence and is harmed as a result the employer is estopped from claiming it was not that individual's employer. See, Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579, 582 (7th Cir. 2000); Bowerman v. WalMart Stores, Inc., 226 F.3d 574, 586.

**D.    Liability for Sexual Harassment By a Non-Employee**

An employer may be liable for sexual harassment by a non-employee if the employer knew or should have known about the conduct and failed to stop it. 29 CFR § 1604.11(e)West 2001); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 758-759 (1998).

**V.    ARGUMENT[3]**

**A.    Macon County's Third Attempt at Summary Judgment Should Be Rejected.**

**1.    Macon County raises the same issues rejected in March 2001 and found to be moot in June 2002.**

The same facts are in dispute today as those in dispute on March 23, 2001, when this Court denied Macon County's First Motion for Summary Judgment. This Court stated, "Because most of the purported [County] involvement in Plaintiff's employment arises from Janice [Shonkwiler's] authority over her, the dispute regarding this issue would be sufficient by itself to preclude summary judgment." *citing* Graves v. County of Dauphin, 98 F.Supp. 2d 613, 617 (M.D. Penn., 2000) (Doc. No. 113, at page 8, para. 1).

In March 2001, this Court reasoned in order to grant Macon County's motion the Court

---

[3] Plaintiff has relied upon the following materials in the record: 1) Plaintiff's Statement of Additional Undisputed Facts, cited as "PAUF."; Defendant's Statement of Undisputed Facts as "DSUF."

would have to have found no employment relationship between Macon County and Plaintiff. The Court concluded, "it appears undisputed that the County had some input into Plaintiff's working conditions, including training, supervision, and compensation." (Doc. No. 113, at page 10, paras 2-3).[4] The facts which were in dispute several years ago have not evaporated. Summary judgment was unwarranted in 2001. It is unwarranted now.

Macon County filed its Second Motion for Summary Judgment on January 15, 2002. (Doc. No. 174). Macon County concedes its Third Motion for Summary Judgment raises, "principally the same issues" raised in its earlier motion. These "unique" issues were no longer available for review once this court ruled the motion was moot on June 19, 2002, pursuant to its Docket Entry. Macon County did not, either in this court nor in the court of appeals, oppose this ruling. Macon County should not now, less than three months before trial, and over a year after the case was remanded by the Seventh Circuit, be permitted to raise the same issues rejected by this Court in March 2001, and found moot by this Court in June 2002.[5]

### 2.    Macon County disregarded this Court's Order.

On January 11, 2005, this Court noted that on June 19, 2002, Macon County's Second Motion for Summary Judgment had been ruled moot.   This Court provided Macon County two options: (1) move to revive its Second Motion for Summary Judgment; or (2) "file a new motion raising such issues that has been updated with more recent authority." (Text Order, January 11,

---

[4]The Seventh Circuit Court of Appeals noted this Court initially determined the issue of joint employer was a question of fact which precluded summary judgment. (Robinson v. Sappington, 351. F.3d 317, 338 (7th Cir. 2003).

[5]Macon County has also recently initiated a Declaratory Judgment action in Macon County Circuit Court. Macon County is seeking a ruling that, despite the Seventh Circuit ruling that Macon County is a necessary party, Macon County is not liable for the judgment that will be rendered in this case.

2005).

Macon County's Third Motion for Summary Judgment relies on no "more recent authority" from that available to Macon County when it filed its Second Motion for Summary Judgment. All authority relied upon by Macon County in its Third Motion for Summary Judgment was available when Macon County filed its Second Motion for Summary Judgment or the authorities cited represent no new substantive development in the law.[6] For this reason, Macon County's Motion for Summary Judgment should be stricken.

**B.**  **Sufficient Material Issues Of Fact Exist As To Whether Plaintiff Can Establish Macon County Is Liable Under Either The "Joint Employer" Theory or the "Economic Realities" Analysis.**

      **1.**  **Plaintiff's theory of Macon County liability**

As Plaintiff's employer Macon County was obligated to protect Plaintiff from sexual harassment by a non-employee if Macon County knew or reasonably could have known of the behaviors.

