IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

MELISSA ROBINSON,                    )
(p/k/a MELISSA SCHROEDER),           )
                                     )
            Plaintiff,               )
                                     )
      vs.                            )   Case No. 99-2266
                                     )
JUDGE WARREN A. SAPPINGTON,          )
SIXTH JUDICIAL CIRCUIT,              )
(IN OFFICIAL CAPACITY AND            )
INDIVIDUALLY), and MACON             )
COUNTY,                              )
                                     )
            Defendants.              )

COPY

THE **DEPOSITION** of **JANICE SHONKWILER**, a witness, called by the Plaintiff for examination pursuant to notice and pursuant to the Federal Rules of Civil Procedure pertaining to the taking of depositions, taken before Rose M. LaBerdia, CSR, RDR, CRR, License No. 084-001506, a Notary Public in and for the County of Peoria and State of Illinois, at 105 N. Center Street, in the City of Bloomington, County of McLean, and State of Illinois, on the 19th day of July, A.D. 2000, commencing at 9:10 a.m.

ZEITLER REPORTING SERVICE
(309)473-3949

1           JANICE SHONKWILER,

2  called as a witness, after being first duly sworn, was

3  examined and testified upon her oath as follows:

4                    EXAMINATION

5                  BY MS. McGRATH:

6      Q.   Would you spell your name for the court

7  reporter?

8      A.   Janice, J-A-N-I-C-E, Shonkwiler,

9  S-H-O-N-K-W-I-L-E-R.

10     Q.   Thank you.  Do you mind if I call you Janice

11 while we're --

12     A.   That's fine.

13     Q.   -- talking?  Have you had your deposition taken

14 before, Janice?

15     A.   No.

16     Q.   Okay.  Let me just tell you -- give you a little

17 bit of ground rules.  I'm going to be asking you

18 questions.  I'm going to admit right up front that

19 sometimes I get wordy with my questions.  If you don't

20 understand something I say, feel free to say, "You've

21 confused me" or --

22     A.   Okay.

23     Q.   -- or, "Please reword the question."  If you're

24 going to answer yes or no, we need for you to not just

1  Q. That you have in front of you --
2  A. Yes.
3  Q. -- right now? We'll see if that doesn't help
4  you out as I'm asking you questions. Okay?
5  A. Okay.
6  Q. Who is your present employer?
7  A. My present employer is Macon County.
8  Q. I'm sorry. Go ahead.
9  A. I work under Judge Greanias.
10 Q. What is your job title?
11 A. I'm the court administrative assistant.
12 Q. When did you -- how long have you held that
13 position?
14 A. I started doing that in December of '95, so five
15 years, four and a half.
16 Q. Since you, for your convenience have noted when
17 the plaintiff -- you know the plaintiff by Missy
18 Schroeder?
19 A. Yes.
20 Q. Since you have noted when Missy Schroeder began
21 working at the same place as you, can you indicate that
22 on the record?
23 A. Missy started on March 28th, 1994.
24 Q. And are you also aware of her termination date?

1   A.  I'm not sure of the exact date.  I think it was
2  December the 13th.  Her actual termination date, as far
3  as papers, was January 10, 1997.  And that was because
4  she had accrued vacation and personal days that she
5  hadn't used, so it actually went on past her last day of
6  work.
7   Q.  December 13th would have been of '96?
8   A.  Right.  And that would have been, I think, about
9  her last day of work.
10   Q.  Were you employed with Macon County before you
11  became the court administrative assistant in December
12  '95?
13   A.  Yes.
14   Q.  What was your position prior to that position?
15   A.  I was Judge Greanias' secretary.
16   Q.  When did you begin in that role?
17   A.  March 12, 1987.
18   Q.  Have your responsibilities as the court
19  administrative assistant remained the same throughout
20  your tenure in that position?
21   A.  Yes.
22   Q.  Okay.  Can you tell me what your
23  responsibilities are?
24   A.  I'm responsible for payroll.  I do the personnel

1  matters. I have possession of all the personnel files.
2  I make sure there's staffing in all the courtrooms. Just
3  recently, we've hired another person, and she kind of
4  does that on a share basis with me, but we coordinate the
5  staff in the courtrooms. I do all the jobs around the
6  courthouse nobody else wants to do. Clear the paper jams
7  and things like that.
8      Q.  What job titles -- well, strike that.
9          Do you have supervisory roles in that job?
10     A.  We don't have any supervisors.
11     Q.  So is there any other employee who you are
12 responsible for supervising?
13     A.  Actually, I'm over all of the court staff. So
14 there are bailiffs that I'm over. We have a couple of
15 county paid court reporters, and I am over them. That's
16 it. And the judicial clerks.
17     Q.  What do you mean by judicial clerks?
18     A.  Each judge has a court reporter and a judicial
19 clerk. And in the past, the judicial clerks were
20 actually the judges' secretaries. At one point in time,
21 the secretaries were all renamed judicial clerks, because
22 they started going in the courtroom with the judge when
23 he's in court sessions. And when they are not in court,
24 she's at her desk performing secretarial duties.

