COPY

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

| | | |
|---|---|---|
| MELISSA ROBINSON,<br>(f/k/a MELISSA SCHROEDER), | )<br>)<br>) | |
| Plaintiff, | )<br>) | |
| -vs- | )<br>) | No. 99-2266 |
| JUDGE WARREN A. SAPPINGTON, SIXTH<br>JUDICIAL CIRCUIT (IN OFFICIAL<br>CAPACITY AND INDIVIDUALLY), | )<br>)<br>)<br>) | |
| Defendant, | )<br>) | |
| MACON COUNTY, | )<br>) | |
| JOHN P. SHONKWILER, CHIEF JUDGE,<br>SIXTH JUDICIAL CIRCUIT, MACON<br>COUNTY CIRCUIT COURT, MACON COUNTY<br>(IN OFFICIAL CAPACITY AND NOT<br>INDIVIDUALLY), | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

DEPOSITION

   The deposition of JOHN P. SHONKWILER, taken on behalf of the Plaintiff on May 11, 2001, commencing at 1:05 p.m., at the Piatt County Courthouse, 101 West Washington Street, Monticello, Illinois, before Fran Anderson, CSR, License No. 084-002930.

   Appearances:

      Melissa M. McGrath, Attorney
      Thomson & Weintraub
      105 North Center Street
      Bloomington, IL  61702-3577
      309-829-7069
      On behalf of Plaintiff

MALCOM REPORTING SERVICE
1310 Ironwood CC Drive
Normal, IL 61761
(309) 454-3378
Fax (309) 454-8286

4

1       JOHN P. SHONKWILER,
2  the deponent herein, called as a witness, after
3  having been first duly sworn, was examined and
4  testified as follows:
5                  EXAMINATION
6  BY MS. McGRATH:
7       Q.   Your Honor, I'm going to be asking you some
8  questions today.  If I ask you something wordy or
9  that you don't understand, please ask me to reword
10 it, okay?
11      A.   Okay.
12      Q.   You are represented today, Your Honor, by
13 Mr. Gillespie and Ms. McNaught?
14      A.   I am.
15      Q.   And you recognize that the lawsuit being
16 brought -- which has been brought by the plaintiff
17 has been brought against you only in your official
18 capacity?
19      A.   Yes.
20      Q.   And that official capacity, Your Honor, is
21 as the Chief Judge --
22      A.   Of the Sixth Judicial Circuit.
23      Q.   As the Chief Judge of the Sixth Judicial
24 Circuit, do you have certain responsibilities in

```
 1       A.   Well, I had asked where was the harasser
 2  from, from the Recorder's office or where, or who was
 3  the harassee.  We have to sort of narrow the scope of
 4  the question, and I'll try to answer it.
 5       Q.   Okay.  And maybe answering this way may be
 6  simpler, and if not, I'm sure you'll let me know.
 7  Under what circumstances would someone be able to
 8  appropriately report a concern about sexual
 9  harassment to Ms. Evey?
10            MS. McNAUGHT:  Object to the form of the
11  question.
12            THE WITNESS:  I would think that if anyone
13  in the Judicial Department felt that they were being
14  harassed they could contact Jane Evey.  They could
15  contact me.  They could contact the EEOC.  The policy
16  lays out who the contact can be with.
17  BY MS. McGRATH:
18       Q.   And what job titles fall within the Judicial
19  Department?
20       A.   In what county?
21       Q.   Let's talk about Piatt County first.
22       A.   Jane Evey would fall under the judicial
23  department.  The court reporter would fall under the
24  judicial department.  And that's about it.  The
```

1   bailiff would not; the bailiff is sheriff.  The
2   deputy clerks would not, because they fall under the
3   auspices or the control of the Clerk of the Circuit
4   Court.
5       Q.  In other counties within the circuit, do
6   judicial clerks fall within the judicial department?
7       A.  I think they would.
8       Q.  Do you have anything to add, Your Honor, to
9   your response to paragraph two, Interrogatory 2?
10      A.  Management personnel.  No, no, I think that
11  would be the same.  I would not consider,
12  necessarily, Janice Shonkwiler being in management.
13      Q.  I'd like to direct your attention to your
14  response to Interrogatory Number 3 for a moment.  Can
15  you tell me, other than what you've have already
16  indicated to me today concerning your conversations
17  with Judge Greanius, what knowledge Judge Greanius
18  would have with regard to the plaintiff's complaint?
19      A.  I don't, except what Melissa Schroeder told
20  him.  I know the policy, the Supreme Court's policy
21  on sexual harassment, is very sensitive to
22  confidentiality.  I think it also calls for a written
23  complaint, if at all possible.  And a written
24  complaint focuses on a particular gravamen of the

```
 1        Q.   Do all of the -- strike that.  Judge
 2   Greanius has an administrative assistant --
 3        A.   Right.
 4        Q.   -- who we've identified as Janice
 5   Shonkwiler?
 6        A.   Mm-hmm.
 7        Q.   Do all the counties having presiding judges
 8   have administrative assistants?
 9        A.   Some do and some don't.
10        Q.   And on what basis is it determined whether
11   or not a presiding judge gets an administrative
12   assistant?
13        A.   Normally, the size of the county.
14        Q.   Okay.  Which counties do have administrative
15   assistants?
16        A.   I believe Champaign and Macon County have
17   administrative assistants to the presiding judge.
18   The other four rural counties within the circuit do
19   not.
20        Q.   Okay.  And how -- what is the process that,
21   if you know, that was set forth that allowed
22   presiding judges to obtain administrative assistants
23   that are different from your -- the chief judge's
24   administrative assistant?
```

```
 1        A.   That would be between the presiding judge
 2   and his county board.
 3        Q.   Okay.  So each presiding judge, that is not
 4   something that's discussed with the chief judge?
 5        A.   No.
 6        Q.   Would the same situation be true for
 7   judicial clerks; would that be between the County
 8   Board on how many they're willing to pay and the
 9   judiciary in that particular county?
10        A.   Yes.
11        Q.   Now, you were asked a question about who --
12   whether or not you believed Missy Schroeder was a
13   nonjudicial personnel.  Do you recall that question
14   as it relates to the --
15        A.   Yes.
16        Q.   -- Supreme Court policy?
17        A.   Right.
18        Q.   And you indicated that judicial clerks were,
19   in your opinion, nonjudicial personnel as we find
20   under that policy; is that correct?
21        A.   Yes.
22        Q.   Would it be your opinion that Janice
23   Shonkwiler, as an administrative assistant, would
24   also be nonjudicial personnel?
```

1    A.    I believe so.

2    Q.    And can you tell me what the basis of that
3 opinion is?

4    A.    They are under -- not under any other
5 constitutional officer, like the Clerk of the Circuit
6 Court.  They are not paid by the judiciary, judicial
7 branch, of course, but I believe judicial clerks
8 would be hired and fired by the judicial department.

9    Q.    How about administrative assistants similar
10 to Janice Shonkwiler?

11    A.    I think she would be hired and fired by the
12 presiding judge.

13    Q.    And is it also your understanding that
14 administrative assistants similar to Janice
15 Shonkwiler would also be under the exclusive control
16 and supervision of the judiciary in that county?

17         MS. McNAUGHT:  I'll object to the question
18 to the extent it asks for any sort of legal opinion.
19 If you're asking a personal opinion, that's fine.

20         MR. CASSIDY:  I'm asking a personal
21 opinion.

22         THE WITNESS: Yes.

23 BY MR. CASSIDY:

24    Q.    And the reason for that, would you agree,