**E-FILED**
Friday, 08 April, 2005  02:41:29 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

MELISSA ROBINSON, )
(p/k/a/ MELISSA SCHROEDER) )
                                 )
                Plaintiff, )
vs.                       )     Case No. 1:04-cv-1360
                                 )
JUDGE WARREN A. SAPPINGTON )
SIXTH JUDICIAL CIRCUIT, )
(IN OFFICIAL CAPACITY) and )
MACON COUNTY, )
                                 )
             Defendants. )

### PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE CERTAIN TESTIMONY

Plaintiff, MELISSA ROBINSON (p/k/a Melissa Schroeder) ("Plaintiff") by her counsel,

Thomson & Weintraub, moves *in limine,* to exclude the following testimony:

1.    **In Limine #1 – Testimony That the State of Illinois Is Not, At a Minimum, Plaintiff's Joint Employer:**

While counsel for the parties prepared the joint pre-trial Order, counsel for Judge Warren

A. Sappington disclosed, for the first time, that the State of Illinois was contesting whether it

employed Plaintiff and Janice Shonkwiler.

The law of the case in this matter precludes the State of Illinois from contending it is not,

at a minimum, Plaintiff's joint employer.  It is axiomatic a trial court ruling at an earlier stage

that could have been but was not challenged is binding in subsequent stages.  Federation of

Advertising Industry Representatives, Inc. v. City of Chicago, 326 F3d 924, 929 (7th Cir. 2003);

Waid v. Merrill Area Public Schools, 130 F3d 1268, 1272 (7th Cir. 1997); In re: High Fructose

Corn Syrup Anti-Trust Litigation, 293 F. Supp. 2d 845, 857 (CD IL 2003).

The only time during the pendency of this matter Judge Sappington raised the same issue was in January 2000, when he filed his Motion to Dismiss (Doc. No. 18) arguing Plaintiff was employed by Macon County. Its Motion to Dismiss was denied on June 6, 2000. (Doc. No. 32). Judge Sappington did not appeal that ruling.

Moreover, neither Defendant Sappington, nor Defendant Chief Judge Shonkwiler[1] contended Plaintiff was solely Macon County's employee when each Defendant filed its Motion for Summary Judgment in January 2002. (Defendant Sappington Motion, Doc. No. 175; Defendant Shonkwiler Motion, Doc. No. 179). The district court's analysis in granting Defendants' Motions for Summary Judgment on June 19, 2002, related solely to whether Plaintiff established a hostile environment for purposes of her sexual harassment claims. The analysis presumed the State of Illinois employed Plaintiff and the Defendants did not contend otherwise.[2]

The Seventh Circuit Court of Appeals' ruling found that neither Judge Sappington nor Judge Shonkwiler argued before the Court of Appeals that Plaintiff was exclusively the employee of Macon County. The Robinson Court ruled, "therefore, because all parties acknowledge that the State of Illinois was, at the very least, Plaintiff's joint employer with the County, we consider the vicarious liability of the State of Illinois for the harassment of Judge Sappington."

-----

[1]Chief Judge Shonkwiler was dismissed as a Defendant by the Seventh Circuit ruling. Robinson v. Sappington, et. al., 351 F3d 317 (7th Cir. 2003).

[2]Defendant Sappington argued in his Motion for Summary Judgment that during his tenure as an associate judge, Judge Sappington had two employees and, as a result could not be sued under Title VII because he did not employ fifteen or more employees. (Doc. No. 175, at page 16). He did not argue that the State of Illinois was not Plaintiff's employer. Nor did Judge Sappington appeal the District Court's ruling with regard to his Motion for Summary Judgment (Doc. No. 223).

2

(Robinson, 351 F3d at footnote 9, page 332). Neither Defendant Sappington nor Defendant Shonkwiler sought reconsideration of this ruling in the Seventh Circuit.

Moreover, at no time did Judge Warren A. Sappington contend Plaintiff was not employed by the State of Illinois when he filed his Petition for a Writ of Certiorari in the United States Supreme Court. Case No. 03-1455; Certiorari denied by Sappington v. Robinson, 124 S.Ct. 2909, 159 L.Ed. 2d 813 (June 28, 2004).

Finally, the United States Supreme Court's discussion of the ruling by the Seventh Circuit Court of Appeals in Robinson v. Sappington, 351 F3d 317 (2003), implicitly establishes the State of Illinois must be viewed at trial, at a minimum, as Plaintiff's joint employer. In Pennsylvania State Police v. Sudders, 124 S.Ct. 2342, 159 L.Ed. 2d 204 (2004) the United States Supreme Court discussed and accepted the Robinson ruling's view Plaintiff was constructively discharged as a result of the presiding Judge's official action in transferring her to a judge who resisted placing her on his staff. (Pennsylvania State Police, 124 S.Ct. at 2356). (the Presiding Judge told Plaintiff if she accepted the transfer to the another judge, "her first six months *** probably would be hell and it was in her best interest to resign.")

In order for the above analysis to apply to a constructive discharge claim the State of Illinois must be viewed, at a minimum, as Plaintiff's joint employer with Macon County.

The State of Illinois cannot now contend it was not, at a minimum, Plaintiff's joint employer.

3

2. **<u>In Limine #2 – Testimony Concerning Relationship Between Macon County and the Judicial Branch:</u>**

At the Pre-Trial hearing Macon County indicated it intended to call Judge Greanias to proffer expert testimony concerning the relationship between the State of Illinois Judiciary and Macon County. Macon County further indicated it may introduce similar testimony through Judge Hendrian and/or Judge Davis. Plaintiff does not object to Presiding Judge Greanias' lay opinion testimony with regard to the general work relationship between Macon County and the Macon County Circuit Court. As the Presiding Judge, Judge Greanias arguably has personal knowledge about that topic. However, no judge other than Presiding Judge Greanias (and perhaps Chief Judge Shonkwiler) would possess such personal knowledge because the other judges are not involved in controlling the day to day operations of the courtrooms, etc. Moreover, the probative value of soliciting testimony from numerous judges is outweighed by the prejudicial impact such testimony would have. (Fed. R. Evid. 403).

Finally, the Seventh Circuit Court of Appeals ruling rejected Macon County's theory that it cannot be considered a joint employer with the State of Illinois with respect to judicial employees because of the State principle of Separation of Powers. (<u>Robinson v. Sappington</u>, 351 F3d 317, 339 (7th Cir. 2003)).

The Seventh Circuit found three fundamental flaws with this argument: (1) a States's principles of internal organization cannot frustrate Federal Law; (2) identification of an employer under Title VII is a question of Federal Law; and (3) the source of funds needed to satisfy a Title VII, judgment need not coincide with the identity of the employer. *Citing* <u>Carver v. Sheriff of LaSalle County, Illinois</u>, 243 F3d 379, 385 (7th Cir. 2001).

4

As a result Macon County should be barred from producing evidence related solely to the separations of powers issues.

### 3. In Limine #3 – Testimony About the Existence or Nonexistence of a Hostile Work Environment:

Defendants should not be permitted to proffer testimony about whether "a hostile work environment" existed in Plaintiff's workplace. Nor should a witness be able to proffer testimony about whether they observed "a sexually harassing environment". Similar questions were asked of lay witnesses (i.e., Judge Patton, Judge White, Judicial Clerk Robin Johnson). This inquiry is an ultimate issue to be decided by the jury and none of the witnesses have expertise to proffer such a view. Moreover, the prejudicial impact of this testimony outweighs its probative value. (Fed. Rules of Evid. 401, 403, 702).

### 4. In Limine #4 – Testimony About Work Environment After Transfer of Plaintiff Which Never Transpired:

Plaintiff contends she was constructively discharged. One of her basis for this contention is that Presiding Judge Greanias told her that if she accepted a transfer to Judge Frances he (Judge Frances) would make her first six months hell. Plaintiff believed this, in part, because she saw Judge Frances storming out of Judge Greanias' office the day the potential transfer was discussed. She also believed this because once the potential transfer became known at the courthouse Plaintiff was ignored by the Judges and shunned by Judicial Clerks and Court Reporters as well as by Janice Shonkwiler.

