E-FILED
Friday, 08 April, 2005 03:34:48 PM
Clerk, U.S. District Court, ILCD

25. The *ROBINSON* opinion states that Illinois law requires that MACON COUNTY be a necessary party who may be required to fund a judgment entered against the co-defendant, STATE OF ILLINOIS, because:

> "The responsibility for maintaining and funding the ***Macon County Circuit Court*** lies with Macon County. Under Illinois law, it is responsible for the payment of expenses and judgments emanating from the workings of that court[3]." (Emphasis added) *Robinson v. Sappington*, 351 F.3d at 338.

26. Under the pending *Robinson* case, a Title VII judgment can only be entered against a named defendant who is a legal entity, not the "Macon County Circuit Court[4]". Illinois law is clear that the courts, their judges and the non-judicial employees of the judiciary are all a part of the judicial branch of the STATE OF ILLINOIS. The fact that counties pay the salaries and expenses incurred in operating their county courthouses does not change this fact. (See, *Orenic v. Illinois State Labor Relations Bd.* 127 Ill.2d 453, 475-476, 537 N.E.2d 784, 795-796 (Ill 1989); *Drury v. County of McLean,* , 89 Ill.2d 417, 433 N.E.2d 666 (Ill.

[3] In finding that MACON COUNTY is a necessary party, the Appellate Court appeared to only consider the second issue decided by the Illinois Supreme Court in *Carver II;* Who is responsible for financing?, without first considering whether a financing dilemma even exists.

[4] There is not a legal entity in Illinois known as the "Macon County Circuit Court" that could constitute a defendant employer under a Title VII action. Article VI of the Illinois Constitution creates a branch of *state government* known as "The Judiciary". Thereunder, §7 provides for Judicial Circuits:

> (a) The State shall be divided into Judicial Circuits consisting of one or more counties. The First Judicial District shall constitute a Judicial Circuit. The Judicial Circuits within the other Judicial Districts shall be as provided by law. Circuits composed of more than one county shall be compact and of contiguous counties. The General Assembly by law may provide for the division of a circuit for the purpose of selection of Circuit Judges and for the selection of Circuit Judges from the circuit at large.

The legislature passed the Circuit Courts Act, 705 ILCS 35/1, *et seq*., under which twenty two judicial circuits were created. Under Section 35/1, the Sixth Circuit was created and is composed of the counties of Champaign, Douglas, Moultrie, Macon, DeWitt and Piatt. Admittedly, the Sixth Judicial Circuit has a circuit court in each of the six counties, including Macon County, but there is not a separate legal entity known as the "Macon County Circuit Court" who could be a defendant subject to a Title VII judgment.

1982); *County of Kane v. Carlson*, 116 Ill.2d 186, 200, 507 N.E.2d 482 (Ill. 1987); *Pucinski v. County of Cook*, 192 Ill.2d 540, 543, 737 N.E.2d 225 (Ill. 2000)).

27.    Under the *Carver* decisions, the issue is not whether MACON COUNTY partially supports, maintains or funds the "Macon County Circuit Court". Instead, the proper inquiry under the *Carver* decisions is whether MACON COUNTY maintains and funds a named defendant who is a legal entity subject to a Title VII judgment. Herein, that defendant is the STATE OF ILLINOIS.

28.    The Seventh Circuit has misstated the inquiry required by Illinois law under the *Carver* decisions in its determination that MACON COUNTY is a necessary party. The proper inquiry under Illinois law should be; Does the responsibility for maintaining and funding the *State of Illinois* lie with Macon County?" The answer under Illinois law is clearly "no".

29.    As a matter of law the State of Illinois, not MACON COUNTY, is responsible for funding and satisfying judgments entered against the State of Illinois.

WHEREFORE, MACON COUNTY respectfully prays for the following declarations:

(1)    Illinois law does not require a county to fund or otherwise satisfy a Title VII judgment entered against the STATE OF ILLINOIS as the employer of an Illinois judicial branch judge who engaged in sexual discrimination in violation of Title VII of the Civil Rights Act, and;

(2)    Macon County is therefore not a necessary party who may have an obligation to fund a judgment entered against the STATE OF ILLINOIS under MELISSA ROBINSON'S pending federal Title VII action under Illinois law as set forth in *Carver v. Sheriff of LaSalle County*, 203 Ill. 2d 497, 787 N.E. 2d 127 (Ill. 2003).

CASSIDY & MUELLER,

By: ____________________
Attorneys for the Plaintiff,
MACON COUNTY, ILLINOIS

John E. Cassidy, III
CASSIDY & MUELLER
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602
Telephone: 309/676-0591

e. For each witness to the events which contributed to the resignation, provide:
- Name.
- Title.
- Sex.
- A telephone number where each may reached for questioning.

12. For each person who resigned from Respondent in the twelve month period preceding the date of the alleged violation, provide:
a. Name.
b. Title.
c. Sex.
d. Date of hire.
e. Resignation date.
f. Reason(s) for resignation.
g. Copies of resignation documents.

13. For each employee who resigned during the twelve months preceding the date of the alleged violation and who reported to the person(s) to whom Complainant reported, provide:
a. Name.
b. Title.
c. Sex.
d. Date of resignation.
e. Reason(s) for resignation.
f. If the resignation was not accepted, state the reason.
g. Copies of the resignation documents.

14. If Complainant was replaced, provide the following information for the person(s) who replaced Complainant:
a. Name.
b. Title.
c. Sex.
d. A copy of the replacement's application and/or resume.

15. If Complainant alleges incidents of unequal treatment in the charge, address each of these allegations separately, including, but not limited to:
a. Address how other workers were treated in the same situations, especially those named or referred to in the charge.
b. For each person who has direct knowledge about the allegations, provide:
- Name.
- Title.
- Sex.
- A telephone number where each may be reached for questioning.
c. Provide documentation, as available.

On the Issue of Transfer:

16. Provide a detailed explanation of Respondent's transfer policy and procedures including, but not limited to:
    a. A copy of the transfer policy.
    b. Appeal rights.
    c. Availability of those procedures to employees.
    d. Person(s) in authority to effect a transfer, either by final decision or recommendation.
    e. The extent of union involvement.
    f. Copies of applicable collective bargaining agreements and company rules.

17. For each employee Respondent transferred during the twelve month period preceding the date of the alleged violation, provide:
    a. Name.
    b. Title/Salary.
    c. Sex.
    d. Date of hire.
    e. Position transferred to/salary.
    f. Date of the transfer.
    g. Reason for the transfer.
    h. A copy of the transfer document(s).

18. For each employee recommended for transfer by the person(s) recommending Complainant's transfer during the twelve months preceding the date of the alleged violation, provide:
    a. Name.
    b. Title.
    c. Sex.
    d. Date of transfer.
    e. Reason(s) for transfer.
    f. If the recommendation for transfer was not carried out, explain.
    g. Transfer documents.

19. If the issue in Complainant's charge is failure to transfer, provide the following information for the twelve month period preceding the date of the alleged violation:
    a. List of all vacancies occurring for the job Complainant requested.
    b. For each vacancy filled, indicate:
        - Name.
        - Title.
        - Sex.
        - Date and the reason(s) for such action.
    c. If the Complainant has requested, been considered for, or granted a transfer or reassignment of duties in the five years preceding the alleged violation, provide a list including:
        - Dates.
        - All relevant documents and supportive information.

d. State the basic requirements for the position Complainant held and the position to which Complainant desired to transfer. Explain in what manner Complainant was deficient in meeting such requirements such requirements.

e. Attach a job description for:
- Complainant's current position.
- The position which Complainant requested.

20. If the issue in Complainant's charge is involuntary transfer, provide the following information for the twelve month period preceding the date of the alleged violation:

a. If Complainant was transferred, provide:
- A copy of the transfer document.
- Date of transfer.
- Reason(s) for transfer.
- Statement of whether Complainant made use of any appeal rights.

b. For the person(s) recommending Complainant's transfer, provide:
- Name.
- Title.
- Sex.

c. For the person(s) making the final decision to transfer Complainant, provide:
- Name.
- Title.
- Sex.
- A copy of all evaluation or investigation reports relating to the transfer.

d. For each witness to the events which contributed to the transfer, provide:
- Name.
- Title.
- Sex.
- A telephone number where each may be reached for questioning.

e. For each employee who engaged in conduct similar to that for which Complainant was transferred during the twelve month period preceding the alleged violation, provide:
- Name.
- Title.
- Sex.
- Date of hire.
- Description of conduct.
- A copy of the disciplinary action.
- Penalty given.
- Prior disciplinary actions.
- Reason(s) for actions.

1:04-cv-01360-MMM-BGC # 323-4 Page 7 of 39

Charge Number 1997SF0777
Page 6

f. If Complainant was replaced, provide the following for the person(s) replacing Complainant:
- Name.
- Title.
- Sex.
- A copy of the replacement's application and/or resume.

0114

Judicial power is vested, *inter alia*, in the circuit courts and is exercised, *inter alia*, by its circuit and associate judges.

2. State the name, title, and telephone number of the individual from whom further information concerning the charge may be obtained.

RESPONSE:

The name of the attorney representing the respondents, Administrative Office of the Illinois Courts and Judge Warren Arthur Sappington, in this matter is Karen L. McNaught, Assistant Attorney General, 500 S. Second Street, Springfield, Illinois, 62706. Her telephone number is (217) 782-9092. Individuals who may have personal knowledge regarding the facts can be contacted through Ms. McNaught.

3. If Respondent employs 100 or more persons, please attach a copy of the most recent EEO Report for the location in question. If not, state the total number of employees at the location and the number of employees within the Complainant's protected group(s). Also state the number of employees within Complainant's position title/job classification. In addition, state the number of employees within Complainant's protected group(s), holding that position title/job classification as of the date of the alleged violation.

RESPONSE:

Respondent, Administrative Office of the Illinois Courts employs more than 100 persons. The reports of the Administrative Office of the Illinois Courts sent to the EEOC include information from the Circuit Courts, all districts of the Appellate Courts of Illinois, the Supreme Court of Illinois, the Administrative Office of the Illinois Courts, and other state-paid employees of the judicial branch. No EEO Report is available for the Sixth Judicial Circuit Court, which includes Macon County, as a separate entity. The Administrative Office of the Illinois Courts does not employ any employees in the position title/job classification of "judicial clerk" as held by the Complainant. The most recent EEO Report is attached hereto and incorporated by reference herein as Exhibits A.

Respondent, Judge Warren Arthur Sappington, does not employ persons in his capacity as an associate judge.

4. In addition to the information requested herein, please provide a written position statement on each of the allegations of the charge. For each person having direct knowledge of the allegation(s), provide name, title and a phone number where the person may be reached for questioning. You may also include any documentary evidence, affidavits, and other written statements, where appropriate, including any additional information and

## MEMORANDUM OF AGREEMENT

We, Virginia Ronczkowski ("Mother") and Paul Ronczkowski ("Father") met on July 29, August 17, October 4, October 11, November 15, and 18, 2004 with Karen Anderson in order to develop a parenting plan for our children, Thaddeus, born March 4, 1991; and Emma, born February 17, 1995. Through mutual negotiation we have reached the following agreements and desire that those agreements be incorporated into our legal settlement.

## PARENTING SCHEDULE

The children's primary physical residence will be with Mother. The parents have agreed on joint custody.

Mother and Father will share in the parenting of their children and they will support them visiting with each other. Both parents understand the need to cooperate and remain flexible in developing and implementing the parenting schedule. The following time schedule has been agreed upon by the parents:

a) Father will spend alternate weekends with the children from Friday at 3:30 p.m. until Monday at 8:00 a.m.

b) Father will spend Wednesdays with the children from 3:30 p.m. Wednesday to 8:00 a.m. Thursday each week.

c) Father will spend the Monday after Mother's weekend with the children from 3:30 p.m. to 8:00 p.m. During the summer and when there is no school on Tuesday during the school year, the children will be returned Tuesday morning at 8:00 a.m.

c) The children can spend additional time with Father by mutual agreement of the parents.

## HOLIDAYS

Both parents will support the children visiting with each other. Holidays supercede the regular parenting schedule and will be spent as follows:

a) Thanksgiving, 2004 will be spent with Mother from after school the Wednesday before the holiday until Friday at 3:00 p.m. The children will then spend from 3:00 p.m. Friday until 8:00 p.m. Sunday with Father. This schedule will alternate yearly with Mother starting the rotation in all even numbered years and Father starting the rotation in all odd numbered years.

EXHIBIT
A
03D661

Office of the Illinois Courts and Judge Warren Arthur Sappington, do not have the information requested in this question. However, the presiding judge did speak to Complainant prior to her resignation. The presiding judge can be contacted through Assistant Attorney General Karen L. McNaught.

   12. For each person who resigned from Respondent in the twelve month period preceding the date of the alleged violation, provide:
       a. Name.
       b. Title.
       c. Sex.
       d. Date of hire.
       e. Resignation date.
       f. Reasons for resignation.
       g. Copies of resignation documents.

RESPONSE:

   Complainant is not employed by Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington. As such, this question is not applicable to the Respondents, Administrative Office of the Illinois Courts of Judge Warren Arthur Sappington.

   13. For each employee who resigned during the twelve months preceding the date of the alleged violation and who reported to the person(s) to whom Complainant reported, provide:
       a. Name.
       b. Title.
       c. Sex.
       d. Date of resignation.
       e. Reason(s) for resignation.
       f. If the resignation was not accepted, state the reason.
       g. Copies of the resignation documents.

