958 F.2d 1419

Page 20

(Cite as: 958 F.2d 1419, *1424)

also flawed in its reliance on the argument that the Public Defender is a county official since he is defended by a State's Attorney. By statute, the State's Attorney is authorized to represent both county and state officials. Ill.Rev.Stat. ch. 34, § 3-9005(4) (1989). We are also mindful of the fact that no matter who represents the Public Defender in lawsuits, the PDO itself performs an essentially *state* function, since it is the state and not the county that owes defendants a duty of representation under the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

The plaintiffs maintain that the Public Defender is not a state employee since, unlike the State's Attorney, he is not "essential" to the system of justice because the PDO is not established under the Illinois Constitution and its work can be done by private attorneys. To the contrary, representation of indigent defendants is a federal constitutional duty imposed on the states. Illinois case law has recognized how essential such representation is. "In a county as large as Cook County, the demand for the services of the Public Defender is so great as to insure the continued existence of the office of Assistant Public Defender." *People of Cook County v. Majewski*, 28 Ill.App.3d 269, 328 N.E.2d 195, 198 (1975). "Clearly, the representation of indigent defendants is a requirement of due process of law which constitutes a delegation of sovereignty to the office of the Public Defender." *Id.*, 328 N.E.2d at 197. See also *Kurata*, 50 Ill.Dec. at 611, 419 N.E.2d at 719 (Trapp, J., dissenting).

### III.

[3][4] We hold that as a matter of law, the plaintiffs were employees of the State of Illinois, and not of Cook County. Therefore, they were not subject to the county personnel policy when disciplinary action was taken against them. Since the plaintiffs alleged no other basis for claiming a property interest in their positions at the PDO, the district court properly dismissed their section 1983 claims. As no federal issues remained for adjudication, the district court correctly dismissed the plaintiffs' state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). [FN5]

> FN5. Because of our disposition of this case, we need not decide whether the defendants were acting according to official policy in disciplining the plaintiffs.

AFFIRMED.

COFFEY, Circuit Judge, dissenting.

In the absence of any enabling legislation designating these employees as state employees, I am of the opinion that the plaintiffs were county rather than state employees because Cook County fixes the amount of, and pays, the plaintiffs' salary, health benefits, retirement benefits and fringe benefits. Thus, any disciplinary proceedings against them should have been conducted against them as county employees in compliance with the Cook County Personnel Policy.

A review of the Illinois enabling legislation's history and documents fails to reveal a provision designating the state or the county as the employer of the Public Defender's Office staff. However, the fact that the legislature has provided that all fringe benefits as well as "[t]he compensation of and the appropriate number of assistants, clerks, and employees [of the Public Defender's office] shall be fixed by the *County Board* and paid out of the *county treasury*" is strong indicia that the plaintiffs are county employees. Ill.Rev.Stat. ch. 34, ¶ 3-4008.1 (1991) (emphasis added). [FN1] *1425 The majority overlooks the implications of the control statutorily delegated to the county over the Public Defender's Office (PDO) employees and relies instead upon *Drury v. County of McLean*, 89 Ill.2d 417, 60 Ill.Dec. 624, 433 N.E.2d 666 (1982), and *Orenic v. State Labor Relations Bd.*, 127 Ill.2d 453, 130 Ill.Dec. 455, 466, 537 N.E.2d 784, 795 (1989), for its conclusion that PDO personnel are employed by the state. I disagree with the majority's view that either *Drury* or *Orenic* require a holding that PDO clerks are State employees.

> FN1. Likewise, the Wisconsin Legislature has specifically provided that the counties are required to pay for the costs of the operation of the circuit courts, except for the salaries of the judges and court reporters:
> "Operating costs; circuit court
> The cost of operation of the circuit court for each county, except for the salaries of judges and court reporters provided to be paid by the state, and except for the cost assumed by the state under this chapter and chs. 40, 41 and 230, and except as otherwise provided, shall be paid by the county."
> Wis.Stat.Ann. § 753.19 (1981).
> At least one state has declared explicitly that PDO

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

958 F.2d 1419                                                                                                   Page 21
(Cite as: 958 F.2d 1419, *1425)

employees shall be considered County employees: "[Assistant public defenders, clerks] ... and the public defender shall, for administrative purposes, be considered to be employees of the county which administers the public defender fund."
S.D. Codified Laws, § 7-16A-6 (1991).

