E-FILED
Thursday, 09 June, 2005 12:44:16 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MELISSA ROBINSON,<br>(p/k/a/ MELISSA SCHROEDER)<br><br>        Plaintiff,<br><br>vs.<br><br>JUDGE WARREN A. SAPPINGTON<br>SIXTH JUDICIAL CIRCUIT,<br>(IN OFFICIAL CAPACITY)<br><br>        Defendant,<br>MACON COUNTY,<br><br>        Defendant. | Case No. 1:04-cv-1360<br>Honorable Michael M. Mihm |

**MEMORANDUM IN SUPPORT OF (1) MOTION TO DISMISS AND (2) MOTION TO EXCLUDE COMPENSATORY DAMAGES AND TO STRIKE JURY DEMAND**

INTRODUCTION

The present Motion involves two signal issues in sexual harassment litigation under Title VII. MACON COUNTY submits that they are both unique to cases involving non-employee harassment and controlling as to its liability in this case. They are:

    **(1)** Whether there is a Title VII cause of action for non-employee harassment after *Burlington Industries, Inc. v. Ellerth, Faragher v. City of Boca Raton,* and *Kolstad v. American Dental Association;* and

    **(2)** Assuming non-employee harassment claims remain viable, whether recovery of compensatory damages is possible under the standard imposed by 42 U.S.C.A. §1981(a)(2)?

    A corollary to the second issue is:

    **Whether the Plaintiff is entitled to a jury trial under the negligence standard recognized by the court in *Burlington v. Ellerth*?**

The following discussion starts with the roots and rationale for the use of Title VII in sexual

harassment cases. From those first principles, as supplied by the Supreme Court in *Burlington Industries, Inc. v. Ellerth, Faragher v. City of Boca Raton*, and *Kolstad v. American Dental Association*. MACON COUNTY submits that it is readily apparent why each of the issues postured *supra* requires a negative response.

### Historical Background of Title VII Sexual Discrimination Claims

There are three general types of Title VII sexual discrimination actions: (1) disparate treatment claims, (2) disparate impact claims, and (3) hostile work environment claims. When Title VII was originally passed only "disparate treatment" claims were clearly included. Disparate treatment exists when an employer intentionally treats some individuals differently or less favorably than others and the different treatment occurs because of the individual's protected status (e.g. race, sex, disability, etc.). Disparate treatment actions allege intentional discrimination, i.e. that the decision-maker's actions were motivated or influenced by bias because of race, sex, disability, etc. In those cases the plaintiff must establish a prima facie case of discrimination, (See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), which creates an inference that the employer acted with discriminatory intent. *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). In *Raytheon Co. v. Hernandez*, 540 US 44, 48 (2003), the Supreme Court summarized disparate treatment cases as follows:

> '[d]isparate treatment' … is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or [other protected characteristic]." *Teamsters* v. *United States,* 431 U.S. 324, 335, n. 15 (1977). See also *Hazen Paper Co.* v. *Biggins,* 507 U.S. 604, 609 (1993) (discussing disparate-treatment claims in the context of the Age Discrimination in Employment Act of 1967). Liability in a disparate-treatment case "depends on whether the protected trait … actually motivated the employer's decision." *Id* at 610.

"The disparate impact" analysis was developed by the Supreme Court in a series of cases

beginning with *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), and ending with *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989). Disparate impact is a methodology for establishing that an employer has engaged in discrimination as a consequence of neutral employment practices or policies. Unlike disparate treatment cases, it does not require evidence that the employer intended to discriminate.

Hostile work environment or so-called "harassment" claims were first recognized by the Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U .S. 57 (1986). In 1980, the Equal Employment Opportunity Commission (EEOC) issued Guidelines providing that "sexual harassment" is a type of sex discrimination and is thus actionable under Title VII. The Guidelines give the following definition of sexual harassment:

> "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. . . when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as a basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment. 29 CFR 1604.11(b)

The Guidelines further describe the type of workplace conduct which qualifies as actionable sexual harassment under Title VII. The Commission noted that it would look at "the record as a whole" and "the totality of the circumstances" to determine if conduct amounts to sexual harassment. Examples of the circumstances to be considered are "the nature of the sexual advances" and "the context in which the alleged incidents occurred."

The Supreme Court in *Meritor Savings Bank v. Vinson,* 477 U .S. 57 (1986) examined those EEOC Guidelines, found them to be consistent with case law existing at the time, and thus agreed "that a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Id* at 66. In *Meritor* the court first held that a

plaintiff could bring a cause of action under Title VII, despite an absence of economic loss, if the plaintiff had endured sexual harassment arising from a hostile work environment in general. *Meritor* not only created an actionable claim under Title VII for hostile work environment sex discrimination, but also established initial guidelines to analyze such claims. Specifically, a plaintiff must prove both (1) that the sexual conduct was "unwelcome" and (2) that such conduct was "severe or pervasive". Unlike disparate treatment and disparate impact claims, where the focus is upon the employers discriminatory practices or policies, hostile work environment claims focus upon the harasser, his position in the company, the severity and pervasiveness of his actions and if the harassment resulted in a change in working conditions.

