```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE CENTRAL DISTRICT OF ILLINOIS
 2

 3

 4

 5

 6   MELISSA ROBINSON,                  )
                                        )
 7                     Plaintiff,       ) Civil No.
                                        ) 04-1360
 8        vs.                           ) Peoria, Illinois
                                        ) March 4, 2005
 9   WARREN A. SAPPINGTON, et al,       )
                                        )
10                     Defendants,      )

11

12

13

14                  FINAL PRE-TRIAL HEARING

15

16

17                              .

18                          BEFORE:

19              HONORABLE MICHAEL M. MIHM
                 United States District Judge
20

21

22

23

24

25
```

```
 1                    APPEARANCES:
 2

 3          MS. MELISSA M. McGRATH
              Thomson & Weintraub
 4            105 N. Center Street
           Bloomington, Illinois  61702
 5      (Appeared on Behalf of the Plaintiff)

 6


 7          MS. KAREN L. McNAUGHT
             Illinois Attorney General
 8             500 S. Second Street
           Springfield, Illinois  62706
 9                  -- and --
             MS. DIANE M. BARON
10             Clausen Miller P.C.
         10 N. LaSalle Street, Suite 1500
11          Chicago, Illinois  60603
      (Appeared on Behalf of Warren Sappington)
12

13


14          JOHN E. CASSIDY, ESQ.
               Cassidy & Mueller
15          323 Commerce Bank Building
              Peoria, Illinois  61602
16     (Appeared on Behalf of the County of Macon)

17

18

19

20

21

22
                    Karen S. Hanna, C.S.R.
23             U.S. District Court Reporter
                Central District of Illinois
24     Proceedings recorded by mechanical stenography, transcript
       produced by computer
25
```

```
 1              THE COURT:  This is the case of Robinson vs.
 2   Sappington, et al., 04 -1360.  We have Melissa McGrath
 3   here for the plaintiff.  For the defense, Diane Baron,
 4   Karen McNaught, John Cassidy.  Do you have some pre-trial
 5   documents for me?
 6              MS. McGRATH:  Judge, I do.  May I approach,
 7   Judge?
 8              THE COURT:  You may.  Do you by any chance have
 9   another copy of the pre-trial order, an extra copy?  Okay.
10   By the way, I don't know if I ever mentioned this, but I
11   did go to law school with Jim Henry.  We haven't kept in
12   touch over the years.  I assume he's going to be a
13   witness.
14              MS. McNAUGHT:  Your Honor, Judge Davis also told
15   me that.
16              THE COURT:  Yes, I just saw his name here.  Same
17   is true.  They were in the same class with me, but we
18   haven't kept in touch.
19              MR. CASSIDY:  Your Honor, we were working late.
20   I notice that there is a typographical error on page 7,
21   number 19, the word -- it should be "are not entitled"
22   where it says "are entitled".
23              Then the other thing that I would only mention,
24   Your Honor, is the statement on page -- under "general
25   additional actions taken", there's not a page number, but
```

1  it's the ninth page, it has that the parties have no
2  expert witnesses when in fact I have an adverse witness,
3  Judge Greanias, who gave opinions as to the operation of
4  the courts, so forth.  That technically could be expert
5  witness testimony.  And also Larry Fichter has been
6  disclosed in interrogatories as a similar type opinion
7  testimony.
8              THE COURT:  Larry who?
9              MR. CASSIDY:  Fichter.  He's identified and will
10 give similar type information concerning the ability of
11 Macon County --
12             THE COURT:  We'll talk about that more later.  I
13 just finished looking at the contested issues of fact and
14 I want to make a statement about the contested issues of
15 fact.  It is important that there be an accurate and
16 complete list of the contested issues in the final
17 pre-trial order.  I say that because I don't want to have
18 a situation in the trial where someone attempts to present
19 evidence on some disputed issue that's not set out.  I'm
20 not talking about something of microscopic value, but any
21 material issue in the case I expect will appear in that
22 statement of contested facts so I don't have to deal with
23 a situation where one side is saying "This is not
24 relevant; it wasn't in that statement of contested facts",
25 and the other side is saying, "Wait a minute, this is a

