**E-FILED**
Tuesday, 02 August, 2005 03:08:05 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| MELISSA ROBINSON,<br>(p/k/a/ MELISSA SCHROEDER)<br><br>　　　　　　Plaintiff,<br>vs.<br><br>JUDGE WARREN A. SAPPINGTON<br>SIXTH JUDICIAL CIRCUIT,<br>(IN OFFICIAL CAPACITY)<br><br>　　　　　　Defendant,<br><br>and<br><br>MACON COUNTY,<br><br>　　　　　　Defendant. | Case No. 1:04-cv-1360 |

### RESPONSE TO DEFENDANTS' MOTION TO BAR TESTIMONY BY DR. ROBERT COKLEY

As an initial matter, Plaintiff objects to the disclosure of Plaintiff's confidential mental health records on-line. Since March 2, 2001, a Protective Order has been in place in this matter concerning confidential records as identified by the parties. Defendants' disclosure of Plaintiff's mental health records was improper.

Defendants argue Dr. Robert Cokley should be precluded from testifying about psychological treatment rendered to Plaintiff after January 19, 1999. Plaintiff respectfully requests that the Court deny Defendants' request. In support Plaintiff states:

　　1.　　Dr. Cokley did not testify in his deposition that Plaintiff would not need further counseling as a result of Judge Sappington's sexual harassment and her

1

employer's failure to address this sexual harassment. Defendant's Ex. B at page 57, does not establish such testimony. Nor do pages 74 and 75, of Ex. B.

2. In fact, Dr. Cokley testified, in his professional experience having counseled victims of sexual harassment, it is not uncommon for the victim to put on hold their stress resulting from that behavior to have that stress reappear and cause problems for the victims in the future. (Plaintiff's Ex. 1, Cokley Dep. at 86).

3. Dr. Cokley's deposition testimony relied upon by Defendant, in fact, indicated Dr. Cokley would provide the treatment records beyond January of 1999, which also related to treatment rendered to Plaintiff's husband, once he obtained a release from both Plaintiff and her husband.

4. Defendant apparently failed to obtain the signed release from John Robinson.

5. On January 4, 2005, Plaintiff's counsel wrote to Dr. Cokley asking that he provide updated records related to services provided to Plaintiff since the date of Dr. Cokley's deposition. Those records were then forwarded to Defense counsel by the discovery deadline, January 31, 2005. The records provided to Defense counsel included all records related post 1999 other than counseling in 2005.

6. The 2005 mental health records were provided to Defense counsel one day after they were disclosed by Dr. Cokley to Plaintiff's counsel.

7. Plaintiff disclosed in her deposition on March 29, 2005 – the deposition provided to Defendants in an effort to allow them to further depose Plaintiff about her damages, that she was continuing to treat with Dr. Cokley. (Ex. 2, Plaintiff's Deposition 20:22-24; 21:1-13).

2

8. Dr. Cokley will testify about the effects upon Plaintiff in having to continually remember these behaviors by Judge Warren A. Sappington.

9. As this case has flowed through the judicial system since 1997, at each juncture Plaintiff has again begun recalling specific details of Judge Warren A. Sappington's sexual harassment and her employers' disregard for her complaints about this harassment.

10. Dr. Cokley is Plaintiff's psychologist, not a retained expert.

11. Plaintiff took reasonable efforts to obtain records from Dr. Cokley and once produced would immediately produce them to Defense counsel.

12. Plaintiff's counsel disclosed the mental health records as soon as she received them. Plaintiff should not be precluded from providing the testimony of Dr. Cokley concerning her mental health up to, through and after the trial in this matter.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' request to bar testimony about Plaintiff's psychological treatment beyond January 19, 1999.

