105

1   Q   The entry on October 4 indicates a half personal day?

2   A   Correct. That was the date of my daughter's passing.

3   Q   October 11, that was leave authorized by Judge

4   Greanias. What in particular happened on October 11?

5   A   Again, that was the incident in the courtroom with

6   Frank Byers.

7   Q   Exhibit 9 for just a moment. October 15 -- I'm

8   sorry. That was also leave authorized by Judge Greanias.

9   Does that reflect administrative leave that you were

10  placed on after the Byers incident?

11  A   Correct.

12  Q   If I can direct you to Plaintiff's Exhibit 12.

13          THE COURT: Any objection to 12?

14          MR. CASSIDY: No objection.

15          MR. CORRIGAN: No objection.

16          THE COURT: 12 is admitted.

17  Q   Melissa, 12 appears to be a letter written by Judge

18  Greanias directed to you about your resignation?

19  A   Correct.

20  Q   This exhibit indicates that you would not lose your

21  unused vacation as of January 10. Were you in fact paid

22  for that vacation time in the end?

23  A   Yes, I was.

24  Q   Did you ever receive this letter from Judge Greanias,

25  as best you recall?

114

1   I said, "Hey, Kelly." And that was probably the first big
2   blow of realizing what I had to prepare myself for.
3   Q    Who was next person you remember running into since
4   you left?
5   A    I have ran -- I think it was around February or March
6   ran into Judge Paul Francis at Kroger.
7   Q    I'm sorry. At Kroger?
8   A    Uh-huh.
9   Q    When you say February or March, what year are we
10  talking about?
11  A    1997.
12  Q    How did Judge Francis treat you?
13  A    On that particular occasion, I avoided him because of
14  everything that was going on, everything that I was told
15  about his dissatisfaction with me, and he tracked me down
16  through Kroger and he stopped me and asked me -- I had
17  already hired an attorney at that point and he asked me
18  why didn't I just take the transfer.
19  Q    What did you say?
20  A    I told him, "Because Judge Greanias told me that you
21  would make my life a living hell."
22  Q    And what did Judge Francis say to you?
23  A    "That son of a bitch."
24  Q    Others that you have run into in the courthouse,
25  how -- strike that. Others that you have run into, can

1    A    Correct.

2    Q    Do you remember when you started seeing Eva Mueller?

3    A    I saw her in the spring of 1997.

4    Q    You saw her on --

5    A    Three occasions.

6    Q    You've also have sought counseling from a Dr. Robert
7    Cokley?

8    A    Correct.

9    Q    Now can you tell me when you first counseled with
10    Dr. Cokley?  Do you recall?

11    A    I would say 1998.

12    Q    Now when you counseled with Eva Mueller and
13    Dr. Cokley, you talked to them about some other issues,
14    correct?

15    A    Correct.

16    Q    Family issues, for example, correct?

17    A    Correct.

18    Q    When you -- strike that.  Am I correct that you saw
19    Dr. Cokley periodically over a number of years?

20    A    Correct.

21    Q    Are you currently seeing Dr. Cokley?

22    A    Correct.  Yes.

23    Q    Are you asking the jury to award you the past?

24         MR. CORRIGAN:  Your Honor, I would object to
25    this.  This is closing argument for what they're asking.

```
 1   They can present the facts.
 2            THE COURT:  Overruled.
 3   Q    Are you asking the jury to award you past counseling
 4   expenses that you have incurred?
 5   A    Yes.
 6   Q    And if I can refer you to Exhibit 36 which should be
 7   in that file.
 8            THE COURT:  Any objection?
 9            MS. McGRATH:  I won't be displaying it.
10            MR. CORRIGAN:  I would object to it.
11            THE COURT:  What's your question?
12            MS. McGRATH:  I would like the witness to
13   indicate whether Exhibit 36 indicates or demonstrates the
14   bills she has incurred for her counseling costs.
15            THE COURT:  Okay.  You may answer that question.
16   A    The bills I have incurred to date are $5,145.00.
17            MR. CORRIGAN:  Objection.
18            THE COURT:  The only question you were asked was
19   whether this is a compilation of those bills.
20   A    I apologize.  Yes.
21   Q    And are you also asking the Court to award you future
22   counseling expenses?
23   A    Yes.
24   Q    In the amount --
25            MR. CORRIGAN:  Objection.
```

                                                                    136

1    say to you about that comment, if anything?

2    A   On September 19 when I was in his office putting

3    files on his desk, he asked me if I had any questions

4    regarding our conversation on September 18 and I indicated

5    to him no, I did not, and he indicated that I needed to be

6    aware that that would not take place until after my

7    divorce was final.

8    Q   When you discussed the sit-on-face issue with Judge

9    Sappington, he initiated that discussion by indicating

10   that there had been a sexual content discussion with Judge

11   Davis, correct?

12   A   Correct.

13   Q   And I believe you indicated you understood that Judge

14   Francis knew by then?

15   A   Correct.

16   Q   Why did you ask Judge Sappington to tell you what the

17   actual content was of that discussion?

18   A   Because he had already indicated a sexual comment had

19   been made about me.  I believed I needed to be aware of

20   what that was, especially since another judge was involved

21   at that point, to avoid gossip or humiliation.

22   Q   You were asked -- you indicated earlier that on

23   October 11 when you spoke with Judge Greanias, you had not

24   indicated that you wanted to be transferred from Judge

25   Sappington?

138

1    Hopkins saw as far as that incident?

2    A    I do not know what Richard saw.

3    Q    There was a time when I believe you indicated in your

4    testimony this morning that you may have pondered quitting

5    and going to school towards the end of -- strike that.

6    When was it that you thought of that?

7    A    After I had already been told that I would go through

8    a living hell if I moved over to Judge Francis.  I was

9    already going through a divorce.  I couldn't go without

10   income.

11   Q    In fact, some of your deposition testimony was read

12   into the record this morning as far as your reasons for --

13   or your discussion with Judge Greanias about the transfer.

14   Do you recall also indicating -- I will refer counsel to

15   page 113 as far as the basis of why you did not want to be

16   moved to Judge Francis.  Page 113, beginning at line 4.

17   Question:  "Okay."

18              MR. CORRIGAN:  Objection, Your Honor.  Her

19   reading her own deposition is hearsay.

20              THE COURT:  Sustained.

21              MS. McGRATH:  Your Honor, portions of this

22   testimony were read into the record this morning.

23   Additional portions were not.

24              THE COURT:  All right.  So you're saying these

25   are additional answers she gave during the same

```
 1    deposition?
 2            MS. McGRATH:  During the same deposition, Your
 3    Honor, one page beyond.
 4            MR. CORRIGAN:  Before this is read, could I have
 5    a second to just check what's being read?
 6            THE COURT:  Are you still objecting?
 7            MR. CORRIGAN:  I have no objection.
 8            THE COURT:  Go ahead.
 9    Q    "Why is it that you did not want to be moved?"
10    Answer:  "I did not want to be placed in a more hostile
11    environment than I already was."  Question:  "Well, how
12    did you ascertain that working for Judge Francis would
13    have been a hostile environment?"  Answer:  "Judge
14    Greanias told me it would be."  Question:  "What did he
15    tell you?"  Answer:  "He told me that Judge Francis was
16    very unhappy about the move and he would make my first six
17    months there hell, but after that he believed that he
18    would calm down and it would be a good relationship."
19    That was additional testimony you gave as to the reason
20    for you not wanting to transfer to Judge Francis?
21    A    That -- that's correct.
22    Q    You indicated that there was a certain date that you
23    could identify when you saw Judge Sappington acting
24    differently in his courtroom?
25    A    Correct.
```