Macon County's discussion of Alexander v. Rush Northshore Med. Ctr., 101 F. 3d. 47 (7th Cir. 1996) is misplaced. Alexander involved an independent contractor arrangement. The Alexander Court was determining whether a single entity, a hospital, could be viewed as that plaintiff's employer. (Alexander, 101 F. 3d. at 488). *See also*, Caston v. Methodist Medical Center of Illinois, 215 F. Supp. 2d. 1002, 1006 (C.D. Ill. 2002) (Mihm, Michael M., J.) (court

---

[6]The only cases relied upon in Macon County's Argument which postdate the filing of its Second Motion for Summary Judgment in January 2002, are Hojnacki v. Klein-Acosta, 285 F.3d 544 (7th Cir. 2002) (reciting the same factors outlined in Alexander v. Rush Northshore Med. Ctr., 101 F.3d 487 (7th Cir. 1996)) (Macon County Memo. at page 23); Kerr v. WGN Continental Broadcasting Co., 229 F.Supp. 2d 880 (N.D. Ill. 2002) (reciting the same principal outlined in EEOC v. State of Illinois, 69 F.3d 167 (7th Cir. 1994)) (Macon County Memo. at page 24); and Lowe v. Wolin-Levin, Inc., 2004 WL 1534115 (N.D. Ill.) (non-precedential and string cite)(Macon County Memo. at page 24).

distinguished <u>Alexander</u> ruling which involved an independent contractor as a potential plaintiff in a Title VII action from circumstances where an employer is in a position to interfere with plaintiff's employment relationship with a third party employer.)

### 2.    <u>Joint employer theory</u>

Consistent with the standards set out in <u>DiMucci Construction Company v. NLRB</u>, 24 F.3d 949, 952 (7th Cir. 1994), there are sufficient issues of fact concerning the following factors: (1) supervision of employee's day to day activities; (2) authority to hire and fire; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions. *See also*, <u>Kremer v. Illinois Power Company, et. al.</u>, 98-CV-2001, 2000 WL 282335 (C.D. Ill. February 14, 2000).

### (a)    **Macon County had supervision responsibilities and authority to hire and fire.**

Plaintiff was supervised by Janice Shonkwiler ("Shonkwiler"), a county employee. (PAUF 1-3, 16, 20) Macon County has not proven the contrary. (DSUF 9).  Shonkwiler had authority to hire and fire judicial clerks and she provided direction to them. (PAUF 1-2).  There are significant material issues of fact as to whether Macon County had sufficient supervision responsibilities over Plaintiff's day to day activities and had authority to hire and fire as a result of the question of fact related to Shonkwiler's employment status which has not been convincingly established by Macon County. (PAUF 1-3, 11, 19-21, 23, 28, 36-37).

Macon County relies on Shonkwiler's deposition testimony in asserting, "the County does not maintain separate personnel files for the court staff other than what is required to process and pay their salaries and benefits." (Macon County Memorandum at page 14, para 3, citing Janice Shonkwiler Deposition p.119-20, 122).  Macon County relies upon Shonkwiler's representations

to establish the procedures followed by Macon County while asking this Court to conclude that, as a matter of law, Shonkwiler is not a Macon County employee.

>        **(b)**     **Significant issues of fact remain as to additional DiMucci factors.**

Shonkwiler, a county employee, prepared payroll sheets for court staff, was consulted by the county concerning worker's compensation and insurance issues, her department received supplies through the county, and employees within her department received IMRF retirement funds through the county. (PAUF 1-11)   Additionally, county records concerning Plaintiff's employment also demonstrate the county was a joint employer of Plaintiff.

Plaintiff's eligibility for employment was verified by the Macon County Clerk, Steven M. Bean. (PAUF 12)  Plaintiff's personnel file included documents titled "Macon County New Employee Sheet".   Plaintiff's personnel file also contained documents titled "Macon County Employee Status Change Sheet" and  "Macon County payroll Change Sheet." (PAUF 13-15).