1   Q. Do you know when that change in title came
2  about?
3   A. I think it was about the same time that I became
4  the administrative assistant. Probably, I would say,
5  probably December of '95.
6   Q. Am I correct that there's only one court
7  administrative assistant?
8   A. Right.
9   Q. And was throughout your tenure?
10  A. Right.
11  Q. And by tenure, I mean since December of '95?
12  A. Yes.
13  Q. Would there then be an administrator over and
14 above you?
15  A. No. Judge Greanias is the only one above me.
16 He's the presiding judge for the county.
17  Q. Has he been the presiding judge since December
18 '95?
19  A. Yes.
20  Q. Do you know when he became the presiding judge?
21  A. I'm not sure. Judge Scott -- it was when Judge
22 Scott retired. That may have been October, but I'm not
23 positive of the date. It was when Judge Scott retired.
24  Q. Okay. But when you say October, are you

1  referring to October of '95?
2      A.  Yes.
3      Q.  Okay.  As far as your responsibilities for
4  payroll, what job titles -- I mean, whose payroll are you
5  responsible for?
6      A.  I prepare the payroll sheets for the judicial
7  clerks, the two county paid reporters, the bailiffs.  We
8  also have jury commissioners that get paid just
9  quarterly.  I prepare payroll sheets for them.  We have a
10 law librarian, a court technology person.  I think that's
11 it.
12     Q.  Do you hire the judicial clerks?
13     A.  Yes.
14     Q.  You interview the clerks?
15     A.  Yes.
16     Q.  And, again, these job duties would have been the
17 same from December '95 --
18     A.  Correct.
19     Q.  -- forward?  Okay.  Are you the sole decision-
20 maker as far as --
21     A.  No.
22     Q.  -- who gets hired?
23     A.  No.  Usually, I interview the persons.
24 Sometimes Judge Greanias sits in on the interviews,

1  clerk's office.
2      Q.  Now, you do payroll sheets for the court staff.
3  Right?
4      A.  Yes.
5      Q.  And you send those over to the county?
6      A.  Yes.
7      Q.  County auditor?
8      A.  Yes.
9      Q.  Okay.  Is that the only communication you have
10 with the county or the county office regarding the court
11 staff?  Is everything else up to Judge Greanias?  Do you
12 understand what I mean?
13     A.  No.
14     Q.  I mean, is payroll the only thing that goes to
15 the county regarding the employment of the court staff?
16 For instance, hiring you said is done by Judge Greanias?
17     A.  Yes.
18     Q.  Judge Greanias controls assignments?
19     A.  Yes.
20     Q.  He can fire and hire people?
21     A.  Yes.
22     Q.  Can you think of anything, other than payroll,
23 where the county gets consulted?
24     A.  The insurance.

1  Q. Okay.

2  A. Or worker's comp claims.

3  Q. Okay. And then I imagine equipment and office
4  space, is that --

5  A. There's like a purchasing department that we
6  order supplies through. There's like IMRF retirement.
7  That's also through the auditors's office.

8  Q. Okay. So --

9  A. I think that's it.

10  Q. So who hires the court reporters? You talk
11  about -- you said there's some county court reporters.
12  Who hires those?

13  A. Actually, I've never hired a court reporter.
14  We've always had county reporters in place, and what
15  happens is as a state reporter retires or leaves, we move
16  a county reporter into their spot. And there's usually
17  somebody there, already there, that we can move into the
18  county reporter's spot. For instance, Shelly Creek,
19  although she is a reporter, she started out as a judicial
20  clerk because there was an opening there. And as soon as
21  there was an opening for a reporter, she moved from a
22  judicial clerk position to a county paid reporter.

23  Q. Who hires bailiffs?

24  A. Our bailiffs have been around for years and

```
 1  years, and they are not being replaced.  I don't know who
 2  hired them to start with.
 3       Q.  What about your courthouse -- what do you call
 4  them, technologist?
 5       A.  Court technologist.
 6       Q.  Who hired him?
 7       A.  Judge Greanias hired her.
 8       Q.  What are the other -- court librarian, who
 9  hires?
10       A.  Actually I interviewed her.  Judge Greanias and
11  I hired her together.
12       Q.  Okay.  Can you think of anyone in the courthouse
13  staff, the court staff, that is hired by the county as
14  opposed to going through you or Judge Greanias or a
15  combination?
16       A.  No.
17       Q.  Everyone is through you and Judge Greanias?
18       A.  Right.
19       Q.  Okay.
20       A.  Or like I said, those who have come in with the
21  judge coming directly from the outside.
22       Q.  The training that you recently received in
23  sexual harassment --
24       A.  Yes.
```