In the course of his deposition testimony was elicited from Judge Frances as to how he would have treated Plaintiff had she been transferred to work with him. Testimony was also elicited from Judicial Clerks and Court Reporters as to how they would have treated Plaintiff if

5

the transfer to Judge Francis had taken place.  The purpose of this deposition testimony was to

elicit testimony that these individuals would not have treated Melissa poorly.

Such testimony is speculative, unduly prejudicial and irrelevant because the transfer did

not take place.  This testimony should be barred.  (Fed. Rules of Evid. 401, 403).

### 5.    In Limine #5 – Testimony About Judge Sappington's Psychological Well Being or Physical Health During All Times Relevant to the Lawsuit:

Judge Sappington and his wife, Cheryl Sappington disclosed in the course of their

depositions that when they returned in July 1996, from their trip to China Judge Warren A.

Sappington was physically ill.  More recently Judge Sappington has reportedly undergone a heart

procedure.

Judge Warren A. Sappington has never raised as an affirmative defense his inability to

understand his actions or that his psychological health or physical health in some way

constrained him from behaving inappropriately in the workplace.

Such suggestions are wholly irrelevant to the issues in the matter and unduly prejudicial.

Any testimony about Judge Sappington's physical or mental health either during the years 1996 -

1997 when he sexually harassed Plaintiff, or his present physical or mental health, should be

barred.  (Fed. Rules of Evid. 401, 403).

### 6.    In Limine #6 – Testimony of Jane Evey:

Defendant, Judge Warren A. Sappington identified Jane Evey as a witness in the parties'

final Pre-Trial Order.

Plaintiff's First Set of Interrogatories to Judge Warren A. Sappington and First Set of

Interrogatories to Chief Judge John P. Shonkwiler, asked for the identity of any person with

6

knowledge of the allegations raised in Plaintiff's Complaint or Defendants' Answer along with the content of each person's knowledge. Neither Judge Warren A. Sappington nor Chief Judge John P. Shonkwiler identified Jane Evey in response to this Interrogatory (Plaintiff's First Set of Interrogatories at para. 2). Nor did either Defendant Warren A. Sappington or Chief Judge John P. Shonkwiler refer Plaintiff to the identity of individuals listed in Defendants' Initial Disclosures. As a result Defendant, Judge Warren A. Sappington should be precluded from calling Jane Evey as a witness.

Alternatively, Jane Evey's testimony must be limited to laying foundation for some documents produced by Defendant and testify to the collection of information for purposes of the lawsuit. Defendants' Initial Disclosures limited Jane Evey's testimony to those matters. (Plf. Ex. 1)

### 7.    In Limine #7 – Lawrence Fichter Testimony:

Macon County has disclosed Lawrence Fichter, retired States's Attorney of Macon County as a witness who will testify about matters contained in pleadings filed with the Illinois Human Rights Commission; issues as to personnel matters controlled by the County and those controlled by the Judicial Branch; and that Macon County had absolutely no control over personnel matters concerning Plaintiff and Janice Shonkwiler. (Plf. Ex. 2(a)). Macon County also indicated a the Pre-trial hearing of this matter that it intended to call Lawrence Fichter to testify about the relationship between the judicial branch and Macon County.

Lawrence Fichter lacks the personal knowledge and/or expertise pursuant to Federal Rules of Evidence 701 and 702, to render such opinions. Lawrence Fichter's deposition testimony attached establishes as the State's Attorney of Macon County, Lawrence Fichter played

no part in preparing or formulating policies for the County. As State's Attorney for Macon County, Lawrence Fichter testified he had no role in investigating a complaint of sexual harassment and was not involved in the procedure which employees were to have followed concerning a report of sexual harassment. (Plf. Ex. 2(b), Fichter Deposition 6:22-24; 7:1-24; 8:4-24; 11:13-14). Lawrence Fichter's role while employed in Macon County was to prosecute criminals. Fichter's lack of personal knowledge or expert qualifications preclude his testimony as to the topics outlined in Defendant's Response to Plaintiff's Interrogatories. Nor does Lawrence Fichter qualify to proffer testimony about the organizational structure of Macon County or of the judicial branch.

> Respectfully submitted,
> By: s/ Melissa M. McGrath
> Melissa M. McGrath Attorney Bar No. 6207263
> Attorney for Plaintiff
> Thomson & Weintraub
> 105 North Center Street
> Bloomington, Illinois 61701
> Phone: (309) 829-7069
> Fax: (309) 827-3458
> E-mail: mmcgrath@tnwlaw.com

Subscribed and sworn to before me
this _8th_ day of April, 2005.

_[signature]_
Notary Public

"OFFICIAL SEAL"
Angela M. Park
Notary Public, State of Illinois
My Commission Exp. 10/21/2008

8

**NOTICE OF FILING**

I hereby certify that on April 8th, 2005, I presented the foregoing document to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Mr. John Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, IL 61602

Ms. Diane M. Barron, Esq.
Clausen Miller PC
10 South La Salle Street
Chicago, Illinois 60603-1098

Ms. Karen McNaught
Chief, General Law Bureau
500 S. Second Street
Springfield, Illinois 62706

By: s/ Melissa M. McGrath
Melissa M. McGrath Attorney Bar No. 6207263
Attorney for Plaintiff
Thomson & Weintraub
105 North Center Street
Bloomington, Illinois 61701
Phone: (309) 829-7069
Fax: (309) 827-3458
E-mail: mmcgrath@tnwlaw.com

Subscribed and sworn to before me this ___ 8th ___ day of April, 2005.

Notary Public

"OFFICIAL SEAL"
Angela M. Park
Notary Public, State of Illinois
My Commission Exp. 10/21/2008

COPY

RECEIVED
DEC 1 0 2001
By _____

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

MELISSA ROBINSON,                    )
(p/k/a Melissa Schroeder)            )
                                     )
            Plaintiff,               )
                                     )
    vs.                              )        No. 99-2266
                                     )
JUDGE WARREN A. SAPPINGTON,          )
MACON COUNTY, and JUDGE JOHN         )
P. SHONKWILER.                       )
                                     )
            Defendants.              )

## AMENDED INITIAL DISCLOSURES PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1)

COME NOW the defendants, Warren A. Sappington and John P. Shonkwiler, by

and through their counsel, JAMES E. RYAN, Attorney General of the State of Illinois, and

pursuant to Federal Rule of Civil Procedure 26(a)(1), hereby submit the following

disclosure of initial discovery.

1. The names, addresses, and telephone numbers of each individual likely to have

discoverable information relevant to disputed facts alleged with particularity in the

complaint.

RESPONSE:

**Jennifer Cavaness**: Jackson County Public Defender's Office, 1009A Chestnut
Street, Murphysboro, Illinois, (618)687-7250. At all times materially relevant to the
complaint, this witness was an Assistant State's Attorney, Macon County, Illinois. This
witness has firsthand knowledge of what she witnessed regarding employees at the Macon
County Courthouse. This witness can testify to the matters as set forth in her deposition.
This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.
**Robert Cokely**: 348 W. Prarie, Decatur, Illinois, (217) 422-0053. This witness can
testify to the damages or lack thereof of the plaintiff. This witness also can testify as to the
matters as set forth in his deposition.
**William Conroy**: 4302 N. Main Street, Rockford, Illinois, 61103, (815) 987-7657.
This witness was the person who took over the responsibilities of the mental health cases

**Plaintiff's Exhibit 1**

for the Guardianship and Advocacy Commission.

**John L. Davis:** 101 S. Main Street, Suite 700, Decatur, Illinois, (217) 422-1965. This witness has firsthand knowledge of what he witnessed regarding employees at the Macon County Courthouse. This witness can testify to the matters as set forth in his deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Judge Scott Diamond:** Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness is an Associate Judge in the Sixth Judicial Circuit, Macon County, Illinois. He has personal knowledge of practicing the use of a computer in the chambers of Judge Sappington while the witness was taking a computer class at Richland Community College. This witness also has firsthand knowledge of Melissa Schroeder asking if she could help Judge Diamond while his judicial clerk was on temporary leave. This witness has firsthand knowledge of what he witnessed regarding employees at the Macon County Courthouse. This witness can testify to the matters as set forth in his deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Jayne E. Evey,** 306 Piatt County Courthouse, Monticello, Illinois 61856, (217) 762-5861. This witness is the Administrative Assistant to Judge Shonkwiler and can testify to the collection of information and can lay the foundation for some documents produced by the defendant.