RESPONSE:

   Complainant is not employed by Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington. As such, this question is not applicable to the Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington.

   14. If Complainant was replaced, provide the following information for the person(s) who replaced Complainant:
       a. Name.
       b. Title.
       c. Sex.

RECEIVED
JUN 20 1997
DEPT. OF HUMAN RIGHTS

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

JJS

In the Matter of:

MELISSA SCHROEDER,

Complainant,

vs.

MACON COUNTY, MACON COUNTY CIRCUIT COURT DIVISION and STATE OF ILLINOIS, ADMINISTRATIVE OFFICE OF THE ILLINOIS COURTS,

Respondents.

Charge Number 1997SF0777

**RESPONSE TO QUESTIONNAIRE**

COME NOW the respondents, Administrative Office of the Illinois Courts and Warren Arthur Sappington, by and through their counsel, James E. Ryan, Attorney General of the State of Illinois, and hereby respond to the Questionnaire in the instant matter. In support thereof, the following statements are made.

1. State the full legal name and address of Respondent named herein, and describe briefly the type of work carried on by Respondent at this address.

RESPONSE:

Administrative Office of the Illinois Courts--840 S. Spring Street, Springfield, Illinois. The Administrative Office of the Illinois Courts is the administrative agency that performs the day-to-day administrative operations of the several circuit courts, the appellate courts of Illinois, and the Supreme Court of Illinois. The staff of the Administrative Office of the Illinois Courts serves at the pleasure of the Chief Justice of the Supreme Court of Illinois and assist the Chief Justice of the Supreme Court of Illinois in his duties. General administrative and supervisory authority over all circuit and appellate courts in Illinois is vested in the Supreme Court of Illinois and is to be exercised by the Chief Justice of the Supreme Court of Illinois. *See* Illinois Constitution of 1970 art. 6, §16.

Warren Arthur Sappington--141 S. Main Street, Decatur, Illinois. Warren Arthur Sappington is an associate judge within the Sixth Judicial Circuit of the State of Illinois.

explanation you deem relevant to the charge.

RESPONSE:

A response to the charge has been made in the Response To Charge of Discrimination.

The Administrative Office of the Illinois Courts has no information, nor was it informed about the allegation of the Complainant, until it was served with a copy of the Charge of Discrimination. Further, Complainant was not an employee of the Administrative Office of the Illinois Courts, nor did it have the power to transfer either Complainant or Judge Sappington to another position. As such, the Administrative Office of the Illinois Courts asserts that it acted appropriately at all times materially relevant herein.

5. If Complainant was employed at Respondent, provide the following personnel data on Complainant:
   a. Date of hire.
   b. Position(s) in which Complainant was employed. (If more than one, list each and the relevant dates).
   c. Copies of all other personnel records relevant to the charge, including, but not limited to:
      - Work quality evaluations.
      - Work samples.
      - Attendance records.
      - Disciplinary records.
      - Any medical records describing Complainant's condition, if applicable.

RESPONSE:

Complainant is not employed by the Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington. As such this question is not applicable to the Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington.

On the Issue of Harassment:

6. Provide a copy of Respondent's policy regarding harassment, as well as the procedures Respondent follows in the investigation of internal complaints of harassment.

RESPONSE:

A copy of the policy of the Respondent, Administrative Office of the Illinois

RESPONSE:

The Respondent, Administrative Office of the Illinois Courts, has no knowledge of other complaints of harassment against the individual against whom Complainant alleges committed harassment. The Respondent, Warren Arthur Sappington, has no knowledge of other complaints of harassment that have been made against him.

10. For each employee receiving counseling and/or disciplinary action in the twelve month period preceding the date of alleged violation for having committed harassment against any of Respondent's employees, provide:
    a. Name.
    b. Title.
    c. Sex.
    d. Documentation of disciplinary action.

RESPONSE:

No employee of the Respondent, Administrative Office of the Illinois Courts, is receiving or has received counselling and/or disciplinary action within the twelve-month period preceding the date of the alleged violation for having committed harassment against any employee of the Administrative Office of the Illinois Courts. Respondent, Judge Sappington does not employ court personnel.

On the Issue of Constructive Discharge:

11. If Complainant resigned, provide:
    a. A copy of the resignation document.
    b. Date of resignation.
    c. Reason stated for resignation.
    d. For the person(s) accepting Complainant's resignation, provide:
       -Name.
       -Title.
       -Sex.
       -A telephone number where each may be reached for questioning.
    e. For each witness to the events which contributed to the resignation, provide:
       -Name.
       -Title.
       -Sex.
       -A telephone number where each may be reached for questioning.

RESPONSE:

Complainant is not employed by Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington. As such, the Respondents, Administrative

d. A copy of the replacement's application and/or resume.

RESPONSE:

Complainant is not employed by Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington. Respondent, Administrative Office of the Illinois Courts, does not have the information requested in this question. The person who replaced complainant in the courtroom of Judge Sappington is Lois Durbin, whose title is Judicial Clerk. She is a female. There was no application or resume, since Ms. Durbin was transferred from another office in Macon County and had prior experience in the Office of the Macon County Circuit Clerk.

15. If Complainant alleges incidents of unequal treatment in the charge, address each of these allegations separately, including, but not limited to:
    a. Address how other workers were treated in the same situations, especially those named or referred to in the charge.
    b. For each person who has direct knowledge about the allegations, provide:
       - Name.
       - Title.
       - Sex.
       - A telephone number where each may be reached for questioning.
    c. Provide documentation, as available.

Response:

Complainant is not employed by Respondents, Administrative Office of the Illinois Courts or Judge Warren Arthur Sappington. As such, Respondents, Administrative Office of the Illinois Courts and Judge Warren Arthur Sappington, do not have the information requested in this question. Further, it does not appear that Complainant has alleged unequal treatment.

16. Provide a detailed explanation of Respondent's transfer policy and procedures including, but not limited to:
    a. A copy of the transfer policy.
    b. Appeal rights.
    c. Availability of those procedures to employees.
    d. Person(s) in authority to effect a transfer, either by final decision or recommendation.
    e. The extent of union involvement.
    f. Copies of applicable collective bargaining agreements and company rules.

Response:

Respondent, Administrative Office of the Illinois Courts, has no formal employee

transfer policy.  Additionally, no policy of the Respondent, Administrative Office of the Illinois Courts, would be applicable to nonjudicial branch employees.

The presiding judge of Macon County transfers judicial clerks at his pleasure. There is no formal transfer policy.  An affected individual may contact the presiding judge to discuss a transfer.   There is no union involvement and no collective bargaining agreement that is applicable.

17.  For each employee Respondent transferred during the twelve month period preceding the date of the alleged violation, provide:
   a.  Name.
   b.  Title/Salary.
   c.  Sex.
   d.  Date of hire.
   e.  Position transferred to/salary.
   f.   Date of the transfer.
   g.  Reason for the transfer.
   h.  A copy of the transfer document(s).

Response:

Respondent, Administrative Office of the Illinois Courts, has no authority to transfer judges.  As such, no judges were transferred in the twelve months prior to the alleged violation.  Respondent, Judge Warren Arthur Sappington, has no authority to transfer any employees.

18.  For each employee recommended for transfer by the person(s) recommending Complainant's transfer during the twelve months preceding the date of the alleged violation, provide:
   a.  Name.
   b.  Title.
   c.  Sex.
   d.  Date of transfer.
   e.  Reason(s) for transfer.
   f.   If the recommendation for transfer was not carried out, explain.
   g.  Transfer documents.

Response:

Respondent, Administrative Office of the Illinois Courts, has no knowledge of recommendations for the transfer of judges by the person or persons who allegedly recommended the transfer of Complainant during the twelve months prior to the date of the alleged violation.  Respondent, Judge Warren Arthur Sappington, has no authority to recommend the transfer of an employee.

19.  If the issue in Complainant's charge is failure to transfer, provide the following information for the twelve month period preceding the date of the alleged

violation:

a. List of all vacancies occurring for the job Complainant requested.
b. For each vacancy filled, indicate:
   - Name.
   - Title.
   - Sex.
   - Date and the reason(s) for such action.
c. If the Complainant has requested, been considered for, or granted a transfer or reassignment of duties in the five years preceding the alleged violation, provide a list including:
   - Dates.
   - All relevant documents and supportive information.
d. State the basic requirements for the position Complainant held and the position to which Complainant desired to transfer. Explain in what manner Complainant was deficient in meeting such requirements such requirements.
e. Attach a job description for:
   - Complainant's current position.
   - The position which Complainant requested.

Response:

Complainant is not employed by Respondent, Administrative Office of the Illinois Courts. Respondent, Administrative Office of the Illinois Courts, did not have the authority to transfer Complainant.

The presiding judge of Macon County did reassign Complainant to Judge Paul Francis on or about November 1996. There was no vacancy; rather other judicial clerks also were transferred. The basic requirements of the positions are the same. The presiding judge is not the employer of the Complainant and has no job description for her.

Respondent, Judge Warren Arthur Sappington, did not employ Complainant. As such, Respondent, Judge Warren Arthur Sappington, does not possess the requested information.

20. If the issue in Complainant's charge is involuntary transfer, provide the following information for the twelve month period preceding the date of the alleged violation:

a. If Complainant was transferred, provide:
   - A copy of the transfer document.
   - Date of transfer.
   - Reason(s) for transfer.
   - Statement of whether Complainant made use of any appeal rights.
b. For the person(s) recommending Complainant's transfer, provide:
   - Name.
   - Title.
   - Sex.

    c.  For the person(s) making the final decision to transfer Complainant, provide:
- Name.
- Title.
- Sex.
- A copy of all evaluation or investigation reports relating to the transfer.

    d.  For each witness to the events which contributed to the transfer, provide:
- Name.
- Title.
- Sex.
- A telephone number where each may be reached for questioning.

    e.  For each employee who engaged in conduct similar to that for which Complainant was transferred during the twelve month period preceding the alleged violation, provide:
- Name.
- Title.
- Sex.
- Date of hire.
- Description of conduct.
- A copy of the disciplinary action.
- Penalty given.
- Prior disciplinary actions.
- Reason(s) for actions.

    f.  If Complainant was replaced, provide the following for the person(s) replacing Complainant:
- Name.
- Title.
- Sex.
- A copy of the replacement's application and/or resume.

Response:

Complainant is not employed by Respondent, Administrative Office of the Illinois Courts. Respondent, Administrative Office of the Illinois Courts, did not have the authority to transfer Complainant.

Complainant was offered the opportunity to transfer by the presiding judge of Macon County. Rather than accept the transfer, Complainant resigned. The effective date of the transfer was late November 1996. The reason for the transfer was that the presiding judge determined that Complainant and Judge Sappington were not working well together and decided to physically separate them into different buildings. Complainant did discuss this matter with the presiding judge. The presiding judge recommended the transfer and made the final decision to transfer. The presiding judge is John K. Greanias, who is a Circuit Court Judge in the Sixth Judicial Circuit and regularly sits in Macon County. He is a male. There are no evaluations or investigation reports regarding the transfer. There are no known employees who engaged in similar conduct. Complainant was replaced by Lois Durbin, a female, who now holds the title of Judicial Clerk. She submitted no application or resume.

WHEREFORE, for the above and foregoing reasons, the Respondents, the Administrative Office of the Illinois Courts and Judge Warren Arthur Sappington, respectfully request that the Illinois Department of Human Rights find in favor of the Respondents, Administrative Office of the Illinois Courts and Judge Warren Arthur Sappington.

Respectfully submitted,

ADMINISTRATIVE OFFICE OF THE ILLINOIS COURTS and WARREN ARTHUR SAPPINGTON,
Respondents,

JAMES E. RYAN, Attorney General
State of Illinois,
Attorney for Respondents,

BY:____________________
KAREN L. McNAUGHT
Assistant Attorney General

KAREN L. McNAUGHT, #06200462
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
(217) 782-9092

Of Counsel.

EEO-4 Survey

This report is a Federal Report which is filed on a biennial cycle in odd years.  Information used to complete survey is collected from EEO-4 Survey which is sent to all new hires.  The survey requests information on race, gender, and disability.  Persons elected to public office or their personal staff are not included in this report. Appellate Court Law Clerks are not included in this report.  Survey is filed with Equal Employment Opportunity Commission in Washington, D.C.



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

STATE A[illegible] LOCAL GOVERNMENT INFOR[illegible]TION (EEO-4)

EXCLUDE SCHOOL SYSTEMS AND EDUCATIONAL INSTITUTIONS

(Read attached instructions prior to completing this form)

APPROVED BY OMB 3046-0008 EXPIRES 12/31/97

DO NOT ALTER INFORMATION PRINTED IN THIS BOX

MAIL COMPLETED FORM TO:

## A. TYPE OF GOVERNMENT (Check one box only)

- [x] 1. State
- [ ] 2. County
- [ ] 3. City
- [ ] 4. Township
- [ ] 5. Special District
- [ ] 6. Other (Specify)

## B. IDENTIFICATION

1. NAME OF POLITICAL JURISDICTION (If same as label, skip to Item C)

State of Illinois - Judicial Branch

| 2. Address—Number and Street | CITY/TOWN | COUNTY | STATE/ZIP |
|---|---|---|---|
| 900 South Spring | Springfield | Sangamon | IL 62704 |

EEOC USE ONLY: A, B

## C. FUNCTION

(Check one box to indicate the function(s) for which this form is being submitted. Data should be reported for all departments and agencies in your government covered by the function(s) indicated. If you cannot supply the data for every agency within the function(s), please attach a list showing name and address of agencies whose data are not included.)