## I.

A careful examination of the *Orenic* decision reveals that its holding is confined to specific problems arising under collective bargaining agreements:

"The principal question is whether, given their statutory role in funding the circuit courts, counties may be considered joint employers of those courts' non-judicial employees *for purposes of collective bargaining under the Illinois Public Labor Relations Act (the Act) (Ill.Rev.Stat.1987, ch. 48, par. 1601 et. seq.)*. As explained later in this opinion, we answer that question in the negative...."
*Orenic*, 130 Ill.Dec. at 457, 537 N.E.2d at 786 (emphasis added). The *Orenic* decision does not and should not stand for the proposition that employees of the Public Defender's Office are state employees for all purposes because the decision is carefully limited to cases involving collective bargaining. Indeed, the *Orenic* decision is further narrowed in scope to collective bargaining under a specific labor law, the Illinois Public Labor Relations Act.

In *Orenic*, four chief judges of Illinois circuit courts brought a writ of mandamus to prevent the Illinois State Labor Relations Board from certifying that counties and the chief judges were joint employers of assistant public defenders, bailiffs, stenographers and certain clerks of the court. The judges argued that under the doctrine of separation of powers, the counties should not have the authority to participate much less interfere in collective bargaining between chief judges and unions representing those employees. The judges went on to contend that:

"even if the statutes requiring counties to fund circuit courts are constitutional, counties should have no authority to participate or interfere in collective bargaining between chief judges and labor organizations and that counties should be subject to chief judges' determinations as to number, salary, hours, and working conditions of court employees."
*Orenic*, 130 Ill.Dec. at 459, 537 N.E.2d at 788. [FN2] The judges reasoned that:

FN2. The 1991 revisions to the enabling statute delegates the authority to the *county* as to the determination of salaries and number of employees to be placed with the PDO for Cook County. *See* Ill.Rev.Stat. ch. 34, ¶ 3-4008.1 (1991).

"[o]therwise ... the State's unified judicial system will experience a 'devastating impact' because of counties' local political considerations, the influence of employment terms applicable to the counties' own employees, and the counties' possible indifference to requirements for equal standards of judicial administration statewide."
*Id.* (citations omitted). The court resolved the issue by holding that "[a]ny conflict between traditional labor law principles and constitutional principles must be resolved in favor of the latter; and treating county boards as joint employers with chief judges in respect of the courts' nonjudicial employees would unduly trench on the judicial branch's separate and equal status." *Id.*, 130 Ill.Dec. at 670, 537 N.E.2d at 799 (citation omitted).

This decision is all well and good, but it has no bearing on the problem before us. The issue in this case does not involve traditional labor law principles, and cases limited to labor law should not be used to bootstrap labor law to limit the plaintiffs' constitutional rights. Rather, our case involves the limited issue of whether employees *1426 of the Cook County Public Defender's Office, who are paid by the county and receive county health and welfare benefits, are county employees and thus entitled to due process hearings prior to termination of their employment. As the court in *Orenic* noted, "separation of powers does not mean a complete divorce among the branches of government and legislation may permissibly have a *peripheral effect* on judicial administration...." *Id.*, 130 Ill.Dec. at 668, 537 N.E.2d at 797 (citations omitted) (emphasis added). Unlike the majority, I believe that acknowledging the county as employer for disciplinary proceedings has only a "peripheral effect" on the judiciary. It strains credulity to argue that termination policies instituted for the purpose of assuring due process to public employees somehow encroach on the separation of powers doctrine. The termination guidelines contained within the County Personnel Policy merely extend some safeguards against arbitrary discharges of county employees. No compelling arguments have

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

958 F.2d 1419 Page 22
(Cite as: 958 F.2d 1419, *1426)

been advanced that these procedures somehow interfere with or impair the functioning of the judiciary. It is the county that presumably bears the cost for the procedures, and the courts, if not altogether unaffected, are at most only peripherally impacted.