In hostile work environment claims, employer liability issues are difficult because the harasser's conduct is general not easily imputed to the employer. Unlike disparate treatment cases that require proof that the "protected status" of the victim was the motivating factor behind the employer's discriminatory action, or disparate impact cases where a neutral company policy resulted in the discriminatory result, hostile environment claims generally involve conduct falling outside the scope of employment. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). Only two Supreme Court cases have addressed employer liability under hostile work environment claims and both were limited to harassment perpetrated by a supervisor of the victim. *Burlington Industries, Inc.* and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Because of the difficulty in imputing the conduct of the harasser to the employer, the Court indicated in these decisions that employer liability in hostile environment claims must be determined by common law agency principles. For those it identified two standards: (1) vicarious liability under §219(2)(d) of the Restatement (Second) of Agency, and (2) direct negligence under §219(2)(b) of the Restatement (Second) of Agency. These two standards will be further examined below.

**There is No Employer Liability for Harassment By a Non-Employee**

In this Title VII action, the standard for employer liability on the part of MACON COUNTY has not been determined by either the United States Supreme Court or the Seventh Circuit. If any basis for Title VII employer exposure exists; it is at most a negligence standard of liability. The Plaintiff has alleged that she was subjected to harassment by Illinois state court associate judge, WARREN A. SAPPINGTON. It is undisputed that WARREN A. SAPPINGTON was exclusively employed by the State of Illinois, and not by MACON COUNTY. (See, *Robinson v. Sappington*, 351 F. 3d FN. 9 (7th Cir. 2003)). Therefore, Plaintiff's cause of action against MACON COUNTY is limited to exposure for the conduct of a non-employee harasser, *if liability of that type exists*.

The standard of employer liability under Title VII sexual harassment claims differs depending on the identity of the harasser. There are three possible categories of harassers; only one of which has been addressed by the Supreme Court. These are: (1) supervisors with immediate or successively higher authority over the victim, (2) co-workers of the victim, and (3) non-employees. As discussed *supra* the Supreme Court has only identified two theories of employer exposure for harassment: (1) vicarious liability and (2) direct negligence. Both derive from agency law. Therefore, MACON COUNTY submits that there cannot be employer liability for harassment perpetrated by non-employees *because no agency relationship exists between the employer and the harasser*.

The Court has consistently declared that Title VII employer liability for hostile work environment claims is determined by federal common law *agency* principles. (See, *Meritor Savings Bank v. Vincent*, 477 U.S. 57 (1986); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Kolstad v. American Dental Association*, 527 U.S. 526, 541-42 (1999)). In *Burlington Industries, Inc.*, 524 U.S. at 754, the Court stated:

"We turn to principles of agency law, for the term "employer" is defined under Title VII to include "agents." 42 U.S.C. §2000e(b); see *Meritor*, supra, at 72, 106 S.Ct., at 2408-2409. In express terms, Congress has directed federal courts to interpret Title VII based on agency principles. Given such an explicit instruction, we conclude a uniform and predictable standard must be established as a matter of federal law. We rely "on the general common law of agency ***." (See also *Kolstad*, 527 U.S. at 541-42.)

Because sexual harassment generally falls outside an employee's scope of employment, the Court has turned to §219(2) of the Restatement (Second) of Agency[1] in determining the standard of employer liability in Title VII hostile work environment claims. *Burlington,* 524 U.S. at.755-56; and *Faragher v. City of Boca Raton,* 524 U.S. p. 802-04. In *Burlington*, the Court recognized that §219(1) imposes vicarious liability on the employer if its harassing employee was acting within the scope of his employment. However, it also found that sexual harassment generally falls outside the scope of employment. *Burlington,* 524 U.S. at.7557-58. As a consequence, the *Burlington* court turned to §219(2) which identifies four circumstances when a master is subject to liability for the torts of its servants acting outside the scope of their employment. It provides:

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or
(b) the master was negligent or reckless, or
(c) the conduct violated a non-delegable duty of the master, or
(d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.
(See *Burlington*, 524 U.S. at 758.)