1  limine as to the issues outlined in paragraph 17, which
2  again raises a separation of powers issue, and I will be
3  seeking a motion in limine.  I believe the Seventh Circuit
4  has already ruled on that issue also.
5       THE COURT:  As I understand it, this implicates
6  the present status of this, that there are disputes of
7  material fact.  You're saying -- I'm not sure what you're
8  saying.  Are you saying that the Court should rule as a
9  matter of law before the trial that the State was at least
10 in part --
11      MS. McGRATH:  Judge, I apologize.  I meant
12 paragraph 17 of the contested issues of law, which is --
13      THE COURT:  That's what I'm looking at.  It
14 says:  "Whether the fact that Macon County pays salaries
15 does not make a county their employer.  Rather, the State
16 is the employer."  You're asking me to rule -- I read that
17 as saying you're asking me to rule as a matter of law
18 that -- what?
19      MS. McGRATH:  Judge, I would be asking the Court
20 to rule as a matter of law that the Seventh Circuit
21 rejected the legal theory that separation of powers
22 doctrine would control in this case and thereby Macon
23 County could not be held liable, so I would intend to be
24 briefing it.
25      THE COURT:  I'm still not sure I understand, but

1  I'll make a note of that. I will be instructed, educated
2  by your brief. Anything else on the -- and there may be
3  other items in this list of contested issues of law that
4  would be appropriate for consideration prior to trial.
5  I'm looking at number 20 for example. It says "whether an
6  individual could be sued in his official capacity for
7  alleged violations of Title VII".
8         MS. McNAUGHT: Yes, Your Honor. I think in the
9  Seventh Circuit's opinion, I think they said they were
10 looking at Judge Sappington as the State of Illinois. The
11 case caption currently reads that Judge Sappington is
12 being sued in his official capacity, so what I'm really
13 looking at is whether the Court will entertain a motion to
14 amend the case caption so that the State of Illinois
15 really is the defendant so that we can do the jury
16 instructions as the State of Illinois is the defendant
17 versus --
18         THE COURT: I understand. So that should be
19 addressed in the motion. Number 22, I gather that would
20 go to a situation if there were a finding that Macon
21 County is not the employer, whether they can still be
22 found liable.
23         MR. CASSIDY: Your Honor, that's actually mine.
24 Actually -- well, that's a separate issue. There are two
25 issues. One is are we the employer of the plaintiff,

1  which is jurisdictional I believe.  The second issue is
2  the standard of liability, Title VII liability for the
3  harassment when the harasser is a non-employee, and the
4  Supreme Court has not even answered the question that any
5  such liability exists and so we're preserving that issue.
6          THE COURT:  Well, again, if you wish me to
7  address that prior to trial, you're going to have to put
8  it in a motion.
9          There's a statement of damages.  Without waiving
10 any issues about liability, to what extent is there a
11 dispute about these first items of damages, lost wages,
12 counseling, medical insurance, retirement, transportation
13 costs, vehicle depreciation?  Is there a factual dispute
14 as to these numbers?  The reason I'm saying this or asking
15 it, there aren't too many things that cause jurors' eyes
16 to glaze over more quickly than putting witnesses on the
17 stand for this type of testimony unless there's really
18 something at issue.  Have you made an effort to find out
19 to what extent there is a dispute about these?
20         MR. CASSIDY:  Your Honor, because a number of
21 these were disclosed late, we didn't have a chance to
22 visit the issue of what was disclosed.
23         THE COURT:  Well, like lost wages, I mean you
24 control the information on that.
25         MR. CASSIDY:  There is a dispute, Your Honor,

1   because she in fact went to a job where she earned that
2   year much more money than she would have had she remained
3   with the --
4           THE COURT:  You've had that information since
5   January; isn't that correct?
6           MR. CASSIDY:  That one we do have information
7   on.
8           MS. McGRATH:  Judge, if I might, the information
9   that I believe -- the figures I believe that were not
10  provided until January 28 were the medical insurance and
11  retirement benefits.  In my initial response to
12  interrogatories, I had indicated that we would be seeking
13  those but providing calculations later.  The counseling
14  calculation may have increased, I believe, from the
15  initial time that we provided that to the defendants.
16          MR. CASSIDY:  Your Honor, counseling would just
17  be a proximate cause issue, what was and wasn't related to
18  the harassment.
19          THE COURT:  Well, what I'm saying is to the
20  extent possible, I would like to present to the jury a
21  stipulation saying basically that the parties agree that
22  if these people were called to testify that they would say
23  that this is the amount of this or that or a stipulation
24  that says without waiving any issues concerning liability,
25  the parties agree that there's no dispute concerning, if