Respectfully requested,
Melissa A. Robinson p/k/a Schroeder,
Plaintiff,
By: s/ Melissa M. McGrath
Melissa M. McGrath Attorney Bar No. 6207263
Attorney for Plaintiff
Thomson & Weintraub
105 North Center Street
Bloomington, Illinois 61701
Phone: (309) 829-7069
Fax: (309) 827-3458
E-mail: mmcgrath@tnwlaw.com

## NOTICE OF FILING

I hereby certify that on August ____, 2005, I presented the foregoing document to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Mr. John Cassidy
CASSIDY & MUELLER
323 Commerce Bank Bldg.
416 Main Street
Peoria, IL 61602

Ms. Karen McNaught
Assistant Attorney General
ILLINOIS ATTORNEY GENERAL'S OFFICE
500 S. Second Street
Springfield, Illinois 62706

Ms. Diane M. Barron, Esq.
Clausen Miller PC
10 South La Salle Street
Chicago, Illinois 60603-1098

Mr. Terrence J. Corrigan
Illinois Attorney General
500 South Second Street
Springfield, Illinois 62706

By: s/ Melissa M. McGrath
Melissa M. McGrath Attorney Bar No. 6207263
Attorney for Plaintiff
Thomson & Weintraub
105 North Center Street
Bloomington, Illinois 61701
Phone: (309) 829-7069
Fax: (309) 827-3458
E-mail: mmcgrath@tnwlaw.com

Subscribed and sworn to before me this _____ day of August, 2005.

Notary Public

"OFFICIAL SEAL"
Angela M. Park
Notary Public, State of Illinois
My Commission Exp. 10/21/2008

4

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF ILLINOIS
                      URBANA DIVISION
```

RECEIVED OCT 16 2001 By___

MELISSA ROBINSON f/k/a MELISSA SCHROEDER, )
)
Plaintiff, )
)
- vs - ) No: 99-2266
)
JUDGE WARREN SAPPINGTON, et al., )
)
Defendants. )

*CONDENSED COPY*

THE DEPOSITION of DR. ROBERT COKLEY, the witness herein, called by the Defendant, Judge Sappington, for examination pursuant to notice and pursuant to the Rules of the Supreme Court thereof pertaining to the taking of depositions taken before me, Daphne G. Killam, CSR, License No. 084-004413, a Notary Public in and for the State of Illinois, at 348 W. Prairie, in the City of Decatur, County of Macon, and State of Illinois on the 27th day of September, A.D., 2001, commencing at 10:00 a.m.

*ADVANTAGE REPORTING SERVICES*

*1-800-347-3124*


PLAINTIFF'S EXHIBIT

85

1 **Q.** And Missy didn't see herself as any part of
2 causing that problem with Wes, did she?
3 **A.** Missy didn't see herself as being a problem. I
4 think Missy felt that she had difficulties relating to
5 Wes because of Wes' behavior and that she would set
6 limits on Wes which Wes wouldn't accept but no, not
7 that she was a problem.
8 MS. McNAUGHT: Okay. I have nothing further.
9
10          FURTHER EXAMINATION CONDUCTED
11 QUESTIONS BY MS. McGRATH:
12 **Q.** I have a few questions. Mr. Cassidy was asking
13 you certain questions about in your professional
14 experience people trying to fill the role of a
15 grandfather. Have you ever seen an individual or come
16 across this in your practice where someone is trying to
17 fill the grandfatherly role that tells a middle aged
18 woman that he had shared with other individuals that
19 they would like that person to sit on his face -- would
20 you see that as a grandfatherly role?
21 **A.** Definitely not.
22 **Q.** Have you worked with or counseled other
23 individuals who have reported sexually harassing

86

1 behaviors to you?
2 **A.** Yes, I have.
3 **Q.** In your professional experience, would you
4 agree it's not uncommon for the victim to put on hold
5 at times their stress resulting from that behavior?
6 **A.** Correct.
7 **Q.** But that stress can then come back or no longer
8 be put on hold and cause problems for that victim?
9 **A.** True.
10 **Q.** You don't know today as you sit there today, do
11 you, whether Missy is suffering emotionally currently?
12 **A.** I don't think so. I don't know.
13 **Q.** You haven't seen her since January of 1999,
14 right?
15 **A.** Yes, I have seen her since January of 1999.
16 **Q.** Have you counselled her since January of 1999?
17 **A.** I have.
18 **Q.** And in your counseling since January of 1999,
19 has she discussed with you concerns about Judge
20 Sappington?
21 **A.** No, she has not.
22 MR. GILLESPIE: I'm going to raise an objection
23 to the records of those.

87

1 THE DEPONENT: No, because at that time you
2 didn't ask for those records.
3 MS. BARON: I thought I asked if that was the
4 last time.
5 THE WITNESS: The last time I saw her was when
6 her husband almost died from a particular infection.
7 MR. GILLESPIE: Are we declaring privilege on
8 these new records? I think we're entitled to them.
9 MS. McGRATH: Do you want to go back on direct
10 and ask him about that?
11
12          FURTHER EXAMINATION CONDUCTED
13 QUESTIONS BY MS. BARON:
14 **Q.** Sure. Doctor, you stated that you have treated
15 Missy Robinson after January of 1999?
16 **A.** Right.
17 **Q.** Do you have records from those sessions with
18 her?
19 **A.** Yes, I do.
20 **Q.** Could you provide us copies now?
21 **A.** I would have to get them.
22
23      (A break was taken at this time.)

88

1 BY MR. BARON:
2 **Q.** So, doctor, are you going to provide us with
3 your records for the later session?
4 **A.** I can't provide them until I get a release from
5 both parties.
6 **Q.** Can you tell us when you saw her?
7 **A.** I can't tell you that.
8 MS. BARON: Well, we're going to reserve our
9 right to continue questioning after we see those
10 records.
11 THE DEPONENT: Yeah, if they give me
12 permission.
13
14          FURTHER EXAMINATION CONDUCTED
15 QUESTIONS BY MS. McGRATH:
16 **Q.** Let me go back on. I have a few questions. In
17 your professional opinion, doctor, can someone still
18 function at a high level at work and at school but
19 suffer stress?
20 **A.** Correct.
21 MS. McGRATH: I don't have anything further.
22
23

## Page 1

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE CENTRAL DISTRICT OF ILLINOIS
                            PEORIA DIVISION

MELISSA ROBINSON,              )
(f/k/a MELISSA SCHROEDER),     )
                               )
           Plaintiff,          )
                               )   No. 04-1360
      vs.                      )
                               )
JUDGE WARREN A. SAPPINGTON,    )
SIXTH JUDICIAL CIRCUIT, (IN    )
OFFICIAL CAPACITY), MACON      )
COUNTY AND MACON COUNTY        )
CIRCUIT,                       )
                               )
           Defendants.         )
```