Macon County did not have a sexual harassment policy within its personnel policy. Rather, it followed the sexual harassment policy and procedures promulgated by the Supreme Court of Illinois.  (PAUF 11, 27, 39, 42)  Macon County shares its employees with the State of Illinois.  (PAUF 10, 34)   Macon County controls raises of judicial clerks, and sets hours, days, vacations, and salaries of judicial clerks.  Additionally, the county controls the monies which affect whether judicial clerks can be hired.  (PAUF 17-19, 21-23, 24-25, 28, 32, 36-38).  The county and the judiciary together decide how many judicial clerks will work in a particular county and whether or not a presiding judge can have an administrative assistant.  (PAUF 36-37).

Plaintiff has established sufficient material questions of fact under the DiMucci factors as to whether Macon County was Plaintiff's joint employer.

### 3.  Economic realities analysis also supports denial of Macon County's motion.

Summary judgment is also improper under the factors outlined in the "Knight Factors". In Knight v. United Farm Bureau Mut. Ins. Co., 950 F.2d 377, 380 (7th Cir. 1991) the court outlined the following factors as relevant to determine whether Macon County can be viewed as a co-employer of Plaintiff: 1) the extent of the employer's control and supervision over the workers, including directions on scheduling and performance of work; 2) the type of occupation and nature of skill required; 3) the responsibility for the costs of operation; 4) the method and form of payment and benefits; and 5) length of job commitment and/or expectations.

In Ghosh M.D., v. Southern Illinois University, 331 F.Supp. 2d 708 (C.D. Ill., August 23, 2004) (Mihm, Michael M., J.) the Court applied the Knight standards and concluded plaintiff raised sufficient questions of fact about the existence of an employer/employee relationship where a medical center exhibited a level of control over plaintiff, a medical resident, because the center provided facilities and some training, entered into an automatically renewable contract and compensated plaintiff with salary and benefits. Ghosh, 331 F. Supp. 2d 726.

Similarly, there is no question Macon County funds the Macon County Courthouse, paid Plaintiff's salary, workers compensation and insurance benefits, and provided her, training. (PAUF 5- 7, 9, 35). Moreover, as discussed above, there are significant issues of fact concerning whether Shonkwiler, Plaintiff's supervisor, was employed by Macon County.

Macon County had more than sufficient control over Plaintiff. (PAUF 1-3, 11, 19-20, 21, 23, 28, 36-37) In this matter the type of occupation and nature of skill required is not relevant to whether Macon County was one of Plaintiff's employers. Moreover, Macon County was solely responsible for the costs of operation and the method and form of payment. In fact, Macon County has clearly viewed itself as Plaintiff's employer by paying workers' compensation benefits on her behalf and selecting her health insurance benefits while paying for them. (PAUF 1-10, 12-15, 21, 24-26, 30, 31).

"[I]t is common knowledge that most employer-sponsored health insurance plans limit participation to company employees and their families." Heinemeier v. Chemecto, Inc., 246 F.3d 1078, 1083, n4(7th Cir. 2001). Therefore, Plaintiff's participation in the health insurance plan implies she was a county employee. (PAUF 30). Finally, Plaintiff's employment as a judicial clerk was not tied in any manner to the length of service of any of the judiciary members.

Plaintiff has raised sufficient issues of fact as to whether Macon County was a co-employer under the Knight factors.

**C.    Macon County Should Not Be Allowed To Hide Behind The Separation Of Powers Doctrine At This Juncture.**

**1.    Seventh Circuit rejected Separation of Powers argument.**

As it did in its earlier Motions for Summary Judgment, Macon County again attempts to blur the relevant issue in this matter by raising the Separation of Powers Doctrine. If separation of powers concerns existed, those concerns should have been addressed between Macon County and the State of Illinois when both entities agreed to assume responsibilities for Plaintiff's employment.

34

Additionally, the Seventh Circuit has rejected Macon County's insistence on relying upon the State principle of Separation of Powers. The <u>Robinson</u> Court found "fundamental flaws" with Macon County's argument: "First, a State's principles of internal organization cannot frustrate federal law. *See* <u>Carver v. Sheriff of LaSalle County, Illinois</u>, 243 F. 3d 379, 385 (7th Cir. 2001). Second, "[i]dentification of an 'employer' under Title VII *is* a question of federal law.***" Id. at 382. <u>Robinson</u>, 351 F.3d 317, 339, footnote 14.