**Judge Paul Francis:** Street address unavailable, Decatur, Illinois, (217) 423-5633. This witness is a retired Associate Judge of the Sixth Judicial Circuit, Macon County, Illinois. At all times materially relevant to the allegations contained in the complaint, this witness was a full-time judge. He has firsthand knowledge about the potential transfer of plaintiff to be the judicial clerk to his courtroom and the reactions thereto. This witness can testify to the matters as set forth in his deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Kelly Geisler:** Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217) 424-1454. This witness is a court reporter and at all times materially relevant to the complaint, she worked with Judge Steadman. This witness has firsthand knowledge of what she witnessed regarding employees at the Macon County Courthouse. This witness can testify to the matters as set forth in her deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**John K. Greanias:** Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217) 424-1467. This witness can testify as to the timing of any complaint made by the plaintiff, conversations that he had with staff, the resignation of the plaintiff, assignments of staff, reporting procedures, administrative functions, complaints about the plaintiff, disruptions caused by the plaintiff. This witness has firsthand knowledge of what he witnessed regarding employees at the Macon County Courthouse. This witness can testify to the matters as set forth in his deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Judge James A. Hendrian:** 5322 Navajo Drive, Forsyth, Illinois (phone number unavailable). This witness is a retired judge. At the time of the allegations of the complaint, he was a Circuit Court Judge in the Sixth Judicial Circuit, Macon County, Illinois.

2

This witness has firsthand knowledge of what he witnessed regarding employees at the Macon County Courthouse. This witness can testify to the matters as set forth in his deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Julie Jewel**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness is a court reporter. In September 1996, she became the court reporter in the courtroom of Judge Sappington.

This witness can testify about her firsthand observations regarding Judge Art Sappington, Melissa Schroeder, and other court personnel in the Macon County Courthouse, which may be relevant to the allegations contained in plaintiff's complaint and defendants' answers. This witness has firsthand knowledge of what she witnessed regarding employees at the Macon County Courthouse. This witness can testify to the matters as set forth in her deposition. In addition, this witness may be able to rebut testimony elicited from plaintiff or her witnesses.

**Gina Jones**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness was the court reporter for Judge Patton. She has firsthand knowledge of what she witnesses regarding Judge Sappington, Leona Miller, plaintiff, and Ruth Young. She also has knowledge that plaintiff did not complain to personnel at the Macon County Courthouse regarding sexual harassment. This witness also may be able to testify about what she observed with regard to Judge Sappington, plaintiff, and other Macon County Courthouse personnel relevant to the allegations contained in plaintiff's complaint and defendants' answer. This witness can testify to the matters as set forth in her deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses. In addition, this witness may be able to rebut testimony elicited from plaintiff or her witnesses.

**Christina Lees**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness was a judicial clerk to Judge Patton at all times materially relevant to the complaint. She has firsthand knowledge of what she witnessed with regard to Judge Sappington, plaintiff, and other employees in the Macon County Courthouse relevant to the allegations contained in the complaint. This witness can testify to the matters as set forth in her deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Robin Johnson**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness was a judicial clerk. She may be able to rebut some of the testimony elicited from plaintiff or her witnesses. Specifically, this witness would deny she was ever an assistant to Janice Shonkwiler, that she disliked working for Judge Sappington, and that she told Janice Shonkwiler she disliked working for Judge Sappington. This witness can testify to the matters as set forth in her deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Nathan Maddox**: Howlett Building, Room 298, Springfield, Illinois; 217/785-3094. This witness can testify about the functions of the Administrative Office of the Illinois Courts and its relationship to Circuit Court Judges and Associate Circuit Judges. In addition, this witness can testify regarding the sexual harassment policy which has been promulgated by the Supreme Court of Illinois. This witness can testify to the matters as set forth in his deposition. This witness also may be able to rebut testimony elicited from plaintiff or her

witnesses.

**Leona Miller**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness was the court reporter for Judge Sappington prior to September 1996. Thereafter, she became the court reporter to Judge Greanias until approximately October 2000. She has firsthand knowledge of what she observed regarding plaintiff, Judge Sappington, and other Macon County Courthouse employees. This witness can testify to the matters as set forth in her deposition. She also may be able to rebut the testimony elicited from plaintiff and her witnesses.

**Melenie Milliman**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness is an employee who works with the computers of the Macon County judiciary. She has firsthand knowledge of the interaction between personnel in the Macon County Courthouse that may be relevant to the allegations contained in the complaint. This witness can testify to the matters as set forth in his deposition. In addition, this witness also may be able to rebut testimony elicited from the plaintiff or her witnesses.

**Eva Mueller**, 980 Clocktower Drive, Springfield, Illinois, 62704, (217) 793-0688. This witness can testify that she did not comply with the subpoena issued to her by defense counsel for plaintiff's file. She also can testify that she has since lost the plaintiff's file and cannot produce the documents therein. This witness has information on the damages or lack thereof as claimed by the plaintiff. In addition, this witness can testify to the matters as set forth in her deposition.

**Judge Theodore E. Paine**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. At all times materially relevant to the complaint, this witness was a Circuit Court Judge in the Sixth Judicial Circuit, Macon County, Illinois. This witness has secondhand knowledge of the allegations of plaintiff's complaint, complaints of employees of the Macon County Courthouse, and potential transfers which he heard from other Macon County Courthouse employees. He has firsthand knowledge of what he observed when plaintiff would enter the chambers of Judge Sappington while the witness was communicating with Judge Sappington. This witness also has firsthand knowledge of the reaction/statements of Judge Sappington regarding a divorce case heard by Judge Sappington that involved sexual devices. This witness also has firsthand knowledge regarding the experience and work ethic of Judge Sappington. He may be able to rebut the testimony elicited from plaintiff and her witnesses.

**Judge Jerry Patton**: 3024 St. Andrews Drive, Decatur, Illinois (phone number unavailable). At all times materially relevant to the complaint, this witness was a Circuit Court Judge of the Sixth Judicial Circuit, Macon County, Illinois. He can testify about his association with Judge Sappington and may be able to rebut the testimony elicited from plaintiff or her witnesses. This witness can testify to the matters as set forth in his deposition. This witness now is retired from the bench.

**Wendy Reaves**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-1454. This witness was the court reporter for Judge Francis. She has firsthand knowledge about the potential transfer of plaintiff to be the judicial clerk in the courtroom of Judge Francis and the reactions thereto. This witness also has firsthand knowledge of conversations she had with plaintiff and what she witnessed regarding employees at the Macon County Courthouse. She has secondhand knowledge through office gossip

4

regarding the allegations of sexual harassment made by the plaintiff. This witness can testify to the matters as set forth in her deposition. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**John Robinson**: 371 Shoreline Place, Decatur, Illinois, (217) 782-7055. This witness can testify as to the matters as set forth in his deposition.

**Melissa Robinson**: 371 Shoreline Place, Decatur, Illinois. This is the plaintiff in the case at bar and can testify as to the matters as set forth in the discovery that she gave and did not give in the case at bar.

**Cheryl Sappington**: 3246 Vining, Decatur, Illinois. This witness can testify to the matters as set forth in her deposition. This witness may be able to rebut testimony elicited from plaintiff or her witnesses.

**Warren A. Sappington**: 3246 Vining, Decatur, Illinois. This witness can testify to the matters as set forth in his deposition. This witness may be able to rebut testimony elicited from plaintiff or her witnesses.

**Janice Shonkwiler**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217) 424-1454. This witness can testify to matters including what plaintiff told and did not tell her and when the conversations occurred. This witness has firsthand knowledge of the administrative operations of the judicial clerks in Macon County. This witness also has firsthand knowledge of certain events in which Macon County employees were involved. This witness can testify to the matters as set forth in her deposition. This witness may be able to rebut testimony elicited from plaintiff or her witnesses.