1. FINANCIAL ADMINISTRATION. Tax assessing, tax billing and collection, budgeting, purchasing, central accounting and similar financial administration carried on by a treasurer's, auditor's or comptroller's office and

[X] GENERAL CONTROL. Duties usually performed by boards of supervisors or commissioners, central administrative offices and agencies, central personnel or planning agencies, all judicial offices and employees (judges, magistrates, bailiffs, etc.)

2. STREETS AND HIGHWAYS. Maintenance, repair, construction and administration of streets, alleys, sidewalks, roads, highways and bridges.

3. PUBLIC WELFARE. Maintenance of homes and other institutions for the needy; administration of public assistance. (Hospitals and sanatoriums should be reported as item 7.)

4. POLICE PROTECTION. Duties of a police department sheriff's, constable's, coroner's office, etc., including technical and clerical employees engaged in police activities.

5. FIRE PROTECTION. Duties of the uniformed fire force and clerical employees. (Report any forest fire protection activities as item 6.)

6. NATURAL RESOURCES. Agriculture, forestry, forest fire protection, irrigation drainage, flood control, etc., and

PARKS AND RECREATION. Provision, maintenance and operation of parks, playgrounds, swimming pools, auditoriums, museums, marinas, zoo, etc.

7. HOSPITALS AND SANATORIUMS. Operation and maintenance of institutions for inpatient medical care.

8. HEALTH. Provision of public health services, out-patient clinics, visiting nurses, food and sanitary inspections, mental health, alcohol rehabilitation service, etc.

9. HOUSING. Code enforcement, low rent public housing, fair housing ordinance enforcement, housing for elderly, housing rehabilitation, rent control.

10. COMMUNITY DEVELOPMENT. Planning, zoning, land development, open space, beautification, preservation.

11. CORRECTIONS. Jails, reformatories, detention homes, half-way houses, prisons, parole and probation activities

12. UTILITIES AND TRANSPORTATION. Includes water supply, electric power, transit, gas, airports, water transportation and terminals

13. SANITATION AND SEWAGE. Street cleaning, garbage and refuse collection and disposal. Provision, maintenance and operation of sanitary and storm sewer systems and sewage disposal plants.

14. EMPLOYMENT SECURITY STATE GOVERNMENTS ONLY

15. OTHER (Specify on Page Four)

## D. EMPLOYMENT DATA AS OF [illegible]NE 30

(Do not [illegible]clude elected/appointed officials. Blank[illegible] [illegible]ll be counted as zero)

### 1. FULL-TIME EMPLOYEES (Temporary employees not included)

| JOB CATEGORIES | ANNUAL SALARY (In thousands 000) | TOTAL (COLUMNS B-K) A | MALE: NON-HISPANIC ORIGIN WHITE B | MALE: NON-HISPANIC ORIGIN BLACK C | MALE: HISPANIC D | MALE: ASIAN OR PACIFIC ISLANDER E | MALE: AMERICAN INDIAN OR ALASKAN NATIVE F | FEMALE: NON-HISPANIC ORIGIN WHITE G | FEMALE: NON-HISPANIC ORIGIN BLACK H | FEMALE: HISPANIC I | FEMALE: ASIAN OR PACIFIC ISLANDER J | FEMALE: AMERICAN INDIAN OR ALASKAN NATIVE K |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OFFICIALS/ ADMINISTRATORS | 1. $ 0.1-15.9 | | | | | | | | | | | |
| | 2. 16.0-19.9 | | | | | | | | | | | |
| | 3. 20.0-24.9 | | | | | | | | | | | |
| | 4. 25.0-32.9 | 3 | | | | | | 3 | | | | |
| | 5. 33.0-42.9 | 12 | 3 | | | | | 9 | | | | |
| | 6. 43.0-54.9 | 42 | 15 | 1 | | | | 16 | 8 | 1 | | |
| | 7. 55.0-69.9 | 22 | 17 | 1 | | | | 3 | 1 | | | |
| | 8. 70.0 PLUS | 4 | 2 | | | | | 2 | | | | |
| PROFESSIONALS | 9. $0.1-15.9 | | | | | | | | | | | |
| | 10. 16.0-19.9 | | | | | | | | | | | |
| | 11. 20.0-24.9 | | | | | | | | | | | |
| | 12. 25.0-32.9 | 6 | 2 | | | | | 2 | [illegible] | | | |
| | 13. 33.0-42.9 | 47 | 23 | | | | | 21 | 2 | | 1 | |
| | 14. 43.0-54.9 | 18 | 8 | 2 | | | | 8 | | | | |
| | 15. 55.9-69.9 | 1 | 1 | | | | | | | | | |
| | 16. 70.0 PLUS | | | | | | | | | | | |
| TECHNICIANS | 17. $0.1-15.9 | | | | | | | | | | | |
| | 18. 16.0-19.9 | | | | | | | | | | | |
| | 19. 20.0-24.9 | | | | | | | | | | | |
| | 20. 25.0-32.9 | 4 | | | | | | 4 | | | | |
| | 21. 33.0-42.9 | 8 | 4 | 1 | | | | 3 | | | | |
| | 22. 43.0-54.9 | 1 | 1 | | | | | | | | | |
| | 23. 55.0-69.9 | | | | | | | | | | | |
| | 24. 70.0 PLUS | | | | | | | | | | | |
| PROTECTIVE SERVICE | 25. $0.1-15.9 | | | | | | | | | | | |
| | 26. 16.0-19.9 | 4 | 4 | | | | | | | | | |
| | 27. 20.0-24.9 | 15 | 7 | 2 | 2 | | | 2 | 2 | | | |
| | 28. 25.0-32.9 | 6 | 3 | 2 | | | | | 1 | | | |
| | 29. 33.0-42.9 | 1 | | 1 | | | | | | | | |
| | 30. 43.0-54.9 | | | | | | | | | | | |
| | 31. 55.0-69.9 | | | | | | | | | | | |
| | 32. 70.0 PLUS | | | | | | | | | | | |
| PARA-PROFESSIONALS | 33. $0.1-15.9 | | | | | | | | | | | |
| | 34. 16.0-19.9 | 4 | | | | | | 3 | 1 | | | |
| | 35. 20.0-24.9 | [illegible] | 6 | | | | | [illegible] | [illegible] | | | |
| | 36. 25.0-32.9 | 42 | 5 | 2 | | | | 31 | 2 | 1 | | 1 |
| | 37. 33.0-42.9 | 4 | | | | | | 4 | | | | |
| | 38. 43.0-54.9 | | | | | | | | | | | |
| | 39. 55.0-69.9 | | | | | | | | | | | |
| | 40. 70.0 PLUS | | | | | | | | | | | |
| ADMINISTRATIVE SUPPORT | 41. $0.1-15.9 | 11 | | 3 | 1 | | | 2 | 5 | | | |
| | 42. 16.0-19.9 | 68 | 8 | 3 | | | | 30 | 5 | 2 | | |
| | 43. 20.0-24.9 | 32 | 1 | | 1 | | | 20 | 8 | 2 | | |
| | 44. 25.0-32.9 | [illegible] | [illegible] | | | | | [illegible] | 4 | [illegible] | | |
| | 45. 33.0-42.9 | 177 | 11 | | | | | 139 | 21 | 3 | 2 | 1 |
| | 46. 43.0-54.9 | 316 | 46 | [illegible] | [illegible] | | | 209 | 52 | 5 | | 1 |
| | 47. 55.0-69.9 | | | | | | | | | | | |
| | 48. 70.0 PLUS | | | | | | | | | | | |

12. Any and all documents supporting your contentions in paragraph no. 42 of Count III of the Complaint that "Plaintiff was terminated because of her sex, female, as a result of discrimination in the terms and conditions of her employment."

13. Any and all documents supporting your contentions in paragraph no. 51 of Count IV of the Complaint that "Country Company Services, Inc., terminated Plaintiff as a result of her sex, female and as a result of the discrimination in the terms and conditions of her employment."

14. Any and all documents supporting your contentions in paragraph no. 45 of Count V of the Complaint that "IAA acted with the intent to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress."

15. Any and all documents supporting your contentions in paragraph no. 53 of Count VI of the Complaint that "Country Company Services, Inc., acted with the intent to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress."

16. Any and all documents not previously requested above concerning Plaintiff's employment with CC Services or its predecessor companies or the termination of her employment with CC Services or any of its predecessor companies

17. Any and all documents which relate to conversations or other communications relating to Defendants.

18. Any and all documents which relate to conversations or other communications with Defendants or any present or former employee, officer, or agent of Defendants, about any matters encompassed by the Complaint or other pleadings in this case.

19. Any and all documents which relate to notes or other writings made by Plaintiff about any matters encompassed by the Complaint or other pleadings in this case.

20.    Any and all recordings by tape or other media and/or transcripts made by Plaintiff involving conversations between Plaintiff and Defendants or any present or former employee, officer, or agent of Defendants.

21.    Any and all documents relating to any written or recorded statements made by any person at any time about any matters encompassed by the Complaint.

22.    Any and all documents referenced or relied upon by Plaintiff to answer Defendants' Interrogatories.

23.    Separately with regard to each of Plaintiff's claims, any and all documents relating to the damages Plaintiff is demanding, stating the amount of such damages, providing the calculation used to arrive at such amount, and/or describing every fact upon which Plaintiff's calculation is based.

24.    Any and all documents relating to each medical doctor, social worker, psychologist, therapist or other medical professional who treated or consulted with Plaintiff for any condition since 2000.

25.    All documents that relate to each expert witness Plaintiff has retained or Plaintiff expects to call to testify on her behalf at trial. Such documents shall include, without limitation, the following:

     (a)    A complete statement of all opinions to be expressed and the basis and reasons therefor;

     (b)    The data or other information considered by the witness in forming the opinions;

     (c)    Any exhibits to be used as a summary of or support for the opinions;

     (d)    The qualifications of the witness, including affiliations, educational background, memberships, articles and publications, and a list of all publications authored by the witness within the preceding 10 years;

For each such document, specify the date thereof if not otherwise indicated.

28. If Plaintiff is presently employed or self-employed or has been employed or self-employed since the termination of her employment with the IAA, all documents concerning the jobs and positions held by her, her rates of pay and/or salary level(s) in all such jobs or positions, fringe benefits which she received or was eligible for in connection with all such jobs or positions, all other terms and conditions of employment applying to such jobs or positions, and documents reflecting evaluations or appraisals of Plaintiff's job performance in such jobs.

29. Any and all documents not previously requested above which in any way relate or refer to the allegations contained in Plaintiffs' Amended Complaint.

30. The attached medical release executed by Plaintiff.

Dated: Chicago, Illinois
March 7, 2005

ILLINOIS AGRICULTURAL ASSOCIATION, and
CC SERVICES, INC.

By: ______________________
One of their Attorneys

Susan M. Benton-Powers
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel: 312-558-5264
Fax: 312-558-5700

L. Lee Smith
HINSHAW & CULBERTSON LLP
456 Fulton Street, Suite 298
Peoria, Illinois 61602-1220
Telephone: (309) 674-1025

might by appeal or in any other lawful manner, be brought within the court's jurisdiction; upon complaint filed, the clerk of the branch appellate court shall issue summons, and like proceedings shall be had as in other cases of mandamus. The appellate court may also grant relief by certiorari and all other relief not prohibited by law, which may be necessary to enforce the due administration of justice in all matters within the appellate court's jurisdiction. Such process shall run in the name of the People of the State of Illinois, and bear test in the name of the presiding judge of the division of the branch appellate court from which it may issue, be signed by the clerk, dated, when issued, sealed with the seal of the court, and made returnable according to law.

Laws 1877, p. 69, § 11, eff. July 1, 1877. Amended by Laws 1881, p. 65, § 1, eff. July 1, 1881; P.A. 81-260, § 1, eff. Aug. 28, 1979; P.A. 83-362, § 2, eff. Sept. 14, 1983.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 35.

### 25/12. § 12. Repealed by Laws 1933, p. 784, § 94, eff. Jan. 1, 1934

### 25/13. Sheriff to attend sittings

§ 13. The sheriff of the county in which a branch appellate court may be held, shall attend upon its sittings and perform such duties, under the order and direction of the court, as are usually performed by such officer, and such as the branch appellate courts shall from time to time require; and shall be entitled to the same fees as are now allowed by law for like service for attending upon the supreme court of this state.

Laws 1877, p. 69, § 13, eff. July 1, 1877. Amended by P.A. 81-260, § 1, eff. Aug. 28, 1979.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 37.

### 25/14 to 25/16. §§ 14 to 16. Repealed by Laws 1963, p. 2643, § 2, eff. Jan. 1, 1964

### 25/17. § 17. Repealed by P.A. 79-1360, § 18, eff. Oct. 1, 1976

### 25/18. Rooms for courts

§ 18. The appellate court shall sit at the places prescribed by rule of the Supreme Court. Where necessary, the judges of any division may rent suitable rooms for the holding of court and for the use of the officers thereof at a rental not exceeding the amount appropriated therefor from time to time by the General Assembly; and the judges of the respective branches of the appellate court shall order all necessary furniture therefor, and for the safekeeping of the records of the court and for moving expenses; the accounts therefor shall be certified by the respective branches of the court to the State Comptroller, who shall draw his warrant on the state treasury for the amount of the same, to be paid out of the appropriation that shall be made therefor.