Further evidence that *Orenic* is limited to collective bargaining cases is reflected in two recent Illinois state cases and a federal district court case: *People ex rel. Baricevic v. Wharton*, 136 Ill.2d 423, 144 Ill.Dec. 786, 790, 556 N.E.2d 253, 257 (1990) (quoting *Orenic* as holding that "the Illinois State Labor Relations Board, an Executive Agency, cannot 'compel chief judges to share their *collective bargaining authority* with counties ...' ") (emphasis added); *AFSCME v. Illinois Educ. Labor Relations Bd.*, 197 Ill.App.3d 521, 143 Ill.Dec. 541, 544, 554 N.E.2d 476, 479 (1990) (quoting *Orenic* as holding that "[w]hile the county exercised considerable fiscal control over the operations of the circuit courts," the "county governments were not joint employers *for the purposes of collective bargaining*") (emphasis added); and *Riley v. County of Pike*, 761 F.Supp. 74 (C.D.Ill.1991) (citing *Orenic* as focusing on who should be considered the employer for purposes of *bargaining with the union* ). Clearly, the Illinois courts as well as the district court in *Riley* have adopted the proper restrictive interpretation of the *Orenic* holding.

The majority also relies on *Drury v. County of McLean*, 89 Ill.2d 417, 60 Ill.Dec. 624, 433 N.E.2d 666 (1982), and *Baker v. Du Page County*, 703 F.Supp. 735, 737 (N.D.Ill.1989), both of which held that *court clerks* were state employees, notwithstanding the fact that their salaries were paid by the counties. The facts of both cases are readily distinguishable from the facts in the case before us. In both *Drury* and *Baker*, the plaintiffs were court clerks and not PDO clerks. Furthermore, both courts attributed the court clerks' classification as members of the judicial branch of state government to the Illinois Constitution. Obviously, neither factor (constitutional designation or court clerk status) are present in the case before us. In fact, it is because the enabling statute is not explicit with respect to PDO clerks' employment status that we are confronted with the statutory construction dispute.

Finally, contrary to the majority, I believe that the narrow holding of *Orenic* to issues of labor law does not overrule *Kurata v. Silverman*, 95 Ill.App.3d 89, 50 Ill.Dec. 609, 419 N.E.2d 717 (1981), which held that an assistant public defender had the status of a county employee and was therefore protected by the county personnel policy. In *Kurata*, the court considered the claim of an assistant public defender that she had been fired in violation of the termination policy of Champagne County. The court concluded that the plaintiff had "the status of a 'county employee.' " In making this determination, the court in *Kurata* considered the following:

"The office of public defender is created by statute in 'An Act in relation to the office of Public Defender' (Ill.Rev.Stat.1979, ch. 34, par. 5601 *et seq.*). The public defender's salary and expenses are paid from the county treasury. (Pars. 5605, 5607.) These provisions, *1427 plus the fact that the public defender is represented here by the State's Attorney, persuades us that the public defender is an official of the county. (See dissenting opinion in *People v. South* (1979), 70 Ill.App.3d 245, 26 Ill.Dec. 366, 387 N.E.2d 1294 .) As such, an assistant public defender, such as plaintiff, has the status of 'county employee' within the purview of the county personnel policy."
*Kurata*, 50 Ill.Dec. at 610, 419 N.E.2d at 718.

Unlike *Orenic*, the court in *Kurata* was specifically dealing with the issue of the procedures that a Public Defender's Office must follow when disciplining or terminating an employee, the same issue that is before us. The failure of the court in *Orenic* to even cite *Kurata*, much less overrule it, is further evidence that the Illinois Supreme Court limited *Orenic* 's focus to the collective bargaining context, thus lessening its impact outside the narrow scope of labor law. On the basis of the case law cited above, I am of the opinion that the plaintiffs were county employees, and as such, any termination proceedings should have been conducted in compliance with the Cook County Personnel Policy.