Negligence sets the minimum basis for employer liability in Title VII harassment cases. *Burlington*, 524 U.S. at 759. That standard is found under §219(2)(b) of the Restatement *supra*. Specifically, the *Burlington* Court found that an employer can be liable for the acts of its servant if the employer acted negligently by failing to take corrective action after it knew or should have

6

known of the harassment. *Burlington Industries,* 524 U.S. at 759. Thus the §219(2)(b) negligence standard applies[2] when the harasser is a fellow employee (co-worker) of the victim who does not have direct supervisory authority over the victim. (See *Burlington Industries,* 524 U.S. at 760).

The Court has also decided that an employer is vicariously liable for harassment by a supervisor of the victim pursuant to §219(2)(d) of the Restatement (Second) of Agency. *Burlington Industries, Inc.;* and *Faragher.* Although an employer is always vicariously liable for the harassment by a supervisor, it can raise the following affirmative defense to defeat vicarious liability where no tangible employment consequences have occurred to the victim. The affirmative defense encompasses proof that:

    a.    The employer exercised reasonable care to prevent and correct the harassment; and
    b.    Plaintiff unreasonably failed to take advantage of any preventative measures or corrective opportunities provided by the employer. (See *Burlington,* and *Faragher*).

In that the Supreme Court has consistently declared that employer liability in harassment claims must be determined by common law agency principles MACON COUNTY asserts that it *cannot be liable under Title VII for harassment perpetrated by a non-employee since no agency relationship exists.* No Supreme Court decision has found employer liability in a hostile work environment case for harassment perpetrated by a non-employee. Furthermore, the Seventh Circuit has never declared that employer liability exists under Title VII for non-employee harassment. The closest that the Seventh Circuit has come to addressing this issue is *Berry v. Delta Airlines, Inc.*, 260 F. 3d 803 (7th Cir. 2001). There it expressly declined to determine whether there is Title VII employer liability for the harassment of third party non-employees. In fact, MACON COUNTY has

---

1 Entitled, "When Master is Liable for the Torts of His Servants".
2 The United States Supreme Court has never specifically decided the question of employer liability for harassment by a co-worker of the victim. The Supreme Court in *Burlington* simply stated that §219(2)(b) negligence is the minimum standard of employer liability in hostile work environment claims.

been unable to find any authorities that have specifically considered employer liability for non-employee harassment since *Burlington Industries, Inc.*, *Faragher* and *Kolstad* limited harassment exposure by the application of agency principles.

The Court's pronouncements that employer liability in harassment Title VII actions must be based upon common law agency principles dictates that the harasser must be an agent of the employer in order to impute the actions of the harasser to the employer. (See, *Kolstad*, at 539-540) As previously stated, even if an employee/employer relationship existed with the harasser, the harassment falls outside the scope of employment. Therefore, Supreme Court requires that liability be imputed to the employer under 219(2) of the Restatement (Second) of Agency. When no employee/employer relationship exists with the harasser, no agency principles can be applied. Therefore, there can be no employer liability for harassment by non-employees.

## II.

### Even if, Arguendo, Employer Liability Exists for Harassment By Non-Employees, Only a Negligence Standard Exists

A possible standard for employer liability for harassment by non-employee is found in the EEOC Guidelines, §1604.11(e), 29 C.F.R. 1604.11(e) which provides:

> "An employer may be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, when the employer…knows or should have known of the conduct and failed to take immediate and appropriate corrective action. In reviewing these cases the (EEOC) will consider the extent of the employer's control and other legal responsibilities which the employer may have with respect to the conduct of such non-employees".

Neither the Supreme Court nor the Seventh Circuit has adopted this standard[3]. Nonetheless, a few pre-*Burlington* decisions from other circuits have applied the EEOC standard. (See, *Lockhard v.*

---

3 As the previous section of this memo establishes, the EEOC standard for non-employee liability is inconsistent with the Supreme Court's pronouncements that employer liability in Title VII harassment cases must be decided under common law agency principles.

8

*Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998); *Quinn v. Greentree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998); and *Folkerson v. Circus Circus Enterprises,* 107 F.3d 754 (9th Cir. 1997). Therefore, for the purpose of analysis, the EEOC standard will be addressed in considering MACON COUNTY'S exposure for compensatory damages.

EEOC regulation §1604.11(e) is a negligence standard containing elements similar to those identified by the Supreme Court in *Burlington Industries, Inc.* when it referenced the Restatement (Second) of Agency §219(2)(b). Both require the plaintiff to establish a breach of duty by showing that (a) the employer knew or should have known of the harassment; and (b) the employer unreasonably failed to take corrective action. But, §1604.11(e) contains additional elements not found in §219(2)(b) of the Restatement (Second) of Agency in that the plaintiff must also establish: (1) the extent of the employer's control over the harasser and (2) the legal responsibilities which the employer may have with respect to the conduct of the non-employee. These additional steps are included because there is no inherent employer control over the non-employee that normally is present when an employer/employee relationship exists between a defendant and a harasser. Consequently, liability depends upon proof that the employer had sufficient control over the harasser to remedy the situation.