Deposition of MELISSA ROBINSON, taken before Courtney L. DeClerck, CSR, at the instance of the Defendant, on the 29th day of March, 2005, at the hour of 2:00 p.m., at the Law Offices of Samuels, Miller, Schroeder, Jackson & Sly, 225 North Waters Street, Suite 301, Decatur, Illinois, pursuant to attached stipulation.

```
              ASSOCIATED COURT REPORTERS
                    1-800-252-9915
                     P.O. Box 684
              Taylorville, Illinois  62568
```

ASSOCIATED COURT REPORTERS

## Page 2

### STIPULATION

It is stipulated between the parties herein, through their attorneys, that the deposition of MELISSA ROBINSON may hereby be taken upon oral interrogatories, on the 29th day of March, 2005, at the hour of 2:00 p.m., at Samuels, Miller, Schroeder, Jackson & Sly, 225 North Waters Street, Suite 301, Decatur, Illinois, before the instance of the Defendant, and before Courtney L. DeClerck, CSR.

That the oral interrogatories and the answers of the witness may be taken down in shorthand by the Reporter and afterwards transcribed.

That the reading and signing of said deposition is not waived.

That the deposition or any portions thereof may be used by any of the parties hereto, without foundation proof, for any purpose for which depositions are competent.

That copies of the deposition may be furnished to any of the parties at his or her own expense.

ASSOCIATED COURT REPORTERS

## Page 3

APPEARANCES: (March 29th, 2005.)

Thomson & Weintraub
By Melissa McGrath
Attorney at Law
105 North Center Street
P.O. Box 3577
Bloomington, Illinois 61702-3577
    Appeared on behalf of the Plaintiff;

Attorney General
By Karen L. McNaught
Assistant Attorney General
500 S. Second Street
Springfield, Illinois 62706
    Appeared on behalf of the Defendant, Judge Warren A. Sappington.