Substantively, Macon County's Separation of Powers argument does not absolve it of liability.

### 2.    <u>Macon County relies on case law which has been overruled.</u>

The case law relied upon by Macon County for its contention the Separation of Powers Doctrine precludes a finding it can be sued by Plaintiff has been overruled. Macon County relies on <u>Warren v. Stone</u>, 958 F.2d 1419, 1422 (1992) and <u>Orenic v. State Labor Relations Board</u>, 127 Ill. 2d 453 (IL 1989) for its proposition the Separation of Powers Doctrine precludes this Court from concluding Macon County can be viewed as Plaintiff's employer. In both <u>Warren</u> and <u>Orenic</u> the court concluded, in pertinent part, that public defenders and assistant public defenders were state and not county employees. <u>Orenic</u>, 127 Ill. 2d at 475; <u>Warren</u>, 958 F.2d at 1422.

However, the Illinois Supreme Court has more recently concluded that public defenders are county employees. <u>Johnson v. Halloran</u>, 194 Ill.2d 493, 742 N.E. 2d 741 (Il 2000); <u>Sapienza v. Cook County Office of the Public Defender</u>, 128 F.Supp. 2d 563, 568 (MD IL 2001); <u>Kozlowski v. Fry</u>, LEXIS 990 (N.D. IL 2001), slip op. at 6. Thus, Macon County's contention <u>Orenic</u> and <u>Warren</u> stand for the proposition that separation of powers precludes this Court from

considering Macon County one of Plaintiff's employers is unsupported by case law. In fact, that the Illinois Supreme Court has reconsidered its position is evidence this Court has a right to determine whether Macon County is one of Plaintiff's employers. In <u>Johnson v. Halloran</u>, 194 Ill.2d 493, 742 N.E. 2d 741 (Il 2000), separation of powers did not preclude the Illinois Supreme Court from concluding public defenders were county and not state employees. Similarly, the Separation of Powers Doctrine does not preclude this Court from considering whether Macon County was one of Plaintiff's employees.

Moreover, even a conclusion that Plaintiff's status as an employee of the judiciary would not preclude a finding that the county also shared co-employer status with the courts. *See* <u>Graves v. Lowery</u>, 117 F.3d 723, 727 (3rd Cir. 1997), *see also* <u>Graves v. County of Dauphin</u>, 98 F. Supp. 2d. 613 (M.D. Penn. 2000).

### D.    Estoppel Precludes Macon County's Motion for Summary Judgment.

When an employer by its silence misleads an employee concerning her employment status and the employee reasonably relies on this silence and is harmed as a result the employer is estopped from subsequently claiming it was not that individual's employee. See, <u>Dormeyer v. Comerica Bank-Illinois</u>, 223 F.3d 579, 582 (7th Cir. 2000); <u>Bowerman v. WalMart Stores, Inc.</u>, 226 F.3d 574, 586.

Moreover, Macon County paid workers' compensation premiums on behalf of Plaintiff and judicial clerks. As such, Macon County has conceded it is at a minimum an "employer" of Plaintiff. 820 ILCS 305/1(West 2001)  It cannot now contend otherwise and should be estopped from doing so.

Throughout Plaintiff's employment she was told she was a Macon County employee. Macon County took no action to inform her otherwise. It cannot now claim no responsibility when it sat silently and failed to inform Plaintiff that despite her receipt of paychecks and benefits from Macon County, and supervision by a County employee, Macon County was not her employer. Particularly when Macon County's own board member's testimony demonstrates Macon County did nothing to inform individuals whether they were or were not county employees and in fact the county personnel handbook may have been distributed to judicial clerks. Additionally, Macon County's personnel handbook provided no further guidance on this issue. (PAUF 1,3,5-16, 25, 27-29, 33, 39-42).