**John P. Shonkwiler:** 306 Piatt County Courthouse, Monticello, Illinois, (217) 762-5861. This witness can testify that he was given no notice or information about the acts of alleged harassment, that he has no control over the discipline of judges. He can also testify regarding the appointment of judges and election of circuit court judges and the duties of a chief judge and presiding judge. He also can testify to the matters as set forth in any discovery that was given by him in the case at bar. This witness also may be able to rebut testimony elicited from plaintiff or her witnesses.

**Judge Timothy Steadman**: (217) 875-6608. At all times materially relevant to the complaint, this witness was an Associate Judge of the Sixth Judicial Circuit, Macon County, Illinois. He can testify about his association with Judge Sappington and may be able to rebut the testimony elicited from plaintiff or her witnesses. This witness can testify as to the matters as set forth in his deposition. This witness now is retired from the bench.

**Lisa White**: Macon County Office Building, 141 S. Main Street, Decatur, Illinois; (217)424-0857. This witness currently is a Judge in the Sixth Judicial Circuit, Macon County, Illinois. At all times materially relevant to the complaint, this witness was an Assistant Public Defender and at some periods of time was a Guardian ad Litem for abuse and neglect cases. She has personal knowledge that the plaintiff stayed in the chambers of Judge Sappington while the witness was conducting business in chambers with other attorneys. She also has firsthand knowledge of the interactions between personnel in the Macon County Courthouse that may be relevant to the allegations contained in the complaint. In addition, this witness also may be able to rebut testimony elicited from the plaintiff or her witnesses.

**Ruth Young**: . This witness can testify as to matters as set forth in her deposition.

2. A description by category and location of all documents, data compilations, and tangible things it the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.

RESPONSE:

    Plaintiff's personnel file–maintained in the Macon County Courthouse
    Macon County Personnel Handbook file–maintained in the Macon County Courthouse
    Memoranda of November 15, 1996, from Judge Davis to Judge Greanias
    Employee Status Change Sheet for termination of Melissa Schroeder (January 31, 1997)
    EEO-4 Report
    Illinois Department of Human Rights file
    Administrative Directive on Sexual Harassment .
    Transcript of Juvenile Proceeding Given to Judge Greanias
    Notes/Diaries/Documents of Judge Sappington
    Docket Sheets
    Plaintiff's Mental Health Records
    Plaintiff's Educational Records
    Information and documents given and received during discovery

3. A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

RESPONSE:

    Not applicable.

4. Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgments.

RESPONSE:

See 5 ILCS 350/2; 20 ILCS 405/64.1; 705 ILCS 35/0/01 *et seq.* (1998); insurance policies for both defendants from A.I.G., Inc.

Respectfully submitted,

WARREN A. SAPPINGTON and JOHN P. SHONKWILER,

Defendants,

JAMES E. RYAN, Attorney General
State of Illinois,

KAREN L. McNAUGHT, #06200462
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
(217) 782-5819

Of Counsel.

Attorney for Defendants,

BY: _____
KAREN L. McNAUGHT
Assistant Attorney General

7

## CERTIFICATE OF SERVICE

Karen L. McNaught, Assistant Attorney General, hereby certifies that she has

served a copy of the foregoing Amended Initial Disclosures Pursuant toFederal Rule of

Civil Procedure 26(a)(1) upon:

Melissa M. McGrath
Thomson & Weintraub
105 N. Center Street
P.O. Box 3577
Bloomington, Illinois 60702-3577

Diane M. Baron
Clausen Miller, P.C.
10 S. LaSalle Street
Chicago, Illinois 60603

John E. Cassidy
Cassidy & Mueller
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602

Robert E. Gillespie
Hinshaw & Culbertson
400 S. Ninth Street
Springfield, Illinois 62701

by depositing a copy of same in a correctly addressed, prepaid envelope and depositing

same in the United States Mail in Springfield, Illinois, on December 7, 2001.

KAREN L. McNAUGHT
Assistant Attorney General

KAREN L. McNAUGHT
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62706
217/782-5819

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MELISSA ROBINSON,                      )
                                       )
                Plaintiff,             )
                                       )
        vs.                            )   NO. 99-CV-2266
                                       )
WARREN A. SAPPINGTON, JOHN P.          )
SHONKWILER and MACON COUNTY,           )
                                       )
                Defendants.            )

**RECEIVED AUG 2 2 2001 By____**

## ANSWER TO PLAINTIFF'S SECOND SET OF INTERROGATORIES TO DEFENDANT, MACON COUNTY

NOW COMES the Defendant, MACON COUNTY, by its attorneys, CASSIDY & MUELLER, and for its Answer to Plaintiff's Second Set of Interrogatories to Defendant, MACON COUNTY, states as follows:

1.   Defendant, MACON COUNTY, originally identified Larry R. Fichter, former State's Attorney of Macon County and Joe McLaughlin, former chairman of Macon County Board, as witnesses in the above captioned lawsuit. Additionally, MELISSA ROBINSON, JUDGE WARREN A. SAPPINGTON, Judge John Greanias, Janice Shonkwiler and Cheryl Sappington were also identified. For the nature, extent and basis of the testimony of MELISSA ROBINSON, JUDGE WARREN A. SAPPINGTON, Judge John Greanias, Janice Shonkwiler and Cheryl Sappington, please see the deposition testimony of these witnesses given in this matter.

Joe McLaughlin is hereby withdrawn as a witness by MACON COUNTY. In his place, MACON COUNTY hereby identifies David Drobisch as an additional witness for MACON COUNTY. David Drobisch has been a county board member of MACON COUNTY since

**Plaintiff's Exhibit 2(a)**

1982 through the present and has been a member of the oversight committee entitled "Justice Committee" during this same time period.

2.    Larry R. Fichter, 561 S. McClellan Avenue, Decatur, IL 62522, 217/423-2816, Retired State's Attorney of Macon County as December 1, 2000.

Larry Fichter has knowledge of the allegations of matters alleged in Plaintiff's Complaint based upon his participation in the proceedings before the Human Rights Commission and has reviewed the pleadings in this cause.  He has knowledge regarding the legal relationship between the judicial branch of the State of Illinois government and Macon County.  He has prepared responses to Plaintiff's Human Rights Commission pleadings before the Human Rights Commission and will testify to all matters contained in those pleadings and other documents prepared by him which were presented by the Human Rights Commission.

In addition to those matters set forth above, Larry Fichter will testify that Macon County did not hire Melissa Robinson and Janice Shonkwiler.  Melissa Robinson and Janice Shonkwiler were hired by the Macon County Circuit judges as judicial clerks/secretaries.  Robinson's job title was changed to judicial clerk on December 1, 1995.  It is believed that Janice Shonkwiler's job title was changed to administrative assistant to

the presiding judge.  Larry Fichter will further testify that the Plaintiff was hired by and employed as a judicial clerk by the Macon County Circuit Court judges.  Larry Fichter will further testify that Melissa Robinson and Janice Shonkwiler were paid through the auditor's office of Macon County and received insurance benefits through that office.  This constituted the extent of Macon County's involvement in the employment of Melissa Robinson and Janice Shonkwiler.  Melissa Robinson and Janice Shonkwiler filled out standard forms that are filled out by all who are paid through Macon County and the words contained upon those forms do not necessarily reflect employment by the County but rather are simply standard forms used to process paycheck payments and insurance.

Melissa Robinson and Janice Shonkwiler's employment, job duties, vacation schedule, compensation, sick leave, leaves of absence, day-to-day job functions and all other job functions, with the exception of payment of salary and insurance benefits, were entirely controlled by the judicial branch of the Macon County Circuit Court.  Macon County had absolutely no control over these matters.

Larry Fichter will testify that although the County paid Melissa Robinson and Janice Shonkwiler's compensation and provided insurance benefits, neither Macon County nor its board determined the amount of compensation.  The judicial branch of

3

the Macon County Circuit Court would submit a gross budget request on a yearly basis of a single dollar amount.    The judicial branch of the Macon County Circuit Court, and not Macon County or its board, would be solely responsible for determining how the single dollar amount budgeted to the judicial branch would be split up between various expenses, administrative costs, salaries and equipment.    The judicial branch of Macon County Circuit Court was solely responsible for determining how the approved judicial budget amount would be split among the individual judicial clerks, court reporters, jury commission, administration, supplies, office equipment, judicial library and all other related costs.