Laws 1877, p. 69, § 18, eff. July 1, 1877. Amended by Laws 1959, p. 591, § 1, eff. July 8, 1959; Laws 1963, p. 2643, § 1, eff. Jan. 1, 1964; P.A. 78-592, § 18, eff. Oct. 1, 1973; P.A. 81-260, § 1, eff. Aug. 28, 1979.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 42.

### 25/19. § 19. Repealed by Laws 1963, p. 2643, § 2, eff. Jan. 1, 1964

## ACT 30. APPELLATE COURT LAW CLERK AND SECRETARY ACT

Section
30/0.01. Short title.
30/1. Appointment of law clerks—Salary—Qualif[ications]
30/2. Appointment of stenographic secretary—Sala[ry]
30/3. Repealed.

### 30/0.01. Short title

§ 0.01. Short title. This Act may be cited as the [Appel]late Court Law Clerk and Secretary Act.

Laws 1899, p. 128, § 0.01, added by P.A. 86-1324, § [...] Sept. 6, 1990.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 59.9.

Title of Act:

An Act providing for the appointment of one law cl[erk ...] judicial secretary for each of the judges of the appellat[e ...] providing for payment of salaries for such law clerks [and] secretaries. Laws 1899, p. 128, approved April 17, 1899 [...] 1899. Title amended by Laws 1963, p. 2640, § 2, eff. Ja[n ...]

### 30/1. Appointment of law clerks—Salary—Qualifications

§ 1. Each judge of the appellate court may app[oint a] senior law clerk and one junior law clerk to assist th[e judge] as the judge may direct. Such appointment shall be [in] writing, and shall be filed with the Supreme Court. [...] clerks shall each receive such salary as the Supreme [Court] may determine. Such law clerks shall be graduate[s of an] accredited law school.

Laws 1899, p. 128, § 1, eff. July 1, 1899. Amended by L[aws] 1917, p. 323, § 1, eff. July 1, 1917; Laws 1927, p. 3[...] eff. July 1, 1927; Laws 1963, p. 2640, § 1, eff. Jan. 1, 1[964;] P.A. 77-563, § 1, eff. July 31, 1971.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 60.

### 30/2. Appointment of stenographic secretary—Salary

§ 2. Each appellate court judge may appoint one [steno]graphic secretary to assist the judge as the judge may [direct.] The stenographic secretary so appointed shall receive [such] salary as the Supreme Court may determine.

Laws 1899, p. 128, § 2, added by P.A. 77-563, § 1, eff. [July] 31, 1971.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 60.1.

### 30/3. § 3. Repealed by Laws 1963, p. 2640, [§ ...] eff. Jan. 1, 1964

## ACT 35. CIRCUIT COURTS ACT

Section
35/0.01. Short title.
35/1. Circuits.
35/2. Judges—Election—Oath.
35/2a. Judges in circuits containing State institutio[ns]
35/2b. Additional circuit judges in certain circuits.
35/2c. Additional circuit judges.
35/2d. Additional circuit judges.
35/2e. Repealed.
35/2f. Subcircuits—Cook County.
35/2g. Additional circuit judges—16th, 18th, and [...] cuits.
35/2h. Additional circuit judge.
35/2i. Additional circuit judges; sixth circuit.
35/3. Seal.

Witness Fee County

Court of Claims

Section
35/... Court business—Adjournments—Calling and service of jurors.
35/... Appointment and salary of administrative assistant.
35/... Travel expenses of secretary—Approval.
35/... Witness fees.
35/... to 35/24. Repealed.
35/... Powers.
35/... Relief by injunction, ne exeat, habeas corpus, quo warranto and other processes.
35/27. Execution and return of process.
35/... Rules.
35/... to 35/32. Repealed.
35/... Temporary court house.
35/34. Holding court at another time and place.
35/35. Jurisdiction in county to which removed.
35/36. Failure to give notice of removal.
35/37, 35/38. Repealed.

## 35/0.01. Short title

§ 0.01. Short title. This Act may be cited as the Circuit Courts Act.

Laws 1933, p. 435, § 0.01, added by P.A. 86-1324, § 296, eff. Sept. 6, 1990.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.01.

Title of Act:

An Act relating to the circuit courts. Laws 1933, p. 435, § 1, approved June 21, 1933, eff. Jan. 1, 1934. Title amended by Laws 1963, p. 2642, § 2, eff. Jan. 1, 1964.

## 35/1. Circuits

§ 1. The county of Cook shall be one judicial circuit and the State of Illinois, exclusive of the county of Cook, shall be and is divided into judicial circuits as follows:

First Circuit—The counties of Alexander, Pulaski, Massac, Pope, Johnson, Union, Jackson, Williamson and Saline.

Second Circuit—The counties of Hardin, Gallatin, White, Hamilton, Franklin, Wabash, Edwards, Wayne, Jefferson, Richland, Lawrence and Crawford.

Third Circuit—The counties of Madison and Bond.

Fourth Circuit—The counties of Clinton, Marion, Clay, Fayette, Effingham, Jasper, Montgomery, Shelby and Christian.

Fifth Circuit—The counties of Vermilion, Edgar, Clark, Cumberland and Coles.

Sixth Circuit—The counties of Champaign, Douglas, Moultrie, Macon, DeWitt and Piatt.

Seventh Circuit—The counties of Sangamon, Macoupin, Morgan, Scott, Greene and Jersey.

Eighth Circuit—The counties of Adams, Schuyler, Mason, Cass, Brown, Pike, Calhoun and Menard.

Ninth Circuit—The counties of Knox, Warren, Henderson, Hancock, McDonough and Fulton.

Tenth Circuit—The counties of Peoria, Marshall, Putnam, Stark and Tazewell.

Eleventh Circuit—The counties of McLean, Livingston, Logan, Ford and Woodford.

Twelfth Circuit—The county of Will.

Thirteenth Circuit—The counties of Bureau, LaSalle and Grundy.

Fourteenth Circuit—The counties of Rock Island, Mercer, Whiteside and Henry.

Fifteenth Circuit—The counties of Jo Daviess, Stephenson, Carroll, Ogle and Lee.

Sixteenth Circuit—The counties of Kane, DeKalb and Kendall.

Seventeenth Circuit—The counties of Winnebago and Boone.

Eighteenth Circuit—The county of DuPage.

Nineteenth Circuit—The counties of Lake and McHenry.

Twentieth Circuit—The counties of Randolph, Monroe, St. Clair, Washington and Perry.

Twenty-first Circuit—The counties of Iroquois and Kankakee.

Laws 1933, p. 435, § 1, eff. Jan. 1, 1934. Amended by Laws 1957, p. 29, § 1, eff. July 1, 1957; P.A. 84-1030, § 1, eff. Nov. 20, 1985.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.1.

## 35/2. Judges—Election—Oath

§ 2. Circuit judges shall be elected at the general elections and for terms as provided in Article VI of the Illinois Constitution. Ninety-four circuit judges shall be elected in the Circuit of Cook County and 3 circuit judges shall be elected in each of the other circuits, but in circuits other than Cook County containing a population of 230,000 or more inhabitants and in which there is included a county containing a population of 200,000 or more inhabitants, or in circuits other than Cook County containing a population of 270,000 or more inhabitants, according to the last preceding federal census and in the circuit where the seat of State government is situated at the time fixed by law for the nomination of judges of the Circuit Court in such circuit and in any circuit which meets the requirements set out in Section 2a of this Act, 4 circuit judges shall be elected in the manner provided by law. In circuits other than Cook County in which each county in the circuit has a population of 475,000 or more, 4 circuit judges shall be elected in addition to the 4 circuit judges provided for in this Section. In any circuit composed of 2 counties having a total population of 350,000 or more, one circuit judge shall be elected in addition to the 4 circuit judges provided for in this Section. The several judges of the circuit courts of this State, before entering upon the duties of their office, shall take and subscribe the following oath or affirmation, which shall be filed in the office of the Secretary of State:

"I do solemnly swear (or affirm, as the case may be) that I will support the constitution of the United States, and the constitution of the State of Illinois, and that I will faithfully discharge the duties of judge of .......... court, according to the best of my ability."

One of the 3 additional circuit judgeships authorized by this amendatory Act in circuits other than Cook County in which each county in the circuit has a population of 475,000 or more may be filled when this Act becomes law. The 2 remaining circuit judgeships in such circuits shall not be filled until on or after July 1, 1977.

Laws 1933, p. 435, § 2, eff. Jan. 1, 1934. Amended by Laws 1949, p. 694, § 1, eff. July 1, 1949; Laws 1951, p. 1, § 1, eff. July 1, 1951; Laws 1957, p. 25, § 1, eff. July 1, 1957; Laws 1957, p. 38, § 1, eff. July 1, 1957; Laws 1959, p. 2411, § 1, eff. July 24, 1959; Laws 1963, p. 783, § 1, eff. July 1, 1963; Laws 1965, p. 3440, § 1, eff. Aug. 24, 1965; Laws 1968, p. 1, § 1, eff. July 26, 1968; P.A. 76-1330, § 1, eff. Sept. 15, 1969; P.A. 76-1988, § 1, eff. July 1, 1970; P.A. 79-843, § 1, eff.

Sept. 8, 1975; P.A. 80-1037, § 1, eff. July 1, 1978; P.A. 81-1509, Art. II, § 39, eff. Sept. 26, 1980; P.A. 86-786, § 2, eff. Sept. 6, 1989; P.A. 86-1478, Art. 1, § 1003, eff. Feb. 15, 1991.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2.

P.A. 86-1478 incorporated the amendment by P.A. 86-786.

For purpose of P.A. 86-1478 Art. 1, see Historical and Statutory Notes following 705 ILCS 25/1.

## 35/2a. Judges in circuits containing State institutions

§ 2a. In any circuit other than Cook County in which is situated any State institution providing educational or welfare facilities for more than 25,000 persons, 4 circuit judges shall be elected unless that circuit is entitled to a greater number under Section 2.

Laws 1933, p. 435, § 2a, added by Laws 1957, p. 38, § 1, eff. July 1, 1957. Amended by Laws 1965, p. 2198, § 1, eff. Aug. 2, 1965; Laws 1968, p. 238, § 1, eff. July 1, 1969; P.A. 76-1123, § 1, eff. Aug. 28, 1969; P.A. 76-1330, § 1, eff. Sept. 16, 1969; P.A. 76-2067, § 1, eff. July 1, 1970.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2a.

## 35/2b. Additional circuit judges in certain circuits

§ 2b. In addition to the number of circuit judges authorized under Section 2 or Section 2a, whichever number is greater, one additional circuit judge shall be elected in each circuit, other than Cook County, having a population of 230,000 or more inhabitants in which there is included a county containing a population of 200,000 or more inhabitants and in which circuit there is situated one or more State colleges or universities and one or more State Mental Health Institutions and two or more State Institutions for Juvenile Offenders under the authority of the Illinois Department of Corrections, each of which institutions has been in existence for more than 20 years on the effective date of this amendatory Act of 1970.

Laws 1933, p. 435, § 2b, added by P.A. 76-2022, § 1, eff. July 1, 1970.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2b.

## 35/2c. Additional circuit judges

§ 2c. In addition to the number of circuit judges authorized under Section 2 of this Act, there shall be one additional circuit judge elected in the third circuit and one additional circuit judge elected from the twentieth circuit.

Laws 1933, p. 435, § 2c, added by P.A. 85-866, § 1, eff. Dec. 1, 1987. Amended by P.A. 85-903, § 1, eff. Nov. 17, 1987; P.A. 87-410, Art. 1, § 1002, eff. Jan. 1, 1992.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2c.

## 35/2d. Additional circuit judges

§ 2d. (1) In addition to the number of circuit judges authorized under Section 2 of this Act, there shall be two additional circuit judges from the sixteenth circuit who shall take office in December, 1990, one of whom shall be a resident of and elected from Kendall County and one of whom shall be a resident of and elected from DeKalb County.

The additional judges provided by this subsection (1) shall be first elected at the general election in November of 1990.

(2) In addition to the number of circuit judges authorized under Section 2 of this Act, there shall be one additional circuit judge from the seventh circuit who shall take office in December, 1990.

The additional judge provided by this subsection (2) [illegible] be first elected at the general election in November of [illegible]

(3) In addition to the number of circuit judges [illegible] under Section 2 of this Act, there shall be one [illegible] circuit judge elected at large in the seventeenth [illegible]

Laws 1933, p. 435, § 2d, added by P.A. 85-866, § 1, eff. [illegible] 1, 1988. Amended by P.A. 85-903, § 1, eff. Nov. 17, [illegible]

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2d.

## 35/2e. § 2e. Repealed by P.A. 86-1478, Art. 1, § 1004, eff. Feb. 15, 1991

For purpose of P.A. 86-1478, Art. 1, see note following [illegible] 25/1.

## 35/2f. Subcircuits—Cook County

§ 2f. (a) The Circuit of Cook County shall be divided [illegible] 15 units to be known as subcircuits. The subcircuits [illegible] compact, contiguous, and substantially equal in population. The General Assembly shall create the subcircuits by law on or before July 1, 1991, using population data as determined by the 1990 Federal census.

(b) The 165 resident judges to be elected from the Circuit of Cook County shall be determined under paragraph (4) [illegible] subsection (a) of Section 2 of the Judicial Vacancies Act.

(c) The Supreme Court shall allot (i) the additional resident judgeships provided by paragraph (4) of subsection (a) of Section 2 of the Judicial Vacancies Act and (ii) all vacancies in resident judgeships existing on or occurring on or after the effective date of this amendatory Act of 1990, with respect to the other resident judgeships of the Circuit of Cook County, for election from the various subcircuits [illegible] there are 11 resident judges to be elected from each of the 15 subcircuits (for a total of 165). A resident judgeship authorized before the effective date of this amendatory Act of 1990 that became vacant and was filled by appointment by the Supreme Court before that effective date shall be filled by election at the general election in November of 1992 from the unit of the Circuit of Cook County within Chicago or the unit of that Circuit outside Chicago, as the case may be, in which the vacancy occurred.