II.
The majority unfortunately disregards the significance of the language of the Illinois enabling act, particularly the 1991 amendments and their legislative history: "Speculation aside, the statutory language at the time of the alleged violation is inconclusive as to state or county employee status, and the legislative history of the statute then in force is not helpful." Maj.Op. at 1422. While I believe

958 F.2d 1419  
(Cite as: 958 F.2d 1419, *1427)

Page 23

that PDO clerks were county employees under the original enabling act, the legislative history of the 1991 amendments reveals that the Illinois Legislature was intent on separating the Cook County Public Defender's Office from the judiciary:
  "SENATOR COLLINS:
  "Yes. Thank you, Mr. President and Members of the Senate. I move to concur with the House Amendment 1 to Senate Bill 673. As you recall, when this bill passed out of the Senate, we indicated that there was a task force working on the language to this amendment. The amendment that you see now is a consensus which reflects the ... agreement ... that is in this ... Amendment No. 1. *What this amendment does, it simply separates and make[s], in the County of Cook, the ... Public Defender's Office independent of the Judiciary. This is a concept that has been recommended and supported by numerous studies and groups across the country, including the National Advisory Committee on Criminal Justice Standards.* It is supported ... by the Chief Judge of the Circuit in Cook County, the Chicago Bar Association, the Cook County Bar Association, the County Board President. And the County Board in this particular bill[, the] President will, in fact, appoint the Chief Public Defender, and that person [ ] will have to be confirmed by the Commissioners of the Cook County Board. I will be happy to answer any questions. If not, I would just ask for a favorable roll call. [Unanimous vote in favor of amendment.]"
87th General Assembly, Regular Session (June 27, 1991). The legislative history is silent as to the reason for this change, but it was in all probability motivated by the legislature's desire to overcome the Illinois Supreme Court's opinion in *Orenic* designating assistant public defenders as state employees for collective bargaining purposes.

The extensive powers delegated to the county under the enabling statute and particularly pursuant to the 1991 amendments, [FN3] accentuate the dominant role of the county in the administration of PDO affairs. Initially, I note that it is the County Board rather than the judiciary that has the exclusive authority to create *if it so chooses* the office of the Public Defender in *1428 counties of less than 35,000 inhabitants. See Ill.Rev.Stat. ch. 34, ¶ 3-4002. This delegation is especially significant because the authority was vested in the county both before and after the 1991 amendments. Second, it is the county, not the judiciary, that has the authority to fix, and bears the burden of paying, the compensation of the Public Defender and all of the subordinate employees. See ¶¶ 3-4007, 3-4008, 3-4008.1. Again, this authority/burden was the county's both before and after the amendment. Third, the PDO is made accountable to the county by having to file periodic written reports with the county on the services rendered by the PDO. See ¶¶ 3-4010, 3-4010.1. Although a copy of such reports is to be furnished to the circuit courts for counties with under one million inhabitants, according to the 1991 amendments no such requirement is imposed on the PDO with respect to counties such as Cook, where more than one million inhabitants reside. See ¶ 3-4010.1. I would think the proposition unassailable that there is no employer-employee relationship where the employer is not even privy to an account of the services rendered by its purported employees. Fourth, pursuant to the 1991 amendments, the statute makes clear that "the appropriate number of assistants, clerks, and employees shall be fixed by the *County Board*" and not the judiciary in counties with over one million inhabitants. ¶ 3-4008.1 (emphasis added). It is likewise difficult to fathom an employer-employee relationship where the employer does not determine the number of its employees. Fifth, the 1991 amendment delegates exclusive authority to the President of the County Board, with advice and consent of the County Board, not the judiciary, to appoint the Public Defender in counties with over one million inhabitants. See ¶ 3-4004.1. Finally, the Public Defender himself is entitled to due process upon termination in counties with over one million inhabitants:

> FN3. The enabling statute, Ill.Rev.Stat. ch. 34, ¶ 3-4000 *et seq.* was amended by P.A. 87-111, § 1, effective Aug. 9, 1991.