In the first instance MACON COUNTY disputes that it can be liable for the harassment of non-employees. Second, if such exposure exists, the EEOC Guidelines impose a negligence standard; i.e. breach of a duty to correct harassment of which it knew or should have known. This is a far cry from the type of intentional discrimination which underpins liability in disparate treatment cases.

### To Recover Damages and Obtain a Jury Trial, The Defendant, Macon County, Must Have Engaged in Intentional Discrimination

In order for the Plaintiff to obtain compensatory damages and be entitled to a jury trial under

9

42 U.S.C.A. 1981(a), Plaintiff must establish that the "respondent engaged in unlawful **intentional** discrimination". *Kolstad v. American Dental Association*, 527 U.S. at 534 (1999). Prior to 1991, only equitable relief was available to prevailing Title VII plaintiffs. The statute provided no authority for an award of punitive or compensatory damages. *Kolstad v. American Dental Association*, 527 U.S. 526, 533-34 (1999). In 1991, with the passage of 42 U.S.C.A. §1981a, Congress provided for additional remedies, including compensatory and punitive damages, for certain classes of Title VII and ADA violations. However, the 1991 Act limits compensatory and punitive damages awards to cases of intentional discrimination. *Kolstad* at p. 534.

> 42 U.S.C.A. §1981a(a)(2) provides:
>
> In an action brought by a complaining party under §706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000E-5, 2000E-16) against a ***respondent who engaged in unlawful intentional discrimination*** (not an employment practice that is unlawful because of its disparate impact) prohibited under §703, 704 or 717 of the Act (42 U.S.C. 2000E-2, 2000E-3, 2000E-16), and provided that the complaining party cannot recover under §1981 of this title, the complaining party may recover compensatory and punitive damages as is allowed by §(b) of this §, in addition to any relief authorized by §706(g) of the Civil Rights Act of 1964, from the respondent. (emphasis added).

Therefore, in order for Plaintiff to obtain compensatory damages against the Defendant, MACON COUNTY, Plaintiff must establish that MACON COUNTY engaged in *intentional* discrimination.

If an employer/employee relationship exists between the defendant and the harasser, it appears that the intentional conduct of the harasser is imputed to the employer pursuant to §219(2) of the Restatement (Second) of Agency. In the case of a supervisor, the employer is vicariously liable for the intentional conduct of the supervisor under §219(2)(d) of the Restatement (Second) of Agency. Although unclear, in the case of harassment by a co-worker, the intentional actions of the co-worker may also be imputed to the employer under §219(2)(b)'s a negligence standard.

In the case of employer liability for harassment by a non-employee, no agency relationship

exists. Therefore, the intentional harassment by a non-employee cannot be imputed to the employer. Furthermore, since employer liability under the EEOC Guidelines is only a negligence standard, the plaintiff in this case can never establish that the Defendant, MACON COUNTY, engaged in "intentional" discrimination.

Under 42 U.S.C.A. 1981a(c) Plaintiff is only entitled to a jury trial if she is seeking recovery of compensatory damages thereunder. Since Plaintiff cannot seek compensatory damages, she is not entitled to a jury trial against the Defendant, MACON COUNTY.

WHEREFORE, the Defendant, MACON COUNTY, respectfully prays for an order of this court:

1. Dismissing Plaintiff's Complaint because there is no employer liability for harassment by non-employees; or, if the court denies this request,

2. Excluding Plaintiff's claim for compensatory damages and to strike her jury demand against the Defendant, MACON COUNTY.

          CASSIDY & MUELLER,

     By:   s/ JOHN E. CASSIDY, III
           Attorneys for the Defendant,
           MACON COUNTY, ILLINOIS

## CERTIFICATE OF SERVICE

      I hereby certify that on June 9, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Diane Baron              dbaron@clausen.com, pkebr@clausen.com

Melissa McGrath       mmcgrath@tnwlaw.com

Karen McNaught       kmcnaught@atg.state.il.us, jginter@atg.state.il.us, lbrewer@atg.state.il.us

Terence J. Corrigan     tcorrigan@atg.state.il.us, jginter@atg.state.il.us, tflinn@atg.state.il.us

Andrew M. Ramage   aramage@hinshawlaw.com, vscott@hinshawlaw.com

                                                  s/    JOHN E. CASSIDY, III
                                                        CASSIDY & MUELLER
                                                        416 Main Street, Suite 323
                                                        Peoria, IL 61602
                                                        Telephone: 309/676-0591
                                                        Fax: 309/676-8036
                                                        E-mail: jcassidy@cassidymueller.com