Cassidy & Mueller
By John E. Cassidy
323 Commerce Bank Building
416 Main Street
Peoria, Illinois 61602
    Appeared on behalf of the Defendant, Macon County.

ASSOCIATED COURT REPORTERS

## Page 4

### INDEX

**Witness**
MELISSA ROBINSON

Direct Examination by Ms. McNaught........... 5

Direct Examination by Mr. Cassidy............ 54

Further Direct Examination by Ms. McNaught...130

Further Direct Examination by Mr. Cassidy....136

### EXHIBITS

| Exhibit | Marked |
|---------|--------|
| Defendant's Exhibits 1-8 | 5 |
| Defendant's Exhibits 9-11 | 54 |

ASSOCIATED COURT REPORTERS

PLAINTIFF'S EXHIBIT

## 17

1  A. No. I have no idea.
2  Q. Do you know how much he paid for your
3  children's insurance?
    A. I have no idea.
    Q. Did he also cover his -- or carry insurance
6  for his own children?
7  A. He always has, yes.
8  Q. And do you know how much that was?
9  A. No.
10 Q. Are you currently insured with health
11 insurance?
12 A. I'm double insured.
13 Q. Where does your double insurance come from?
14 A. My company. Health Alliance is our carrier.
15 Q. Do you have to pay any premiums for that?
16 A. They just increased it this month to $40 a
17 pay, so $80 a month.
18 Q. And that's something that you have to pay?
19 A. Uh-huh.
20 Q. Yes?
21 A. Yes.
22 Q. And what is your other health insurance
23 coverage?
24 A. I'm secondary under John, which is the City

## 18

1  of Decatur. I had never heard of this company
2  before. I want to say it's Consociate.
3  Q. Your husband currently works for the City of
4  Decatur?
5  A. Correct.
6  Q. And it's your choice to be doubly insured;
7  is that correct?
8  A. Correct.
9  Q. Do you know how much premiums are for you to
10 be doubly insured through the City of Decatur
11 insurer?
12 A. No.
13     John had told me when he was reviewing
14 the plan, but I don't recall because all of the
15 children are on there, too.
16 Q. Are any of the children covered under your
17 plan?
18 A. No.
19 Q. Or maybe better put, are any of your
20 children or any of the children --
    A. No.
22 Q. Let me get it out.
23 A. My stepsons are mine, too, but none of the
24 children -- you can only have two insurance

## 19

1  companies and they have always fallen under John and
2  Don. Don is the primary for my daughters.
3  Q. Okay. Now, in the final pre-trial, it was
4  claimed that your counseling was $11,000.
5      Can you tell me how you came up with
6  the $11,000 amount?
7  A. I came up with the $11,000 because I was
8  basing it off of the actual dollar amount from Eva
9  Muller and actual dollar amount from Bob Cokley and
10 full face value and then a year's counseling after
11 the trial.
12 Q. Has somebody told you that you will need a
13 year's worth of counseling after the trial?
14 A. I know I will need a year's worth of
15 counseling after the trial.
16 Q. My question is not what you know, but --
17 A. No.
18 Q. Nobody has told you that?
19 A. No.
20     I can tell you personally how I feel.
21 Q. And you've subsequently changed the $11,000
22 figure to $9,725.
23     Can you tell me how it is that you
24 arrived at that $9,725 figure?

## 20

1  A. I based it off of the three sessions that I
2  had with Eva Muller. I believe the first one was
3  $125. The two subsequent ones were for a $100 each
4  so that would be $325 there.
5      Initially prior to February of this
6  year, I had seen Bob Cokley thirty-nine times.
7  Q. And that was for a variety of things?
8  A. It was primarily for dealing with issues of
9  Sappington and blending a family.
10 Q. And you talked about both the blending of
11 the family and the issues of the trial with
12 Dr. Cokley; is that correct?
13 A. Correct.
14 Q. During the same sessions, you talked about
15 both issues?
16 A. During the sessions, I talked about my
17 hardship and overcoming my feelings not based on the
18 trial, but based on Judge Sappington's actions,
19 based on the county's actions, based on my feelings
20 of this trial and nine years leading up to where we
21 are right now and also blending a family.
22 Q. Did you have any sessions where the only
23 things that you talked about were the trial, Judge
24 Sappington's actions and the county's actions?