### E.    Macon County Should Have Known Of Plaintiff's Sexual Harassment Complaints.

An employer may be liable for sexual harassment by a non-employee if the employer knew or should have known about the conduct and failed to stop it. 29 CFR § 1604.11(e)West 2001); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 758-759 (1998). Macon County knew about the horrendous behaviors because Plaintiff reported Judge Sappington's sexual harassment to Janice Shonkwiler, a county employee in charge of supervising judicial clerks. (DSUF 24, PAUF 1-10, 19-20) Moreover, if it did not know about the behaviors its own inaction brought that about. Macon County used the sexual harassment policy promulgated by the Supreme Court of Illinois. (PAUF 11). Yet, there is no evidence it was distributed to its employees. Had it adequately distributed the sexual harassment policy it would have known perhaps through other sources other than its own employee, Janice Shonkwiler, about Judge Sappington's horrendous, sexually harassing behaviors perpetrated upon Plaintiff.

Additionally, Macon County's board member of eighteen years did not even know what policies were distributed to its employees. (PAUF 24-25). Its own board member of eighteen years did not even know how judicial clerks were supposed to learn Macon County did not believe they were county employees. (PAUF 24, 33).

Had Macon County adequately trained Janice Shonkwiler to properly respond to complaints of sexual harassment we would not be here. The evidence raises sufficient issues of material fact as to whether Macon County should have known about Judge Sappington's horrendous behaviors. Its decision to merely turn a blind a eye by wholly ignoring Janice Shonkwiler's knowledge of the behaviors cannot be condoned. Macon County's complete failure to address sexual harassment in the workplace cannot be relieved by granting its Motion for Summary Judgment. It knew and should have known of the behaviors at issue in this matter. At a minimum there are sufficient issues of material facts as to whether Macon County knew and should have known and failed to take appropriate action.

## VI.    CONCLUSION

Plaintiff respectfully requests that Macon County's Motion be stricken. Alternatively, sufficient issues of material fact exist as to whether Macon County was a joint employer of Plaintiff. Additionally, via its employee, Janice Shonkwiler, Macon County knew about the horrendous behaviors of Judge Sappington and failed to take any adequate action to protect Plaintiff from these behaviors. Alternatively, Macon County should have known of these behaviors and because of its own disregard for sexual harassment in its workplace it did not.

Finally, Macon County's Separation of Powers argument must be rejected by this Court. The Seventh Circuit has already rejected this argument. Moreover, such concerns should have

been addressed between Macon County and the State of Illinois before this juncture.

Macon County's Motion for Summary Judgment should be denied. Plaintiff seeks any other further relief which this Court deems appropriate.

Respectfully Submitted,
MELISSA ROBINSON,
Plaintiff,

By: s/ Melissa M. McGrath
Melissa M. McGrath Attorney Bar No. 6207263
Attorney for Plaintiff
Thomson & Weintraub
105 North Center Street
Bloomington, Illinois 61701
Phone: (309) 829-7069
Fax: (309) 827-3458
E-mail: mmcgrath@tnwlaw.com

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| MELISSA ROBINSON, | ) | |
| (p/k/a/ MELISSA SCHROEDER) | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:04-cv-1360 |
| | ) | |
| JUDGE WARREN A. SAPPINGTON | ) | |
| SIXTH JUDICIAL CIRCUIT, | ) | |
| (IN OFFICIAL CAPACITY), | ) | |
| | ) | |
| Defendant, | ) | |
| MACON COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE AND NOTICE OF FILING**

I hereby certify that on February _____, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Mr. John Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, IL 61602

Ms. Karen McNaught
Assistant Attorney General
ILLINOIS ATTORNEY GENERAL'S OFFICE
500 S. Second Street
Springfield, Illinois 62706

Ms. Diane M. Barron, Esq.
Clausen Miller PC
10 South La Salle Street
Chicago, Illinois 60603-1098

By: s/ Melissa M. McGrath
Melissa M. McGrath Attorney Bar No. 6207263
Attorney for Plaintiff
Thomson & Weintraub
105 North Center Street
Bloomington, Illinois 61701
Phone: (309) 829-7069
Fax: (309) 827-3458

Subscribed and sworn to before me
this _____ day of February, 2005.

_____
Notary Public

"OFFICIAL SEAL"
Angela M. Park
Notary Public, State of Illinois
My Commission Exp. 10/21/2008

40