Larry Fichter will further testify that Janice Shonkwiler and Melissa Robinson were not employees of Macon County but rather they were employed by the judicial branch of the Macon County Circuit Court.  Macon County did not keep a personnel file on Melissa Robinson or Janice Shonkwiler which was kept solely by the judicial branch.  The only documents Macon County has in its possession relating to the employment of Melissa Robinson and Janice Shonkwiler relate to those forms that were needed to process the payment of salary and insurance benefits previously referred to and to withhold taxes.  All other matters in their personnel files were not kept by Macon County and have never been seen by Macon County during their employment.

4

Larry Fichter will further testify that Macon County and its board cannot constitutionally get involved in the hiring, control and firing of Janice Shonkwiler, Melissa Robinson or other judicial clerks because Macon County is a part of the executive branch of government while the judiciary is a separate constitutional branch and such decisions and control by Macon County would violate constitutional equal protection concerns.

Larry Fichter will further testify that neither Macon County nor its board were ever made aware of the allegations of Melissa Robinson related to sexual harassment until the Human Rights Complaint was filed on her behalf. It is Larry Fichter's understanding that all such complaints were properly lodged within the judicial branch of Macon County, the only body that had control over Melissa Robinson's employment and over Judge Sappington. Neither Macon County nor its board had any power to isolate or protect Melissa Robinson from Judge Sappington nor to take disciplinary action against Judge Sappington had any complaints been made to them.

3.   David Drobisch, 363 S. Main Street, Suite 245, Decatur, Illinois, 62523, 217/428-0943.

David Drobisch was elected to the county board in 1982 and has been a member of the county board since 1982 through the present. The county board has seven oversight committees, one of which is entitled the "Justice Committee" which deals with

5

matters relating to the judiciary, sheriff's office, Emergency
Services and Disaster Association and State's Attorney offices.
David Drobisch has been a member of the Justice Committee from
1982 up through the present.  He served as its chairman for
approximately five to six years when the Republicans controlled
the Macon County board.

The only judicial issue presented to the Justice Committee
is budgetary in nature.  The judiciary presents a budget to the
Justice Committee on a yearly basis which is presented by the
presiding judge who requests a single gross figure for approval
by the county board for the payment of judicial expenses such as
salaries, judicial administration, judicial library, equipment,
supplies and other such expenses.  No determination is made by
the Justice Committee nor the Macon County board about how the
money approved by the Macon County board is split up within the
judiciary to pay judicial expenses.  These decisions are made
solely by the presiding judge and the judicial branch of Macon
County.  It is Mr. Drobisch's understanding that Janice
Shonkwiler and Melissa Robinson's compensation were paid from the
amount budgeted but determinations as to the specific amount
received by each judicial clerk are not made by the county board
but rather are made solely within the judicial branch.

The Macon County board makes no decisions concerning the
number of judicial clerks hired by the judicial branch, the

6

hiring, firing, discipline, duties, work responsibilities, work hours, vacation schedules, sick leave or any other matters relating to the employment of judicial clerks including Janice Shonkwiler and Melissa Robinson.  All such decisions are solely made by the presiding judge and the judicial branch of Macon County.

Macon County does not possess the personnel file of Melissa Robinson or Janice Shonkwiler but rather that file is kept and maintained by the judicial branch of Macon County.  The only documents possessed by Macon County are those standard forms filled out by Melissa Robinson and Janice Shonkwiler which were needed by Macon County in order to pay their salary and benefits and to withhold taxes.

Neither David Drobisch nor the county board was made aware of the allegations of sexual harassment by the Plaintiff prior to her filing a Human Rights Complaint against Macon County.

All personnel decisions and policies relating to the employment of Janice Shonkwiler and Melissa Robinson are solely within the control and are the responsibility of the judicial branch of Macon County Circuit Court and are not matters that have ever been addressed to the county board with the exception of those matters relating to the issuance of checks for compensation and the provision of insurance benefits.

CASSIDY & MUELLER,

By: _____

Attorneys for the Defendant,
MACON COUNTY

PROOF OF SERVICE

The undersigned certifies that on 8/21, 2001, a
copy of the foregoing document was served upon
all counsel of record at their respective
addresses by:

_____✓_____  Deposit in the U.S. Mail
_____  Hand Delivery
_____  Fax
_____  Federal Express

By: _____

John R. Cassidy, III
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602
Telephone: 309/676-0591

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

MELISSA ROBINSON (p/k/a MELISSA )
SCHROEDER),                      )
                                 )
            Plaintiff,           )
                                 )
    -vs-                         )  No. 1:04-cv-1360
                                 )
JUDGE WARREN A. SAPPINGTON       )
SIXTH JUDICIAL CIRCUIT,          )
(IN OFFICIAL CAPACITY            )
                                 )
            Defendant,           )
                                 )
MACON COUNTY,                    )
                                 )
            Defendant.           )
                                 )
MACON COUNTY CIRCUIT COURT,      )
                                 )
            Defendant.           )

DEPOSITION

The DEPOSITION of LAWRENCE FICHTER, to be taken by
stenographic means, beginning on January 31st, 2005, at Thomson
& Weintraub, 105 North Center Street, Bloomington, Illinois,
commencing at 10:00 a.m., before Kitty L. Malcom, a Notary
Public and Certified Shorthand Reporter, License No. 084-002106,
pursuant to Federal Court Rules.

MALCOM REPORTING SERVICE
1310 Ironwood CC Drive
Normal, IL 61761
(309) 454-3378
Fax (309) 454-8286

MALCOM REPORTING SERVICE   309-454-3378          1

---

APPEARANCES:

Ms. Melissa M. McGrath, Esq.
THOMSON & WEINTRAUB
105 North Center Street
Bloomington, IL 61701
    On behalf of Plaintiff

Ms. Diane M. Barron, Esq.
CLAUSEN MILLER PC
10 South LaSalle Street
Chicago, MO 60603-1098
    On behalf of Defendant Sappington.

Mr. John Cassidy, Esq.
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, IL 61602
    On behalf of Macon County.

Mr. Matthew D. Bilinsky
Asst. Attorney General
Illinois Attorney General's Office
500 So. Second Street
Springfield, IL 62706
    On behalf of Macon County Circuit Court.

WITNESS:
    LAWRENCE FICHTER
    Examination by Ms. McGrath ........ 3
    Examination by Mr. Bilinsky ....... 19
    Examination by Mr. Cassidy ........ 21

EXHIBITS:
    Exhibit # 1 ......... Macon County's Affirmative Defense
    Exhibit # 2 ......... Personnel Handbook, Macon County, IL,
                         Revised Edition June, 1987

2

---

1    LAWRENCE FICHTER

2    called as a witness, after being first duly sworn, was examined

3    and testified upon his oath as follows:

4

5    EXAMINATION

6    BY MS. McGRATH:

7    Q.   Sir, would you state and spell your full name for the

8    court reporter?

9    A.   Lawrence R. Fichter, L-A-W-R-E-N-C-E, F-I-C-H-T-E-R.

10   Q.   Mr. Fichter, am I correct that you were previously the

11   state's attorney for Macon County?

12   A.   Yes, that's correct.

13   Q.   During what time period were you the state's attorney?

14   A.   1988 through 2000 when I retired.

15   Q.   Am I correct that you don't have any official

16   relationship with Macon County at this juncture?

17   A.   No official relationship, no.

18   Q.   Do you still reside in Macon County?

19   A.   No. I reside in McHenry, Illinois, in McHenry County.

20   I moved a couple of years ago, although I frequently go back to

21   Decatur.

22   Q.   I have placed in front you what has been marked as

23   Exhibit 1. It's title is Affirmative Defense. This document

24   was apparently prepared by your attorney, John Cassidy. It lays

3

---

1    out the affirmative defense of Macon County that at all relevant

2    times Macon County exercised reasonable care to prevent and

3    correct promptly any sexual harassment behavior. And further,

4    that the plaintiff, Melissa Robinson, unreasonably failed to

5    take advantage of any preventative or corrective opportunity

6    provided by Macon County.