(d) As soon as practicable after the subcircuits are created by law, the Supreme Court shall determine by lot a numerical order for the 15 subcircuits. That numerical order shall be the basis for the order in which resident judgeships are assigned to the subcircuits. After the first round of assignments, the second and all later rounds shall be based on the same numerical order. Once a resident judgeship is assigned to a subcircuit, it shall continue to be assigned to that subcircuit for all purposes.

(e) A resident judge elected from a subcircuit shall continue to reside in that subcircuit as long as he or she holds that office.

Laws 1933, p. 435, § 2f, added by P.A. 86-1478, Art. 2, § 2001, eff. Feb. 15, 1991.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2f.

[1] 705 ILCS 40/2.

## 35/2g. Additional circuit judges—16th, 18th, and 19th circuits

§ 2g. Additional circuit judges; 16th, 18th, and 19th circuits.

(a) In addition to the number of circuit judges otherwise authorized by this Act, there shall be 3 additional circuit judges elected in the nineteenth circuit, 2 of whom shall [illegible]


Court of Claims

residents of and elected from Lake County and one of whom shall be a resident of and elected from McHenry County.

(b) In addition to the number of circuit judges otherwise authorized by this Act, there shall be 3 additional circuit judges elected at large in the eighteenth circuit.

(c) In addition to the number of circuit judges otherwise authorized by this Act, there shall be one additional circuit judge in the sixteenth circuit who shall be a resident of and elected from Kane County.

(d) The additional circuit judgeships provided by this Section shall be filled by appointment until those judgeships are filled by election at the general election in November of 1992.

Laws 1933, p. 435, § 2g, added by P.A. 87-145, § 2, eff. Aug. 14, 1991.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.2g.

## 35/2h. Additional circuit judge

§ 2h. Additional circuit judge.

(a) In addition to the number of circuit judges otherwise authorized by this Act, there shall be one additional circuit judge elected at large in the eleventh judicial circuit.

(b) In addition to the number of circuit judges otherwise authorized by this Act, there shall be one additional circuit judge elected at large in the fifth judicial circuit.

(c) In addition to the number of circuit judges otherwise authorized by this Act, there shall be 2 additional circuit judges elected at large in the sixteenth judicial circuit.

(d) In addition to the number of circuit judges otherwise authorized by this Act, there shall be one additional circuit judge elected at large in the eighteenth judicial circuit.

(e) In addition to the number of circuit judges otherwise authorized by this Act, there shall be one additional circuit judge elected at large in the twenty-first judicial circuit.

(f) In addition to the number of circuit judges otherwise authorized by this Act, there shall be 2 additional circuit judges elected at large in the nineteenth judicial circuit.

(g) The additional circuit judgeships provided by this Section shall be filled by appointment until the judgeships are filled by election at the general election in November of 1996.

Laws 1933, p. 435, § 2h, added by P.A. 89-401, § 5, eff. Aug. 20, 1995.

## 35/2i. Additional circuit judges; sixth circuit

§ 2i. Additional circuit judges; sixth circuit. In addition to the number of circuit judges otherwise authorized by this Act, there shall be 2 additional circuit judges in the sixth circuit, one who shall be a resident of and elected from Champaign County and one who shall be elected at large. The additional circuit judgeships provided by this Section shall be filled by appointment until those judgeships are filled by election at the general election in November of 1996.

Laws 1933, p. 435, § 2i, added by P.A. 89-401, § 5, eff. Aug. 20, 1995.

## 35/3. Seal

§ 3. The said courts, respectively, shall have a seal, and may renew or alter the same from time to time, as may be necessary. The expense of such seal, and renewing and altering the same, shall be paid by the county.

Laws 1933, p. 435, § 3, eff. Jan. 1, 1934.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.3.

## 35/4. Court business—Adjournments—Calling and service of jurors

§ 4. There shall be no stated terms in the circuit courts, which shall always be open for the transaction of all business, subject to adjournment from time to time. The circuit judges in each circuit shall prescribe by rule the times of calling grand and petit juries in each of the counties of the circuit and the periods for which the jurors shall serve.

Laws 1933, p. 435, § 4, eff. Jan. 1, 1934. Amended by Laws 1957, p. 1875, § 1, eff. July 8, 1957; Laws 1963, p. 2642, § 1, eff. Jan. 1, 1964.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.4.

## 35/4.1. Appointment and salary of administrative assistant

§ 4.1. The chief judge of each circuit may appoint an administrative assistant to assist him in carrying out his administrative duties in the circuit. The salary of each administrative assistant shall be determined by the Supreme Court and paid at least monthly from the State Treasury on the warrant of the Comptroller, out of appropriations made for that purpose by the General Assembly. The salary of each individual administrative assistant shall be computed from a schedule established by the Supreme Court.

Laws 1933, p. 435, § 4.1, added by Laws 1963, p. 2641, § 1, eff. Jan. 1, 1964. Amended by Laws 1967, p. 2042, § 1, eff. July 26, 1967; P.A. 77-1680, § 1, eff. July 1, 1972; P.A. 78-1167, § 1, eff. Aug. 27, 1974; P.A. 80-959, § 1, eff. Sept. 22, 1977; P.A. 81-989, § 2, eff. Jan. 1, 1980; P.A. 84-998, § 1, eff. Oct. 29, 1985; P.A. 84-1395, § 2, eff. Jan. 1, 1987; P.A. 86-1378, § 1, eff. Jan. 1, 1991.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.4-1.

## 35/4.2. Travel expenses of secretary—Approval

§ 4.2. Administrative Secretaries, as provided for in Section 4.1 of this Act, shall receive travel expenses for traveling, within or without their county of residence, in the performance of their administrative duties at the direction of their Chief Judge. All expense vouchers shall be submitted to the Supreme Court for approval. Approved expenses shall be paid from the State treasury.

Laws 1933, p. 435, § 4.2, added by P.A. 78-1167, § 1, eff. Aug. 27, 1974. Amended by P.A. 84-1395, § 2, eff. Jan. 1, 1987.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.4-2.

## 35/4.3. Witness fees

§ 4.3. Witness fees.

(a) Every witness attending in any county upon trials in the courts shall be entitled to receive the sum of $20 for each day's attendance and $0.20 per mile each way for necessary travel. For attending in a foreign county, each day's travel shall constitute a day of attendance. Every person attending for the purpose of having his deposition taken shall receive the same per diem and mileage as provided in this Section for witnesses in circuit courts. No allowance or charge shall be made, however, for the attendance of a witness unless the witness makes an affidavit stating the number of days he or she actually attended, and that attendance was at the instance of one or both of the parties or his or her attorney.

(b) In a criminal case in which a witness is required to attend from a foreign county or state, either before the grand jury or at the trial of the cause in the court, the witness shall receive the same per diem and mileage as provided in this Section for witnesses in circuit courts to be

paid out of the county treasury of the county where the crime was committed on the certificate of the clerk of the court where the trial is being had if the witness makes an affidavit stating (i) the distance traveled, (ii) that it was the usually traveled and most direct route, (iii) the number of days' actual travel and attendance, and (iv) that attendance was at the instance of the State's Attorney or the accused, or his or her attorney. To the affidavit shall be added the certificate of the judge that the amount is reasonable and that the witness was a material witness in the court or before the grand jury.

Laws 1933, p. 435, § 4.3, added by P.A. 89-233, Art. 5, § 5-35, eff. Jan. 1, 1996.

### 35/5 to 35/24. §§ 5 to 24. Repealed by Laws 1963, p. 2642, § 3, eff. Jan. 1, 1964

### 35/25. Powers

§ 25. The several circuit courts in this state may enter such judgments, orders and injunctions, and shall issue all such processes as may be necessary or proper to carry into effect the powers granted to them.

Laws 1933, p. 435, § 25, eff. Jan. 1, 1934. Amended by Laws 1963, p. 2642, § 1, eff. Jan. 1, 1964; P.A. 83-346, § 10, eff. Sept. 14, 1983.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.25.

### 35/26. Relief by injunction, ne exeat, habeas corpus, quo warranto and other processes

§ 26. The respective courts and the several judges thereof shall have the power to award throughout the state, and returnable in the proper county, relief by injunction, ne exeat, habeas corpus, quo warranto, and all other processes that may be necessary to the due execution of the powers with which they are or may be vested.

Laws 1933, p. 435, § 26, eff. Jan. 1, 1934. Amended by P.A. 83-346, § 10, eff. Sept. 14, 1983.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.26.

### 35/27. Execution and return of process

§ 27. All process shall be executed and returned by the officer or person to whom directed.

Laws 1933, p. 435, § 27, eff. Jan. 1, 1934. Amended by Laws 1965, p. 2515, § 1, eff. Aug. 4, 1965.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.27.

### 35/28. Rules

§ 28. The said courts may, from time to time, make all such rules for the orderly disposition of business before them as may be deemed expedient, consistent with law.

Laws 1933, p. 436, § 28, eff. Jan. 1, 1934.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.28.

### 35/29 to 35/32. §§ 29 to 32. Repealed by Laws 1963, p. 2642, § 3, eff. Jan. 1, 1964

### 35/33. Temporary court house

§ 33. If there is no court house in any county, or if from any cause the court house is unfit for the holding of court therein, the proper authorities of the county may temporarily provide another place at the county seat for the holding of court, or the court, by order entered upon its records, may adjourn to a suitable place at such county seat, and the place so provided, or to which such adjournment is made, shall, during the time the court is so held thereat, be held to be the court house of such county for all judicial purposes connected with such court.

Laws 1933, p. 435, § 33, eff. Jan. 1, 1934.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.33.

### 35/34. Holding court at another time and place

§ 34. If, by reason of war, rebellion, mob, pestilence or other public calamity, it is unsafe or inexpedient to hold a court at the time and place appointed by law, the judge or judges of the court may appoint another time and place for the holding of the court. The place appointed shall be at the nearest convenient place to that at which the court is appointed by law to be held. If the court appoints another time and place, the clerk of the court shall give at least 20 days' notice thereof, by publication in some newspaper published in the county, or if none is published in the county, then in a newspaper published nearest to the place of holding court and by posting a notice in his office and in 4 other of the most public places in the county. The clerk shall also notify the sheriff of the county and the state's attorney of such appointment, 20 days before court is held at the place appointed by the court.

Laws 1933, p. 436, § 34, eff. Jan. 1, 1934. Amended by P.A. 86-1475, Art. 3, § 3-20, eff. Jan. 10, 1991.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.34.

### 35/35. Jurisdiction in county to which removed

§ 35. In such case the court may require the services of any sheriff or other proper officer of the county into which the court is removed, or of the county from which it may remove to execute process and attend upon the court. It may also cause the grand and petit jurors to be summoned from either or both of such counties. And it shall have all the power and authority in either county which it might have exercised in the county where such court is appointed by law to be held, and may try and determine all causes, civil and criminal, which it might have tried and determined in such county, with like effect.

Laws 1933, p. 435, § 35, eff. Jan. 1, 1934.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.35.

### 35/36. Failure to give notice of removal

§ 36. If the clerk fails to give the notices specified in section 34 he commits a petty offense and may be fined not to exceed $500. But the failure to give such notice shall not prevent the holding of such court at the appointed time and place or invalidate any of the proceedings thereat.

Laws 1933, p. 435, § 36, eff. Jan. 1, 1934. Amended by P.A. 77-2401, § 1, eff. Jan. 1, 1973.

Formerly Ill.Rev.Stat.1991, ch. 37, ¶ 72.36.

### 35/37, 35/38. §§ 37, 38. Repealed by Laws 1965, p. 3438, § 1, eff. Aug. 24, 1965

## ACT 40. JUDICIAL VACANCIES ACT

Section

40/0.1. Short title.
40/1. Repealed.
40/1.1. Resident circuit judge or resident judge defined.
40/2. Vacancies in office of judge.
40/2.1. Elections to fill vacancy of resident circuit judge.

1:04-cv-01360-MMM-BGC # 323-4 Page 30 of 39

Unlike my colleagues, I do not see the wisdom in imposing numerical limits either on the quantity of opinions published by the various districts of the appellate court or on the length of each published opinion, concurrence, or dissent. Granted, certain appellate court cases are being disposed of by published opinion when an unpublished order would be more appropriate, and other opinions (and concurrences and dissents) are unnecessarily long. The majority's solution, in the present order, limiting the quantity and length of appellate court opinions, however, is simply a mechanical, arbitrary exercise, demeaning to the appellate court, and to the public it serves. Some districts might find that they have produced more than the prescribed number of publishable opinions in a year; some published cases will require more than 20 pages of explanation and analysis.

Apart from the administrative order, our newly amended Rule 23, in which I concur, provides a more flexible approach to these problems, narrowing the criteria under which publication is appropriate and permitting cases to be disposed of by summary order. In its zeal to reduce the volume of published cases and to promote brevity over verbosity, the majority has lost sight of the purposes of our courts, and of the nature of the judicial process.

JUSTICE McMORROW joins in this dissent.