"The Public Defender once approved by the Board [County Board of Commissioners] shall serve for six years and *may be removed by the President only for good cause or dereliction of duty after notice and a hearing before the Board.*"
¶ 3-4004.2(c) (emphasis added). How can the PDO employees under the Public Defender's authority be entitled to less due process from the county than the statute gives the Public Defender? [FN4]

> FN4. The provision in ¶ 3-4008.1 that assistant Public Defenders "shall serve at the pleasure of the

958 F.2d 1419 Page 24
(Cite as: 958 F.2d 1419, *1428)

Public Defender" should never be interpreted to deprive the assistants of due process at the time of termination of employment. As the court in *Kurata* noted, an ordinance may "protect the assistants from an unconstitutional discharge" without the statute requiring cause for dismissal. *Kurata*, 50 Ill.Dec. at 610, 419 N.E.2d at 718.

III.

On the basis of the case law, the enabling statute, the amendments thereto and their legislative history, I am convinced that PDO clerks are employees of Cook County. The only case directly addressing the issue of whether a PDO employee is entitled to due process before discharge held that even assistant Public Defenders who serve at the pleasure of the Public Defender are entitled to due process. *See Kurata*, 50 Ill.Dec. at 610, 419 N.E.2d at 718. Furthermore, the powers and duties imposed upon the county under the enabling statute and the amendments (fixing and paying salary and fringe benefits, appointing the Public Defender, providing office space and expenses for the PDO and receiving records of services the PDO renders) demonstrates conclusively that the Illinois Legislature considers PDO personnel in Cook County to be county employees. The legislative history of the 1991 amendments as well as the amendments themselves reveal that the Illinois Legislature views the *Orenic* court's holding that PDO personnel are employees of the state as limited to the specific circumstances of that case--the collective bargaining context. I would hold that the plaintiffs are county employees entitled to the due process protection assured under Cook County ordinances. The district court should be reversed.

958 F.2d 1419

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## COMPENSATORY DAMAGES

If you find that the Defendants violated Title VII, you must then determine whether Plaintiff is entitled to compensatory damages. You must determine the amount of compensatory damages she will receive. Compensatory damages include recovery for mental suffering. It includes the various forms that mental suffering may take, which will vary in each case with the person's nervous temperament, age, ability to stand shock, and the nature of the injuries. Mental worry, anguish, fright, shock, distress, anxiety, humiliation, indignity, embarrassment, apprehension and depression are proper components of that mental suffering for which the law entitles the injured party to recover in money damages. You may award compensatory damages only if plaintiff has shown, by a preponderance of the evidence, that she suffered an actual injury and that injury was caused by Defendants' discriminatory conduct. The law does not require that the Plaintiff prove the amount of compensatory damages with mathematical precision. No evidence need be introduced regarding the monetary value of such intangible things as emotional pain, suffering, humiliation, embarrassment and mental anguish. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at trial.

Plaintiff's Instruction No. _37_

Source: 42 U.S.C. § 1981a (Civil Rights Act of 1991).

15

433 N.E.2d 666            Page 26
(Cite as: 89 Ill.2d 417, *419, 433 N.E.2d 666, **667, 60 Ill.Dec. 624, ***625)

from the defendant County of McLean. The fine money was paid by the plaintiffs to the clerk of the circuit court, and that clerk distributed the money, one-half each to the town of Normal and the State of Illinois, *420 apparently pursuant to the Drug Abuse Control Act (Ill.Rev.Stat.1969, ch. 111 1/2, par. 810), rather than under the appropriate statute (Ill.Rev.Stat.1969, ch. 53, par. 18a). The County of McLean never received any of the fine money paid by the plaintiffs but did receive the costs which they paid.

(1) Plaintiffs argue that the clerk of the circuit court is a county official and that, therefore, money received by the clerk as a county official is also received by the county. The primary issue then is whether the clerk of the circuit court of McLean County is a county official. We hold that under our constitution of 1970 the clerks of the circuit courts in this State are not county officials, but are nonjudicial members of the judicial branch of State government. This being so, the circuit clerk is not an agent of the county, and the county is not liable for fine money paid to the circuit clerk but never received in its treasury.