## Page 21

 1   A. Yes.
 2   Q. Which sessions were those?
 3   A. I can't pinpoint that. I could not tell
you.
     I can tell you the last two sessions
 6   which I've been to in the last couple of weeks.
 7   Q. And those weren't with Bob Cokley? They
 8   were with --
 9   A. Those were with Bob Cokley.
10   Q. They were?
11   A. Uh-huh.
12   Q. Do you still treat with Bob Cokley?
13   A. Yes.
14   Q. And then you treat with somebody else?
15   A. No.
16   Q. Who's Eva?
17   A. She was the counselor who I had seen in 1996
18   when this first happened when I was working in
19   Springfield and needed to see a Springfield
20   counselor.
21   Q. Okay.
22   A. I believe you guys have deposed her.
23   Q. I'm sorry. I just thought that you were
24   saying within the last three months you had seen

ASSOCIATED COURT REPORTERS

## Page 22

 1   her?
 2   A. No.
 3   Q. Okay. I didn't have any records from her so
 4   that was going to be my next question.
 5   A. I think you just looked at bills from her
 6   when you were flipping through the counseling
 7   things. I thought I saw that. Maybe you weren't.
 8   I thought --
 9       MS. MCGRATH: They are attached
10   to the revised Exhibit 36, the three bills at the
11   end of that exhibit are Muller bills.
12   A. Sorry. It was probably Melissa who I saw
13   flipping pages on that.
14   Q. So, these three -- these last three pages --
15       MS. MCNAUGHT: This says Blue
16   Cross Blue Shield. Is that right?
17       MS. MCGRATH: Those are them.
18   Q. Okay. I see. The last three bills under
19   exhibit -- Petitioner's Exhibit 36, which is
20   attached to your attorney's March 25th, 2005 letter
21   are bills from Eva Muller since the time that you
22   submitted information on damages to us; is that
23   correct?
24   A. No.

ASSOCIATED COURT REPORTERS

## Page 23

 1       MS. MCGRATH: Do you want me to
 2   clarify.
 3       MS. MCNAUGHT: Sure.
 4       MS. MCGRATH: No, they are not.
 5   They are the same bills that were submitted earlier,
 6   but I just submitted the total of Cokley and Muller
 7   that were provided in there.
 8       MS. MCNAUGHT: Okay.
 9   Q. Your medical insurance, you claimed in the
10   final pre-trial that it was $27,560 and you now
11   claim -- I'm sorry. You've taken away that claim;
12   is that correct?
13   A. Correct.
14   Q. Your retirement benefits that you claimed in
15   the final pre-trial were $79,490.88?
16   A. Correct.
17   Q. And you now claim that they are $95,715.32?
18   A. Correct.
19   Q. Can you tell me how you arrived at that
20   figure?
21   A. Based on the IMRF web site, which I went to
22   when I was figuring this out.
23       It stated to average your last four
24   years. So, I went back to my evaluations in 1995,

ASSOCIATED COURT REPORTERS

## Page 24

 1   1997.
 2       From 1995, I received roughly a
 3   14.2 percent increase in my annual raise. In 1996,
 4   I received a 4.3 percent increase in my annual
 5   raise. I based the 4.3 percent towards my salary at
 6   that time, nineteen three, and adjusted my salary by
 7   4.3 percent each subsequent year.
 8       I took 1998, 1999, 2000, 2001 since the
 9   evaluations were completed in November. I took
10   those figures, averaged them out, added them
11   together, divided them by four, divided them by
12   twelve.
13       I came up with a figure of roughly
14   $1789 per month. Put that into the IMRF pension
15   calculator --
16   Q. On the web site?
17   A. On the web site. Showing that at age
18   fifty-five retirement, which was probably when I
19   would be seeking that, it calculated it out with, I
20   believe, like a 6.02 or 6.08 increase every January
21   thereafter per month.
22   Q. Did anyone show you how to make that
23   calculation or are those just numbers that you came
24   up with by yourself?

ASSOCIATED COURT REPORTERS