7          Mr. Fichter, the purpose of your deposition today is

8    for me to learn what information and in fact all information you

9    have related to this affirmative defense. I am going to be

10   asking you some questions. If I ask you something that you

11   don't understand, would you please ask me to reword it?

12   A.   Sure.

13   Q.   There are going to be times when you know what I am

14   trying to ask before I get the full question out. If you can

15   wait until I am through asking the question so that the court

16   reporter can record both the question and your answer. Okay?

17   A.   I'll try, but you know how lawyers are.

18   Q.   I appreciate every effort you make. I don't plan to

19   take much of your time this morning. However, if you want to

20   take a break at any time, just ask. Okay?

21   A.   Fine.

22   Q.   As the state's attorney of Macon County, what role, if

23   any, did you play in preparing policies for the county?

24   A.   Pertaining to what, please?

4

**Plaintiff's Exhibit 2(b)**

**5**

2     A.    The state's attorney is in many respects legal counsel
3 for much of county government. From time to time Macon County
4 would make a request that we provide them with legal opinions
5 and other aspects of county government. In terms of formulating
6 policies, the State's Attorney's Office is not a policy-making
7 entity, and so we do not formulate policy for the county.
8     Q.    So would it be your testimony that with regard to any
9 written policies which Macon County had in place during 1996,
10 1997, you would not have played an active role in drafting those
11 policies?
12     A.    I'm going to try and answer your question generally
13 because it's a general question. Generally, no. We may given a
14 specific request give them a written answer to that request.
15 But the decisions about what was going to be done in terms of
16 what we had said would have been taken up by the county board or
17 perhaps one of its committees and then gone to the county board
18 for action.
19     Q.    Are you aware that Macon County had a grievance policy
20 that employees of Macon County had made available to them if
21 they had any concerns?
22     A.    Yes, I was.
23     Q.    What role, if any, did you have in preparing that
24 grievance policy?

**6**

1     A.    None whatsoever. May I state parenthetically, I
2 believe it was in force and effect prior to the time I took
3 office, so it was ongoing at the time.
4     Q.    And what role, if any, as the state's attorney would
5 you have had in investigating a complaint by an employee that
6 they had been sexually harassed?
7     A.    Well, without getting specific, the request likely
8 would have come from the agency that the party that was
9 aggrieved was employed within, or from one of the committees
10 that the county had; at a committee meeting someone would have
11 said likely somebody is making a complaint about sexual
12 harassment, so on and so forth. This is all theoretical. I
13 would have likely said put it in writing. If it would have been
14 at a county board meeting, they would have directed me or
15 requested that I would have done something, I would have either
16 said we don't do that or we'll do it, and then we would have
17 taken it from there. Since your question is general, I can't be
18 specific.
19        To be honest with you -- well, I take that back. I
20 guess that's about as far as I want to go at this point. I'm
21 not sure where you are going.
22     Q.    Sure. Let me ask you as the state's attorney of Macon
23 County, did you have a specific role in investigating a
24 complaint of sexual harassment? That's it.

**7**

1     A.    Not within the confines of the employee manual which
2 encompassed the procedures for making a sexual harassment
3 complaint. As I recall that manual, we were not in the chain of
4 command in terms of what the aggrieved party was supposed to do.
5 That was within the confines of the board and its subdivisions,
6 but I don't recall the state's attorney having any role.
7     Q.    When you are referring to the confines of the policy
8 or manual that you're talking about, is that the Personnel
9 Handbook which was dated June of 1987?
10     A.    Yes ma'am.
11     Q.    Did you have a role in investigating a complaint of
12 sexual harassment in any other confine? You've indicated you
13 had no role in the confines of the Personnel Handbook dated June
14 1987. I am trying to understand what other role or what role,
15 if any, you did have in that area.
16     A.    I'm trying to remember. I don't recall our office
17 investigating or being requested to investigate any claims of
18 sexual harassment. Now, I can be brought up-to-date or I may
19 have totally forgotten something. I really don't recall that we
20 ever got involved in a sexual harassment investigation, now,
21 within the confines of employment. If you are talking about the
22 State's Attorney's Office and prosecution and all that, that's
23 something completely different. I mean, our role as prosecutor,
24 we are involved in criminal type sexual prosecutions. I assume

**8**

1 you are not going in that direction.
2     Q.    Sure. My questions are limited within the confines of
3 employees.
4     A.    Right. At this point I don't recall.
5     Q.    And within the confines of employees, I am
6 understanding your testimony to be that you as the state's
7 attorney had no obligation or no role in carrying out the
8 procedure which is included in the Personnel Handbook dated June
9 1987?
10     A.    It's my recollection that the procedure detailed in
11 that Personnel Handbook did not involve the State's Attorney's
12 Office or the role of the state's attorney in the process.
13     Q.    Let's do this. Let's mark that handbook as an exhibit
14 so that you can take a look at it.
15     A.    Sure.
16     (Exhibit Number 2 marked for identification.)
17 BY MS. McGRATH:
18     Q.    Mr. Fichter, I have handed you what has been marked
19 Exhibit 2. Take your time and review that exhibit and then I
20 will ask you some questions about it.
21     A.    Okay.
22     Q.    Earlier in your testimony, Mr. Fichter, you referred
23 to a grievance policy within this Personnel Handbook. Can you
24 direct me to the pages on which that policy appears?

**9**

1  A.  Well, I think if you begin actually on Page 2, it sets

2  forth the policy statement as to who the handbook applies and

3  the circumstances under which it applies.

4  Q.  Mr. Fichter, I am going to move to strike that answer.

5  My question is directly, please, to the grievance policy which

6  you referred to earlier.

7  A.  I'm getting there.  Page 4.  You can't read Page 4

8  without reading Page 3, though.

9  Q.  And have you had an opportunity to review the

10  grievance procedure included in Exhibit 2?

11  A.  I have briefly reviewed it, yes.  I haven't reviewed

12  it in specific detail, but I have read it, yes ma'am.

13  Q.  I would like to ask you to take your time before

14  answering this question and review the policy as long as you

15  think is necessary.  My question to you will be as the state's

16  attorney of Macon County, did you have any role in carrying out

17  this grievance procedure which is included within Exhibit 2?

18  A.  Not other than ensuring that it would have been

19  carried out according to the rules.

20  Q.  Under what circumstances would you as the state's

21  attorney of Macon County have had the obligation to ensure that

22  the grievance policy was carried out?

23  A.  Well, generally because we have an obligation to

24  ensure that the rules of Macon County are carried out according

**10**

1  to the law, but more specifically if a matter had come to our

2  attention by any means that the grievance procedure was not

3  being carried out on a specific basis.  But we are not involved

4  -- okay, I'll confine my answer to that.

5  Q.  Would your role have been limited to employees coming

6  to you who worked within the State's Attorney's Office and

7  reported concerns?

8  A.  About a grievance that they were having?  I'm not

9  quite sure.  Let me put it this way, the State's Attorney's

10  Office is not involved -- this process would not have applied to

11  employees within the State's Attorney's Office so they would not

12  have been involved in this procedure because they weren't

13  employees of the county.  But, I mean, if one of the assistants

14  came to me about some outside source, hypothetically I probably

15  would have said I need some facts.

16  Q.  I'm sorry, I'm not trying to be difficult.

17  A.  That's okay.

18  Q.  I am not understanding your testimony.  Is it your

19  testimony that as the Macon County State's Attorney it was your

20  role to ensure that this grievance procedure was carried out for

21  anyone who came forward with a grievance?

22  A.  No.

23  Q.  Under what circumstances was it your role as the

24  State's Attorney of Macon County to ensure that the grievance

**11**

1  policy in Exhibit 2 was carried out?

2  A.  If a person under whom the grievance policy applied --

3  well, let me back up.  If the office under whom the grievance

4  policy applied came to our office and had some concern about the

5  application of it, I think we would have been obligated to look

6  at the grievance policy and the circumstances under which the

7  person came to us.  But we don't automatically assume a role in

8  this policy where none is given to us.  We don't have any under

9  this other than to ensure that it is properly done.  But we

10  don't make policy and we certainly aren't involved in the

11  grievance procedure.