### Committee Comments

Rule 23 was adopted in 1972, and its original text provided for disposition of cases in the appellate court by memorandum opinion in a limited number of categories—where no error of law appears, an opinion would have no precedential value, and one or more of the following circumstances exists: (a) that a judgment in a civil case is not against the manifest weight of the evidence, (b) that a judgment in a civil case entered upon allowance of a motion for directed verdict should be affirmed because all of the evidence, when viewed in the light most favorable to the appellant, so overwhelmingly favors the appellee that no contrary verdict based on that evidence could ever stand, (c) that in a criminal case the evidence is not so unsatisfactory as to leave a reasonable doubt as to defendant's guilt, or (d) that the decision of an administrative body or agency reviewed under the provisions of the Administrative Review Act and confirmed by the circuit court is not against the manifest weight of the evidence. The rule also provided the minimum necessities of a memorandum decision. Limited, as it was, in application, and even where applicable in its departure from the normal requirements of an opinion, Rule 23 was seldom applied. In 1975, it was amended to broaden considerably the power of the appellate court to dispose of cases without opinion. It still requires, however, that in every case disposed of the litigants be given some statement of reasons. The length of such a statement will, perforce, vary with the circumstances of the case. In a case, for example, in which the issue involved is clearly covered by binding precedent, it would suffice to cite the authority held to be dispositive.

(June 27, 1994)

By this amendment, Rule 23 creates a presumption against disposing of Appellate Court cases by full, published opinions and authorizes a third type of disposition by summary order in select circumstances. The concept of the traditional "Rule 23 order" remains, but conciseness is encouraged. Disposition by order rather than by opinion reflects the precedential value of a case, not necessarily its merits.

Two of the criteria upon which a case could qualify for disposition by opinion and the preference for publishing cases which include concurring and/or dissenting opinions have been eliminated consistent with the presumption against publication.

An administrative order which complements these changes has been entered simultaneously with the amendment of Rule 23.

## Rule 24. Research Department in Each District of the Appellate Court

In each Appellate Court district there shall be a research department supervised by a director of research and staffed by such number of staff attorneys as the Supreme Court may from time to time determine. The research department in each district shall perform such duties as may be assigned to it by the presiding judge of the district or, in the First District, by the Executive Committee. The research departments of the various districts shall coordinate their activities, exchange information, and publish and maintain a manual of procedures for the research staff. An assistant to the Supreme Court may be assigned by that court to coordinate the activities of the research departments hereby created. The director of research and all staff attorneys employed in any research department shall be graduates of law schools approved by the American Bar Association.

Adopted July 30, 1979, eff. Oct. 15, 1979. Amended April 10, 1987, eff. Aug. 1, 1987.

Formerly Ill.Rev.Stat.1991, ch. 110A, ¶ 24.

### Committee Comments

Rule 24 is new. It recedes from the recommendation of the 1972 committee report for a statewide research department and incorporates the development of research departments in each district with a coordination of the activities of those departments by an assistant to the Supreme Court.

## Rules 25 to 29. Reserved

## Rule 30. Administrative Duties of the Chief Justice and the Administrative Director

**(a) The Chief Justice.** The chief justice of the Supreme Court shall be responsible for the administration of all courts in the State. To assist him, the court shall appoint an Administrative Director to serve at its pleasure, who shall report directly to the chief justice. If there is a vacancy in the office of the chief justice, the senior justice shall serve temporarily as acting chief justice. Seniority shall be determined as provided in Rule 31. If the chief justice is absent or unable to serve, the senior justice shall serve temporarily as acting chief justice.

**(b) The Administrative Director.** The Administrative Director of the courts shall be generally responsible for the enforcement of the rules, orders, policies and directives of the Supreme Court and the



chief justice relating to matters of administration. At the direction of the chief justice and the Supreme Court, the Administrative Director shall develop, compile and promulgate administrative rules and directives relating to case processing, records and management information services, personnel, budgeting and such other matters as the chief justice and the Supreme Court shall direct. The Administrative Director also shall perform such other functions and duties as may be assigned by the chief justice or by the Supreme Court.

Adopted Nov. 21, 1988, eff. Jan. 1, 1989.

Formerly Ill.Rev.Stat.1991, ch. 110A, ¶ 30.

## Rule 31. Seniority in Supreme Court

Seniority among the judges of the Supreme Court shall be determined by length of continuous service, but if the terms of two or more judges begin at the same time they shall determine the seniority as between or among themselves by lot, unless they are able to determine it by agreement.

Formerly Ill.Rev.Stat.1991, ch. 110A, ¶ 31.

### Committee Comments

This is former Rule 56 without change of substance.

## Rule 32. Repealed eff. Oct. 1, 1971

## Rule 33. Library of Supreme Court

The librarian of the library of the Supreme Court shall not permit any person except judges of the court to take any book from the library without the consent of the court or the chief justice. No books shall be marked or underlined, nor shall the pages of any book be folded down. Any person who offends against the provisions of this rule is in contempt of the Supreme Court.

Formerly Ill.Rev.Stat.1991, ch. 110A, ¶ 33.

### Committee Comments

This is former Rule 55 with minor language changes.

## Rules 34 to 38. Reserved

## Rule 39. Appointment of Associate Judges

(a) Terms. The terms of all associate judges in office on June 30, 1975, shall expire on that date and on every fourth anniversary of that date, regardless of the date on which any judge is appointed. The office of an associate judge shall be vacant upon his death, resignation, retirement, or removal, or upon the expiration of his term without his reappointment.

(b) Filling Vacancies. Vacancies in the office of associate judge shall be filled in the following manner:

(1) *Notice of Vacancy.* The chief judge of the circuit shall cause notice to be given to the bar of the circuit, in the same manner as notice of matters of general interest to the bar is customarily given in the circuit, that the vacancy exists and will be filled by the judges of the circuit.

(2) *Applications.* Any attorney licensed to practice law in this State who seeks appointment to the office of associate judge shall have 30 days after the notice of vacancy is given within which to file with the Chief Judge of the circuit in which the vacancy exists, and with the Director of the Administrative Office of the Illinois Courts, an application on the form prescribed and furnished by the Director.

(3) *Nomination and Certification.*

(i) In judicial circuits having a population of more than 500,000, the Chief Judge of each circuit and at least two but not more than 10 additional circuit judges selected by their fellow circuit judges shall serve as a nominating committee for candidates for appointment to the office of associate judge of their circuit. If there are fewer than 20 circuit judges in a circuit, all of the circuit judges may sit as a nominating committee. When one or more vacancies in the office of associate judge are to be filled the nominating committee shall select from applications on file with the Chief Judge twice as many names of qualified candidates as there are vacancies to be filled. The Chief Judge shall certify the names of the candidates so selected to the Director.

(ii) In judicial circuits having a population of less than 500,000, the Chief Judge shall certify the names of all attorneys who have filed applications with the Chief Judge to the Director.

(4) *Distribution of Ballots and Related Materials.* Within 14 days after the names are certified to him, the Director shall place the name of each candidate certified to him for each circuit on a ballot in alphabetical order. The ballot for a circuit having a population over 500,000 shall also contain blank spaces equal in number to the number of vacancies to be filled, in which spaces may be written the name of any qualified applicant whose name does not appear on the ballot as a candidate. A ballot and a brief biographical synopsis of each candidate shall be mailed to each circuit judge in the circuit. Each ballot shall also be accompanied by a stamped, addressed return envelope, an envelope marked "For Ballot Only," and a signature card. Upon request, any circuit judge may obtain a copy of the complete application of any applicant.

(5) *Balloting.* Each circuit judge shall complete his ballot by voting for one candidate for each vacancy to be filled, enclose the ballot in the envelope marked "For Ballot Only," seal the envelope, sign the signature card, and enclose that envelope and signature card in the stamped, addressed return envelope, which shall be delivered to the Di-

shall specify by whom
f the Governor to serve
l and determined. The
d exclusive jurisdiction
termination and, in the
e determination under

ve Offices

of State, Comptroller
office becomes vacant,
appointment. The ap-
ted officer qualifies or
ed as may be provided
noval by the Governor.
qualify or if his office
nt until the end of the

tive Power

e executive power, and
execution of the laws.

ver

and, by and with the
jority of the members
all appoint all officers
otherwise provided for.
the Senate within 60
f shall be deemed to
of the Senate. The
er to elect or appoint

. there is a vacancy in
Governor by and with
e, the Governor shall
e next meeting of the
tion to fill such office.
te for an office shall
inated again for that
ointed to that office

mpetence, neglect of
icer who may be ap-

nization

ay reassign functions
es which are directly
ent or reorganization
utive Order shall be
he General Assembly
ve Order is delivered
bly shall consider the
ion. If the General
the Executive Order
ssembly shall consid-
ual session, in which
emed to have been
al session. Such an
fective if, within 60
General Assembly,
Order by the record
cted. An Executive

Order not so disapproved shall become effective by its terms but not less than 60 calendar days after its delivery to the General Assembly.

### § 12. Governor—Pardons

The Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefore may be regulated by law.

### § 13. Governor—Legislative Messages

The Governor, at the beginning of each annual session of the General Assembly and at the close of his term of office, shall report to the General Assembly on the condition of the State and recommend such measures as he deems desirable.

### § 14. Lieutenant Governor—Duties

The Lieutenant Governor shall perform the duties and exercise the powers in the Executive Branch that may be delegated to him by the Governor and that may be prescribed by law.

### § 15. Attorney General—Duties

The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law.

### § 16. Secretary of State—Duties

The Secretary of State shall maintain the official records of the acts of the General Assembly and such official records of the Executive Branch as provided by law. Such official records shall be available for inspection by the public. He shall keep the Great Seal of the State of Illinois and perform other duties that may be prescribed by law.

### § 17. Comptroller—Duties

The Comptroller, in accordance with law, shall maintain the State's central fiscal accounts, and order payments into and out of the funds held by the Treasurer.

### § 18. Treasurer—Duties

The Treasurer, in accordance with law, shall be responsible for the safekeeping and investment of monies and securities deposited with him, and for their disbursement upon order of the Comptroller.

### § 19. Records—Reports

All officers of the Executive Branch shall keep accounts and shall make such reports as may be required by law. They shall provide the Governor with information relating to their respective offices, either in writing under oath, or otherwise, as the Governor may require.

### § 20. Bond

Civil officers of the Executive Branch may be required by law to give reasonable bond or other security for the faithful performance of their duties. If any officer is in default of such a requirement, his office shall be deemed vacant.

### § 21. Compensation

Officers of the Executive Branch shall be paid salaries established by law and shall receive no other compensation for their services. Changes in the salaries of these officers elected or appointed for stated terms shall not take effect during the stated terms.

## ARTICLE VI. THE JUDICIARY

Section

1. Courts.
2. Judicial Districts.
3. Supreme Court—Organization.
4. Supreme Court—Jurisdiction.
5. Appellate Court—Organization.
6. Appellate Court—Jurisdiction.
7. Judicial Circuits.
8. Associate Judges.
9. Circuit Courts—Jurisdiction.
10. Terms of office.
11. Eligibility for Office.
12. Election and Retention.
13. Prohibited Activities.
14. Judicial Salaries and Expenses—Fee Officers Eliminated.
15. Retirement—Discipline.
16. Administration.
17. Judicial Conference.
18. Clerk of Courts.
19. State's Attorneys—Selection, salary.

### § 1. Courts

The judicial power is vested in a Supreme Court, an Appellate Court and Circuits Courts.

### § 2. Judicial Districts

The State is divided into five Judicial Districts for the selection of Supreme and Appellate Court Judges. The First Judicial District consists of Cook County. The remainder of the State shall be divided by law into four Judicial Districts of substantially equal population, each of which shall be compact and composed of contiguous counties.

### § 3. Supreme Court—Organization

The Supreme Court shall consist of seven Judges. Three shall be selected from the First Judicial District and one from each of the other Judicial Districts. Four Judges constitute a quorum and the concurrence of four is necessary for a decision. Supreme Court Judges shall select a Chief Justice from their number to serve for a term of three years.

### § 4. Supreme Court—Jurisdiction

(a) The Supreme Court may exercise original jurisdiction in cases relating to revenue, mandamus, prohibition or habeas corpus and as may be necessary to the complete determination of any case on review.

(b) Appeals from judgments of Circuit Courts imposing a sentence of death shall be directly to the Supreme Court as a matter of right. The Supreme Court shall provide by rule for direct appeal in other cases.

(c) Appeals from the Appellate Court to the Supreme Court are a matter of right if a question under the Constitution of the United States or of this State arises for the first time in and as a result of the action of the Appellate Court, or if a division of the Appellate Court certifies that a case decided by it involves a question of such importance that the case should be decided by the Supreme Court. The Supreme Court may provide by rule for appeals from the Appellate Court in other cases.

## § 5. Appellate Court—Organization

The number of Appellate Judges to be selected from each Judicial District shall be provided by law. The Supreme Court shall prescribe by rule the number of Appellate divisions in each Judicial District. Each Appellate division shall have at least three Judges. Assignments to divisions shall be made by the Supreme Court. A majority of a division constitutes a quorum and the concurrence of a majority of the division is necessary for a decision. There shall be at least one division in each Judicial District and each division shall sit at times and places prescribed by rules of the Supreme Court.

## § 6. Appellate Court—Jurisdiction

Appeals from final judgments of a Circuit Court are a matter of right to the Appellate Court in the Judicial District in which the Circuit Court is located except in cases appealable directly to the Supreme Court and except that after a trial on the merits in a criminal case, there shall be no appeal from a judgment of acquittal. The Supreme Court may provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts. The Appellate Court may exercise original jurisdiction when necessary to the complete determination of any case on review. The Appellate Court shall have such powers of direct review of administrative action as provided by law.