Historically, the circuit court clerks were elected county officials. (Ill.Const.1870, art. X, sec. 8.) The office was specially mentioned in article X, section 8, which provided for the election of county officers. However, the new judicial article of the 1870 Constitution adopted in 1962, which was effective January 1, 1964, provided that the General Assembly "shall provide by law for the selection by the judges or election, terms of office, removal for cause and salaries of clerks and other non-judicial officers of the various courts; * * *." (Emphasis added.) (Ill.Const.1870, art. VI (1964), sec. 20.) Confusion was created as to the status of clerks of the circuit courts following the 1962 amendment to article VI of our constitution. The amendment, in the language quoted above, refers to clerks as nonjudicial officers of the court, and does not distinguish between clerks of the circuit courts and clerks of the appellate and supreme courts. However, article X, section 8, of the 1870 Constitution was not specifically repealed or amended in 1962, and clerks of the *421 circuit court were still referred to in the 1870 Constitution as county officers. By virtue of section 8 of article X, circuit clerks were not only county officers, but also were required to be elected, and their terms of office were fixed at four years. Under the 1962 amendment to article VI, the General Assembly had the authority to determine whether the clerks of the circuit court should be elected or appointed by the judges and to provide for the term of office. Also, under the amendment, as noted above, **668 ***626 circuit court clerks became nonjudicial officers of the court.

In Johnson v. State Electoral Board (1972), 53 Ill.2d 256, 290 N.E.2d 886, this court, applying general principles of statutory construction, held that the more recent provisions of the 1962 amendment to article VI abrogated the provisions of section 8, article X, which were inconsistent with the amendment. The court held that, because of such inconsistencies, section 8 of article X, governing the election of circuit court clerks, had been impliedly repealed by the amendment.

Applying the same reasoning, the provisions of article X, section 8, designating circuit court clerks as county officers were likewise impliedly repealed by the inconsistent provisions of section 20 of article VI of the 1962 amendment, which classifies all clerks as nonjudicial officers of the court. The fact that the 1962 amendment authorized the General Assembly to provide for the appointment instead of the election of clerks as required by section 8 of article X, to provide for the term of office instead of the term of four years, as set out in section 8 of article X, and designated clerks as nonjudicial officers of the court instead of county officers as in section 8 of article X, impliedly repealed section 8 of article X of the 1870 Constitution as it applied to clerks of the circuit court.

Under our present constitution, article VI, section 18(b), is substantially the same as article VI, section 20, *422 of the 1870 Constitution, as amended. Section 18(b) of the judicial article of the 1970 Constitution provides:

> "(b) The General Assembly shall provide by law for the election, or for the appointment by Circuit Judges, of clerks and other non-judicial officers of the Circuit Courts and for their terms of office and removal for cause." (Ill.Const.1970, art. VI, sec. 18(b).)

The Committee on Judiciary, in its comments, said that "(i)t (the proposal) would leave untouched the existing provisions which give the legislature the option of providing for the appointment by the judges, or the election, of clerks and other non-

433 N.E.2d 666  
(Cite as: 89 Ill.2d 417, *422, 433 N.E.2d 666, **668, 60 Ill.Dec. 624, ***626)

Page 27

judicial officers of the circuit courts." (Emphasis added.) 6 Record of Proceedings, Sixth Illinois Constitutional Convention 1057- 58 (hereinafter cited as Proceedings.)

The debates of the Sixth Illinois Constitutional Convention reflect the understanding of the delegates that the judicial article of 1962 changed the status of the circuit court clerk from county officer to a nonjudicial officer of the judicial branch of State government and that the convention desired to continue this change. (4 Proceedings 2630-40.) In discussing a proposal by Delegate Dunn that the circuit court clerk be made to turn over fees to the county treasurer, Delegate Parkhurst stated:

> "Now, the trouble is that the circuit clerk by definition is no longer a county official. He is now, by the mandate of the judicial article, as indeed it has been since 1962, he is now an official of the court system. He is not a county officer. * * * " (4 Proceedings 2633.)