12  Q.  I'm sorry, when you say "we" who are you referring to?

13  A.  State's Attorney's Office.

14  Q.  Okay.  So understanding then your limited role in

15  carrying out any type of grievance, what, Mr. Fichter, can you

16  tell me about how Macon County exercised reasonable care to

17  prevent and correct promptly any sexual harassment perpetrated

18  upon Melissa Robinson?

19  MR. CASSIDY:  Show my general objection because it

20  assumes the fact that -- first of all, I am going to make for

21  the record again the basis of this affirmative defense.  It is

22  my -- our position that Melissa Robinson was not a Macon County

23  employee and we maintain that position.  Furthermore, for that

24  reason, we do not believe that she would have availed any

**12**

1  grievance procedure by Macon County because she was not an

2  employee, but it's Melissa Robinson's position she was our

3  employee, so I guess the question is what did she do if she

4  really believed that.  Number two, it is also our position that

5  the affirmative defense may not apply to Macon County because

6  Sappington wasn't a supervisor, and there is no vicarious

7  liability.  But because this is a developing area of law, I have

8  raised it, I don't know what the law is going to be, Sappington

9  was a third party harasser, and there is an issue as to whether

10  or not this affirmative defense even applies.  The reason I

11  raise this is the way you phrased that question was of the

12  assumption Melissa Robinson was our employee, which we have

13  disputed and continue to dispute.  That is her position and not

14  our position.

15  MS. McGRATH:  For the record I am going to object,

16  number one, to the speaking objection; number two, Macon County

17  filed the affirmative defense.  I am here to gather information

18  solely limited to Macon County's affirmative defense.  That was

19  the sole basis for the Court's extension of discovery.

20  MR. CASSIDY:  Right.

21  MS. McGRATH:  It appears to me, counsel, as though you

22  are attempting to gather further discovery through your speaking

23  objection, and perhaps through Mr. Fichter's testimony, in

24  support of issues which the discovery has already been closed

1  on. Now, I am limiting my questions here to Mr. Fichter's

2  knowledge of the affirmative defense which was filed by Macon

3  County and will feel compelled to address with the Court any

4  other testimony which appears to be introduced in support of

5  those issues which have already been closed for discovery.

6      MR. CASSIDY: I'll just respond. I am not trying to

7  get any further discovery. You are the one that raised this

8  issue. It's your discovery. Mr. Fichter has been identified as

9  a witness for other reasons for a long, long time, and it was

10  your choice not to take his deposition beforehand. But at any

11  rate, I stand by my objection. We can move forward.

12  BY MS. McGRATH:

13      Q.  Can you answer the question that was asked of you?

14      A.  Forgive me, I am getting old. Briefly restate it?

15      MS. McGRATH: I don't know if I can.

16

17      (WHEREUPON, THE REQUESTED PORTION OF THE

18      RECORD WAS READ BACK BY THE REPORTER.)

19

20      A.  Well, there was the handbook that existed, which gave

21  notice to persons who worked within the confines of the county

22  that there was a sexual harassment policy in place, whether that

23  person was employed specifically by Macon County or not. The

24  policy gave those who availed themselves of it an opportunity to

13

1  to become part of the process under which this grievance would

2  become a matter of record with the proper Macon County parties,

3  and within that channel from immediate supervisor to county

4  board chairman, the grievance would be fully heard and simply

5  would be acted on. As I said, the State's Attorney's Office

6  played no role in that, but there was a process available for

7  employees.

8  BY MS. McGRATH:

9      Q.  Mr. Fichter, you referred to a sexual harassment

10  policy. Do you recall that?

11      A.  Yes.

12      Q.  Can you tell me where that -- sir, I am going to ask

13  you not to look at exhibits unless you are asked to. If I can

14  ask you to close this exhibit for a moment. Can you tell me

15  where, if anywhere, you're aware of Macon County having a sexual

16  harassment policy in place during 1996, 1997?

17      MR. CASSIDY: Show my objection to relevancy. Title

18  VII deals with sexual discrimination, not sexual harassment.

19  Now, there is an area of harassment that is called

20  discrimination, but I believe the correct question is since it's

21  a Title VII action is what sexual discrimination policy was in

22  effect. That's my objection.

23      MS. McGRATH: Again, I will object to the speaking

24  objection. And, Mr. Cassidy, as you know, you have the

14

1  opportunity to question Mr. Fichter.

2  BY MS. McGRATH:

3      Q.  Mr. Fichter, can you direct me to or tell me if Macon

4  County had a sexual harassment policy in writing in place during

5  the period 1996, 1997?

6      A.  Well, I am not mixing my metaphors, but sexual

7  discrimination and sexual harassment couldn't mean one in the

8  same in terms of somebody reading it in terms of the legal

9  definition. I am sure there is a distinction. Within the Macon

10  County handbook, I believe there was mention of sexual

11  discrimination, if I am not mistaken. I don't know if the legal

12  definition of harassment is in there.

13      Q.  I'm sorry --

14      A.  So I can't answer your question. I do know that there

15  is a -- and there was in effect in 1996-1997, state laws having

16  to do with harassment, but I don't know that they were involved,

17  specifically set out within the handbook.

18      Q.  I'm sorry. Let me direct you now to Exhibit 2, which

19  is the Personnel Handbook that you have testified was in force

20  during 1996 and 1997. Take your time. Let me know, first of

21  all, if there is any sexual harassment policy within Exhibit 2?

22      MR. CASSIDY: Again, show my objection. Again, this

23  is playing games with words. Title VII is a sexual

24  discrimination statute. The grievance procedures from Pages 2

15

1  through whatever deals with discrimination-related grievances,

2  it deals with sexual harassment. Sexual harassment has been

3  found to be a form of sexual discrimination by the Court. We're

4  playing games now with words and the handbook itself speaks for

5  itself as to what it applies to, but you can go ahead and answer

6  as we play these games.

7      THE WITNESS: I am referring to Page 2 on the Equal

8  Opportunity Employer Policy Statement, first and second

9  paragraphs, parenthetically states, the County of Macon affirms

10  its commitment to an active policy of nondiscrimination and

11  equal employment opportunity.

12      Then in the second paragraph it refers to, among many

13  other things, sex, age, national origin, handicap unrelated to

14  ability. It goes through a whole litany of categories. And I

15  would believe in there and also in the last paragraph on Page 2

16  would be encompassing forms of discrimination based upon race,

17  color, religion, sex, age, handicap, etcetera. So as I

18  indicated in my earlier testimony, the policy statement has to

19  be read in conjunction with the grievance procedure which begins

20  on Page 4. So that's the basis for my answer.

21      MS. McGRATH: And I'm sure --

22      THE WITNESS: It doesn't say harassment. That is

23  where we're going with this.

24  BY MS. McGRATH:

16

**Page 17**

1    Q.  When you say "it doesn't say harassment"

2    A.  And it --

3    Q.  Sir, let me finish.  You would agree that Exhibit 2

4 does not contain the terms "sexual harassment" when addressing

5 or when outlining the policy statement which you have testified

6 about which appears beginning on Page 2?

7    MR. CASSIDY:  Let me make an objection.  The objection

8 is relevancy because Title VII does not contain the word

9 "harassment" either.  It contains the word "discrimination."

10 But you can go ahead and answer.

11    THE WITNESS:  I do not find those words, but I believe

12 it to be distinction without difference.  That is my own

13 opinion.

14 BY MS. McGRATH:

15    Q.  Anything else you can tell me, Mr. Fichter, with

16 regard to the affirmative defense of Macon County or the portion

17 of that affirmative defense which states that Macon County

18 exercised reasonable care to prevent and correct promptly any

19 sexual harassment behavior directed to Melissa Robinson?

20    A.  Before or after it came to our attention that Ms.

21 Robinson was making a claim?  Your question was general?

22    Q.  Sir, I would direct you to Exhibit 1, okay.  That's

23 the affirmative defense filed by --

24    A.  Time is relevant.  No.

**Page 18**

1    Q.  Sir, sir, let me get the question out so the court

2 reporter records what you are stating there.  Give me a moment.