## § 7. Judicial Circuits

(a) The State shall be divided into Judicial Circuits consisting of one or more counties. The First Judicial District shall constitute a Judicial Circuit. The Judicial Circuits within the other Judicial Districts shall be as provided by law. Circuits composed of more than one county shall be compact and of contiguous counties. The General Assembly by law may provide for the division of a circuit for the purpose of selection of Circuit Judges and for the selection of Circuit Judges from the circuit at large.

(b) Each Judicial Circuit shall have one Circuit Court with such number of Circuit Judges as provided by law. Unless otherwise provided by law, there shall be at least one Circuit Judge from each county. In the First Judicial District, unless otherwise provided by law, Cook County, Chicago, and the area outside Chicago shall be separate units for the selection of Circuit Judges, with at least twelve chosen at large from the area outside Chicago and at least thirty-six chosen at large from Chicago.

(c) Circuit Judges in each circuit shall select by secret ballot a Chief Judge from their number to serve at their pleasure. Subject to the authority of the Supreme Court, the Chief Judge shall have general administrative authority over his court, including authority to provide for divisions, general or specialized, and for appropriate times and places of holding court.

Continuation of judges, magistrates, and clerks in office on effective date of Constitution, see Transition Schedule, § 4.

## § 8. Associate Judges

Each Circuit Court shall have such number of Associate Judges as provided by law. Associate Judges shall be appointed by the Circuit Judges in each circuit as the Supreme Court shall provide by rule. In the First Judicial District, unless otherwise provided by law, at least one-fourth of the Associate Judges shall be appointed from, and reside, outside Chicago. The Supreme Court shall provide by rule for matters to be assigned to Associate Judges.

## § 9. Circuit Courts—Jurisdiction

Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the Governor to serve or resume office. Circuit Courts shall have such power to review administrative action as provided by law.

## § 10. Terms of office

The terms of office of Supreme and Appellate Court Judges shall be ten years; of Circuit Judges, six years; and of Associate Judges, four years.

## § 11. Eligibility for Office

No person shall be eligible to be a Judge or Associate Judge unless he is a United States citizen, a licensed attorney-at-law of this State, and a resident of the unit which selects him. No change in the boundaries of a unit shall affect the tenure in office of a Judge or Associate Judge incumbent at the time of such change.

Continuation of judges, magistrates, and clerks in office on effective date of Constitution, see Transition Schedule § 4.

## § 12. Election and Retention

(a) Supreme, Appellate and Circuit Judges shall be nominated at primary elections or by petition. Judges shall be elected at general or judicial elections as the General Assembly shall provide by law. A person eligible for the office of Judge may cause his name to appear on the ballot as a candidate for Judge at the primary and at the general or judicial elections by submitting petitions. The General Assembly shall prescribe by law the requirements for petitions.

(b) The office of a Judge shall be vacant upon his death, resignation, retirement, removal, or upon the conclusion of his term without retention in office. Whenever an additional Appellate or Circuit Judge is authorized by law, the office shall be filled in the manner provided for filling a vacancy in that office.

(c) A vacancy occurring in the office of Supreme, Appellate or Circuit Judge shall be filled as the General Assembly may provide by law. In the absence of a law, vacancies may be filled by appointment by the Supreme Court. A person appointed to fill a vacancy 60 or more days prior to the next primary election to nominate Judges shall serve until the vacancy is filled for a term at the next general or judicial election. A person appointed to fill a vacancy less than 60 days prior to the next primary election to nominate Judges shall serve until the vacancy is filled at the second general or judicial election following such appointment.

(d) Not less than six months before the general election preceding the expiration of his term of office, a Supreme, Appellate or Circuit Judge who has been elected to that office may file in the office of the Secretary of State a declaration of candidacy to succeed himself. The Secretary of State, not less than 63 days before the election, shall certify the Judge's candidacy to the proper election officials. The names of Judges seeking retention shall be submitted to the electors, separately and without party designation, on the sole question whether each Judge shall be retained in office for another term. The retention elections shall be conducted at general elections in the appropriate Judicial District, for Supreme and Appellate Judges, and in the circuit for Circuit Judges. The affirmative vote of three-fifths of the electors voting on the question shall elect the Judge to the office for a term commencing on the first Monday in December following his election.

·n
sdiction of all justicia-
'ourt has original and
ricting of the General
iovernor to serve or
have such power to
l by law.

and Appellate Court
udges, six years; and

ı Judge or Associate
izen, a licensed attor-
nt of the unit which
laries of a unit shall
· or Associate Judge

:rks in office on effective
§ 4.

ludges shall be nomi-
ion. Judges shall be
s the General Assem-
gible for the office of
· on the ballot as a
ıd at the general or
ıs. The General As-
ements for petitions.
cant upon his death,
on the conclusion of
ıenever an additional
d by law, the office
r filling a vacancy in

f Supreme, Appellate
neral Assembly may
w, vacancies may be
e Court. A person
ays prior to the next
shall serve until the
t general or judicial
acancy less than 60
to nominate Judges
he second general or
ent.

the general election
f office, a Supreme,
een elected to that
ecretary of State a
self. The Secretary
: the election, shall
per election officials.
shall be submitted to
v designation, on the
be retained in office
is shall be conducted
Judicial District, for
he circuit for Circuit
ifths of the electors
ge to the office for a
December following

(e) A law reducing the number of Appellate or Circuit Judges shall be without prejudice to the right of the Judges affected to seek retention in office. A reduction shall become effective when a vacancy occurs in the affected unit.

## § 13. Prohibited Activities

(a) The Supreme Court shall adopt rules of conduct for Judges and Associate Judges.

(b) Judges and Associate Judges shall devote full time to judicial duties. They shall not practice law, hold a position of profit, hold office under the United States or this State or unit of local government or school district or in a political party. Service in the State militia or armed forces of the United States for periods of time permitted by rule of the Supreme Court shall not disqualify a person from serving as a Judge or Associate Judge.

## § 14. Judicial Salaries and Expenses—Fee Officers Eliminated

Judges shall receive salaries provided by law which shall not be diminished to take effect during their terms of office. All salaries and such expenses as may be provided by law shall be paid by the State, except that Appellate, Circuit and Associate Judges shall receive such additional compensation from counties within their district or circuit as may be provided by law. There shall be no fee officers in the judicial system.

## § 15. Retirement—Discipline

(a) The General Assembly may provide by law for the retirement of Judges and Associate Judges at a prescribed age. Any retired Judge or Associate Judge, with his consent, may be assigned by the Supreme Court to judicial service for which he shall receive the applicable compensation in lieu of retirement benefits. A retired Associate Judge may be assigned only as an Associate Judge.

(b) A Judicial Inquiry Board is created. The Supreme Court shall select two Circuit Judges as members and the Governor shall appoint four persons who are not lawyers and three lawyers as members of the Board. No more than two of the lawyers and two of the non-lawyers appointed by the Governor shall be members of the same political party. The terms of Board members shall be four years. A vacancy on the Board shall be filled for a full term in the manner the original appointment was made. No member may serve on the Board more than eight years.

(c) The Board shall be convened permanently, with authority to conduct investigations, receive or initiate complaints concerning a Judge or Associate Judge, and file complaints with the Courts Commission. The Board shall not file a complaint unless five members believe that a reasonable basis exists (1) to charge the Judge or Associate Judge with willful misconduct in office, persistent failure to perform his duties, or other conduct that is prejudicial to the administration of justice or that brings the judicial office into disrepute, or (2) to charge that the Judge or Associate Judge is physically or mentally unable to perform his duties. All proceedings of the Board shall be confidential except the filing of a complaint with the Courts Commission. The Board shall prosecute the complaint.

(d) The Board shall adopt rules governing its procedures. It shall have subpoena power and authority to appoint and direct its staff. Members of the Board who are not Judges shall receive per diem compensation and necessary expenses; members who are Judges shall receive necessary expenses only. The General Assembly by law shall appropriate funds for the operation of the Board.

(e) A Courts Commission is created consisting of one Supreme Court Judge selected by that Court, who shall be its chairman, two Appellate Court Judges selected by that Court, and two Circuit Judges selected by the Supreme Court. The Commission shall be convened permanently to hear complaints filed by the Judicial Inquiry Board. The Commission shall have authority after notice and public hearing, (1) to remove from office, suspend without pay, censure or reprimand a Judge or Associate Judge for willful misconduct in office, persistent failure to perform his duties, or other conduct that is prejudicial to the administration of justice or that brings the judicial office into disrepute, or (2) to suspend, with or without pay, or retire a Judge or Associate Judge who is physically or mentally unable to perform his duties.

(f) The concurrence of three members of the Commission shall be necessary for a decision. The decision of the Commission shall be final.

(g) The Commission shall adopt rules governing its procedures and shall have power to issue subpoenas. The General Assembly shall provide by law for the expenses of the Commission.

## § 16. Administration

General administrative and supervisory authority over all courts is vested in the Supreme Court and shall be exercised by the Chief Justice in accordance with its rules. The Supreme Court shall appoint an administrative director and staff, who shall serve at its pleasure, to assist the Chief Justice in his duties. The Supreme Court may assign a Judge temporarily to any court and an Associate Judge to serve temporarily as an Associate Judge on any Circuit Court. The Supreme Court shall provide by rule for expeditious and inexpensive appeals.

## § 17. Judicial Conference

The Supreme Court shall provide by rule for an annual judicial conference to consider the work of the courts and to suggest improvements in the administration of justice and shall report thereon annually in writing to the General Assembly not later than January 31.

## § 18. Clerk of Courts

(a) The Supreme Court and the Appellate Court Judges of each Judicial District, respectively, shall appoint a clerk and other non-judicial officers for their Court or District.

(b) The General Assembly shall provide by law for the election, or for the appointment by Circuit Judges, of clerks and other non-judicial officers of the Circuit Courts and for their terms of office and removal for cause.

(c) The salaries of clerks and other non-judicial officers shall be as provided by law.

Continuation of judges, magistrates, and clerks in office on effective date of Constitution, see Transition Schedule, § 4.

## § 19. State's Attorneys—Selection, salary

A State's Attorney shall be elected in each county in 1972 and every fourth year thereafter for a four year term. One State's Attorney may be elected to serve two or more counties if the governing boards of such counties so provide and a majority of the electors of each county voting on the issue approve. A person shall not be eligible for the office of State's Attorney unless he is a United States citizen and a

licensed attorney-at-law of this State. His salary shall be provided by law.

## ARTICLE VII. LOCAL GOVERNMENT

Section

1. Municipalities and Units of Local Government.
2. County Territory, Boundaries and Seats.
3. County Boards.
4. County Officers.
5. Townships.
6. Powers of Home Rule Units.
7. Counties and Municipalities Other Than Home Rule Units.
8. Powers and Officers of School Districts and Units of Local Government other than Counties and Municipalities.
9. Salaries and Fees.
10. Intergovernmental Cooperation.
11. Initiative and Referendum.
12. Implementation of Governmental Changes.

### § 1. Municipalities and Units of Local Government

"Municipalities" means cities, villages and incorporated towns. "Units of local government" means counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts.

### § 2. County Territory, Boundaries and Seats

(a) The General Assembly shall provide by law for the formation, consolidation, merger, division, and dissolution of counties, and for the transfer of territory between counties.

(b) County boundaries shall not be changed unless approved by referendum in each county affected.

(c) County seats shall not be changed unless approved by three-fifths of those voting on the question in a county-wide referendum.

### § 3. County Boards

(a) A county board shall be elected in each county. The number of members of the county board shall be fixed by ordinance in each county within limitations provided by law.

(b) The General Assembly by law shall provide methods available to all counties for the election of county board members. No county, other than Cook County, may change its method of electing board members except as approved by county-wide referendum.

(c) Members of the Cook County Board shall be elected from two districts, Chicago and that part of Cook County outside Chicago, unless (1) a different method of election is approved by a majority of votes cast in each of the two districts in a county-wide referendum or (2) the Cook County Board by ordinance divides the county into single member districts from which members of the County Board resident in each district are elected. If a different method of election is adopted pursuant to option (1) the method of election may thereafter be altered only pursuant to option (2) or by county-wide referendum. A different method of election may be adopted pursuant to option (2) only once and the method of election may thereafter be altered only by county-wide referendum.

Number of members of county board, see Transition Schedule, § 5.

### § 4. County Officers

(a) Any county may elect a chief executive officer as provided by law. He shall have those duties and powers provided by law and those provided by county ordinance.

(b) The President of the Cook County Board shall be elected from the County at large and shall be the chief executive officer of the County. If authorized by county ordinance, a person seeking election as President of the Cook County Board may also seek election as a member of the Board.

(c) Each county shall elect a sheriff, county clerk and treasurer and may elect or appoint a coroner, recorder, assessor, auditor and such other officers as provided by law or by county ordinance. Except as changed pursuant to this Section, elected county officers shall be elected for terms of four years at general elections as provided by law. Any office may be created or eliminated and the terms of office and manner of selection changed by county-wide referendum. Offices other than sheriff, county clerk and treasurer may be eliminated and the terms of office and manner of selection changed by law. Offices other than sheriff, county clerk, treasurer, coroner, recorder, assessor and auditor may be eliminated and the terms of office and manner of selection changed by county ordinance.

(d) County officers shall have those duties, powers and functions provided by law and those provided by county ordinance. County officers shall have the duties, powers or functions derived from common law or historical precedent unless altered by law or county ordinance.

(e) The county treasurer or the person designated to perform his functions may act as treasurer of any unit of local government and any school district in his county when requested by any such unit or school district and shall so act when required to do so by law.