This understanding was reflected throughout the debates during the discussion of various proposed amendments both to the judicial article (article VI) and the local government article (article VII). See 4 Proceedings 2631, 2632, 2638, 2639, 3412.

We have previously acknowledged that in construing the Constitution the true inquiry concerns the understanding *423 of the meaning of its provisions by the voters who adopted it. However, the practice of consulting the debates of the members of the convention which framed the constitution has long been indulged in by courts in determining the meaning of provisions which are thought to be doubtful. (People ex rel. Keenan v. McGuane (1958), 13 Ill.2d 520, 527, 150 N.E.2d 168.) The debates, therefore, aid in determining the intent of the drafters of the Constitution.

The debates of the Sixth Illinois Constitutional Convention reveal that the drafters intended the clerk of the circuit court to be a nonjudicial member of the judicial branch of the State government. The convention rejected amendments attempting to include **669 ***627 references to the circuit court clerk in the local government article. It was the clear understanding of the delegates that they were continuing the constitutional changes that had been effective since January 1, 1964-namely, moving the clerk of the circuit court from the county officers section of the 1870 Constitution to the article on the judiciary. Further support for our conclusion is found in the local government article of our constitution of 1970 covering county officers, which does not mention or provide for the position of a clerk of the circuit court. (Ill.Const.1970, art. VII, sec. 4.) In the Committee on Local Government report on county officers, it states that "(t)he new section would eliminate as mandatory constitutional officers in each county certain offices enumerated in the present Constitution, namely * * * the clerk of the Circuit Court * * *." 7 Proceedings 1703.

Article VII, section 4(c), also states that county "(o)ffices other than sheriff, county clerk, (and) treasurer * * * may be eliminated * * * by county ordinance." (Emphasis added.) (Ill.Const.1970, art. VII, sec. 4(c).) The result, if we were to hold that the clerk was a county officer, would be that any county could eliminate the office of clerk of the circuit court. The Constitution vests *424 the judicial power in a "Supreme Court, an Appellate Court and Circuit Courts." (Ill.Const.1970, art. VI, sec. 1.) In Ampersand, Inc. v. Finley (1975), 61 Ill.2d 537, 338 N.E.2d 15, this court held unconstitutional a Cook County ordinance which directed the circuit court clerk to collect a fee when each party filed a pleading or other appearance in circuit court. In Ampersand the court stated:

> "However, the amendment to article VI of the Constitution of 1870, effective January 1, 1964, established a unified court system throughout this state. * * * The same scheme prevails under the 1970 Constitution. Only one unified court system operating statewide is contemplated. Article VI of the 1970 Constitution does not contemplate nor does it authorize the exercise of any control over or permit the imposition of a burden on the judicial system by any local entity.
> The administration of justice under our constitution is a matter of statewide concern and does not pertain to local government or affairs." (Emphasis added.) (Ampersand, Inc. v. Finley (1975), 61 Ill.2d 537, 542, 338 N.E.2d 15.)

Implicit in this language is the fact that the clerk of the circuit court must be a member of State government, not subject to the control of any local government. We could not permit the administration of justice to hinge on the passage of a county ordinance abolishing the essential position of the clerk of the circuit court. We conclude that the clerk of the circuit court is a nonjudicial member of the judicial branch of State government and not a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

county officer.

We acknowledge that county boards are still required by law to provide for the payment of expenses of the office of the clerk of the circuit court and, within statutory limits, to fix the salary of the clerk. Section 18(c) of article VI of our constitution provides:

*425 "(c) The salaries of clerks and other non-judicial officers shall be as provided by law." (Ill.Const.1970, art. VI, sec. 18(c).)

The legislature has provided by law that the county boards throughout the State are to pay the salary of the clerk. (Ill.Rev.Stat.1979, ch. 25, par. 27.3.) It is within the legislature's constitutional powers to require that counties pay the salary and expenses of the circuit court clerk. The fact that counties pay the salaries and expenses of circuit court clerks does not make the office of circuit court clerk a county office.