3 Directing you to Exhibit 1, Macon County's Affirmative Defense

4 filed by your attorney, directing you to the statement within

5 paragraph one:  At all times relevant herein, Macon County,

6 Illinois, exercised reasonable care to prevent and correct

7 promptly any sexual harassment behavior.  And I am asking you

8 directed to the plaintiff, is there anything else other than

9 what you have indicated this morning that you can tell me about

10 that portion of the affirmative defense?

11    A.  No, not to my knowledge.

12    Q.  Mr. Fichter, what can you tell me about the portion of

13 the affirmative defense included in Exhibit 1 which states:

14 Melissa Robinson unreasonably failed to take advantage of any

15 preventative or corrective opportunity provided by Macon County?

16    A.  Assuming for the sake of the question that Melissa

17 Robinson believed herself to be an employee, which as you know

18 we do not believe she was, I have no information that she ever

19 availed herself of whatever was in the Personnel Handbook

20 pertaining to sexual discrimination or any other aspect of it.

21 Now, if she did, I have no knowledge of it and I don't -- I have

22 no knowledge of it.

23    Q.  Again, when you say handbook, you are referring to

24 Exhibit 2?

**Page 19**

1    A.  Or A.

2    Q.  Actually we have marked it as Exhibit 2.

3    A.  Okay.

4    Q.  Is that the extent of your knowledge, Mr. Fichter,

5 with regard to the defense that Melissa Robinson failed to take

6 advantage of any preventative or corrective opportunity provided

7 by Macon County?

8    A.  Yes.  This handbook was the corrective opportunity

9 that was provided for persons claiming to be employees at the

10 time.  There's another one in place now, of course.

11    MS. McGRATH:  I don't have any further questions for

12 Mr. Fichter.

13    EXAMINATION

14 BY MR. BILINSKY:

15    Q.  I have a couple.  Mr. Fichter, do you know if Exhibit

16 2 was provided to Ms. Robinson?

17    A.  I do not know.

18    Q.  Page 2 of Exhibit 2, the last paragraph --

19    A.  Yes.

20    Q.  -- states in part:  It is the policy of Macon County

21 that all recruiting, hiring, training, compensation, overtime,

22 job classification and assignments, working conditions,

23 promotions, transfers, employee treatment and all other terms,

24 conditions, and privileges of employment shall be maintained and

**Page 20**

1 conducted in a manner which does not discriminate on the basis

2 of, among other things, sex.  Do you see that section?

3    A.  Yes, I do.

4    Q.  Wouldn't you say that Macon County provided a policy

5 to prevent and correct promptly, quote, the sexual harassing

6 behavior?  Do you believe behavior which effects working

7 conditions, terms, conditions or privileges of employment based

8 upon gender is the same thing?

9    A.  I think that questionably a fair reading of this

10 paragraph would encompass that, yes.

11    Q.  And Roman numeral ii, there is a forward.  Is that

12 correct?

13    A.  Correct.

14    Q.  The second paragraph down, second sentence, does it

15 instruct persons reading the manual that should a situation or

16 event arise that they don't perceive as being covered by the

17 manual, they should consult their supervisor about it?

18    A.  Yeah.  But I'm not picking up where you are.

19    Q.  The second paragraph, first and second sentences.

20    A.  Oh, yes.  That's correct.  I mean, your reading of

21 that is correct.

22    MR. BILINSKY:  I have no further questions.

23    MS. BARRON:  No questions.

24    MR. CASSIDY:  I have a couple just real quick

1  questions.

2      EXAMINATION

3  BY MR. CASSIDY:

4      Q.   Mr. Fichter, you were state's attorney when Melissa

5  Robinson filed her complaint with the Illinois Human Rights

6  Commission; is that correct?

7      A.   Yes sir.

8      Q.   And your office was involved in defending that action?

9      A.   Yes, it was.

10     Q.   And you were personally involved; is that correct?

11     A.   In the proceeding before the Human Rights Commission I

12  believe in Springfield.

13     Q.   Were you aware, ever made aware of any of Melissa

14  Robinson's complaints of sexual discrimination or harassment

15  prior to the filing of the complaint with the Illinois Human

16  Rights Commission?

17     MS. McGRATH:  Just object to relevance.

18     THE WITNESS:  I have reviewed what I believe are the

19  relevant documents that existed when this first started, many of

20  which I authored.  My recollection is that my first notice of

21  this was a letter from John Greaneas.  I believe he told me that

22  a complaint had been filed, and he may have even sent me a copy

23  of it.  I can't recall that specifically, but it had already

24  been on file.

                                                          21

1  BY MR. CASSIDY:

2      Q.   From your investigation of the Human Rights complaint,

3  you have become -- did anybody else with Macon County as far as

4  you know ever become aware of those allegations for harassment

5  prior to the filing of the complaint?

6      MS. McGRATH:  Objection, foundation and relevance.

7      THE WITNESS:  I have no knowledge that anyone knew

8  about any of Ms. Robinson's allegations prior to the complaint

9  being filed.

10  BY MR. CASSIDY:

11     Q.   And as a part of your preparation of the response to a

12  questionnaire which is required to be filed on behalf of Macon

13  County and the Human Rights Commission, you prepared those

14  responses; is that correct?

15     MS. McGRATH:  Again objection, relevance, foundation.

16  BY MR. CASSIDY:

17     Q.   Do you recall?

18     A.   I prepared the responses based upon information that

19  we went out and got in order to give complete -- or as nearly as

20  complete answer as possible, that's correct.

21     Q.   And part of those responses, you included a copy of

22  Exhibit Number 2, the Macon County Personnel Handbook, that you

23  had received and obtained and that was in effect at the time

24  that Melissa Robinson was employed by the judicial practice; is

                                                          22

1  that correct?

2      A.   Every branch.  Yes.

3      MS. McGRATH:  Just for the record, I am going to

4  object to the relevance of the line of questioning of anything

5  that took place in the Department of Human Rights as I believe

6  it is not relevant to the purpose of the deposition today and

7  that is questioning Macon County's affirmative defense.

8      MR. CASSIDY:  I think it's relevant to the extent that

9  it shows that he was involved in conducting an investigation and

10  from that investigation he learned of the policy manual, made it

11  a part of the record, and it was in effect for Macon County

12  employees, and his investigation did not disclose any complaints

13  of harassment to Macon County, number two.  I don't have

14  anything further.

15     THE WITNESS:  Yes.  The answer is yes.  This was

16  forwarded as part of the exhibit.

17     MS. McGRATH:  I don't have any other questions.  What

18  do you want to do about signature?

19     MR. CASSIDY:  Do you want to read and sign or waive?

20     THE WITNESS:  No, I'll waive.

21

22

23

24

                                                          23

STATE OF ILLINOIS  )
                   )
COUNTY OF McLEAN   )


        FEDERAL RULE OF CIVIL PROCEDURE RULE
              30(f)(1) CERTIFICATE

      I, KITTY L. MALCOM, C.S.R., a notary public in and for
the County of McLean and State of Illinois, do hereby certify
that on the 31st day of January, 2005, personally appeared
before me at 105 North Center Street, Bloomington, Illinois,
LAWRENCE R. FICHTER, as a witness in said cause.

      I further certify that said witness was by me first
duly sworn to testify the whole truth in the cause aforesaid
before the taking of the deposition; that the testimony was
reduced to writing in the presence of said witness by means of
machine shorthand and afterwards transcribed into typewriting;
and that the foregoing is a true and correct record of the
testimony given by said witness.

      I further certify that I am neither counsel for nor
related to counsel for any of the parties to this suit, nor am I
in any way related to any of the parties to this suit, nor am I
in any way interested in the outcome thereof.

      I further certify that my certificate annexed hereto
applies to the original transcript and copies thereof, signed
and certified by me only.  I assume no responsibility for the
accuracy of any reproduced copies not made under my control or

                                                          24

direction.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal this 7th day of February, 2005.

*Kitty Malcom*

Kitty L. Malcom, CSR-RPR
1310 E. Ironwood CC Dr.
Normal, IL 61761
(309)454-3378

25