### § 5. Townships

The General Assembly shall provide by law for the formation of townships in any county when approved by county-wide referendum. Townships may be consolidated or merged, and one or more townships may be dissolved or divided, when approved by referendum in each township affected. All townships in a county may be dissolved when approved by a referendum in the total area in which township officers are elected.

Townships in existence on effective date of Constitution, see Transition Schedule, § 5(c).

### § 6. Powers of Home Rule Units

(a) A County which has a chief executive officer elected by the electors of the county and any municipality which has a population of more than 25,000 are home rule units. Other municipalities may elect by referendum to become home rule units. Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

(b) A home rule unit by referendum may elect not to be a home rule unit.

(c) If a home rule county ordinance conflicts with an ordinance of a municipality, the municipal ordinance shall prevail within its jurisdiction.

(d) A home rule unit does not have the power (1) to incur debt payable from ad valorem property tax receipts maturing

But the present case involves not so much the question of abandonment as whether Addante's car was wrongfully taken. After all, the traffic court "hearing" was not held until February 1982, some four months *after* the car was towed. Even if his car were "abandoned," Addante was deprived of its use for those four months, allegedly without due process of law.

*Endicott v. Huddleston,* 644 F.2d 1208 (7th Cir. 1980) dealt with a closely analogous problem. There a county board refused to rehire a supervisor at the end of his term. Even though the court found the supervisor had no due process interest in retaining his job, it held he did have a due process right to a hearing so he might clear his name. After plaintiff filed suit (but before any decision on the merits) the county board provided an appropriate hearing. Our Court of Appeals held, *id.* at 1216:

> Although plaintiff received his deserved opportunity to clear his name in 1977, he is entitled to recover damages for any loss suffered as a result of the first inadequate hearing.

Addante seeks only an injunction, not damages like the plaintiff in *Endicott.* Nevertheless *Endicott's* recognition of the plaintiff's cause of action, despite the later hearing, supports a like recognition here. At least at this stage of the proceedings the complaint remains viable.

### *Conclusion*

Defendants' motions to dismiss are denied, and they are ordered to answer the Complaint on or before June 18, 1982. This action is set for status report at 9:15 a. m. August 2, 1982.

**Ivie CLAY, Plaintiff,**

**v.**

**Saul FRIEDMAN, et al., Defendants.**

**No. 81 C 1860.**

United States District Court, N. D. Illinois, E. D.

June 11, 1982.

Action was brought against public defenders, their supervisors, office of public defender, circuit court, and county and county guardian ad litem for violation of Civil Rights Act based on allegedly incompetent representation. On defendants' motions to dismiss, the District Court, Shadur, J., held that: (1) complaint against head of public defender's office and supervisor of guardians ad litem for administrative malfeasance stated claim for relief; (2) office of public defender was not suable entity; (3) pendent state law claims against public defenders for malpractice would be dismissed since maintenance of claim against their supervisor required proof of prior incompetent representation, which would be inadmissible in malpractice action; and (4) claim against county for promulgating policies and customs stated cause of action.

Motions granted in part and denied in part.

**1. Civil Rights ⟹13.12(3, 8)**

Complaint alleging that head of public defender's office, as counsel for all defendants represented by public defender, was liable for actions taken by attorneys in his office failed to state cause of action under Civil Rights Act both because it attempted to assess liability on respondeat superior basis and because public defenders in representing indigent clients did not act under color of state law. 42 U.S.C.A. § 1983.

**2. Civil Rights ⟹13.7**

Although official is supervisor, he may be subject to civil rights liability if his own actions in some way cause constitutional deprivation. 42 U.S.C.A. § 1983.



**3. Civil Rights ⇐13.12(3, 8)**

Complaint alleging that head of office of public defender caused injury to client by failing to discontinue employment of incompetent attorney who represented client stated claim under Civil Rights Act since claim was for negligent supervision and was not under respondeat superior theory and where acts taken by head of office in his supervisory capacity as employer were under color of state law. 42 U.S.C.A. § 1983.

**4. Civil Rights ⇐13.8(1)**

Head of office of public defender was not entitled to absolute immunity from civil rights liability for negligence in hiring, firing, and monitoring attorneys, but was entitled only to good-faith immunity defense. 42 U.S.C.A. § 1983.

**5. Federal Civil Procedure ⇐1788.5**

Since statutes creating office of public defender did not create governmental entity or agency having existence separate from person who filled it, count in civil rights complaint against office would be dismissed where similar count against head of office remained. 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc. Rule 17(b), 28 U.S.C.A.; Ill.S.H.A. ch. 34, §§ 5601, 5602.

**6. Civil Rights ⇐13.12(8)**

Civil rights complaint against guardian ad litem alleging that incompetent representation by guardian violated client's due process rights failed to state claim for relief since guardian ad litem did not act under color of state law because guardian acted as client's fiduciary and thus represented interests necessarily opposed to the state. 42 U.S.C.A. § 1983; Ill.S.H.A. ch. 37, § 704-5.

**7. Civil Rights ⇐13.12(3)**

Civil rights complaint against supervisor of guardians ad litem for administrative malfeasance stated claim for relief. 42 U.S.C.A. § 1983.

**8. Civil Rights ⇐13.8(1)**

Supervisor of guardians ad litem was entitled to only good-faith immunity from civil rights action for administrative malfeasance. 42 U.S.C.A. § 1983.

**9. Civil Rights ⇐13.12(3)**

Claim against state circuit court for establishing policy that led to injuries to indigent client represented by public defender's office failed to state claim for relief since circuit court was nothing more than geographical division of state. Fed. Rules Civ.Proc. Rule 17(b), 28 U.S.C.A.; Ill.S.H.A.Const.Art. 6, § 7(a); Ill.S.H.A. ch. 37, § 72.1; 42 U.S.C.A. § 1983.

**10. Federal Courts ⇐15**

Pendent state law claims against attorneys in public defender's office for malpractice would be dismissed from federal lawsuit against head of public defender's office for administrative malfeasance since maintenance of action against supervisor required proof of prior incompetent representation, which was likely to be inadmissible in malpractice action. Fed.Rules Evid.Rules 403, 404(b), 28 U.S.C.A.

**11. Civil Rights ⇐13.12(3)**

Complaint against circuit court, public defender's office, head of that office, and attorneys employed in the office, and county for failure to take appropriate supervisory actions necessary to prevent court-appointed guardian ad litem from providing incompetent representation for plaintiff failed to state claim where neither circuit court nor office of public defender was suable entity, there was no allegation that office of public defender or its employees had any supervisory powers over guardian ad litem, and there was no allegation as to what supervisory actions had been taken.

**12. Civil Rights ⇐13.12(3)**

Complaint alleging that county promulgated policies and customs that caused harm to plaintiff in being represented by incompetent guardian ad litem and public defender stated claim for relief. 42 U.S.C.A. § 1983.

**13. Federal Civil Procedure ⇐1788.5**

Claim for punitive damages against county which allegedly violated Civil Rights Act would be dismissed. 42 U.S.C.A. § 1983.

John Elson, Northwestern University Legal Clinic, Chicago, Ill., for plaintiff.

Joan S. Cherry, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ivie Clay ("Clay") has sued several public defenders, their supervisors, the Cook County Office of the Public Defender, the Circuit Court of Cook County, the County of Cook and the Cook County Guardian Ad Litem under 42 U.S.C. § 1983 ("Section 1983") based on the allegedly incompetent representation provided Clay in a criminal proceeding. This Court's February 12, 1982 memorandum opinion and order ("Opinion I") and April 9, 1982 supplemental memorandum opinion and order ("Opinion II") dismissed Counts I–VI of the Second Amended Complaint (the "Complaint"). 537 F.Supp. 409.[1] All defendants have moved to dismiss the remaining counts. For the reasons stated in this memorandum opinion and order those motions are granted in part and denied in part.

### *Count VII*

[1] Count VII alleges a cause of action against Cook County Public Defender James Doherty ("Doherty") for both individual and supervisory acts. In Complaint ¶ 50 Clay alleges that by virtue of his office Doherty is counsel for all defendants represented by a public defender and is therefore jointly liable for actions taken by Friedman and Harris. That paragraph fails to state a cause of action both because (1) it attempts to assess liability on a respondeat superior basis and (2) even if it were a proper basis for liability, *Polk County v. Dotson*, — U.S. —, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) would require dismissal.

Complaint ¶ 51 asserts a cause of action against Doherty—as Friedman's employer—directly under the Constitution under a respondeat superior theory. But what this Court stated in Opinion II at 3 applies with equal force here:

> But Clay's allegations are much like those in *Polk County*. This Court cannot ignore the clear mandate of that decision by sidestepping Section 1983 and sustaining a direct right of action under the Fourteenth Amendment.

Paragraph 51 is therefore stricken.

[2] In Complaint ¶¶ 44–49 Clay alleges Doherty failed:

(1) to discontinue Friedman's employment even though Friedman had demonstrated his incompetence several times before representing Clay;

(2) to develop a system of monitoring the performance of assistant public defenders; and

(3) to develop a system so that assistant public defenders had sufficient information to represent clients properly.

Although an official is a supervisor, he may be subject to Section 1983 liability if his own actions in some way cause a constitutional deprivation. *See, Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). That test is met by the cited allegations.

[3] Furthermore, unlike the actions discussed in *Polk County*, the asserted acts would be under color of state law. In his supervisory capacity as an employer the Public Defender does not play an adversary role. His obligation is to the government to assure only competent employees are kept on. Clay's allegations involve administrative not adversary activities, so that *Polk County*'s reasoning does not apply.

[4] Finally, Doherty is not entitled to absolute immunity for such supervisory acts. Immunity of public defenders is a reflection of prosecutorial immunity. *See, Robinson v. Bergstrom,* 579 F.2d 401 (7th Cir. 1978). Under *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–96, 47

1. Those opinions referred to the dismissal of Friedman and Harris, the public defenders who represented Clay, from this action. But both of them are also named in pendent state law claims, and the Opinions dismissed only the federal law allegations in Counts I–VI. Accordingly this opinion will deal with the remaining claims against them.

L.Ed.2d 128 (1976) such an official is absolutely immune only for advocacy-related activities. *Daniels v. Kieser*, 586 F.2d 64, 67 n.5 (7th Cir. 1978). Hiring, firing and monitoring attorneys is an administrative function. *D'Iorio v. County of Delaware*, 447 F.Supp. 229, 235 (E.D.Pa.1978), *vacated and remanded on other grounds*, 592 F.2d 681 (3d Cir. 1978). Doherty is therefore entitled only to a good faith immunity defense.

For the several reasons just stated Complaint ¶¶ 44–49 are permitted to stand.

*Count VIII*

Ronald Katz ("Katz") is the assistant public defender in charge of Juvenile Court activities. Complaint Count VIII charges Katz in almost identical terms to Count VII's allegations against Doherty. For the reasons just discussed:

(1) Paragraph 59 is stricken.

(2) All the remaining allegations of Count VIII shall stand.

*Count IX*

[5] Count IX purports to assert a cause of action against the Office of the Public Defender. Under Fed.R.Civ.P. ("Rule") 17(b) the capacity of an entity to be sued must be determined by Illinois law. Ill.Rev. Stat. ch. 34, § 5601 provides:

> In each county of this state containing 35,000 or more inhabitants there is created the office of Public Defender and the person to be appointed to such office shall be known as the Public Defender.

Then Ill.Rev.Stat. ch. 34, § 5602 provides:

> ... the judges of the Circuit Court ... shall, by a majority vote of the entire number of such judges, appoint to the office of Public Defender a properly qualified person....

Those statutes simply create an office or position to be filled by one person. They do not create a governmental entity or agency having an existence separate from the person who fills it. In that respect the Public Defender is no different from the Mayor of the City of Chicago. Accordingly this Court finds the "Office of Public Defender" is not an entity suable under Rule 17(b).

*Count X*

[6] At a plea proceeding on September 28, 1977 the state court appointed a guardian ad litem to represent Clay's interests. Complaint Count X alleges the incompetent representation provided by the court-appointed guardian ad litem violated Clay's due process rights.[2]

Ill.Rev.Stat. ch. 37, § 704–5 requires or authorizes appointment of guardians ad litem to protect minors' interests under various circumstances. *Robin v. Robin*, 45 Ill. App.3d 365, 373, 3 Ill.Dec. 950, 956, 359 N.E.2d 508, 815 (1st Dist. 1977):

> A guardian ad litem is a person appointed by the Court to prosecute or defend on behalf of a minor in any suit in which the minor is a party.

Fees of the guardian ad litem are paid by the minor's parents unless they cannot afford to, in which case the county covers the cost. Section 704–5.

Under the reasoning of *Polk County* a guardian ad litem does not act under color of state law as required by Section 1983. In all critical respects, the role of the guardian ad litem is almost identical to that of a public defender. He or she is a fiduciary who must act in the minor's best interest. In a criminal proceeding the guardian ad litem is necessarily opposed to the State's position.

Only one factor discussed in *Polk County* is not paralleled by Count X. Public defenders are held to standards established by codes of professional responsibility, while no such analogous guidelines exist for guardians ad litem. But that was not the central focus of *Polk County*. It was only one piece of evidence demonstrating the *independence* of a public defender. Both the statute and the case law as to guardians ad litem demonstrate their duty of loyalty is to the minor, not the State. There is no meaning-

2. There is a dispute as to who was actually appointed as Clay's guardian ad litem. Given this Court's holding, that dispute is no longer relevant.