The plaintiff relies on our decision in People v. Meyerowitz (1975), 61 Ill.2d 200, 335 N.E.2d 1, to impose liability on the county for reimbursement of the fine money. In Meyerowitz we held that all defendants convicted under the Act were entitled to reimbursement of court costs and fine money and that in the interest of judicial economy separate proceedings were not necessary to obtain that reimbursement, even though the county was not a named party. In Meyerowitz, the fine money had **670 ***628 been paid to and received by the county. In the present case, however, the fine money was paid to the clerk of the circuit court, a member of the judicial branch, and distributed by the clerk to the State of Illinois and the town of Normal. The county cannot be held liable here, since the fine money was not collected by one of its officers and the money was never received in the county treasury. Meyerowitz is clearly inapplicable.

(2) The appellate court and the plaintiffs in this cause have relied on our statement in Meyerowitz that "(a)n action to recover fine monies paid under an unconstitutional statute * * * resemble(s) the common law action for money had and received" (61 Ill.2d 200, 212, 335 N.E.2d 1). An action for money had and received in the nature of an action in assumpsit is maintainable where defendant has received money which in equity and good conscience belongs to the *426 plaintiff. (Board of Highway Commissioners v. City of Bloomington (1911), 253 Ill. 164, 174, 97 N.E. 280; National Malleable Castings Co. v. Iroquois Steel & Iron Co. (1929), 333 Ill. 588, 165 N.E. 199; see 27 Ill.L. & Prac. Money Lent, Paid, or Received (1956).) Although the plaintiffs may be legally entitled to the fine money, the defendant here never received it. Furthermore, as we stated earlier, the clerk of the circuit court is not a county officer, and money received by the clerk cannot be said to be received by the county. Also, as to the fines paid, there is no unjust enrichment of the county, since it never received the money, either directly or indirectly. An action in the nature of money had and received for the money paid as fines therefore cannot lie against the county.

In Gray v. Callender (1899), 181 Ill. 173, 54 N.E. 910, this court held that "where one person pays money to another with the mutual understanding that it is to be applied to a particular purpose, and the person so receiving the money fails to apply it to that purpose but pays it over to a third person who has no right to it, then an action for money had and received lies in favor of the party so paying the money, against the one receiving it from him." (Gray v. Callender (1899), 181 Ill. 173, 176-77, 54 N.E. 910.) Conversely, it was held in City of Chicago v. Fidelity Savings Bank (1882), 11 Ill.App. 165, that since the city had never received tax money wrongfully collected by the town collector and since the town collector was not the agent of the city, an action against the city for money had and received did not lie. The court stated:

"In an action for money had and received, it is essential to prove that the defendant has actually received the money or money's worth. It is not enough to show that there is money in the hands of a third person which the defendant is entitled to receive * * *." (City of Chicago v. Fidelity Savings Bank (1882), 11 Ill.App. 165, 169.)

*427 Essentially the same situation exists here. The plaintiffs paid the money to the clerk of the court for the purpose of satisfying the judgment against them and so that the clerk would disburse the funds to the proper authorities. The clerk, through an apparent mistake, paid the money to the State and the town of Normal, third parties who had no right to the money. The county, though legally entitled to the money, never received it. We need not decide here whether plaintiffs may recover from those who received the money or from the clerk. However,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

433 N.E.2d 666  
(Cite as: 89 Ill.2d 417, *427, 433 N.E.2d 666, **670, 60 Ill.Dec. 624, ***628)

Page 29

under these facts, no recovery for the fine money can be had from the county.

In view of our holding that the clerk of the circuit court is not a county officer, money received by the clerk as fines is not, ipso facto, received by the county. However, any money received by the county into its treasury is recoverable from the county. In this instance, the court costs paid by the plaintiffs and received by the county are to be refunded to the plaintiffs.

We hold that the clerk of the circuit court is not a county official. The judgment of the appellate court is therefore reversed and the judgment of the circuit court of McLean County is affirmed, and the cause is remanded to the circuit court of McLean County.

**671 ***629 Appellate court reversed; circuit court affirmed; cause remanded.

89 Ill.2d 417, 433 N.E.2d 666, 60 Ill.Dec. 624

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.